**In the United States District Court**
**for the District of Columbia**

| | |
|---|---|
| United States of America, | Case No. 1:23-cr-00184-RDM |
| Plaintiff, | |
| | Motion to Dismiss Counts One and Two or Require a Bill of Particulars |
| v. | |
| Jared Lane Wise, | **Oral Argument Requested** |
| Defendant. | |

# Table of Contents

Page

A.   MOTION ............................................................................................1

B.   INTRODUCTION ...............................................................................1

C.   RELEVANT FACTS ...........................................................................3

D.   LEGAL STANDARD ......................................................................... 6

    1.   Motion to Dismiss................................................................. 6

    2.   Bill of Particulars ................................................................ 8

    3.   First Amendment As-Applied Challenge.................................10

        a)   Fighting Words .................................................................10

        b)   Incitement ....................................................................... 11

        c)   True Threats .................................................................... 11

E.   ANALYSIS .......................................................................................12

    1.   Count 1 charges obstructing, impeding, and interfering with a law enforcement officer, and aiding and abetting someone else to obstruct, impede, and interfere with a law enforcement officer, in violation of 18 U.S.C. §§ 231(a)(3), 2, but does not identify (a) a specific victim officer or (b) a direct perpetrator who was encouraged by Wise's words. ........................12

        a)   The identity and employment of the federal officer that Mr. Wise obstructed, impeded, and interfered with is jurisdictional and necessary for Mr. Wise to adequately prepare a defense..........................................................14

        b)   Identification of the federally protected function that Mr. Wise allegedly "obstructed, delayed, and adversely

affected" is necessary for Mr. Wise to understand the charges and adequately prepare a defense to Count One. ...........................................................................................18

    c)   Identification of the individual Mr. Wise allegedly aided, abetted, counseled, commanded, induced, procured, and willfully caused to "obstruct[], impede[], and interfere[]" a federal function is necessary for Mr. Wise to understand the charges and adequately prepare a defense to Count One. .......................................19

2.   Count 2 charges assaulting, resisting, or impeding *certain* officers, in violation of 18 U.S.C. §§ 111(a)(1), 2, but the government fails to identify (a) a specific victim officer and (b) direct perpetrator who was encouraged by Wise's words. ........................................................................................ 20

    a)   The identity and employment of the federal officer Mr. Wise allegedly assaulted, resisted, opposed, impeded, intimidated, and interfered with is necessary for Mr. Wise to adequately prepare a defense. ........................... 22

    b)   Identification of the felony offense the government intends to prove at trial, which Mr. Wise allegedly had the intent to commit, is necessary for him to understand the charges and adequately prepare a defense to Count Two. .................................................. 24

    c)   Identification of the individual Mr. Wise allegedly aided, abetted, counseled, commanded, induced, procured, and willfully caused to "assault, resist, oppose, impede, intimidate, and interfere with" federal law enforcement is necessary for Mr. Wise to understand the charges and adequately prepare a defense to Count Two. .................................................25

3.   First Amendment implications weigh in favor of dismissing Counts One and Two or at least requiring a bill of particulars. ....................................................................................... 26

    a)   Mr. Wise's speech does not constitute fighting words. ............... 26

    b)   Mr. Wise's speech does not constitute incitement. ...................... 28

    c)   Mr. Wise's speech does not constitute true threats. ...................... 29

    d)   Speech alone is insufficient for a § 231(a)(3) charge. .................. 31

F.   CONCLUSION ............................................................................................33

# Table of Authorities

**Page**

<span style="font-variant: small-caps;">CASES</span>

*Brandenburg v. Ohio*,
  395 U.S. 444 (1969) .................................................................................. 11, 28

*\*Chaplinsky v. State of New Hampshire*,
  315 U.S. 568 (1942) .........................................................................................10

*City of Houston, Tex. v. Hill*,
  482 U.S. 451 (1987) ................................................................................... 11, 27

*Counterman v. Colorado*,
  600 U.S. 66 (2023) ..........................................................................................12

*Hamling v. United States*,
  418 U.S. 87 (1974) .............................................................................................7

*Lewis v. City of New Orleans*,
  415 U.S. 130 (1974) ................................................................................... 11, 27

*\*Nat'l Ass'n for the Advancement of Colored People v. Claiborne Hardware Co.*,
  458 U.S. 886 (1982) ................................................................................... 11, 29

*Richardson v. United States*,
  526 U.S. 813 (1999) ................................................................................... 17, 23

*Russell v. United States*,
  369 U.S. 749 (1962) ................................................................................... 10, 18

*Texas v. Johnson*,
  491 U.S. 397 (1989) ................................................................................... 10, 26

*United States v. Bagdasarian*,
  652 F.3d 1113 (9th Cir. 2011) .................................................................. 29, 30

*United States v. Ballestas*,
  795 F.3d 138 (D.C. Cir. 2015) ..................................................................... 6, 8

*United States v. Bazezew*,
  783 F. Supp. 2d 160 (D.D.C. 2011) ................................................................. 9

*United States v. Bowdoin*,
  770 F. Supp. 2d 142 (D.D.C. 2011) ................................................................. 6

*United States v. Brown*,
  No. 22CR00214JAD-DJA, 2023 WL 7017622 (D. Nev. Oct. 25, 2023) .......... 9, 14, 22

*United States v. Butler*,
  822 F.2d 1191 (D.C. Cir. 1987) .................................................................... 8, 9

*United States v. Carll*,
  105 U.S. 611 (1882) ...........................................................................................7

*United States v. Conlon*,
  628 F.2d 150, 155 (D.C. Cir. 1980) .................................................................. 6

*\*United States v. Connell*,
  No. CR 21-0084 (PLF), 2023 WL 4286191 (D.D.C. June 30, 2023) ........ 3, 15, 16, 17, 23, 31, 32

*United States v. Groseclose*,
  No. 21-CR-311 (CRC), 2024 WL 68248 (D.D.C. Jan. 5, 2024) ............................ 22

*United States v. Hitt*,
   249 F.3d 1010 (D.C. Cir. 2001) ................................................................ 6
*United States v. Kendall*,
   665 F.2d 126 (7th Cir. 1981) ................................................................... 8
*United States v. Kimes*,
   246 F.3d 800 (6th Cir. 2001)................................................................... 22
*United States v. Mejia*,
   448 F.3d 436 (D.C. Cir. 2006) ................................................................ 9
*United States v. Montgomery*,
   578 F. Supp. 3d 54 (D.D.C. 2021) ..........................................................7
*United States v. Mostofsky*,
   2021 WL 3168501  (D.D.C. July 27, 2021) .................................... 18, 19
*United States v. Musgrove*,
   845 F.Supp.2d 932 (E.D. Wisc. 2011) .................................................... 8
*United States v. Pugh*,
   90 F.4th 1318 (11th Cir., 2024) .................................................... 31, 33
*United States v. Ramirez*,
   54 F. Supp. 2d 25 (D.D.C. 1999) ............................................................ 8
*United States v. Safavian*,
   429 F. Supp. 2d 156 (D.D.C. 2006) .........................................................7
*United States v. Saffarinia*,
   424 F. Supp. 3d 46 (D.D.C. 2020) .......................................................... 6
*United States v. Sampson*,
   371 U.S. 75 (1962) ................................................................................. 6
*United States v. Sayan*,
   968 F.2d 55 (D.C. Cir. 1992) .......................................................... 17, 23
*United States v. Smith*,
   230 F.3d 300 (7th Cir. 2000) ..................................................... 8, 10, 20
*United States v. Sunia*,
   643 F. Supp. 2d 51 (D.D.C. 2009) ..........................................................7
*United States v. Verrusio*,
   762 F.3d 1 (D.C. Cir. 2014) ....................................................................7
*United States v. Warnagiris*,
   No. CR 21-00382 (PLF), 2023 WL 6926491 (D.D.C. Oct. 19, 2023)..................... 6, 7, 9, 18, 24
*United States v. Wheeler*,
   776 F.3d 736 (10th Cir. 2015) .............................................................. 30
*Virginia v. Black*,
   538 U.S. 343 (2003)............................................................................. 11

## STATUTES

18 U.S.C. § 2 .....................................................2, 14, 16, 21, 22, 27, 28
18 U.S.C. § 111(a).....................................3, 22, 23, 24, 26, 27, 28
18 U.S.C. § 111(a)(1) .................................. 2, 3, 22, 23, 24, 25, 26, 28
18 U.S.C. § 231(a)(3) ....................................2, 3, 14, 16, 20, 34

## RULES

Fed. R. Crim. P. 12(b)(3) ................................................................................................ 6

Fed. R. Crim. P. 7(f) ............................................................................................... 1, 8, 9

## A.      Motion

Invoking the First, Fifth, and Sixth Amendments to the United States' Constitution and Fed. R. Crim. P. 7(f), Defendant, Jared Wise, through counsel, Kurt David Hermansen, moves to dismiss Counts One and Two or, in the alternative, for an order, consistent with the Conclusion section of this Motion, requiring that the government file a bill of particulars for Counts One and Two of the Indictment. *See* ECF No. 9.

## B.      Introduction

This case is uniquely complicated factually and legally because, in addition to four misdemeanor charges, the government charges Mr. Wise with two felonies, based on his speech alone.[1] Although Mr. Wise did not touch or threaten a law-enforcement officer, the government charges him with forcible, felony assault and felony civil disturbance, apparently based on the assumption that Mr. Wise's words may have encouraged some **unnamed** person to assault and impede an **unnamed** law-enforcement officer. As currently stated, without further specificity, the Indictment cannot stand given protections afforded by the Due Process clause and the First and Sixth Amendments to the United States Constitution.

---

[1] The Indictment charges the following six counts:
1. 18 U.S.C. §§ 231(a)(3), 2 (Civil Disorder and Aiding and Abetting).
2. 18 U.S.C. §§ 111(a)(1), 2 (Assaulting, Resisting, or Impeding Certain Officers and Aiding and Abetting).
3. 18 U.S.C. § 1752(a)(l) (Entering and Remaining in a Restricted Building or Grounds).
4. 18 U.S.C. § 1752(a)(2) (Disorderly and Disruptive Conduct in a Restricted Building or Grounds).
5. 40 U.S.C. § 5104(e)(2)(D) (Disorderly Conduct in a Capitol Building).
6. 40 U.S.C. § 5104(e)(2)(G) (Parading, Demonstrating, or Picketing in a Capitol Building). ECF No. 9.

First, this Motion shows that Count One, which charges obstructing, impeding, and interfering with a law enforcement officer, and aiding and abetting someone else to obstruct, impede, and interfere with a law enforcement officer, in violation of 18 U.S.C. §§ 231(a)(3), 2, should be dismissed because it does not identify (a) a specific victim officer and (b) direct perpetrator who was encouraged by Wise's words. Identification of (a) the individual Mr. Wise allegedly impeded and (b) the individual he allegedly aided, abetted, counseled, commanded, induced, procured, and willfully caused to "obstruct[], impede[], and interfere[]" is necessary for Mr. Wise to understand the charges and adequately prepare a defense to Count One.

Second, this Motion shows that Count Two, which charges forcibly assaulting, resisting, or impeding certain officers, in violation of 18 U.S.C. §§ 111(a)(1), 2, should be dismissed because the government fails to identify (a) a specific victim officer and (b) a direct perpetrator who was encouraged by Wise's words. Identification of (a) the individual Mr. Wise allegedly assaulted and (b) the individual Mr. Wise allegedly aided, abetted, counseled, commanded, induced, procured, and willfully caused to "assault, resist, oppose, impede, intimidate, and interfere with" federal law enforcement is necessary for Mr. Wise to understand the charges and adequately prepare a defense to Count Two.

At a minimum, a bill of particulars is needed. Given the First Amendment implications of the charges, which seek to criminalize mere speech, given the huge number of protestors and police involved in the clash on the Upper West Terrace, and given Mr. Wise's need to properly understand and defend against the charges, the identity of both the alleged law enforcement victim and the person Mr. Wise allegedly aided and abetted need to be solidified in a bill of particulars. Otherwise, Mr. Wise will need to prepare for scores of different scenarios given the chaotic nature of the clash. Undoubtedly, the First Amendment implications of this case weigh heavily in favor

of requiring dismissal, or at least a bill of particulars so that the Court and the parties can intelligently debate whether Counts One and Two should be dismissed as violative of the First Amendment under Mr. Wise's as-applied challenge.

Undoubtedly, as in *United States v. Connell*, this Court should at least "conclude that the government must file a bill of particulars with respect to both" Count One (which charges Mr. Wise with violating 18 U.S.C. §§ 231(a)(3), (2)), and Count Two (which charges violating 18 U.S.C. § 111(a)(1), (2)). *United States v. Connell*, No. CR 21-0084 (PLF), 2023 WL 4286191, at *3 (D.D.C. June 30, 2023) (requiring a bill of particulars for the § 111 charge and the § 231 charge).

## C.    Relevant Facts[2]

Around 2:00 p.m. (14:00) on January 6, 2021, specific protesters forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police. Mr. Wise was not one of those protesters and he did not encourage or assist any of them.

Mr. Wise's phone used a cell site that provides service to the area that includes the interior of the United States Capitol building ("the cell tower") at approximately 14:15:06, 14:22:06, 14:26:06, and 14:29:16 Eastern Standard Time ("EST").

Around 2:20 p.m. (14:20) members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to, and did, evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. (20:00). Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

---

[2] Many of these "facts" are taken from the Complaint filed in this case. Mr. Wise does not concede any of these facts, but rather reserves the right to contest them.

Footage from U.S. Capitol CCTV and MPD BWC depicts Mr. Wise inside the U.S. Capitol and on the grounds of the U.S. Capitol on January 6, 2021. Around 2:23 PM EST (14:23), Mr. Wise entered the U.S. Capitol building through the open and unobstructed Senate Wing Door.

After entering through the unobstructed Senate Wing Door, Mr. Wise allegedly clapped his hands and raised his arms before walking through the Crypt and past the Memorial Door. About nine minutes after entering the Capitol, at 2:32 p.m. EST (14:23), Mr. Wise exited through a window adjacent to the now-closed Senate Wing Door.

Because Mr. Wise never touched or threaten a law enforcement officer on January 6, 2021, the felony forcible assault and felony civil disorder allegations in Counts One and Two seems to be based purely on Mr. Wise's alleged speech.

Around 4:21 PM EST (16:21), on the Upper West Terrace, Mr. Wise tells an MPD officer something to the effect of: "You guys are disgusting. I'm former — I'm former law enforcement. You're disgusting. You are the Nazi. You are the Gestapo. You can't see it. … Shame on you! Shame on you! Shame on you!"

Soon thereafter, when one or two law-enforcement officers tripped over ankle-high planters on the terrace above where Mr. Wise was standing, Mr. Wise allegedly turned in the direction of the violence and at about 16:22:16 shouted: "Yeah, fuck them! Yeah, kill 'em!"

The officers who fell on the terrace above where Mr. Wise was standing probably fell to the ground (in the middle of a phalanx of pure officers) when officers in front of them were pushed backward into them. The frontline shield-wielding officers were pushing and in turn were being pushed by protesters at the frontline of what became a clash or "scrum" involving shield-wielding

officer and protestors.[3] Videos show row after row of mission-driven officers moving phalanx-style toward protestors on the Upper West Terrace. With batons extended, officers behind the frontline shield-wielding officers pushed on the backs of the officers in front of them for support and combined power.

As clashes between frontline-shield-wielding officers and protesters continued, Mr. Wise moved to view the frontline-skirmish (from his inferior position below the Upper West Terrace). With his cell phone pointed at the confrontation, Mr. Wise shouted something to the effect of: "Kill 'em! Kill 'em! Kill 'em!"

Although Mr. Wise did not touch or threaten a law-enforcement officer on January 6, 2021, the government refuses to disclose to the defense: (1) the full name and relevant discovery regarding the specific law enforcement officer who was allegedly interfered with, obstructed, and impeded as alleged in Count One; (2) the full name of the specific law enforcement officer who was allegedly forcibly assaulted, resisted, opposed, impeded, intimidated, and interfered with as alleged in Count Two; (3) the name of the person who Mr. Wise allegedly aided or abetted as alleged in Count One; and, (4) the name of the person who Mr. Wise allegedly aided or abetted as alleged in Count Two. Without this information, Mr. Wise would have to prepare for at least nine possible trial scenarios since the government has provided a "non-exhaustive" list of at least nine possible law enforcement victims. But to make matters worse, the government will not disclose which scofflaw Mr. Wise allegedly aided and abetted, which makes it impossible for the defense to investigate that scofflaw.

---

[3] Here, the word "scrum" is used to describe a disordered or confused situation involving numerous people. The scrum on the Upper West Terrace involved a sudden clash between the pushing-forward police phalanx and protestors. Mr. Wise was below, not on, the Upper West Terrace.

Mr. Wise did not know anyone involved in the skirmish that transpired above him on the terrace. There is no evidence that anyone involved in the skirmish heard and was encouraged by his words, especially given the cacophony of noise at the time and Wise's lower-level proximity to the upper-level clash.

### D.  Legal Standard

#### 1.  Motion to Dismiss

A defendant in a criminal case may move to dismiss an indictment or information before trial for "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(v). "In determining whether a charging document fails to state an offense, the operative question is 'whether the allegations, if proven, would be sufficient to permit a jury to find that the crimes charged were committed.'" *United States v. Warnagiris*, No. CR 21-00382 (PLF), 2023 WL 6926491, at *3 (D.D.C. Oct. 19, 2023) (quoting *United States v. Bowdoin*, 770 F. Supp. 2d 142, 146 (D.D.C. 2011) (citing *United States v. Sampson*, 371 U.S. 75, 76 (1962)).

The Court is bound by the language in the Indictment. *United States v. Hitt*, 249 F.3d 1010, 1015 (D.C. Cir. 2001). "Adherence to the language of the indictment is essential because the Fifth Amendment requires that criminal prosecutions be limited to the unique allegations of the indictments returned by the grand jury." *Id.* at 1016. "[B]ut that language must be supplemented with enough detail to apprise the accused of the particular offense with which he is charged." *United States v. Conlon*, 628 F.2d 150, 155 (D.C. Cir. 1980) (footnote omitted). *United States v. Saffarinia*, 424 F. Supp. 3d 46, 70–71 (D.D.C. 2020) (finding that indictment failed to sufficiently allege that Saffarinia had a duty to disclose).

In considering a motion to dismiss, a court must accept the allegations in the indictment as true. *See United States v. Ballestas*, 795 F.3d 138, 149 (D.C. Cir. 2015). "In ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the face of the

indictment and, more specifically, the language used to charge the crimes." *United States v. Sunia,* 643 F. Supp. 2d 51, 60 (D.D.C. 2009). This Court's analysis of Mr. Wise's motion to dismiss is therefore "limited to 'the four corners of the indictment.'" *United States v. Montgomery,* 578 F. Supp. 3d 54, 59 n.1 (D.D.C. 2021) (quoting *United States v. Safavian,* 429 F. Supp. 2d 156, 161 n.2 (D.D.C. 2006)).

An indictment is sufficient if it: (1) "contains the elements of the offense charged … [(2)] fairly informs a defendant of the charge against which he must defend … and [(3)] enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States,* 418 U.S. 87, 117 (1974). "Because an indictment's main purpose is to inform the defendant of the nature of the accusation against him, an indictment that fails to do so because it is not specific enough is insufficient." *Warnagiris,* 2023 WL 6926491 at *3 (cleaned up). In other words, at a minimum, an indictment must "inform the defendant of the precise offense of which he is accused so that he may prepare his defense … ." *United States v. Verrusio,* 762 F.3d 1, 13 (D.C. Cir. 2014). "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, ***as long as*** 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.'" *Hamling,* 418 U.S. at 117 (emphasis added)(quoting *United States v. Carll,* 105 U.S. 611, 612 (1882)). Stated positively: an indictment "is not sufficient to set forth the offence in the words of the statute, unless those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished … [, including] all the facts necessary to bring the case within that intent." *Carll,* 105 U.S. at 611–13.

Additionally, the Federal Rules of Criminal Procedure require that the indictment be simple and a "definite written statement of the **essential facts** constituting the offense charged." Fed. R. Crim. P. 7(c)(1) (emphasis added). Although "it is generally acceptable for an indictment to 'track' the words of the statute itself," an indictment that merely "tracks the statutory language can nonetheless be considered deficient if it does not provide enough factual particulars to sufficiently apprise the defendant of what he must be prepared to meet." *United States v. Smith*, 230 F.3d 300, 305 (7th Cir. 2000). At a minimum, the indictment must "provide some means of pinning down the specific conduct at issue." *Id.*

### 2.    Bill of Particulars

When an indictment does not pin down the specific conduct at issue or fails to apprise the defendant of what he must be prepared to meet at trial, the Court "may direct the government to file a bill of particulars" to fill in necessary missing facts in the indictment so the defendant can prepare an adequate defense. Fed. R. Crim. P. 7(f) ; *United States v. Kendall*, 665 F.2d 126, 134 (7th Cir. 1981) (a bill of particulars sets forth the elements of the offense charged and sufficiently apprises the defendant of the charges to enable him to prepare for trial). A bill of particulars informs the defendant of the charges brought against him with "enough precision to allow the defendant to understand the charges, to prepare a defense, and … to be protected against retrial on the same charges." *United States v. Butler*, 822 F.2d 1191, 1193 (D.C. Cir. 1987). A request for a bill of particulars "properly includes clarification of the indictment." *United States v. Ramirez*, 54 F. Supp. 2d 25, 29 (D.D.C. 1999). While a bill of particulars cannot remedy an indictment that excludes essential elements of an offense, it can be used to fill in facts of an indictment that is "otherwise generally sufficient." *United States v. Musgrove*, 845 F.Supp.2d 932, 942 (E.D. Wisc. 2011).

Under the Federal Rules of Criminal Procedure, a "court may direct the government to file a bill of particulars." Fed. R. Crim. P. 7(f) . A bill of particulars is a formal written statement by the government that provides details of the charges in the indictment. *Warnagiris*, 2023 WL 6926491 at *13–14. While requesting a bill of particulars is not routine, trial courts certainly have discretion to determine whether a bill of particulars should be provided, and courts "should grant a motion for a bill of particulars to the extent it believes it is necessary to allow the defendants to adequately prepare for and avoid surprise at trial." *Id.* (citing *United States v. Bazezew*, 783 F. Supp. 2d 160, 167 (D.D.C. 2011)). Defendants may request additional information through a bill of particulars to ensure that the charges brought against them are stated with enough precision to allow them to understand the charges, to prepare a defense, and to avoid retrial on the same charges. *Butler*, 822 F.2d at 1193; *see* *United States v. Mejia*, 448 F.3d 436, 445 (D.C. Cir. 2006).

A bill of particulars may be necessary to satisfy jurisdictional requirements. Without jurisdictional elements in an indictment, a defendant likely requires clarification through a bill of particulars to prepare a defense. *United States v. Brown*, No. 22CR00214JAD-DJA, 2023 WL 7017622 *1, *2 (D. Nev. Oct. 25, 2023). In *Brown*, the defendant was indicted on felon in possession of a firearm and felon in possession of ammunition. *Id.* at *1. The gun in question was privately manufactured in the state of Nevada and the defense was unclear how this gun affected interstate commerce. *Id.* The defendant's indictment lacked this jurisdictional element of his charging statute. *Id.* at *2. The Court concluded that the facts of the case did not place the defendant's gun or its component parts outside of Nevada, thus a bill of particulars was required to specify how the government intended to satisfy the jurisdictional element. *Id.* at *3. The Court reasoned that without the theory "of interstate impact" from the defendant's indictment, the defendant could not adequately prepare a defense. *Id.*

Further, bills of particulars can be used to address insufficiencies in an indictment. When an indictment mirrors the text of the statute, without limiting details, it can be insufficient. *Smith*, 230 F.3d at 305. In *Smith* the court held that, even though the indictment listed the text of the statute, it did not "provide enough factual particulars to 'sufficiently apprise the defendant of what he must be prepared to meet.'" *Id.* (quoting *Russell v. United States*, 369 U.S. 749, 763 (1962)). An indictment "must allege more than just the essential elements of the offense"; it must provide "some means of pinning down the specific conduct at issue." *Id.*

### 3.   First Amendment As-Applied Challenge

Here, the bare-bones Indictment cannot survive Mr. Wise's as-applied First Amendment challenge. Thus, dismissal of Counts One and Two is warranted unless a satisfactory bill of particulars is filed.

The First Amendment protects against the government "abridging the freedom of speech." U.S. Const. amend. I. While certain speech is not provided First Amendment protections (e.g., fighting words, incitement, and true threats), speech, especially critical speech directed at police concerning their excessive force, is afforded First Amendment protections.

### a)   Fighting Words

Fighting words were first defined by the Court as words "which by their very utterance inflict injury or tend to incite an immediate breach of the peace." *Chaplinsky v. State of New Hampshire*, 315 U.S. 568, 572 (1942). The test for fighting words for the common person was whether those words would be "likely to cause an average addressee to fight," like threats, profanities, and certain obscenities. *Id.* at 573. When directed at the average person, fighting words are words that "provoke the average person to retaliation." *Id.* at 574. When directed at the average (not law enforcement) person, fighting words may "direct personal insult[s] or an invitation to exchange fisticuffs." *Texas v. Johnson*, 491 U.S. 397, 409 (1989).

Notably, speech that may be categorized as fighting words that are spoken against police officers have higher levels of protection.[4] "[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." *City of Houston, Tex. v. Hill*, 482 U.S. 451, 461 (1987). The reasoning is that police officers, with their training "may reasonably be expected to 'exercise a higher degree of restraint' than the average citizen, and thus less likely to respond belligerently to 'fighting words.'" *Lewis v. City of New Orleans*, 415 U.S. 130, 135 (1974) (Powell, L. concurring).

  **b)**  **Incitement**

For words to be classified as incitement, the speaker must *intend* to incite imminent lawless action, and those words must be *likely* to produce such action. *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969). Emotionally charged rhetoric that includes references to violence, but is not followed by lawless action, is protected under the First Amendment. *Nat'l Ass'n for the Advancement of Colored People v. Claiborne Hardware Co.*, 458 U.S. 886, 928 (1982). In *Claiborne*, The Court stated:

> Strong and effective contemporaneous rhetoric cannot be nicely channeled in purely dulcet phrases. An advocate must be free to stimulate his audience with spontaneous and emotional appeals for unity and action in a common cause. When such appeals do not *incite* lawless action, *they must be regarded as protected speech*.

*Id.* (emphasis added).

  **c)**  **True Threats**

True threats are "those statements where the speaker means to communicate a *serious expression* of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Virginia v. Black*, 538 U.S. 343, 359 (2003) (emphasis added). True threats do not

---

[4] R. George Wright, *Fighting Words Today*, 49 Pepp. L. Rev. 805, 813 (2022).

include statements of exaggeration or jokes, or "statements that when taken in context do not convey a real possibility that violence will follow." *Counterman v. Colorado*, 600 U.S. 66, 74 (2023). To qualify as a true threat, the speaker must consciously disregard the risk that someone could interpret their statements as threats by delivering those statements anyway. *Id.* at 79.

The indictment does not put Mr. Wise on notice of how his speech falls outside First Amendment protections. As this motion indicates, Mr. Wise's excited utterances, when viewed in the context in which they were uttered, do not constitute fighting words, incitement, or true threats. No officer was impeded or assaulted because of Mr. Wise's words of protest and no protester was incited to violence by Mr. Wise's words. Accordingly, this Court should dismiss Counts One and Two.

### E.  Analysis

1.  **Count 1 charges obstructing, impeding, and interfering with a law enforcement officer, and aiding and abetting someone else to obstruct, impede, and interfere with a law enforcement officer, in violation of 18 U.S.C. §§ 231(a)(3), 2, but does not identify (a) a specific victim officer or (b) a direct perpetrator who was encouraged by Wise's words.**

Title 18 U.S.C. § 231(a)(3) makes it a crime to "commit[] or attempt[] to commit any act to obstruct, impede, or interfere with [a] … law enforcement officer" while they are on duty, during a civil disorder. 18 U.S.C. § 231(a)(3). The civil disorder must affect commerce or impact a "federally protected function." *Id.* Charging 18 U.S.C. § 2 along with the § 231 charge broadens the government's possible theories of liability to include directly committing the offense or aiding, abetting, counseling, commanding, inducing, procuring its commission, and willfully causing the prohibited act to be done. 18 U.S.C. § 2.

The Indictment does not specify any act of obstructing, impeding, or interfering. It does not name the alleged victim. It does not provide which federally protected function was adversely

affected. Nor does the indictment specify **who** Mr. Wise allegedly aided, abetted, counseled, commanded, induced, or willfully caused to commit the prohibit act or actions that allegedly constituted a violation of § 231(a)(3).

If Count One survives this motion to dismiss, a bill of particulars is necessary for Mr. Wise to adequately prepare a defense to that count, which charges Mr. Wise with obstructing, impeding, or interfering with a law enforcement officer during a civil disorder in violation of 18 U.S.C. § 231(a)(3). Count One merely echoes § 231 as follows:

> On or about January 6, 2021, within the District of Columbia, JARED LANE WISE committed and attempted to commit an act to obstruct, impede, and interfere with a law enforcement officer lawfully engaged in the lawful performance of his/her official duties incident to and during the commission of a civil disorder which in any way and degree obstructed, delayed, and adversely affected commerce and the movement of any article and commodity in commerce and the conduct and performance of any federally protected function.

ECF No. 9.

Beyond its First Amendment infirmities, Count One is deficient in at least two additional respects. First, it fails to identify the federal officer Mr. Wise allegedly obstructed, impeded, and interfered with. Second, Count One fails to specify which federal function was impacted. Thus, Mr. Wise asks this Court to order a bill of particulars as this information is not readily available in discovery, and those facts are necessary for him to understand the charges and prepare a defense to the allegations in Count One (and Two), especially where it took the government until May 12, 2024, to provide the following information in an email (emphasis added):

> The United States again emphasizes that the investigation is ongoing and that the below information is *not exhaustive*.

* * *

The list of victim officers would include *at least* the following officers. Again, this list is *not exhaustive and does not restrict the government's proof at trial*:

T.A.
D.B.
C.B.
T.B.
E.C.
P.D.
J.H.
D.P.L.
M.V.[5]

### a)   The identity and employment of the federal officer that Mr. Wise obstructed, impeded, and interfered with is jurisdictional and necessary for Mr. Wise to adequately prepare a defense.

First, a bill of particulars is needed here for jurisdictional purposes. Without jurisdictional elements in an indictment, Mr. Wise requires clarification through a bill of particulars to prepare a defense. Here, mystery surrounds the specific identity and employment of the federal officer Mr. Wise allegedly obstructed, impeded, and interfered with. Without the identity of the alleged victim, it is unclear how the government intends to prove the jurisdictional element of 18 U.S.C. § 231(a)(3) and § 2. Discovery includes bodycam footage from Officer R.N. of Mr. Wise around individuals suspected of being officers, but discovery does not include the specific identity or employment of the individual Mr. Wise allegedly obstructed, impeded, and interfered with at his level or on the Upper West Terrace. As in *Brown*, where the defendant was unsure how his gun possession affected interstate commerce, the defense here is unclear here how the government intends to prove the jurisdictional element of the victim being a federal officer without disclosing the officer's name and employment information.

---

[5] Although the AUSA provided first and last names for the law-enforcement officers, only their initials are provided here to protect the officer's identities given the public nature of this filing.

Second, a bill of particulars is necessary to provide Mr. Wise adequate notice for the § 231(a)(3) charge. Courts have granted bills of particulars in other § 231(a)(3) cases relating to the events of January 6. *Connell*, 2023 WL 4286191 at *6. In *Connell*, the indictment lacked identification of the officers. *Id.* at *2. This Court looked to other January 6 indictments of § 231(a)(3) charges and found that many of them contained at least some information about the officer involved. *Id.* In several cases, the indictment contained the initials of the officer involved. *Id.* In others, even without the initials or name of the officer, the indictment provided some additional detail about the officer or the alleged offense. *Id.* (citing Eighth Superseding Indictment at 33, *United States v. Caldwell*, Crim. 21-0028 (D.D.C. June 22, 2022) [ECF No. 684] (the indictment contained details about where the officers involved were located); Second Superseding Indictment at 34, *United States v. Ballard*, Crim. 21-0553 (D.D.C. May 18, 2022) [ECF No. 34] (the indictment listed the approximate time that the offense took place); Second Superseding Indictment at 2, *United States v. Gieswein*, Crim. 21-0024 (D.D.C. Aug. 4, 2022) [ECF No. 129] (the indictment included the location of the officers and the specific acts the defendant allegedly committed)).

The court in *Connell* further held that even though there was no uniform approach to drafting indictments of § 231(a)(3) violations, the government in many cases "is clearly capable of providing some level of detail that would allow a defendant to identify the officer in question." *Connell*, 2023 WL 42861941 at *6.

In Mr. Wise's indictment, there was no information about the officer or officers. Where in *Caldwell*, *Ballard*, and *Gieswein*, the indictments identified the location of the officers, the approximate time the offense took place, and the specific acts the defendant allegedly committed that were in violation of § 231(a)(3), Mr. Wise's indictment falls short. The indictment here

contains no similarly descriptive information. Without that information, Mr. Wise is unable to prepare a defense, as he is incapable of knowing which officer or officers were impacted by his words. Here, there are too many officers depicted in the videos at Mr. Wise's level and on the Upper West Terrace to narrow the field of possible victims — including rows and rows of officers, all involved in the scrum, shoulder to shoulder, pushing forward rugby-style, in the same location at the same time.

The *Connell* court found that the government can provide at least some identifying detail when needed. In Mr. Wise's indictment, the only factual detail alleged that supplements the text of the statute is "[o]n or about January 6, 2021, within the District of Columbia." The indictment does not identify the officer, the location of the alleged incident, nor the specific time the alleged incident took place. As in *Connell*, where the court ruled that this same lack of information necessitated a bill of particulars, Mr. Wise requires a bill of particulars identifying the officer and their employment for him to prepare a defense. This is especially because video footage for the crucial, frenetic, timeframe the government has informally identified shows many hundreds of protestors and police at Mr. Wise's level and on the Upper West Terrace. Regarding that, on May 3, 2024, the government provided the defense a long "list of officers with BWC from the relevant time period that were in the area of Mr. Wise, while noting that list was not exhaustive." From that list, the government, on May 12, 2024, identified via email "the following officers who most clearly either observe or are a part of the assaultive conduct on the Upper West Terrace at the relevant time."

> T.A.
> D.B
> C.B.
> VB * [This officer was not included in May 3 list.]
> T.B
> E.C.

D.C.
P.D.
K.D.
J.D.
H.G.
J.H.
F.K.
D.P.L.
T.L.
S.O.
A.P.
M.P.
K.R.
L.T.
M.V.
C.V.
K.V.
Q.W. [6]

Here, a bill of particulars is needed because, without the information identifying the victim officer, there is "'a genuine risk … of conviction resulting from different jurors concluding the defendant committed' the alleged acts against different officers." *Connell*, 2023 WL 4286191, at *4 (cleaned up) (citing *United States v. Sayan*, 968 F.2d 55, 65 (D.C. Cir. 1992)). Here, the risk is that Mr. Wise could be convicted as the result of, for example, six jurors concluding that the Mr. Wise forcibly obstructed, impeded, and interfered with Officer Y.Y., and six jurors concluding that the Mr. Wise did so with respect to Officer Z.Z. But all twelve jurors must unanimously agree on the specific person who was forcibly obstructed, impeded, and interfered with. "Stating the charges with precision is important because 'a jury in a federal criminal case cannot convict unless it unanimously finds that the Government has proved each element.'" *Connell*, 2023 WL 4286191, at *4 (quoting *Richardson v. United States*, 526 U.S. 813, 817 (1999)). If it is important for the jury to know the identity of the victim in reaching a unanimous verdict under Section 231(a)(3), it

---

[6] Although the AUSA provided first and last names for the law-enforcement officers, only their initials are provided here to protect the officer's identities given the public nature of this filing.

is also essential for a defendant to know the identity of the victim prior to trial, so that the defendant may understand the charge and properly prepare a defense.[7]

Finally, the simple fact that the indictment against Mr. Wise parrots the text of the statute, without further detail, means that the indictment here is insufficient. The court in *Russell* stated that the text of a statute is insufficient for an indictment unless the words of the statute "'of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.'" *Russell*, 369 U.S. at 765 (quoting *Carll*, 105 U.S. at 612). The text of the statute here does no such thing. Therefore, the indictment does not contain enough particular facts to apprise Mr. Wise of his charges. Mr. Wise engaged in various actions throughout the day of January 6, 2021. Without a bill of particulars that identifies **who** Mr. Wise allegedly aided, and **who** he allegedly interfered with and forcibly assaulted (without touching or threatening them), he is forced to guess as to what conduct the government is referring to, and he is unable to prepare a defense.

      b)      **Identification of the federally protected function that Mr. Wise allegedly "obstructed, delayed, and adversely affected" is necessary for Mr. Wise to understand the charges and adequately prepare a defense to Count One.**

Count One alleges that Mr. Wise, in violation of 18 U.S.C. § 231(a)(3), "obstructed, delayed, and adversely affected … the conduct and performance of any federally protected function." ECF No. 9. But the indictment does not specify what federally protected function the government believes was impacted.

The government must provide a defendant notice of which federally protected function it believes the defendant's actions affected pursuant to § 231(a)(3). *United States v. Mostofsky*, 2021 WL 3168501 at *4 (D.D.C. July 27, 2021); *see also Warnagiris*, 2023 WL 6926491 at *15. In

_____

[7] In this regard, § 231 and § 111 are the same.

*Mostofsky*, the defendant was charged in violation of § 231(a)(3) relating to events that took place on January 6, and he filed a bill of particulars for information of the "federally protected function" of the charge. *Id.* at *1. This Court acknowledged that common knowledge surrounding the events of January 6 might illuminate which federally protected function the § 231(a)(3) charge relates to. *Id.* at *4. However, this Court reasoned that, without the government providing that information in the indictment, the defendant was forced to guess which "federally protected function" the charge relates to. *Id.* This Court further held that the defendant would be unable to prepare a defense without that information, especially considering that he might have moved to dismiss the charge depending on the specific information of the federally protected function. *Id.* Therefore, this Court decided that the government needed to provide that information. *Id.*

Therefore, Mr. Wise needs the specification of the federally protected function to be able to prepare for trial and formulate a defense.

> c)   **Identification of the individual Mr. Wise allegedly aided, abetted, counseled, commanded, induced, procured, and willfully caused to "obstruct[], impede[], and interfere[]" a federal function is necessary for Mr. Wise to understand the charges and adequately prepare a defense to Count One.**

Count One alleges that Mr. Wise, in violation of 18 U.S.C. § 2, "aid[ed], abet[ted], counsel[ed], command[ed], induce[d] or procure[d]" or "willfully cause[d]" the commission of a violation of § 231(a)(3). ECF No. 9. But the indictment does not specify **who** Mr. Wise allegedly aided, abetted, or willfully caused to violate § 231(a)(3).

Just as Mr. Wise requires a bill of particulars to identify the alleged officer that was obstructed, impeded, and interfered with, Mr. Wise also requires a bill of particulars to identify the individual or individuals that Mr. Wise aided, abetted, or willfully caused to violate § 231(a)(3). The indictment lacks particular facts to apprise Mr. Wise of his alleged violation of

§ 2. Rather, the indictment simply cites § 2 without any further information, which is insufficient to enable Mr. wise to prepare a defense.

On **June 2, 2024**, the government provided a modicum of unofficial clarity regarding who Mr. Wise may have aided and incited by his words. Specifically, the government (with emphasis added here) wrote:

> You have requested "[t]he name(s) of the specific protestor(s) who Mr. Wise is alleged to be aiding and abetting in the alleged assault charge." Request 2. The defendant has not cited any authority for its request. Without agreeing that the defense is entitled to this information, the United States provides the below **nonexhaustive list** of cases it has identified in which defendants were charged with assaultive conduct under either 18 U.S.C. § 111 or 18 U.S.C. § 231, based on conduct on the Northwest Courtyard on the Upper West Terrace at the time in question. The undersigned has identified these cases through conferring with colleagues working on January 6, 2021 prosecutions; accordingly, **the below list is not intended to be exhaustive.**
> - *U.S. v. Michael Leon Brock*, 21-cr-500 (CJN).
> - *U.S. v. Thomas Harlen Smith*, 21-cr-599 (RBW)
> - *U.S. v. Donnie Wren*, 21-cr-599 (RBW)
> - *U.S. v. Kenneth Joseph Owen Thomas*, 21-cr-552 (DLF)
> - *U.S. v. Jesse James Rumson*, 23-cr-70 (CJN)

2.   **Count 2 charges assaulting, resisting, or impeding *certain* officers, in violation of 18 U.S.C. §§ 111(a)(1), 2, but the government fails to identify (a) a specific victim officer and (b) direct perpetrator who was encouraged by Wise's words.**

Title 18 U.S.C. § 111(a) defines two crimes: (1) misdemeanor simple assault, with imprisonment capped at "not more than one year;" and (2) felony assault involving "physical contact with the victim of that assault or the intent to commit another felony," with imprisonment capped at "not more than 8 years." 18 U.S.C § 111(a). The Indictment does not specify physical contact with the victim. It does not name the alleged victim. And it does not specify any other felony that was allegedly intended in connection with an assault on a federal officer.

Charging 18 U.S.C. § 2 along with the § 111 charge broadens the government's possibly theories of liability to include directly committing the offense and aiding, abetting, counseling, commanding, inducing, procuring its commission, and willfully causing the prohibit act to be done. 18 U.S.C § 2. But the indictment does not specify *who* Mr. Wise alleged aided, abetted, counseled, commanded, induced, or willfully caused to commit the prohibit act or actions that allegedly constituted a violation of § 111(a)(1). And Mr. Wise did not so much as touch or threaten any federal officer on January 6, 2021.

Here, a bill of particulars is necessary for Mr. Wise to adequately prepare a defense for Count Two, which charges Mr. Wise with assaulting, resisting, or impeding certain officers or employees in violation of 18 U.S.C. § 111(a)(1) and (2). Count Two merely parrots § 111 as follows:

> On or about January 6, 2021, within the District of Columbia, JARED LANE WISE did forcibly assault, resist, oppose, impede, intimidate, and interfere with, an officer and employee of the United States, and of any branch of the United States Government (including any member of the uniformed services), *and any person assisting such an officer and employee*, while such person was engaged in and on account of the performance of official duties, and where the acts in violation of this section involve physical contact with the victim and the intent to commit another felony.

ECF No. 9 (emphasis added).

Count Two is deficient in at least three respects. First, it fails to identify the federal officer Mr. Wise allegedly assaulted, resisted, opposed, impeded, intimidated, and interfered with. Second, it fails to identify who Mr. Wise aided or abetted, even though he himself did not touch or otherwise impede any federal officer on January 6, 2021. Third, Count Two fails to specify the other felony the government alleges Mr. Wise intended to commit. Thus, Mr. Wise asks this Court to order a bill of particulars as this information is not readily available in discovery, and these facts

are necessary for him to understand the charges and prepare a defense to the allegations in Count Two.

        **a)**      **The identity and employment of the federal officer Mr. Wise allegedly assaulted, resisted, opposed, impeded, intimidated, and interfered with is necessary for Mr. Wise to adequately prepare a defense.**

        To prove that a defendant is guilty beyond a reasonable doubt of violating 18 U.S.C. § 111(a)(1), the government must show that the defendant: "forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any [federal officer or agency employee] while engaged in or on account of the performance of official duties." *United States v. Kimes*, 246 F.3d 800, 807 (6th Cir. 2001). Although the defendant need not be aware that the victim they are accused of assaulting, resisting, opposing, impeding, intimidating, or interfering with, is a federal officer, the government is still required to prove the victim's employment as the offense's jurisdictional element. *United States v. Groseclose*, No. 21-CR-311 (CRC), 2024 WL 68248, at *7 (D.D.C. Jan. 5, 2024).

        As in Count One, dismissal or a bill of particulars is needed here for jurisdictional purposes. Without jurisdictional elements in an indictment, a defendant likely requires clarification through a bill of particulars to prepare a defense. Again, it is unclear the specific identity and employment of the federal officer Mr. Wise allegedly assaulted, resisted, opposed, impeded, intimidated, and interfered with. Without the identity of the alleged victim, it is unclear how the government intends to prove the jurisdictional element of 18 U.S.C. §§ 111(a)(1), and 2. Discovery does not specify the identity of the individual Mr. Wise allegedly assaulted, resisted, opposed, impeded, intimidated, and interfered with. The government included a long "non-exhaustive" list of "at least" nine officers. Because Mr. Wise did not touch or threaten any federal officer on January 6, 2021, the alleged victim's identity remains a mystery. As in *Brown*, the defense is unclear how the

government intends to prove the jurisdictional element of the victim being a federal officer without disclosing the officer's name and employment information.

Mr. Wise is "entitled to know the identity of the officer — or officers — in question with respect to" his § 111(a) charge. *Connell*, 2023 WL 4286191 at *3 (concluding that the defendants were "entitled to know the identity of the officer — or officers —in question with respect to" a § 111(a)(1) assault charge).

Here, dismissal or a bill of particulars is needed because with assault charges (especially when there is a melee and a scrum) "the government's failure to identify the victim in a Section 111(a)(1) charge creates 'a genuine risk … of conviction resulting from different jurors concluding the defendant committed' the alleged acts against different officers." *Id.* at *4 (citing *Sayan*, 968 F.2d at 65). The risk here is that Mr. Wise could be convicted as the result of, for example, six jurors concluding that the Mr. Wise forcibly assaulted, resisted, opposed, impeded, intimidated, and interfered with Officer Y.Y., and six jurors concluding that the Mr. Wise did so with respect to Officer Z.Z. But all twelve jurors must unanimously agree on the specific person who was forcibly assaulted, resisted, opposed, impeded, intimidated, and interfered with. "Stating the charges with precision is important because 'a jury in a federal criminal case cannot convict unless it unanimously finds that the Government has proved each element.'" *Connell*, 2023 WL 4286191, at *4 (quoting *Richardson*, 526 U.S. at 817 ). If it is important for the jury to know the identity of the victim in reaching a unanimous verdict under § 111(a)(1), it is also essential for a defendant to know the identity of the victim prior to trial, so that the defendant may understand the charge and properly prepare a defense.

In *Connell*, the Court granted a bill of particulars because it is "essential for a defendant to know the identity of the victim prior to trial," so the defendant can properly prepare a defense. *Id.*

Other January 6 defendants charged with 18 U.S.C. § 111 are given the initials and employment of the federal officer in their indictment. *Id.*; *See Warnagiris*, 2023 WL 6926941 at *8 (quoting the defendant's indictment, which states that the defendant did "forcibly assault … Officer A.W., an officer from the United States Capitol Police Department…"); *see United States v. GossJankowski*, Crim. No. 21-0123, Final Jury Instructions (D.D.C. Mar. 17, 2023) [ECF No. 166] at 30 (stating that for the government to prevail at trial, a jury must find the victim was an "officer or employee of the United States or of any agency in any branch of the United States government" and that the victim "was engaged in or on account of the performance of his official duties.").

Thus, Mr. Wise needs the identity and employment of the alleged victim federal officer to prepare his defense.

> **b)  Identification of the felony offense the government intends to prove at trial, which Mr. Wise allegedly had the intent to commit, is necessary for him to understand the charges and adequately prepare a defense to Count Two.**

Count Two includes the allegation that Mr. Wise's actions in violation of 18 U.S.C. § 111(a)(1) and (2) were committed with the "intent to commit another felony." ECF No. 9. The indictment, however, does not specify what felony offense the government believes Mr. Wise intended to commit.

According to the Court in *Warnagiris*, a defendant is entitled to "know in advance what the alleged other felony is." 2023 WL 6926491 at *16. Thus, the government is required to "identify which felony offense [it] intends to try to prove at trial that [a defendant] had the intent to commit." *Id.*; *see United States v. GossJankowski*, Crim. No. 21-0123, Final Jury Instructions (D.D.C. Mar. 17, 2023) [ECF No. 166] at 30 (stating that, to convict the defendant of 18 U.S.C. § 111(a), the jury must have found that the other felony the defendant intended to commit was obstruction of an official proceeding). Because the indictment at issue in *Warnagiris* did not

specify which "other felony" the defendant allegedly had the intent to commit, the Court required that the government provide the defendant with a bill of particulars.

Therefore, Mr. Wise needs a bill of particulars that specifies the other felony he intended to commit or Count One should be dismissed.

### c) Identification of the individual Mr. Wise allegedly aided, abetted, counseled, commanded, induced, procured, and willfully caused to "assault, resist, oppose, impede, intimidate, and interfere with" federal law enforcement is necessary for Mr. Wise to understand the charges and adequately prepare a defense to Count Two.

Count Two alleges that Mr. Wise, in violation of 18 U.S.C. § 2, "aid[ed], abet[ted], counsel[ed], command[ed], induce[d] or procure[d]" or "willfully cause[d]" the commission of a violation of § 111(a). ECF No. 9. But the indictment does not specify who Mr. Wise allegedly aided, abetted, and willfully caused to violate § 111(a).

Mr. Wise requires a bill of particulars to identify the individual he allegedly aided, abetted, and willfully caused to violate § 111(a). The indictment lacks particular facts to apprise Mr. Wise of his alleged violation of § 2. Rather, the indictment simply cites § 2 without any further information. Since the text of the statute does not provide specifics, the indictment fails to give notice sufficient to satisfy due process. Mr. Wise cannot determine who he allegedly aided and abetted to assault, resist, oppose, impede, intimidate, and interfere with federal law enforcement. Without this information, Mr. Wise is forced to guess and is thus unable to prepare a defense.

This information is especially pertinent with respect to the alleged violation of 18 U.S.C. § 111(a). As stated above, § 111(a) defines two crimes: (1) misdemeanor simple assault, and (2) felony assault. 18 U.S.C. § 111(a). The indictment does not allege any physical contact with a victim, so the violation of § 2 in connection with § 111(a) may mean that the government is alleging that Mr. Wise was not the one who had physical contact with the victim, but rather, had encouraged another individual to do so. Perhaps the government is suggesting that Mr. Wise

assaulted a federal officer *and* aided someone else in doing so. Without clarity, Mr. Wise is unable to prepare a defense, as he is unaware of what the government is alleging.

The ambiguity of this charge illustrates the necessity for dismissal or a bill of particulars. Since the information is not specific enough to allow Mr. Wise to prepare a defense, a bill of particulars is needed to specify who Mr. Wise allegedly aided, abetted, and willfully caused to violate § 111(a)(1).

### 3. First Amendment implications weigh in favor of dismissing Counts One and Two or at least requiring a bill of particulars.

Given the information the government has currently provided, Mr. Wise's actions that allegedly violate § 231(a)(3) and § 111(a) consists of words. Without any further information from the government, the First Amendment is implicated, and offers protection against such government intrusion. The types of speech that exist outside of the First Amendment are fighting words, incitement, and true threats. Mr. Wise's speech does not amount to any of these. With First Amendment protections, a motion to dismiss is proper for the § 231(a)(3) and § 111(a)(1) charges.

If the government has information or plans to allege that Mr. Wise's conduct consisted of speech and other action (e.g., physical violence), then a bill of particulars is necessary to provide information about such actions for Mr. Wise to prepare a defense.

### a) Mr. Wise's speech does not constitute fighting words.

As the court in *Johnson* stated, fighting words are "direct personal insult[s] or an invitation to exchange fisticuffs." *Johnson*, 490 U.S. at 409. This demonstrates there must be a negative connotation to the words. Rather than encouraging violence or a specific action, fighting words are words that would enrage someone enough to fight back. Mr. Wise's words were not those of

insults or depredation.[8] Mr. Wise instead arguably shouted words of encouragement. Unless Mr. Wise was barking orders to someone he knew and commanded, the words one might say at a boxing match — "Kill 'em" — were not likely to provoke a stranger so intensely that that stranger would attack another. The government does not allege that Mr. Wise directed someone specific to commit a specific action. The government has not alleged that anyone heard Mr. Wise's words and engaged in violence because of Wise's words. Given the throngs of law enforcement and protestors surrounding Mr. Wise at the time of the alleged statements, a bill of particulars is needed for the defense to understand the charges and prepare a defense.

Additionally, speech categorized as fighting words that are spoken against police officers have higher levels of protection.[9] "[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." *City of Houston, Tex. v. Hill*, 482 U.S. 451, 461 (1987). The reasoning is that police officers, with their training "may reasonably be expected to 'exercise a higher degree of restraint' than the average citizen, and thus less likely to respond belligerently to 'fighting words.'" *Lewis v. City of New Orleans*, 415 U.S. 130, 135 (1974) (Powell, L. concurring). If the government is alleging that Mr. Wise's speech was fighting words directed towards police officers at the Capitol, the First Amendment offers protections for such speech.

---

[8] Because the government charges Mr. Wise with forcible felony assault, Mr. Wise's (Nazi/Gestapo) words of criticism of the police use of force against non-violent protestors is irrelevant and should be excluded as substantially more prejudicial than probative. As a former law enforcement officer, Mr. Wise was in a unique position to admonish law enforcement that excessive force against certain nonviolent protestors was shameful behavior. Obviously, law enforcement officers were under extreme stress and needed to control the angry, violent rioters, who were a small part of the crowd, but that does not justify excessive force that may have been used against nonviolent protestors. This side issue should be excluded from the trial under Fed. R. Evid. 403 to avoid confusing issues, misleading the jury, and wasting time.

[9] R. George Wright, *Fighting Words Today*, 49 Pepp. L. Rev. 805, 813 (2022).

Further, fighting words must be directed at a specific individual. _R.A.V. v. City of St. Paul, 505 U.S. 377, 432 (1992) (Stevens, J. concurring)_; _see also_ _Hess v. Indiana_, 414 U.S. 105, 107 (1973). Without identifying the primary victim or perpetrator, the government cannot say Mr. Wise's speech was directed at a specific individual. Even so, Mr. Wise's words were not intended to evoke a reaction from those he criticized. And Mr. Wise's statements could not be heard by any assaultive protestor over the rapid-fire cacophony of sounds and exclamations. He did not direct his statements at a specific individual, nor did he provoke any individual to violence. Therefore, because Mr. Wise's words were not directed at any specific individual and were a reaction to what he was seeing transpire on the terrace above him, Mr. Wise's words do not constitute fighting words.

**b)    Mr. Wise's speech does not constitute incitement.**

For words to be incitement, the speaker must intend to incite imminent lawless action, and the words must be likely to produce that action. _Brandenburg_, 395 U.S. at 447. Here, the likelihood that Mr. Wise's words would produce lawless action is insufficient. Mr. Wise was in a crowd of thousands,[10] some of whom were excited, agitated, yelling, and chanting as shield-wielding police (backed by rows and rows of fellow officers) suddenly started pushing protesters to move. The likelihood that an assaultive protestor even heard Mr. Wise's words are extremely low, considering the amount of people in the crowd all making noise themselves, including law enforcement.

The likelihood that then, someone heard Mr. Wise's words and acted upon them specifically are also exceedingly low. The crowd at the Capitol building was large and loud.

---

[10] Ryan Lucas, _Where the Jan. 6 insurrection investigation stands, one year later_, NPR, Jan. 6, 2022, https://www.npr.org/2022/01/06/1070736018/jan-6-anniversary-investigation-cases-defendants-justice (The Justice Department estimated that 2,000 to 2,500 people entered the Capitol building on January 6, 2021).

Mr. Wise was alone and not the leader for any part of the crowd; he did not have the ability to direct, influence, or control anyone in the crowd.

The words that Mr. Wise uttered themselves are unlikely to produce lawless action. Although Mr. Wise allegedly said "[k]ill 'em," the government has not alleged any facts that would demonstrate Mr. Wise wanted someone to kill someone else. In *Claiborne*, where there were emotional appeals that referenced violence — "If we catch any of you going in any of them racist stores, we're gonna break your damn neck." *Claiborne*, 458 U.S. at 902 — the First Amendment prevailed since no lawless action occurred *because of* such appeals. Similarly, Mr. Wise's emotional appeal did not result in lawless action, for it incited no one and harmed no one. Therefore, Mr. Wise's words do not constitute incitement, especially since the government has not alleged **who** Mr. Wise allegedly incited, nor has the government alleged **who** the alleged victim of the incitement was.

**c)**      **Mr. Wise's speech does not constitute true threats.**

There is a circuit split as to whether a general exhortation to kill someone is a true threat. The Ninth Circuit held that it is not. *United States v. Bagdasarian*, 652 F.3d 1113, 1125 (9th Cir. 2011). In *Bagdasarian*, the defendant made two statements, both of which concerned President Obama. *Id.* at 1115. One statement said that the President would have a bullet in his head, and the other statement contained words calling for an unspecified third party to kill the President. *Id.* The court held that neither of those statements were true threats. *Id.* at 1125. The prediction that the President would have a bullet in his head was not considered a true threat because the defendant himself did not have plans to carry out that prediction. *Id.* at 1122. The second statement calling for an unspecified third party to shoot the President was not a true threat because it contained no reference to the defendant himself. *Id.* The court noted that the defendant did not express his intent in the second statement to kill the President. *Id.*

Mr. Wise's words are like those in *Bagdasarian*. He never directed his excited utterances to a specific person. The government has yet to elect **who** Mr. Wise allegedly directed the statements towards. Because Mr. Wise did not mention himself in the statements, or even indicate that he was going to be the one to take action, his statements cannot be true threats. His statements did not indicate that he intended to kill or assault any law enforcement officers, nor did they direct a specific person to harm a law enforcement officer.

The Tenth Circuit found that whether exhortations constitute true threats is a matter to be decided by a jury where the defendant instructed his followers to commit acts of violence and named specific targets of that violence. *United States v. Wheeler*, 776 F.3d 736, 744 (10th Cir. 2015). In *Wheeler*, the defendant posted on Facebook urging his religious followers to "'kill cops. drown them in the blood of thier [sic] children, hunt them down and kill their entire bloodlines.'" *Id.* at 738. The defendant posted the names of cops and their children. *Id.* He had also posted to his religious followers that they should commit acts of violence at a specific local preschool and daycare. *Id.* The court found that a reasonable juror could have found the posts to be true threats, but the analysis was specific and fact dependent. *Id.* at 746. For one, the threats were very specific, as the defendant named the people to be harmed. *Id.* Also, around the time that the posts were made, there had been many mass shootings, so these words were taken more seriously. *Id.* The defendant also explicitly called for the deaths of certain people, rather than implying some unknown person should die. *Id.* Finally, the defendant's commands were not to someone unknown to the defendant, but rather a specific group that was presumably under the defendant's control. *Id.*

Unlike the defendant in *Wheeler*, the strangers near Mr. Wise were not subject to his control or influence. Since the crowd was not under Mr. Wise's control, there was no reason they would

be incited by Mr. Wise's words. Further, unlike the defendant in *Wheeler*, Mr. Wise was not specific with his statements. The government has refused to specify **who** the statements were supposedly addressed to and **who** was alleged to be targeted by the statements. The context here is also very different than *Wheeler*. The defendant there used an online forum, which the court pointed out could reach a wider audience, causing those statements to become more fear inducing. Meanwhile, Mr. Wise's statements could hardly be made out on video and likely could not be heard on the upper terrace with all the noise at the site of the scrum. Mr. Wise's words thus cannot constitute a true threat.

### d)   Speech alone is insufficient for a § 231(a)(3) charge.

In another January 6 case involving § 231(a)(3) violations, the defendants' speech was paired with action. *Connell*, 2023 WL 4286191. The defendants in *Connell* were charged with violating 18 U.S.C. §§ 231(a)(3), 111(a)(1), along with various other charges. Indictment, *United States v. Connell*, 1:21-cr-00084 (D.D.C. filed Feb.  5, 2021) [ECF No. 8]. At one point during the day, the defendants were at the front of the crowd on the Northwest Steps and were face-to-face with Capitol Police. Statement of Facts for Stipulated Trial, *United States v. Connell*, 1:21-cr-00084 at 12 (D.D.C. filed Feb. 5, 2021) [ECF No. 100]. One defendant then said, "Are you ready to push? Come on! Let's go!" *Id.* at 13. The defendants and the crowd then pushed forward against the Capitol Police, forcing the police to retreat. *Id.* Three minutes later, the defendants entered the Capitol building. *Id.* at 15. The link between the words and the actions in *Connell* is completely absent here. That distinction is crucial, for without that link the Indictment cannot stand consistent with First Amendment protections.

Further, the Eleventh Circuit held that § 231(a)(3) violations involve "more than mere words." *United States v. Pugh*, 90 F.4th 1318, 1330 (11th Cir., 2024). The defendant in *Pugh* was charged with § 231(a)(3) in relation to her involvement in protests against police brutality after

George Floyd's murder. *Id.* at 1323. She shattered the window of a police car during a protest that had developed into a riot. *Id.* The defendant challenged her indictment on the grounds that § 231(a)(3) was unconstitutional, in part because it violated the First Amendment. *Id.* at 1323-24. She argued that § 231(a)(3) prohibited expressive conduct, thus violating the freedom of speech in the First Amendment. *Id.* at 1328. She argued that the word "interfere" in the statute regulated speech. *Id.* at 1329. The court looked to the meaning of "obstruct" and "impede," which were paired with "interfere" in § 231(a)(3). *Id.* at 1330. It found that both "obstruct" and "impede" did not "apply to speech or expressive conduct, except at the margins," stating that "[o]ne cannot block a fireman or law enforcement officer with speech alone." *Id.* Looking to the word "interfere," the court held that it might be related to speech, but with the context of the word in the statute along with "obstruct" and "impede" (neither of which relate to speech), the court held that "interfere" would likely not prohibit speech. *Id.* "Although 'interfere,' by itself, could include speech, it is best read in Section 231(a)(3) alongside 'obstruct' and 'impede' as prohibiting someone from hindering a law enforcement officer … *with more than mere words*." *Id.* (emphasis added). Under this narrow (constitutional-avoidance) construction of § 231(a)(3), the court held that § 231(a)(3) did not violate the First Amendment when the conduct it prohibits goes beyond just speech. *Id.*

Here, the government's discovery and indictment of § 231(a)(3) and § 111 suggests that Mr. Wise's conduct involved speech alone, without obstructive or assaultive conduct by Mr. Wise. The government has not alleged any facts about any physical altercation that Mr. Wise was involved with personally, nor any **specific** physical altercation that he aided, abetted, and willfully caused. Where in *Connell*, the defendant's speech was paired with action (encouraging others to push and then immediately pushing against the officers), Mr. Wise's speech was part of a cacophony of sounds and utterances.

The Eleventh Circuit in *Pugh* held that speech without action, just like Mr. Wise's speech, does not violate § 231(a)(3). The Eleventh Circuit's reasoning is compelling and persuasive here. Because the Indictment criminalizes speech contrary to First Amendment principles, this motion to dismiss is proper, as § 231(a)(3) (and similarly worded § 111) require more than just words, and Mr. Wise's speech is protected under the First Amendment. If the government has reason to believe that the First Amendment is not implicated here, and that Mr. Wise's speech was paired with action, either on his part or on someone else's part, then a bill of particulars is needed for Mr. Wise to be able to prepare a defense.

**F.   Conclusion**

Defense counsel cannot provide effective assistance of counsel consistent with the Sixth Amendment if we do not know what specific charges we are defending against.

For the reasons set forth above; because Mr. Wise's speech is protected by the First Amendment; because Mr. Wise has Sixth Amendment and Due Process safeguards requiring that he be adequately advised of the charges against him so that he can probably defend against them; and because Mr. Wise did not touch or threaten any law-enforcement officer on January 6, 2021; it is respectfully requested that the Court enter an order that either:

**(1)** dismisses Counts One and Two of the Indictment with prejudice, **or**

**(2**) requires that the government:

    **(a)** disclose to the Court (under seal) and the defense the following:

        (i) the full name and relevant discovery regarding the specific law enforcement officer who was allegedly interfered with, obstructed, and impeded as alleged in Count One;

        (ii) the full name of the specific law enforcement officer who was allegedly forcibly assaulted, resisted, opposed, impeded, intimidated, and interfered with as alleged in Count Two; **and**

    **(b)** file a Bill of Particulars that specifies:

(i) the initials of the specific law enforcement officer who was allegedly interfered with, obstructed, and impeded as alleged in Count One;

(ii) the name of the person Mr. Wise allegedly aided and abetted as alleged in Count One;

(iii) the name of the person Mr. Wise allegedly directed and incited with his words as alleged in Count One and Two;

(iv) the federally protected function that Mr. Wise allegedly obstructed, delayed, and adversely affected as alleged in Count One;

(v) the initials of the specific law enforcement officer who was allegedly forcibly assaulted, resisted, opposed, impeded, intimidated, and interfered with as alleged in Count Two;

(vi) the name of the person who Mr. Wise allegedly aided or abetted as alleged in Count Two;

(vii) the felony offense that the government intends to prove at trial, which Mr. Wise allegedly intended to commit as alleged in Count Two; and

(viii) the physical altercation that Mr. Wise was involved with as alleged in Counts One and Two.

Respectfully submitted on June 3, 2024.

*/s/ Kurt Hermansen*
Kurt David Hermansen, Cal. Bar 166349
Supervisory Assistant Federal Public Defender
859 Willamette St. Suite 200
Eugene, OR  97401
Tel: (619) 436-8117
Fax: (541) 465-6975
Email: kurt_hermansen@fd.org

**Attorney for Defendant Jared Lane Wise**