IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　　Plaintiff,<br><br>　v.<br><br>JARED LANE WISE,<br><br>　　　　　　　　　　Defendant. | Case No. 1:23-cr-00184-RDM<br><br>Motion to Dismiss Counts Three and Four |

**A.　　Motion**

Under Fed. R. Crim. P. 12(b), Defendant, Jared Wise, through counsel, Kurt David Hermansen, moves to dismiss Counts Three and Four of the Indictment which charge violations of 18 U.S.C. § 1752(a)(l) (Entering and Remaining in a Restricted Building or Grounds) and 18 U.S.C. § 1752(a)(2) (Disorderly and Disruptive Conduct in a Restricted Building or Grounds).

Defendant understands that the issues he raised here — which he presents to (at least) preserve them for appellate purposes — have already been litigated and universally denied at the District Court level where similar motions were filed. *See e.g., United States v. Carnell*, No. CR 23-139, 2024 WL 639842, at *14–15 (D.D.C. Feb. 15, 2024); *United States v. Oliveras*, No. CR 21-738 (BAH), 2023 WL 196746, at *3 (D.D.C. Jan. 17, 2023). (noting that "Judges on this Court have consistently rejected arguments similar to those of defendant.") (citing decisions from District Court Judges: Bates, Boasberg, Contreras, Friedman, Howell, Kelly, Kollar-Kotelly, Lamberth, McFadden, and Mehta); *United States v. Griffin*, 549 F. Supp. 3d 49 (D.D.C. 2021); *United States v. McHugh*, 2022 WL 1302880 (D.D.C. May 2, 2022); *United States v. Bingert*, 605 F. Supp. 3d 111

(D.D.C. 2022); *United States v. Andries*, 2022 WL 768684 (D.D.C. Mar. 14, 2022); *United States v. Puma*, 596 F. Supp. 3d 90 (D.D.C. 2022).

    **B.**    **The Indictment**

The Indictment charges Mr. Wise with the following six counts:
1. 18 U.S.C. §§ 231(a)(3), 2 (Civil Disorder and Aiding and Abetting).
2. 18 U.S.C. §§ 111(a)(1), 2 (Assaulting, Resisting, or Impeding Certain Officers and Aiding and Abetting).
3. 18 U.S.C. § 1752(a)(l) (Entering and Remaining in a Restricted Building or Grounds).
4. 18 U.S.C. § 1752(a)(2) (Disorderly and Disruptive Conduct in a Restricted Building or Grounds).
5. 40 U.S.C. § 5104(e)(2)(D) (Disorderly Conduct in a Capitol Building).
6. 40 U.S.C. § 5104(e)(2)(G) (Parading, Demonstrating, or Picketing in a Capitol Building). ECF No. 9.

    **C.**    **Relevant Facts**[1]

Around 2:00 p.m. (14:00) on January 6, 2021, specific protesters forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police. Mr. Wise was not one of those protesters, nor did he encourage or assist any of them.

According to the government, on January 6, 2021, Mr. Wise's phone used a cell site that provides service to the area that includes the interior of the United States Capitol building ("the cell tower") at approximately 14:15:06, 14:22:06, 14:26:06, and 14:29:16 Eastern Standard Time ("EST").

Around 2:20 p.m. (14:20) members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to, and did, evacuate the chambers. Accordingly, the joint session of the United States

---

[1] Many of these "facts" are taken from the Complaint filed in this case. Mr. Wise does not concede any of these facts, but rather reserves the right to contest them.

Congress was effectively suspended until shortly after 8:00 p.m. (20:00). Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

Footage from U.S. Capitol CCTV and MPD BWC depicts Mr. Wise inside the U.S. Capitol and on the grounds of the U.S. Capitol on January 6, 2021. Around 2:23 PM EST (14:23), Mr. Wise entered the U.S. Capitol building through the open and unobstructed Senate Wing Door.

Mr. Wise then allegedly clapped his hands and raised his arms before walking through the Crypt and past the Memorial Door. About nine minutes after entering the Capitol, at 2:32 p.m. EST (14:23), Mr. Wise exited through a window adjacent to the now-closed Senate Wing Door.

Around 4:21 PM EST (16:21), on the Upper West Terrace, Mr. Wise told an MPD officer something to the effect of: "You guys are disgusting. I'm former — I'm former law enforcement. You're disgusting. You are the Nazi. You are the Gestapo. You can't see it. … Shame on you! Shame on you! Shame on you!"

Soon thereafter, when one or two law-enforcement officers tripped over ankle-high planters on the terrace above where Mr. Wise was standing, Mr. Wise allegedly turned in the direction of the violence and at about 16:22:16 shouted: "Yeah, fuck them! Yeah, kill 'em!"

The officers who fell on the terrace above where Mr. Wise was standing probably fell to the ground (in the middle of a phalanx of pure officers) when officers in front of them were pushed backward into them. The frontline shield-wielding officers were pushing and in turn were being pushed by protesters at the frontline of what became a clash or "scrum" involving shield-wielding

officers and protestors.[2] Videos show row after row of mission-driven officers moving phalanx-style toward protestors on the Upper West Terrace. With batons extended, officers behind the frontline shield-wielding officers pushed on the backs of the officers in front of them for support and combined power.

As clashes between frontline-shield-wielding officers and protesters continued, Mr. Wise moved to view the frontline-skirmish (from his inferior position below the Upper West Terrace). With his cell phone pointed at the confrontation, Mr. Wise shouted something to the effect of: "Kill 'em! Kill 'em! Kill 'em!"

### D. Analysis

1. **18 U.S.C. § 1752 Fails to State an Offense Because the United States Secret Service is the Entity that May Designate "Restricted Areas" under the Statute, Not the United States Capitol Police.**

Mr. Wise is charged with two counts of violating 18 U.S.C. § 1752 for "enter[ing] and remain[ing] in a restricted building and grounds," and engaging in "disorderly and disruptive conduct and in within such proximity to, a restricted building and grounds." ECF No. 9. This statute was enacted with the clear purpose to permit the United States Secret Service ("USSS") to restrict designated areas for temporary visits by the President. *See* S. REP. NO. 91-1252 (Sept. 29, 1970) (attached heretofore as Exhibit A). At the time of enactment, the USSS was part of the Treasury. § 1752 granted the Treasury Secretary the authority to "designate by regulations the buildings and ground which constitute the temporary residences of the President." *Id.* at 2. It

---

[2] Here, the word "scrum" is used to describe a disordered or confused situation involving numerous people. The scrum on the Upper West Terrace involved a sudden clash between the pushing-forward police phalanx and protestors. Mr. Wise was below, not on, the Upper West Terrace.

Page 4 — Motion to Dismiss Counts Three and Four

also allowed the Secretary "to prescribe regulations governing ingress or egress to such buildings and grounds to be posted, cordoned off, or otherwise restricted areas where the President is or will be temporarily visiting." *Id.* There is nothing in the legislative history (or the statutory language) to suggest that anyone other than the USSS has the authority to so restrict the areas surrounding the Capitol building.

The USSS's duties and responsibilities are outlined in 18 U.S.C. § 3056, which include:

> (e)(1): When directed by the President, the United States Secret Service is authorized to participate, under the direction of the Secretary of Homeland Security, in the planning, coordination, and implementation of security operations at special events of national significance, as determined by the President.
>
> (2) At the end of each fiscal year, the President through such agency or office as the President may designate, shall report to the Congress—
>
>   (A) what events, if any, were designated special events of national significance for security purposes under paragraph (1); and
>
>   (B) the criteria and information used in making each designation.

§ 3056(e)(1)(2)(A)-(B).

The statute does not state that any other agency is permitted to designate events for security purposes and only explains that the USSS would be under the designation of the Department of Homeland Security instead of the Treasury Department. The statute makes the exclusive role of the USSS even clearer in § 3056(g), which states:

> (g) The United States Secret Service shall be maintained as a distinct entity within the Department of Homeland Security and shall not be merged with any other Department function. No personnel and operational elements of the United States Secret Service shall report to an individual other than the Director of the United States Secret Service, who shall report directly to the

>   Secretary of Homeland Security without being required to report through any other official of the Department.

§ 3056(g).

    **2.    The Government Does Not allege that the Secret Service Restricted the Capitol Grounds on January 6, 2021.**

The Indictment charges Mr. Wise with entering or remaining in "restricted building and grounds." It does not allege, however, that the USSS designated that area as being restricted. Nor could it do so now because in countless January 6 trials, the government has conceded the USSS did not itself designate the area as restricted. In *United States v. Griffen*, the government conceded that it was the United States Capitol Police that attempted to designate the area as restricted that day and not the USSS. Government's Response to Defendant's Motion to Dismiss the Information, *United States v. Griffen*, No. 21-CR-92 (D.D.C. May 26, 2021) [ECF No. 33]. The court in *Griffen* (as well as other district courts) denied a motion to dismiss a § 1752 charge on the ground that the statute (Congress) did not specifically state who must designate the "restricted areas." Memorandum Opinion and Order, *Griffen*, No. 21-CR-92 [ECF No. 41].

However, the plain language of 18 U.S.C. § 1752(c)(B) defines "restricted building or grounds" as a "building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting." Since it is the Secret Service who protects the President or "other person," it is the Secret Service who must designate the area "restricted." The legislative history bolsters this interpretation.[3]

---

[3] Congress enacted 18 U.S.C. § 1752 as part of the Omnibus Crime Control Act of 1970. Public Law 91-644, Title V, Sec. 18, 84 Stat. 1891–92 (Jan 2. 1971). At that time, the USSS was a part of the Treasury Department. The Senate Judiciary Committee report accompanying the current version of § 1752 noted that there was no federal statute that specifically authorized the Secret

The court in *Griffen* also hypothesized that the President would be unable to rely on the military fortification at Camp David if the Secret Service was not the only entity with the statutory authority to restrict the area. *See* Memorandum Opinion and Order at p. 11, *Griffen*, No. 21-CR-92 [ECF No. 41]. However, Camp David is a military installation and is not a "public forum" that needs an entity to "cordon off" areas and restrict them during a Presidential visit. Military bases have security and are not otherwise open to the public. Each military installation is subject to other laws that protect the facility, and those within it, from intruders. *See, e.g.*, 18 U.S.C. § 1382 (barring any person from entering any military installation for any purpose prohibited by law). Military bases are heavily guarded and have entrance and exit points. Therefore, they are different than federal buildings that need sections to be "cordoned" off for the civilian public to know which area is restricted. For these reasons, the example offered by the *Griffen* court is inapposite and does not support the court's decision.

Furthermore, if a deficiency in a statute creates an absurd result or creates arbitrary enforcement, it should not be enforced until it is amended to provide clarity and provide fair notice to a defendant. *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). The *Griffen* court's reasoning creates a different kind of absurd result — i.e., anyone claiming to be a part of law enforcement could post a sign designating an area as restricted and a criminal defendant could then be penalized for trespassing because they "willfully" ignored the sign.

---

Service to restrict areas where the President maintains temporary residences and the senators explained that the key purpose of the bill was to provide that authority to the Secret Service. S. Rep. No. 91–1252 (1970) (attached hereto as Exhibit A).

    **3.**    **Even if the Capitol Police were Authorized to Restrict the Grounds, 18 U.S.C. § 1752 is Not Applicable Because Former Vice President Pence was not "Temporarily Visiting" the Capitol Building on January 6, 2021.**

Under the plain language of 18 U.S.C. § 1752, the statute does not apply here to Mr. Wise. Section 1752 prohibits conduct in or near "any restricted building or grounds." The statute expressly defines the term "restricted buildings or grounds" as follows:

> (1) the term "restricted buildings or grounds" means any posted, cordoned off, or otherwise restricted area—
>
>     (A) of the White House or its grounds, or the Vice President's official residence or its grounds;
>
>     (B) of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting; or
>
>     (C) of a building or grounds so restricted in conjunction with an event designated as a special event of national significance.

18 U.S.C. § 1752(c); *see* Opinion at p. 12, *United States v. Samira Jabr*, No. 18-cr-0105 (D.D.C. May 16, 2019) [ECF No. 31], *aff'd*, 4 F.4th 97 (D.C. Cir. 2021).

Counts Three and Four of the Indictment charge Mr. Wise with conduct "in a restricted building and grounds, that is, any posted, cordoned-off and otherwise restricted area *within the United States Capitol and its grounds, where the Vice President was and would be temporarily visiting …*" See ECF No. 9 (emphasis added). The government's attempt to shoehorn Mr. Wise's conduct into the statute fails. Accordingly, those two counts should be dismissed.

The "United States Capitol and its grounds" do not automatically constitute "restricted buildings or grounds" under any prong of § 1752(c)(1). Nor did the Capitol grounds become "restricted grounds" on January 6, 2021, because of a "temporary vice-presidential visit," as the government asserts in the Indictment.

Page 8 — Motion to Dismiss Counts Three and Four

The plain meaning of "temporary" is "lasting for a time only." Temporary Definition, Black's Law Dictionary (11th ed. 2019) available at Westlaw. The word itself "implies an arrangement established *with no thought of continuance* but with the idea of *being changed soon*." *Temporary*, Dictionary.com, www.dictionary.com/browse/temporary (last visited June 5, 2024) (emphasis added). "Visiting" is defined as "invited to join or attend an institution … for a limited time." *Visiting*, Merriam-Webster (11th ed. 2003). Together, the phrase "temporarily visiting" connotes temporary travel to a location where the person does not normally live or work on a regular basis, nor is likely to be present at that location again in the future.

The former Vice President was not "temporarily visiting" the Capitol on January 6, 2021. The Capitol is a federal government building in the District of Columbia, where he lived and worked. Moreover, he worked at the Capitol Building and grounds — it was his place of employment. In his official capacity as the "President of the Senate," he had a permanent office "within the United States Capitol and its grounds." The Vice President was not "visiting" the Capitol Building. He was working there, carrying out his sworn official duties by "presiding" over the vote count ceremony. *See* 3 U.S.C. § 15 ("Congress shall be in session on the sixth day of January succeeding every meeting of the electors. The Senate and House of Representatives shall meet in the Hall of the House of Representatives at the hour of 1 o′clock in the afternoon on that day, and *the President of the Senate shall be their presiding officer*.")(emphasis added).

Past cases support this plain, common-sense reading of the statute, as they involve conduct in and near areas where the President and Vice President were clearly "temporarily visiting." *See, e.g., United States v. Bursey*, 416 F.3d 301 (4th Cir. 2005) (defendant entered and remained in a restricted area at an airport in South Carolina where the President was visiting for a political rally);

Page 9 — Motion to Dismiss Counts Three and Four

*United States v. Junot*, 902 F.2d 1580 (9th Cir. 1990) (defendant pushed his way through a restricted area where then Vice President George Bush was speaking at a rally at a park in Los Angeles that was secured by United States Secret Service agents); *Blair v. City of Evansville, Ind.*, 361 F. Supp. 2d 846 (S.D. Indiana 2005) (defendant was charged with 18 U.S.C. § 1752 for protesting during then Vice President Richard Cheney's visit to the Centre in Evansville, Indiana). These cases all involve the President and Vice President traveling outside of D.C. (where they live and work) and "visiting" another location for a "temporary" purpose. As a result, those cases are consistent with the plain meaning of § 1752(c)(1)(B).

 Here, by contrast, former Vice President Pence was not traveling to a speaking event or a political rally. He was meeting with other government officials in a federal government building where he had a permanent office as part of fulfilling his official duties as Vice President/President of the Senate. Thus, he was not "temporarily visiting" the Capitol building as required by the plain language of 18 U.S.C. § 1752.

### E.     Conclusion

For the above reasons, § 1752 does not apply as charged and Counts Three and Four of the Indictment should be dismissed.

Respectfully submitted on June 11, 2024.

> *s/ Kurt David Hermansen*
> Kurt David Hermansen, CA Bar No. 166349
> Supervisory Assistant Federal Public Defender
> 859 Willamette St. Suite 200
> Eugene, OR  97401
> Tel: (619) 436-8117
> Fax: (541) 465-6975
> Email: kurt_hermansen@fd.org
>
> **Attorney for Defendant Jared Lane Wise**