**In the United States District Court
for the District of Columbia**

| | |
|---|---|
| United States Of America, | Case No. 1:23-cr-00184-RDM |
| Plaintiff, | |
| v. | Motion for Transfer of Venue or to Allow Expanded *Voir Dire* |
| Jared Lane Wise, | **Oral Argument Requested** |
| Defendant. | |

### A. Motion

Invoking the Fifth and Sixth Amendments to the United States' Constitution, and Fed. R. Crim. P. 21(a), Defendant, Jared Wise, through counsel, Peyton Lee, moves to transfer these proceedings to his home district of Oregon, or in the alternative, for an order to permit an expanded examination of prospective jurors before and during *voir dire*.

### B. Introduction

This case involves events that occurred at the United States Capitol on January 6, 2021. Public opinion among residents of Washington D.C. surrounding these events is particularly strong. Additionally, Mr. Wise has received outsized attention in the media coverage surrounding January 6 and has extensive personal connections to Washington D.C. and the FBI. Transfer of venue is necessary because "so great a prejudice against the defendant exists" in the District of

Page 1 – Motion for Change of Venue or to Allow Expanded *Voir Dire*

Columbia that Mr. Wise will not be able to get a constitutionally fair and impartial jury in this District. Fed. R. Crim. P. 21(a).

Washington D.C.'s jury pool is small, has been overexposed to media regarding the facts of this case, and has a well-documented bias against January 6th defendants. In addition, while Courts have heard arguments for changes of venue in other January 6 cases, Mr. Wise's case is different.

He faces unique issues that heighten the risk of prejudice in a Washington D.C. trial based on his long residence and employment in the district, his wide-reaching work as a former FBI agent, and the extensive media coverage of his personal circumstances as they relate to the facts of the case. Given the increased likelihood that local D.C. jurors know, or know of, Mr. Wise, a transfer of venue is necessary to ensure a fair and impartial jury. If the request for transfer is denied, then the expanded examination of prospective jurors would reduce the chance of prejudice.

## C. Legal Argument

The Fifth and Sixth Amendments guarantee a right to a fair trial by an impartial jury. *Skilling v. United States*, 561 U.S. 358, 378 (2010). Ordinarily, the trial would happen in "the State and district wherein the crime shall have been committed." U.S. Const. amend. VI. However, if "extraordinary local prejudice will prevent a fair trial," the district court may transfer the proceedings to another venue. *Skilling*, 561 U.S. at 378. Defendants may move for a transfer of venue, and the court must grant it if the court believes that the defendant's trial cannot be fair and impartial in the current district. Fed. R. Crim. P. 21(a).

There are times where pretrial publicity becomes so great that the court must presume preudice in a community. *Patton v. Yount*, 467 U.S. 1025, 1031 (1984). The presumption of prejdice overrides juror declarations of impartiality during *voir dire* because such assertions may

Page 2 – Motion for Change of Venue or to Allow Expanded *Voir Dire*

be insufficient to protect a defendant's rights in particularly charged cases. *Murphy v. Florida*, 421 U.S. 794, 802 (1975) ("Even these indicia of impartiality might be disregarded in a case where the general atmosphere in the community or courtroom is sufficiently inflammatory."); *see also Irvin v. Dowd*, 366 U.S. 717, 728 (1961) ("No doubt each juror was sincere when he said that he would be fair and impartial to petitioner, but psychological impact requiring such a declaration before one's fellows is often its father."). An appellate court need not even examine the *voir dire* record if it finds that the presumption attached. *Rideau v. Louisiana*, 373 U.S. 723, 726-27 (1963) ("[W]e do not hesitate to hold, without pausing to examine a particularized transcript of the *voir dire* examination of the members of the jury, that due process of law in this case required a [transfer]."). *Voir dire* is simply not a sufficient cure for significant and substantiated Due Process concerns about the jury pool.

The Court in *Skilling* provided three factors to consider when determining whether there is a presumption of prejudice: (1) the size and characteristics of the place the jury is pooled, (2) the nature of the pretrial publicity, and (3) the amount of time passed between the alleged conduct and the trial. 561 U.S. at 382-83. Each of those factors weigh in favor of granting Mr. Wise's motion to transfer venue.

> 1. **The Size and Characteristics Of The Jury Pool, Particularly In Light Of Mr. Wise's Connections To Washington D.C., Preclude An Impartial Jury.**

The Supreme Court has held that "the *size* and *characteristics* of the community" where the jury will be pooled from are relevant in determining a presumption of prejudice. *Id.* at 382 (emphasis added). First, Washington D.C. is a small jury pool. In *Skilling,* the Supreme Court determined that the original venue of Houston was adequate because there were over 4.5 million people eligible for jury duty, and the sheer size and diversity of the pool allowed an impartial jury

Page 3 – Motion for Change of Venue or to Allow Expanded *Voir Dire*

to be found. *Id.* 382. In comparison, the jury pool for the District of Columbia is roughly an eighth that size. Ex. 3 at 1. It is much smaller than in many other districts, with the available voting population in Washington, D.C., numbering roughly 553,362 people. Ex. 3 at 1.[1]

The size of the jury pool is effectively further reduced in Mr. Wise's case, as compared to other January 6th trials, by his ties to the community and his prior employment in the FBI. Mr. Wise lived in Washington D.C. for ten years and worked there from 2004 to 2016. By contrast, nearly half (about 43.9%) of charged January 6 defendants come from five other states: Florida, Pennsylvania, Texas, New York, and California.[2] In the course of his work as an FBI agent, Mr. Wise worked closely with many different departments and agencies in Washington D.C., creating an extensive web of connections — direct and indirect, personal and professional. Notably, the Washington branch of the FBI, his former employer, is helping to investigate this case.[3]

Furthermore, the characteristics of the jury pool in Washington D.C. support a change in venue. A huge portion of District of Columbia residents work for the federal government or have friends or family who do. This raises the risk of connections to Mr. Wise or other witnesses, and the danger that jurors have biases related to the events of that day. As of 2019, the category of active federal employment (including postal workers) accounts for nearly a third of all jobs in the

---

[1] Washington D.C.'s total population is 678,972. 18.5% of that number is under 18. That leaves 553,362 available for jury duty.
[2] Michael Ricciardelli, *A Demographic and Legal Profile of January 6 Prosecutions*, Seton Hall University (July 26, 2023) https://www.shu.edu/news/a-demographic-and-legal-profile-of-january-6-prosecutions.html
[3] DOJ Press Release, *Former FBI Supervisory Special AgentIndicted in Federal Court on FelonyCharges Related to U.S. Capitol Breach*, (June 1, 2023) https://www.justice.gov/usao-dc/pr/former-fbi-supervisory-special-agent-indicted-federal-court-felony-charges-related-us#:~:text=Jared%20Wise%2C%2049%2C%20of%20Bend,or%20grounds%20without%20lawful%20authority%3B

Page 4 – Motion for Change of Venue or to Allow Expanded *Voir Dire*

District itself.[4] Nearly 15,000 individuals work for Congress directly.[5] Thousands more are employed in the law enforcement groups who responded to the Capitol on January 6.[6] For each federal worker, there are friends and family members who are closely connected to the federal government by proxy. This means that prospective jurors are likely to have ties to, knowledge of, and strong opinions about Mr. Wise, his past work, the events of January 6th, or the witnesses called by the federal government at trial.

The Washington D.C. jury pool is prejudiced against January 6 defendants due to its close connection to the events. In applying the analysis from *Rideau*, Courts have looked at population size and diversity as a proxy for the impact of the alleged criminal offense because it can be difficult to directly measure the reach and impact of a particular crime or the media coverage surrounding it. For example, in *Skilling*, the Court noted that while individuals in Houston may have been victims of Enron, the crime was far from universal, and the size of the city and its diversity meant a significant number of prospective jurors were likely to have no connection. *Skilling*, 561 U.S. at 358 ("[E]xtensive screening questionnaire and followup [sic] *voir dire* yielded jurors whose links to Enron were either nonexistent or attenuated.").

---

[4] *Trends in Federal Employment in DC*, DC Policy Center (Mar. 28, 2019), https://www.dcpolicycenter.org/wp-content/uploads/3019/03/Fed-jobs-role-in-DC-economy.png.
[5] *Vital Statistics on Congress*, Brookings Institute (July 11, 2013), https://www.brookings.edu/wp-content/uploads/2016/06/Vital-Statistics-Chapter-5-Congressional-Staff-and-Operating-Expenses_UPDATE.pdf.
[6] 2,250 individuals were employed by the U.S. Capitol Police Force. *Human Capital Strategic Plan 2021-2025*, U.S. Capitol Police (2020), https://www.uscp.gov/sites/uscapitolpolice.house.gov/files/wysiwyg_uploaded/USCP%20Human%20Capital%20Strategic%20Plan%20for%202021-2025.pdf. 4,400 individuals are employed by the Metropolitan Police Force, and 2,700 individuals are active members of the D.C. National Guard. *See Metropolitan Police Force Annual Report 2020*, DC.gov (2020), https://mpdc.dc.gov/sites/default/files/dc/sites/mpdc/publication/attachments/AR2020_lowres_a.pdf; *see also About Us, DC National Guard (2020)*, https://dc.ng.mil/About-Us/.

Page 5 – Motion for Change of Venue or to Allow Expanded *Voir Dire*

However, in the case of January 6th, nearly the entire jury pool is likely to have been impacted in some way by the charged crime. Its impacts on the residents of the District of Columbia were far more widespread than that of Enron in Houston. Not only are so many individuals directly employed by, or tied to, Congress and federal law enforcement, but all residents of Washington D.C. were subject to various enforcement orders and constraints: the mayor declared a state of emergency, implemented a city-wide curfew for residents, restricted access to certain roads and bridges, and requested that residents not attend the inauguration.[7]

Additionally, the District of Columbia voted overwhelmingly for President Biden.[8] Presidential elections are the only national election in which residents of the District of Columbia have real voting power, given their lack of representation in Congress. Given the government's theory, specifically that Mr. Wise was seeking to prevent the certification of votes to prevent President Biden from being elected, there is a further risk of undue prejudice and direct impact of the criminal offense: it is in essence the jurors' votes which the government believes Mr. Wise sought to nullify.

Multiple surveys commissioned by the Federal Public Defender support that there is an overwhelming bias against January 6th defendants in the Washington D.C. jury pool. According

---

[7] *Mayor Bowser Orders Citywide Curfew Beginning at 6PM Today*, DC.gov (Jan. 6, 2021), https://mayor.dc.gov/release/mayor-bowser-orders-citywide-curfew-beginning-6pm-today;
*Mayor Bowser Issues Mayor's Order Extending Today's Public Emergency for 15 Days*, DC.gov (Jan 6, 2021), https://mayor.dc.gov/release/mayor-bowser-issues-mayor%E2%80%99s-order-extending-today%E2%80%99s-public-emergency-15-days-a1; *Jane Recker, DC Mayor Says Americans Should Not Come to Washington for the Inauguration*, Washingtonian (Jan. 11, 2021) (noting the many street closures), https://www.washingtonian.com/2021/01/11/dc-mayor-says-americans-should-not-come-to-washington-for-the-inauguration/.
[8] *General Election 2020: Certified Results*, DC Board of Elections (Dec. 2, 2020), https://election-results.dcboe.org/election_results/2020-General-Election.

Page 6 – Motion for Change of Venue or to Allow Expanded *Voir Dire*

to one report conducted by Select Litigation, 61% of the jury pool in the District of Columbia says that those who participated on January 6 are guilty of the charges brought against them. Ex. 1 at 3.[9] A majority of eligible jurors in the district believe negative descriptions of those accused of participating in protests at the Capitol on January 6th, including that participants were conspiracy theorists, white supremacists, and criminals. Ex. 1 at 3-4. Another report by Select Litigation indicated that an overwhelming majority of citizens in Washington D.C. believe defendants in January 6th cases are guilty of the crimes they are charged with and indicated they would vote to convict. Ex. 2 at 3.[10] Both surveys show that the jury pool in Washington D.C. is inclined to believe January 6th defendants are guilty before the government has presented any evidence.

*Voir dire* alone is insufficient to root out the biases of potential jurors. Given Mr. Wise's connections to the Washington D.C. area, the limited size of the jury pool, and the attitudes of potential jurors in the district, it is impossible for an impartial jury to be impaneled, and venue should be transferred.

### 2. The Extensive Pretrial Publicity for January 6th Defendants in General, and For Mr. Wise In Particular, Has Unconstitutionally Tainted the Jury Pool.

The Court must consider the nature of the pretrial publicity surrounding a defendant when determining whether there is presumed prejudice. *Skilling*, 561 U.S. at 382-383. Where pervasive pretrial publicity has "inflamed passions in the host community" and "permeat[es] the trial setting … [such] that a defendant cannot possibly receive an impartial trial," the district court must

---

[9] This survey was conducted among 350 people in Washington D.C. by Select Litigation and commissioned by the Federal Public Defender. The report indicates that in almost all cases, if the entirety of the District was polled, their responses would be within 5.2 percentage points of the answers obtained in this survey.

[10] This survey was also commissioned by the Federal Public Defender and carried out by Select Litigation. It compared attitudes of jury eligible citizens in Washington D.C. versus those in Atlanta, GA.

Page 7 – Motion for Change of Venue or to Allow Expanded *Voir Dire*

presume local prejudice and transfer the proceeding. *United States v. Quiles-Olivo*, 684 F.3d 177, 182 (1st Cir. 2012); *see also Sheppard v. Maxwell*, 384 U.S. 333, 362 (1966) ("Due [P]rocess requires that the accused receive a trial by an impartial jury free from outside influences."). This is especially true when publicity is both extensive and sensational in nature. *Quiles-Olivo*, 684 F.3d at 182. Courts have required a change in venue when the media has broadcast prejudicial information about a specific defendant to the community. *Rideau*, 373 U.S. at 726.

The coverage of January 6th has also been of unprecedented volume, depth, and duration.[11] It has been sensationalized and prejudicial in nature. Reporters and interviewees, including members of Congress, consistently refer to the defendants as "insurrectionists," "rioters," "seditionists," "domestic terrorists" "white supremacists" and "criminals" in the media. *See,* Ex. 1. President Biden referred to those involved in the January 6th events as "a group of thugs, insurrectionists, political extremists, and white supremacists."[12] D.C. community leaders have specifically commented on the topic on a consistent basis, adding to the inflammatory and conclusory language regarding all January 6th defendants. *See,* Ex. 4, *Selection of Local Media Statements*. These statements most strongly impact District residents, who are more exposed to them and personally invested in the January 6th prosecutions.

Mr. Wise has been uniquely singled out, receiving inflammatory and negative media attention that is too strong to ignore. This is very similar to the actions in *Rideau*, where a public

---

[11] "Nearly seven-in-ten adults (69%) say they have heard 'a lot' about the rioting at the U.S. Capitol on Jan. 6." *Views on the Rioting at the US Capitol*, Pew Research Center (Jan. 15, 2021), https://www.pewresearch.org/politics/2021/01/15/views-on-the-rioting-at-the-u-s-capitol/

[12] *Remarks by President Biden at Signing of an Executive Order on Racial Equity*, The White House (2021), https://www.whitehouse.gov/briefing-room/speeches- remarks/2021/01/26/remarks-bypresident-biden-at-signing-of-anexecutive-order-on- racial-equity/.

Page 8 – Motion for Change of Venue or to Allow Expanded *Voir Dire*

broadcast of an interrogation in which the defendant admitted to the crimes was deemed to have tainted the jury pool. *Id.* The news articles focusing on Mr. Wise have included allegations and purported quotes directly relating to Mr. Wise's charges in the case, including:

- CNN: "Former FBI supervisor arrested on January 6-related charges allegedly encouraged mob to 'kill police.'"[13]

- *Washington Post*: "Former FBI supervisor arrested in connection with Jan. riot."[14]

- NBC: "FBI says former agent arrested over Ja. 6 called officers Nazis and encouraged mob to 'kill 'em.'"[15]

- NBC again:"Ex-FBI agent who feds say urged Jan. 6 rioters to kill police worked terrorism task force" (contained statements from a former agent that he was difficult to manage and was not a good leader).[16]
- *Wall Street Journal*: "Former FBI Agent Charged With Egging On Jan. 6 Mob at Capitol."[17]

- *New York Times*: "Former F.B.I. Agent Charged in Jan. 6 Riot" (contained statements from a former FBI agent saying that his career had stalled and that superiors were unhappy with his work, as well as an alleged inflammatory codename[18]).

These articles all contain allegations that Mr. Wise called for the deaths of Capitol police officers and that he stormed the Capitol. These statements, both their validity and their

---

[13] https://www.cnn.com/2023/05/02/politics/jared-wise-former-fbi-january-6/index.html
[14] https://www.washingtonpost.com/dc-md-va/2023/05/03/ex-fbi-agent-arrested/#:~:text=Ex%2DFBI%20agent%20Jared%20Wise,riot%20charges%20%2D%20The%20Washington%20Post
[15] https://www.nbcnews.com/politics/justice-department/fbi-says-former-agent-arrested-jan-6-called-officers-nazis-rcna82567
[16] https://www.nbcnews.com/politics/justice-department/ex-fbi-agent-feds-say-urged-jan-6-rioters-kill-police-worked-terrorism-rcna82775
[17] https://www.wsj.com/articles/former-fbi-agent-charged-with-egging-on-jan-6-mob-at-capitol-86764bb7
[18] They further reported that Mr. Wise used the codename "Bendghazi," a reference to the 2012 attack where four Americans died. https://www.nytimes.com/2023/05/03/us/politics/jan-6-former-fbi-agent.html#:~:text=The%20former%20agent%2C%20Jared%20L,according%20to%20a%20criminal%20complaint .

Page 9 – Motion for Change of Venue or to Allow Expanded *Voir Dire*

interpretation, are central to the felony assault charge that Mr. Wise faces in this case. Like the jury pool in *Rideau*, potential jurors have been exposed to media detailing Mr. Wise's alleged statements directly relating to the charged offense.

News outlets have introduced disparaging information about Mr. Wise's character, including alleged reasons for his departure from the FBI and a purported inflammatory codename. The media is subjecting Mr. Wise to character attacks in full view of those who may be selected to judge his guilt at trial. The Court in *Rideau* reasoned that the broadcast of the confession had essentially conducted the defendant's trial in advance. 373 U.S. at 726. The articles about Mr. Wise have come out recently, dating back to just last year. Potential jurors could easily take these statements as true and decide that Mr. Wise is guilty before trial even begins.

In *Skilling*, the Court had determined that the pretrial publicity was not so pervasive as to prejudice the potential jury pool and that there was no "smoking-gun" evidence that would evoke prejudice as to the defendant's guilt. *Id.* at 382-83. However, the Court noted that if there were a confession or "other blatantly prejudicial information" that readers could not reasonably ignore, then local prejudice may be presumed.

In Mr. Wise's case, the news articles highlighted what can be seen as "smoking-gun" evidence as it relates to Mr. Wise's guilt. The alleged statements outlined in the articles are blatantly prejudicial, as is the conclusion regarding the purpose or meaning of Mr. Wise's statements. The *New York Times* article went further in describing his work history and implying that he was bad at his job and therefore had to leave. The content of the news articles goes much further than that of *Skilling*, singling out Mr. Wise, making allegations about his statements and actions on the day of the event, reporting alleged information about his work history at the FBI as well as his

Page 10 – Motion for Change of Venue or to Allow Expanded *Voir Dire*

departure, all of which a juror cannot reasonably be expected to ignore, and thus local prejudice may be presumed.

The media consumption of the jury pool of Washington D.C. heightens this risk. Washington D.C. generally has very high consumption of national news, with the *New York Times*, *Washington Post*, *Wall Street Journal*, and CNN among their most read.[19] Citizens of Washington D.C. have been shown to have the highest interest in searching news sites, compared to citizens in other states.[20] People who identify as Democrats (as most of the District's population does) are 20% more likely to have reported hearing "a lot" of news about the events of January 6th.[21]

Because citizens of Washington D.C. are more directly impacted by January 6th, they are also more likely to have sought out or been exposed to media about January 6th. The ongoing concerns around the events of January 6th, and the fact that any future protests would once again be in jurors' own home district, increases the likelihood that the media focus will have impacted the jury pool. For example, in anticipation of protests planned in September of 2021 that were intended to show support for individuals detained in connection with prosecutions of January 6, the *New York Times* ran a piece titled "Washington, D.C. On Edge Over January 6 Protests,"[22] and the Associated Press similarly reported, "In Edgy Washington, Police Outnumber Jan 6

---

[19] Aran Ali, *Ranked: America's Most Searched and Visited News Sites by State*, SEMRush, (August, 2, 2021) https://www.visualcapitalist.com/americas-most-searched-and-visited-news-sites-by-state/
[20] *Id.*
[21] *Views on the Rioting at the US Capitol*, Pew Research Center (Jan. 15, 2021), https://www.pewresearch.org/politics/2021/01/15/views-on-the-rioting-at-the-u-s-capitol/
[22] Jonathan Weisman and Matthew Rosenberg, *Washington, D.C., on Edge Over Protest of Jan. 6 Arrests*, N.Y. Times (Sept. 18, 2021), https://www.nytimes.com/2021/09/18/us/politics/capitol-sept-18-rally.html.

Page 11 – Motion for Change of Venue or to Allow Expanded *Voir Dire*

Protestors,"[23] capturing the district's overall tenor and response to ongoing demonstrations. This fear and anticipation are heightened as a new election approaches; attention to political news peaks during presidential election years,[24] and media rhetoric around the January 6th trials is further heightened by the upcoming election.[25]

### 3. Not Enough Time Has Passed Between The Events Of January 6 And The Trial Date To Dissipate The Extreme Prejudice Mr. Wise Faces.

The third factor in the Court's analysis of presumed local prejudice is the amount of time that has passed between the exposure regarding the offense conduct and the scheduled trial. *Skilling*, 561 U.S. at 383. In *Skilling*, four years had passed between when the defendant had filed for bankruptcy, which gave rise to his criminal prosecution, and the trial. *Id.* Importantly, "the decibel level of media attention diminished somewhat in the years following Enron's collapse," and thus the exposure to prejudicial media coverage had slackened. *Id.* Not so here. Instead, the media storm continues and maintains its intensity as the presidential election approaches.

In *Yount*, the Court affirmed a trial court's denial of a motion for transfer in venue because enough time had passed so that the potential jury's passions were not inflamed. *Yount* 467 U.S. at 1034. In that case, the defendant had been retried for murder four years after his first trial, after his conviction had been vacated. *Id.* at 1027. Leading up to the second trial, the press surrounding the

---

[23] Associated Press, *In Edgy Washington, Police Outnumber Jan. 6 Protesters*, US News (Sept. 18, 2021), https://www.usnews.com/news/politics/articles/2021-09-18/police-saytheyre-ready-for-rally-supporting-jan-6-rioters

[24] Jeffrey Jones, *U.S. Attention to Political News Slips Back to Typical Levels*, Gallup (Oct. 25, 2021), https://news.gallup.com/poll/513128/attention-political-news-slips-back-typical-levels.aspx.

[25] Scott MacFarlane, *Judges, Witnesses, Prosecutors Increasingly Warn Of Threats To Democracy In 2024 Elections As Jan. 6 Prosecutions Continue*, CBS News, (April 1, 2024) https://www.cbsnews.com/news/judges-witnesses-jan-6-cases-warn-threats-to-democracy-2024-elections/

Page 12 – Motion for Change of Venue or to Allow Expanded *Voir Dire*

case only reported objective facts without comment. *Id.* at 1028. The Supreme Court reasoned that the pretrial publicity was at its height before the defendant's first trial and by the time of the second, the community's prejudice had diminished. *Id.* at 1032-34.

Unlike the defendants in *Yount* and *Skilling*, Mr. Wise has been subjected to pervasive media coverage as recently as last year. The articles detailing Mr. Wise's alleged involvement in January 6th protests as well as quotes alleging that Mr. Wise was calling for the deaths of officers were published in May of 2023, just over one year ago. It was also noted in *Yount* that media coverage of the defendant's trial pertained only to the actual events at trial, not the confessions that were so inflammatory at the first trial. By comparison, news outlets have been reporting Mr. Wise's alleged statements that are the subject of the prosecution against him, as well as the conclusion that he was calling for and "egging on" the killing of Capitol officers. Unlike in *Yount*, the reports concern the actual subject of the prosecution against Mr. Wise, as well as extraneous information about his character and background.

The media attention on January 6th prosecutions has only been further raised by the ongoing litigation and campaigning by Donald Trump. Mr. Trump recently reported that "there will be a bloodbath for the country if he loses the election."[26] The media focus on former President Trump, and speculation regarding the possible consequences of the upcoming elections, only heightens the attention and risks associated with the prejudicial media coverage for Mr. Wise.

Given the factors outlined by the Supreme Court, a transfer of venue is warranted to ensure Mr. Wise has a constitutionally fair and impartial jury pool.

---

[26] John, Arit, Maher, Kit, Treene, Alayna, *Trump warns of 'blood bath for auto industry and country if he loses the election* (March 17, 2024) CNN, https://www.cnn.com/2024/03/16/politics/trump-bloodbath-auto-industry- election/index.html.

Page 13 – Motion for Change of Venue or to Allow Expanded *Voir Dire*

4. **Alternatively, The Court should allow Expanded Examination of Prospective Jurors Before and During *Voir Dire*.**

If the motion to transfer venue is denied, Mr. Wise asks for an expanded examination of potential jurors before and during *voir dire*. For the reasons outlined above, this is necessary to avoid the likelihood of prejudice among the jury. Granting expanded examination of prospective jurors as an alternative to changing venue is consistent with the court's order in *United States v. Russell Dean Alford*, No. 1:21-cr-00263 (TSC) ECF 46.

For this request, Mr. Wise would specifically ask:

1. That the defense be allowed to prepare a questionnaire that, after review and approval by the Court, would be distributed to summoned prospective jurors to return before trial;

2. That the parties be present for any pre-screening questioning of prospective jurors that the Court conducts before the beginning of formal voir dire; and

3. That the parties be permitted to question jurors individually during voir dire.

*See United States v. Russell Dean Alford*, No. 1:21-cr-00263 (TSC) ECF 46.

D.  **Conclusion**

For the reasons stated above, Mr. Wise respectfully moves the Court to transfer these proceedings to the District of Oregon or, in the alternative, to allow expanded questioning of the prospective jurors as set out above.

Respectfully submitted June 11, 2024.

/s/ *Peyton Lee*
Peyton Lee, OSB No. 164224,
Assistant Federal Public Defender
101 SW Main Street, Suite 1700
Portland, OR 97204
(503) 326-2123
Peyton_Lee@fd.org

Counsel for Jared Lane Wise