IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **United States of America**, | Case No. 1:23-cr-00184-RDM |
| Plaintiff, | |
| v. | Motion to Suppress Evidence |
| **Jared Lane Wise**, | |
| Defendant. | |

Jared Lane Wise, by and through his attorney, Kurt David Hermansen, respectfully moves this Court for an order suppressing all evidence seized pursuant to the search warrants issued on May 5, 2022, and November 23, 2022, regarding records from AT&T for lack of probable cause. Mr. Wise also moves to suppress all derivative evidence seized after an invalid California Highway Patrol Stop on April 2, 2023. Mr. Wise also moves to suppress all evidence seized pursuant to a search warrant issued on April 24, 2023, for his residence in Oregon, including digital files from his phone and laptop, and evidence seized from his vehicle.

I.   **Statement of Facts**

   A.   **Law Enforcement Obtained a Search Warrant for Information from Mr. Wise's Phone Looking for Evidence of Conspiracy When No Probable Cause Existed to Support the Government's Theory.**

On May 5, 2022, this Court issued a search warrant for information regarding an AT&T phone account. Ex. A at 2.[1] This information they sought included, but was not limited to, things

---

[1] Although the defense continues to object to the breadth and scope of the protective order, it is nevertheless binding and must be respected unless lifted or amended. See ECF 17. Under that protective order the warrants are designated as "sensitive" and therefore must be filed

Page 1 – Motion to Suppress Evidence

such as names of the user, addresses, telephone connection records, telephone numbers, dates and times of communications, and subscriber numbers or identities. *Id.* at 5–6. The Court allowed the search of this information from November 1, 2020, to February 1, 2021. *Id.* at 5. In the statement of probable cause, the affiant, J.S., gives little to no basis for searching a date range that wide. The statement only contains a tip (from an unnamed source) concerning Mr. Wise's ownership of that phone, surveillance photographs of what appears to be Mr. Wise attending the events of January 6, and information concerning AT&T's ability to collect information about their subscribers. *Id.* at 25–30. Later in the affidavit, J.S. says that search for information about the subscriber information, like the number of calls or texts they send, can help identify the user of the phone and co-conspirators, but does not explain why she believes Mr. Wise was conspiring with others. *Id.* at 30.

   This Court then issued a second search warrant on November 23, 2022, concerning AT&T records, including voicemails, texts, and multimedia messages. Ex. B at 11. The date range law enforcement sought this data from was between November 3, 2020, to January 31, 2021. *Id.* The affiant, J.S., indicated that the search warrant from May 5 showed that there were 62 calls and 46 messages on Mr. Wise's phone on January 6. *Id.* at 32. However, she provided no other evidence seized from the former search warrant that would justify the second warrant, even though the date range on the initial warrant was from November 1, 2020, to February 1, 2021. She then stated without elaboration that her experience caused her to believe that many people engaged in planning between the November election and January 6. *Id.* at 32-33.

---

under seal despite the public's First Amendment rights, which should tilt in favor of public disclosure on matters of national interest.

Page 2 – Motion to Suppress Evidence

### B. California Highway Patrol Made an Invalid Traffic Stop that Resulted in a Photo from the Officer's Dashcam Being Included in Search Warrant Applications.

California Highway Patrol (CHP) pulled Mr. Wise over on April 2, 2023. Ex. C at 2. The alleged reason CHP pulled Mr. Wise over was because his car was allegedly registered as dark blue, and CHP believed it to be gray. *Id.* The CHP Officer did not take Mr. Wise's registration. The CHP incorrectly stated that Mr. Wise was "some sort of sovereign citizen". *Id.* The officer did not specify what he was investigating besides the fact that he believed the car was not the color that was registered. *Id.* Mr. Wise got out of his car during the stop to speak to the officer, which resulted in him being filmed via the officer's dashcam next to his car. This photo was used in a later search warrant to identify Mr. Wise and his vehicle. Ex. D at 43.

### C. Law Enforcement Obtained a Search Warrant for Mr. Wise's Home, Including Digital Devices Capable of Having Evidence Based on Stale Information Without Probable Cause.

On April 24, 2023, the Oregon District Court issued a search warrant that included Mr. Wise's home and his vehicle. Ex. D at 1. The warrant indicated that law enforcement was looking for "any digital device capable of obtaining and reasonably could contain" evidence of the target offenses and records on any device at the premises related to the target offenses. *Id.* at 45–46. The statement of probable cause for the devices was heavily based on surveillance footage that allegedly showed Mr. Wise using his phone to film events at the Capitol on January 6, 2021. *Id.* at 25–26. Law enforcement sought to search not only the phone they identified in the surveillance footage, but also any computer, phone, or tablet found on the premises. *Id.* at 27. The affiant, J.S., stated

that files or remnants can be recovered after they have been deleted from the device, unless data from that file has been overwritten. *Id.* at 28.

## II. Legal Standard

Mr. Wise brings this motion under Federal Rules of Criminal Procedure 12(b) and 41(h) on the grounds that (1) the search of his AT&T phone records on May 5, 2022, (2) the CHP traffic stop on April 2, 2023, and (3) the search of his home, phone, and laptop on April 24, 2023, violated his rights under the Fourth Amendment of the United States Constitution. The Fourth Amendment provides that people have a right "to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. CONST. AMEND. IV. Any evidence that is obtained by an unreasonable search or seizure is inadmissible in federal court. *Weeks v. United States*, 232 U.S. 383, 398 (1914). Along with being inadmissible in court, evidence obtained illegally must be excluded from search warrant applications to determine whether enough untainted evidence remains to support probable cause. *United States v. Karo*, 468 U.S. 705, 719 (1984). If that illegally obtained evidence was critical in determining whether there was probable cause, the warrant becomes invalid. *Id.*

Warrants need probable cause describing with particularity "the place to be searched, and the persons or things to be seized." *Zweibon v. Mitchell*, 516 F.2d 594, 628 (D.C. Cir. 1975); id at 645 n. 143. The Court must look at the totality of the circumstances to determine whether probable cause is present. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). All evidence directly or indirectly derived from an unlawful search should be excluded as fruit of the poisonous tree. *Wong Sun v. United States*, 371 U.S. 471, 484–85 (1963).

Page 4 – Motion to Suppress Evidence

Traffic stops also constitute a seizure with respect to the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809-810 (1996). As such, a traffic stop "is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Id.* at 810. However, the motivation of the officer making the stop does not alone factor into the probable cause analysis. *Id.* at 813.

A law enforcement officer may also conduct a "brief investigative traffic stop when he has 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *Kansas v. Glover*, 589 U.S. 376, 380 (2020) (quoting *United States v. Cortez*, 449 U.S. 411, 417-418 (1981)). That analysis for an officer is based on considerations that a reasonable person would act on. *Id.* (quoting *Prado Navarette v. California*, 572 U.S. 393, 402 (2014)).

### III.   Argument

#### A.   The Search Of The AT&T Records Lacked Probable Cause for the Entire Date Range Listed in the Application.

The application for the first search warrant issued May 5, 2022, for the AT&T records contained no basis for searching the records from November 1, 2020, to February 1, 2021. The totality of circumstances from the affidavit do not indicate why AT&T's records from that entire date range are needed. Search warrants applications must contain information that supports probable cause that evidence of the target offenses will be found for the warrants to be issued. *Zweibon*, 516 F.2d at 656. The affidavit contained surveillance photos from the Capitol and information on how AT&T collects information on their subscribers. Ex. A at 25-30. Specifically, J.S. said that she believed that the records may help identify co-conspirators or victims but does not state why she believes that

Mr. Wise was conspiring with anyone. *Id.* at 30. There is no mention of Mr. Wise allegedly collaborating with anyone else anywhere else in the affidavit. They only had surveillance footage of what appears to be Mr. Wise at the Capitol. *Id.* at 27–29.

J.S. also stated that they were looking for the user of the target phone. *Id.* at 30. There is no need for a date range to be that wide to identify who the user of the phone is. The only conceivable reason for the date range being that wide, rather, is a fishing expedition, hoping to find some evidence of conspiracy when there is no probable cause to believe that one exists.

Because no probable cause existed for searching the AT&T records for a date range that wide, evidence from the search warrant issued May 5, 2022, specifically any AT&T records from before or after January 6, 2021, should be suppressed.

Any evidence derived directly or indirectly from this search should also be suppressed as fruit of the poisonous tree. *Wong Sun*, 371 U.S. at 484–85. This includes evidence from the second search warrant issued on November 23, 2022. This second search warrant application also included a large date range, from November 3, 2020, to January 31, 2021. Ex. B at 11. J.S. indicated that the search of AT&T records from the first search warrant showed many calls and texts on January 6, 2021. *Id.* at 32. This information was seized under the first search warrant, which did not contain probable cause to search a date range as wide as requested. Because there was a lack of probable cause for searching the date range in the first search, evidence derived from that search, directly or indirectly, should be suppressed as fruit of the poisonous tree.

Evidence obtained from the first AT&T search warrant should also be excluded from the second AT&T search warrant application to determine whether that application still contains

probable cause. *Karo*, 468 U.S. at 719. Without the evidence obtained from the first search warrant for AT&T records, law enforcement has no probable cause that Mr. Wise was conspiring with others to commit any offense because they would not have found any calls from Mr. Wise on January 6. Even with the evidence seized regarding the first search warrant for AT&T records, there is still no probable cause to support the second search of AT&T records. The first search only produced that Mr. Wise made (or attempted to make) many calls on January 6. Law enforcement mentioned no other date in the range that they searched in which Mr. Wise made many calls or texts. Therefore, there is no probable cause to support the second search warrant and any evidence seized pursuant to that warrant should be suppressed.

> **B.    The Dashcam Photograph of Mr. Wise from the CHP Traffic Stop Should Be Excluded Because It Was Made During an Invalid Traffic Stop.**

Because CHP obtained a photograph of Mr. Wise next to his car during an invalid traffic stop, the photograph should be suppressed. CHP pulled over Mr. Wise because they believed the car was not the color it was registered as. Ex. C at 2. CHP can only pull over Mr. Wise if they have probable cause he committed a traffic violation. *Whren*, 517 U.S. at 810. However, driving a car that allegedly appears gray while the registration allegedly says blue, is not a traffic violation. In California, violations occur when there is a violation of the vehicle code. Cal. Veh. Code §§ 34506, 34506.3 (West 2023). California does not require that a vehicle's color be part of the registration. Cal. Veh. Code § 4150(c) (West 2023). Rather, the description of the vehicle requires other identifying factors, such as make and model. *Id.* Because color is not required for registration of a car in California, allegedly driving a car whose color appears to be gray while the registration says

Page 7 – Motion to Suppress Evidence

blue is not a traffic violation. The fact that the CHP Officer did not issue a citation provides further proof that probable cause was lacking. Therefore, the CHP officer had no reasonable suspicion or probable cause that a traffic violation had occurred when he pulled over Mr. Wise.

CHP also had no reasonable suspicion that Mr. Wise was conducting criminal activity at the time of the stop. Law enforcement can conduct a traffic stop if they have an objective basis for suspecting that the person stopped is conducting criminal activity. *Glover*, 589 U.S. at 380.

The Eighth Circuit has recognized that disparities between the actual car color and the registered color may be a single factor that gives rise to reasonable suspicion, but sole reliance on color disparity is not sufficient. *United States v. Brown*, 60 F.4th 1179, 1182–83 (8th Cir. 2023). In that case, law enforcement pulled over the defendant, who was riding an orange motorcycle that was registered as a blue motorcycle. *Id.* at 1181. The officer believed that the car may have been stolen or that the license plate may have been switched with another motorcycle. *Id.* The officer based this belief on the color of the car, along with the fact that the defendant was driving in an area known to law enforcement as an area where switching license plates happened often. *Id.* The officer did not conduct a traffic stop until the defendant pulled into the driveway of a residence where "stolen vehicles were frequently found." *Id.* The court held that these facts, taken together, supported a finding of reasonable suspicion. *Id.* at 1182. While color discrepancy can be a factor, the discrepancy, by itself, cannot support reasonable suspicion. *Id.* at 1183.

Mr. Wise was not driving in an area known to have frequent stolen vehicles, nor did he drive toward any residence where stolen vehicles were frequently found. The officer also did not express any suspicion that the car had been stolen. The only information the CHP officer had when he

Page 8 – Motion to Suppress Evidence

pulled Mr. Wise over was his belief that the color of the car did not match the registration. As the court in *Brown* stated, that alone cannot support probable cause for an investigative traffic stop. Therefore, because the officer solely relied on color discrepancy when making the traffic stop, there was no reasonable suspicion to support an investigative traffic stop.

Because there was no probable cause of a traffic violation and no reasonable suspicion that Mr. Wise was conducting criminal activity, the stop was invalid, and any evidence seized (e.g., the dashcam photo of Mr. Wise) must be suppressed. *Wong Sun*, 371 U.S. at 484-485. The Court must also examine subsequent search warrants to determine whether probable cause exists if that photograph is excluded from the probable cause calculus. *Karo*, 468 U.S. at 719.

That photograph was also used in the search warrant application to identify Mr. Wise and his car for the search warrant issued on April 24, 2023. It was used as a primary method of identifying which car is Mr. Wise's. Because that photograph should be excluded from the search warrant issued on April 24, 2023, evidence seized from the search of Mr. Wise's vehicle should also be suppressed. The photograph provided a crucial link between Mr. Wise and vehicle, as it depicts him getting out of a traffic stop after driving it. Therefore, because the photograph was crucial in identifying Mr. Wise's car, the evidence seized from Mr. Wise's car as a result of the search warrant issued on April 24, 2023 should be suppressed.

    **C.**    **The Evidence from the Search of Mr. Wise's Home, Phone, and Laptop Should Be Excluded Because Probable Cause Was Based on Stale Evidence.**

The warrant for a search of Mr. Wise's Oregon residence, which dictated that digital devices, including Mr. Wise's phone and laptop, be seized, relied on stale evidence. Search warrants

must contain probable cause to be valid. *Zweibon*, 516 F.2d at 628. Probable cause is based on the totality of circumstances. *Gates*, 462 U.S. at 238. The facts relied on for probable cause must also be "closely related to the time of the issue of the warrant so as to justify a finding of probable cause at that time." *United States v. Webb*, 255 F.3d 890, 904 (D.C. Cir. 2001) (cleaned up).

Certain items of evidence, such as contraband, are more susceptible to staleness than others, such as an address of a residence. *United States v. Johnson*, 437 F.3d 69, 72 (D.C. Cir. 2006). In *Johnson*, the defendant claimed that the warrant to search her apartment was invalid because the information within it was stale. *Id.* at 72. She alleged there was no recent evidence to connect her co-defendant, the primary target of the search, to the residence. *Id.* at 71. However, there was evidence, found as recently as four weeks prior, connecting the defendant to drug dealing. *Id.* at 72. The court held that staleness did not undermine the warrant. *Id.* The court reasoned that staleness of the information could vary according to the type of information, because certain evidence is more fluid and able to change or be destroyed quicker. *Id.* For something like contraband, information determining probable cause can go stale quickly, due to the ability to get rid of it quickly. *Id.* For something that is not subject to change, like an address, the information determining probable cause goes stale at a slower rate. *Id*.

Law enforcement wanted to search Mr. Wise's house for digital devices to find things such as records of Mr. Wise's presence on January 6th at the Capitol or even records of Mr. Wise's internet activity. The information law enforcement sought is on the more fluid side of the scale as dictated by *Johnson* in that the files could have been gotten rid of quicker than other evidence. Electronic files are not like an address to a residence that is subject to little change. They deleted easily

Page 10 – Motion to Suppress Evidence

at the tap of a few buttons. Moreover, while J.S. in her affidavit says that digital files can be recovered after they've been deleted, she concedes that the data can be overwritten and that information from digital files can be fully deleted. Ex. D at 28-29. Much like contraband evidence in *Johnson*, digital files can be deleted quickly and can be very fluid. Law enforcement was relying on surveillance footage to determine that there was evidence on Mr. Wise's phone. While they did determine he was still using his phone recently before the affidavit, the evidence they relied on to show that there would be digital files on his phone from January 6 was from over two years prior to the issuance of the warrant.

While the affidavit still maintains that digital data can be recovered from the phone, the Seventh Circuit has held that there must be some limit to when law enforcement can search digital files after receiving a tip. *United States v. Prideaux-Wentz*, 543 F.3d 954, 958 (7th Cir. 2008) (finding "that the warrant lacked probable cause because the evidence that Agent Paulson relied on in his warrant affidavit was stale"). In that case, a search warrant was issued to uncover evidence of possession of child pornography based on tips they had received two years prior to the issuance of the search warrant. *Id.* at 956. The tips were regarding posts made by the defendant that contained child pornography. *Id.* The court held that there was no probable cause to support that affidavit partly because the information was stale. *Id.* at 958. While the court had determined prior that child pornography cases were different with staleness because collectors and distributors usually do not delete their collections, there must be a limit on the time frame for staleness. *Id.* The court held that because two years had passed since the tips, and the posts could have been made prior to the

tip, there was no fresh evidence to support probable cause that law enforcement would find child pornography in their search. *Id.* 958–59.

Much like in *Prideaux-Wentz*, law enforcement in their affidavit maintained that it was likely that they could recover evidence from Mr. Wise's phone and laptop. However, they relied on information from two years before the issuance of the warrant in supporting their probable cause. While it may be harder to fully delete files from digital devices, there must be some sort of limit on how far back the information law enforcement is relying on was gathered. Law enforcement had the surveillance of the person alleged to be Mr. Wise holding his phone out on January 6 at the Capitol, the primary information they relied on in creating probable cause, as early as January 2022. Yet, they did not request a search warrant for his digital devices until April of 2023. The Seventh Circuit had decided that two years was enough to support a finding of staleness in the case of digital files that were unlikely to be deleted. Here, two years had passed since Mr. Wise allegedly pulled out his phone to film events on January 6, 2021, until the search warrant was issued in April of 2023. This is a reasonable limitation on when information relied upon for probable cause becomes stale, especially considering law enforcement had the surveillance photos as early as 2022, one year prior to the issuing of the search warrant.

Therefore, because the evidence they were looking for could have been gone from the devices and because the most recent information regarding the existence of those files on the devices were from two years prior, the evidence seized from the laptop and phone resulting from the warrant issued on April 24, 2023, should be suppressed.

**D.     Conclusion**

For the reasons stated above, Mr. Wise respectfully requests that this Court grant his motion and suppress his AT&T records, his dashcam photograph from the CHP traffic stop, evidence obtained from his vehicle, and digital files obtained from his phone and laptop.

Respectfully submitted on June 11, 2024.

*s/ Kurt David Hermansen*
Kurt David Hermansen, CA Bar No. 166349
Supervisory Assistant Federal Public Defender
859 Willamette St. Suite 200
Eugene, OR  97401
Tel: (619) 436-8117
Fax: (541) 465-6975
Email: kurt_hermansen@fd.org

**Attorney for Defendant Jared Lane Wise**
