**In the United States District Court
for the District of Columbia**

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Jared Lane Wise,<br><br>Defendant. | Case No. 1:23-cr-00184-RDM<br><br>Reply to Government's Opposition (ECF 50) to Defense Motions to Dismiss Counts 1 and 2 or Require a bill of particulars (ECF 33 & 39)<br><br>**Oral Argument Requested** |

# Table of Contents

**Page**

I.    INTRODUCTION ................................................................................................1

II.    REPLY TO THE GOVERNMENT'S OPPOSITION TO DISMISSING COUNTS 1 AND 2 AND FOR A BILL OF PARTICULARS ...................................................3

    A.    This Court should dismiss Counts 1 and 2 to cabin the government's overreach, like the Supreme Court just did in *Fischer*....................................................................................................3

    B.    Factual clarification regarding Mr. Wise being yards, not feet, from the scrum. ....................................................................... 4

    C.    Speech is *per se* expressive and thus afforded First Amendment protections. ..............................................................................5

    D.    The Opposition oversteps by arguing that all protesters lack First Amendment protections for their speech given "the violent context of January 6, 2021." ................................................. 6

        1.    First Amendment protection is only stripped here by assuming Mr. Wise aided a specific (unnamed) perpetrator through incitive speech. ............................................................. 8

        2.    By refusing to file a bill of particulars, the government enables itself to argue that the Court lacks sufficient facts for ruling on Mr. Wise's as-applied First Amendment challenge. ............................................................................... 9

        3.    The Court's mode of analysis in *O'Brien* finds no application here..........................................................................10

4.    Speech that aids and abets criminal conduct can support a criminal charge, but when pure speech is involved of the alleged aider and abettor, a principal and a victim must be identified or free speech is chilled..............................................10

5.    The Opposition's reliance on *Woodhull* is misplaced because Woodhull presented a facial, pre-enforcement challenge by sex workers to a statute that targeted online sex trafficking. ...........................................................11

6.    Parroting statutory elements is not invariably sufficient for an indictment to fairly apprise a defendant of the essential facts so that he can marshal a defense........................................12

E.    The Opposition misconstrues inapposite caselaw to justify refusing to specify the principal's identity for aiding and abetting liability to attach to Mr. Wise for the alleged assault and alleged civil disobedience charged in Counts 1 and 2. ...............................................13

F.    *United States v. Connell* supports the need for a bill of particulars here. ...............................................................................................14

G.    Count 1 does not identify a specific victim officer. ...............................17

1.    The identity of the federal officer that Mr. Wise obstructed, impeded, and interfered with is jurisdictional and necessary for Mr. Wise to adequately prepare a defense. ..........................17

H.    The Opposition fails to identify a specific victim officer for Count 2 even though the identity of the assault victim is an element of the offense. .............................................................................................18

1.    The identity of the federal officer Mr. Wise allegedly assaulted, resisted, opposed, impeded, intimidated, and interfered with is necessary for Mr. Wise to adequately prepare a defense and because juror unanimity is required that information must be disclosed. .........................................18

I.    First Amendment implications weigh in favor of dismissing Counts 1 and 2 or at least requiring a bill of particulars....................................20

1.    Mr. Wise's speech does not constitute incitement....................................21

2.    Speech alone is insufficient for a § 231(a)(3) charge................................22

A.    This Court should order that the government identify the perpetrator(s) and victim(s) for Counts 1 and 2 so that Mr. Wise can prepare his defense. .........................................................................23

III.    CONCLUSION ....................................................................................... 24

# Table of Authorities

**Page**

## CASES

*Brandenburg v. Ohio*, 395 U.S. 444 (1969) .......................................................................... 11, 12, 21

*Cameron v. Johnson*, 390 U.S. 611 (1968) ...................................................................................... 6

*Cox v. Louisiana*, 379 U.S. 536 (1965) ........................................................................................... 6

*Fischer v. United States*, No. 23-5572, 2024 WL 3208034 (U.S. June 28, 2024) ........................... 4

*Grayned v. City of Rockford*, 408 U.S. 104 (1972) ......................................................................... 6

*McCutcheon v. Fed. Election Comm'n*, 572 U.S. 185 (2014) .........................................................10

*Richardson v. United States*, 526 U.S. 813 (1999) ............................................................. 16, 19, 20

*Russell v. United States*, 369 U.S. 749 (1962) ........................................................................ 12, 16

*Shuttlesworth v. City of Birmingham, Ala.*, 373 U.S. 262 (1963) ..................................................10

*Texas v. Johnson*, 491 U.S. 397 (1989) ...........................................................................................5

*Thompson v. Trump*, 590 F. Supp. 3d 46 (D.D.C. 2022) ................................................................. 8

*United States v. Adams*, No. CR 23-326 (JDB), 2024 WL 1716631 (D.D.C. Apr. 19, 2024) ........... 9

*United States v. Ali*, 870 F. Supp. 2d 10 (D.D.C. 2012) ................................................................11

*United States v. Brown*, No. 22-CR-00214-JAD-DJA, 2023 WL 7017622 (D. Nev. Oct. 25, 2023)
................................................................................................................................................17

*United States v. Connell*, No. CR 21-0084 (PLF), 2023 WL 4286191 (D.D.C. June 30, 2023). 3, 15,
16, 19, 20, 22, 23

*United States v. Cua*, 657 F. Supp. 3d 106 (D.D.C. 2023) .............................................................18

*United States v. Felix*, 996 F.2d 203 (8th Cir. 1993) ....................................................................7, 8

*United States v. GossJankowski*, Crim. No. 21-0123 (D.D.C. Mar. 17, 2023) ............................... 20

*United States v. Gray*, 652 F. Supp. 3d 112 (D.D.C. 2023) ............................................................ 9

*United States v. Gregg*, 226 F.3d 253 (3d Cir. 2000) ...................................................................... 6

*United States v. Groseclose*, No. 21-CR-311 (CRC), 2024 WL 68248 (D.D.C. Jan. 5, 2024) ..........19

*United States v. Hansen*, 599 U.S. 762 (2023) ..............................................................................11

*United States v. Kimes*, 246 F.3d 800 (6th Cir. 2001) ....................................................................19

*United States v. Mendez-Colon*, 417 F. App'x 320 (4th Cir. 2011) ................................................ 24

*United States v. Miller*, 883 F.3d 998 (7th Cir. 2018) ..............................................................23, 24

*United States v. Mostofsky*, 2021 WL 3168501 (D.D.C. July 27, 2021) ..........................................17

*United States v. Nordean*, 579 F. Supp. 3d 28 (D.D.C. 2021) ........................................................ 6

*United States v. North*, 910 F.2d 843 (D.C. Cir.), *opinion withdrawn and superseded in part on reh'g*,
920 F.2d 940 (D.C. Cir. 1990) ...............................................................................................14

*United States v. O'Brien*, 391 U.S. 367 (1968) ..............................................................................10

*United States v. Pugh*, 90 F.4th 1318 (11th Cir., 2024) .................................................................. 22

*United States v. Raymond*, No. CR 21-380 (CKK), 2023 WL 6294178 (D.D.C. Sept. 27, 2023) ...13

*United States v. Staten*, 581 F.2d 878 (D.C. Cir. 1978) ............................................................ 13, 14

*United States v. Warnagiris*, No. CR 21-00382 (PLF), 2023 WL 6926491 (D.D.C. Oct. 19, 2023)
........................................................................................................................................ 19, 23

*United States v. Williamson*, 903 F.3d 124 (D.C. Cir. 2018) .........................................................12

*Woodhull Freedom Found. v. United States*, 72 F.4th 1286 (D.C. Cir. 2023) .................................11

## STATUTES

18 U.S.C. § 111(a)................................................................................................3, 18
18 U.S.C. § 2...............................................................................................................2
18 U.S.C. §§ 111(a)(1)......................................................................................passim
18 U.S.C. §§ 231(a)(3).............................................................................................2, 3
2 U.S.C. § 192.............................................................................................................12
40 U.S.C. § 5104(e)(2)(G)..........................................................................................9

## I. INTRODUCTION

Mr. Wise moved to dismiss Counts 1 and 2 of the Indictment. ECF 33 ("Motion"). The government filed an "Opposition" to that motion. ECF 50. Mr. Wise hereby replies to that Opposition.

The Opposition asks the Court to either deny the Motion as premature or resolve the Motion through reference to aiding and abetting or incitement law. ECF 50 at 14 n.4. But the Motion is ripe for consideration (especially if a bill of particulars is filed), and the reference to aiding and abetting and incitement does not eviscerate Mr. Wise's free speech rights. Here, a bill of particulars is needed precisely because the Indictment lacks essential facts that identify the unnamed victim(s) and unnamed perpetrator(s) for Counts 1 and 2. The Indictment charges four misdemeanors and the following felonies in Counts 1 and 2: 18 U.S.C. §§ 231(a)(3), 2 (Civil Disorder and Aiding and Abetting); 18 U.S.C. §§ 111(a)(1), 2 (Assaulting, Resisting, or Impeding Certain Officers and Aiding and Abetting). ECF No. 9.

This case is uniquely complicated factually and legally because, in addition to four misdemeanor charges, the government charges Mr. Wise with two felonies based on his speech alone. Although Mr. Wise did not touch or threaten a law-enforcement officer, the government charges him with forcible, felony assault and felony civil disturbance, apparently based on the assumption that Mr. Wise's words may have encouraged some **unnamed** person to assault and impede an **unnamed** law-enforcement officer. Without further specificity, the Indictment cannot stand given protections afforded by the Due Process clause and the First and Sixth Amendments to the United States Constitution.

Mr. Wise's Motion first shows that Count 1, which charges obstructing, impeding, and interfering with a law enforcement officer, and aiding and abetting someone else to obstruct, impede,

and interfere with a law enforcement officer, in violation of 18 U.S.C. §§ 231(a)(3), 2, should be dismissed because it does not identify (a) a specific victim officer and (b) direct perpetrator who was encouraged by Wise's words. Identification of (a) the individual Mr. Wise allegedly impeded and (b) the individual he allegedly aided, abetted, counseled, commanded, induced, procured, and willfully caused to "obstruct[], impede[], and interfere[]" is necessary for Mr. Wise to understand the charges and adequately prepare a defense to Count 1.

Second, Mr. Wise's Motion shows that Count 2, which charges forcibly assaulting, resisting, or impeding certain officers, and aiding and abetting someone else to assault, resist, and impede certain officers, in violation of 18 U.S.C. §§ 111(a)(1), 2, should be dismissed because the government fails to identify (a) a specific victim officer and (b) a direct perpetrator who was encouraged by Wise's words. Identification of (a) the individual Mr. Wise allegedly assaulted and (b) the individual Mr. Wise allegedly aided, abetted, counseled, commanded, induced, procured, and willfully caused to "assault, resist, oppose, impede, intimidate, and interfere with" federal law enforcement is necessary for Mr. Wise to understand the charges and adequately prepare a defense to Count 2.

Third, the Motion shows that, at a minimum, a bill of particulars is needed. The identity of both the alleged law enforcement victim and the person Mr. Wise allegedly aided and abetted need to be solidified in a bill of particulars (1) given the First Amendment implications of the charges, which seek to criminalize mere speech, (2) given the huge number of protestors and police involved in the Upper West Terrace clash, and (3) given Mr. Wise's need to properly understand and defend against the charges. Otherwise, Mr. Wise will need to prepare for a multitude of potential victims and principals given the chaotic nature of the clash. Undoubtedly, the First Amendment

implications of this case weigh heavily in favor of requiring dismissal, or at least a bill of particulars so that the Court and the parties can intelligently debate whether Counts 1 and 2 violate the First Amendment under Mr. Wise's as-applied challenge.

Undoubtedly, as in *United States v. Connell*, this Court should at least "conclude that the government must file a bill of particulars with respect to both" Count 1 (which charges Mr. Wise with violating 18 U.S.C. §§ 231(a)(3), (2)), and Count 2 (which charges violating 18 U.S.C. § 111(a)(1), (2)). *United States v. Connell*, No. CR 21-0084 (PLF), 2023 WL 4286191, at *3 (D.D.C. June 30, 2023) (requiring a bill of particulars for the § 111 charge and § 231 charge).

## II.    REPLY TO THE GOVERNMENT'S OPPOSITION TO DISMISSING COUNTS 1 AND 2 AND FOR A BILL OF PARTICULARS

Defendant, Jared Wise, through counsel, Kurt David Hermansen, maintains that this Court should dismiss Counts 1 and 2 or, alternatively, order that the government file a bill of particulars for all counts in the Indictment, certainly for Counts 1 and 2. *See* ECF No. 9. Without at least a bill of particulars, defense cannot rightly claim it can be prepared for the August 26, 2024 trial date.

### A.    This Court should dismiss Counts 1 and 2 to cabin the government's overreach, like the Supreme Court just did in *Fischer*.

Rather than immunizing the forcible assault and civil disobedience statutes from free-speech scrutiny, this Court should strike Counts 1 and 2 from the Indictment. Although the Opposition claims it is quelling speech that it views as incitement, all evidence shows a complete lack of causation. That is, Mr. Wise's words did not cause anyone to do anything illegal. In fact, his words did not cause anyone to do anything. Thus, this Court should dismiss Counts 1 and 2 to avoid chilling speech that did not cause harm or move anyone to cause harm. Although the words "kill 'em" are objectionable, given the specific context, they should retain First Amendment protections. Federal courts have "traditionally exercised restraint in assessing the reach of … federal

criminal statute[s]." *Fischer v. United States*, No. 23-5572, 2024 WL 3208034, at *9 (U.S. June 28, 2024) (cleaned up).

The text of the forcible assault and civil disobedience statutes target conduct, not speech. Despite this, the government seeks to hold Mr. Wise accountable for the conduct of others even though there is no causal connection between Mr. Wise's words and bad actors' conduct. An example in *Fisher* shows that the reach of federal criminal statutes should be cabined rather than given the broad sweep federal prosecutors desire: "[A] football league might adopt a rule that players must not 'grab, twist, or pull a facemask, helmet, or other equipment with the intent to injure a player, or otherwise attack, assault, or harm any player.' If a linebacker shouts insults at the quarterback and hurts his feelings, has the linebacker nonetheless followed the rule? Of course he has." *Id.* at *5. The assault and civil disobedience statutes prohibit physical conduct that might inflict bodily harm or impede federal law enforcement officers in the performance of their duties; "trash talk is simply not of that kind." *Id.*

### B.    Factual clarification regarding Mr. Wise being yards, not feet, from the scrum.

Throughout its various filings the government misleadingly claims that Mr. Wise was "mere feet away" from protesters who were clashing with police outside the U.S. Capitol. *See, e.g.,* ECF 50 at 14 n.3. But as the government's own witness testified before the grand jury, Mr. Wise was "approximately a few yards" from the officers who were getting pushed. G.J. at 28, lines 16–20. One yard is three feet, so a few yards would be about nine to twelve feet. Thus, it is misleading to say Mr. Wise was "mere feet away." This is especially true since Mr. Wise was about 25 feet away from the protestors who were scuffling with police at a line of scrimmage.

Notably, although co-counsel was in D.C. and able to attend a DOJ lead tour of the U.S. Capitol for defense attorneys, she was prevented from measuring distances at the Upper West

Terrace. Nevertheless, defense believes the wall separating Mr. Wise from the action on the Upper West Terrace is about 52 inches tall. At 16:22:16, the defense believes Mr. Wise would have been standing on the outside of the ramp, which puts him about five to six feet away from that wall. The police fell into the planter box from the opposite edge, which is about eight feet wide. Mr. Wise was also viewing the fall at an angle, so the distance was likely an additional one to two feet further away, for a total of about 12-13 feet. This is consistent with Mr. Wise being "a few yards" away, and footage showing Mr. Wise location relative to the fall confirms this. Finally, at 16:22:38, Mr. Wise was about 25 feet (not "mere feet") from where protesters and police were clashing.

### C.    Speech is *per se* expressive and thus afforded First Amendment protections.

The Opposition argues that the words Mr. Wise uttered were not "expression" protected by the First Amendment. ECF 50 at 10. That argument is frivolous and fails because words are unquestionably expressive by their nature. Yet, the Opposition relies on numerous inapposite cases where the courts had to determine if *conduct* was expressive. "The First Amendment literally forbids the abridgment only of 'speech,' but [the Supreme Court has] long recognized that its protection does not end at the spoken or written word." *Texas v. Johnson*, 491 U.S. 397, 404 (1989) (holding that burning the American flag during a protest was expressive conduct protected by the First Amendment). Clearly, protecting free speech is at the heart of the First Amendment.

Here, we do not have to worry about "conduct" and whether it is expressive for First Amendment purposes. Regarding Counts 1 and 2, this case involves pure speech and thus squarely falls under the First Amendment's protections. In sum, the Opposition is half right in claiming that Mr. Wise's speech "is not expressive conduct." ECF 50 at 11. His speech is not conduct. But it is *per se* expressive.

**D.**    **The Opposition oversteps by arguing that all protesters lack First Amendment protections for their speech given "the violent context of January 6, 2021."**

The Opposition seeks to rely on *United States v. Nordean*, 579 F. Supp. 3d 28 (D.D.C. 2021) to abridge Mr. Wise's protected speech. ECF 50 at 6, 14. But the defendants in *Nordean* were "charged with *conduct* involving acts of trespass, depredation of property, and interference with law enforcement." *Id.* at 53 (emphasis added). That conduct "is simply not protected by the First Amendment." *Id.* And Mr. Wise is not alleged to have engaged such conduct. Thus, *Nordean* is an apposite.

Similarly, the Opposition's reliance on *Grayned* is also off base and misleading. The Opposition provides this quotation: "[W]here demonstrations turn violent, they lose their protected quality as expression under the First Amendment." ECF 50 at 14 (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 116 (1972)). But that language from *Grayned* is dicta because *Grayned* is a time-place-and-manner regulation case. *Id.* at 115-16, 121 (holding that "Rockford's modest restriction on some peaceful picketing represents a considered and specific legislative judgment that some kinds of expressive activity should be restricted at a particular time and place.")

The other cases the Opposition cites refer to expressive *conduct*, not words. For example, while burning a flag outside the Washington Monument may be protected "speech," burning that same flag to light a Congresswoman's desk ablaze would not be protected expressive conduct. *See e.g., Cameron v. Johnson*, 390 U.S. 611, 617 (1968) (the government may punish physical obstruction); *Cox v. Louisiana*, 379 U.S. 536, 555 (1965) (The First Amendment does not allow a "group of demonstrators" to "insist upon the right to cordon off a street, or entrance to a public or private building, and allow no one to pass who did not agree to listen to their exhortations."); *United States v. Gregg*, 226 F.3d 253, 267-68 (3d Cir. 2000) ("*Activities* that injure, threaten, or obstruct are not

protected by the First Amendment, whether or not such conduct communicates a message.") (emphasis added).

The Opposition also relies on a case that, in part, involved speech. ECF 50 at 12 (citing *United States v. Felix*, 996 F.2d 203, 208 (8th Cir. 1993)). Unfortunately, the following short parenthetical that the Opposition supplies is both inaccurate and misleading: "(holding evidence sufficient to prove aiding and abetting an assault where the defendant 'yelled words of encouragement, such as 'Get him,' 'Hit him again,' and 'Kill him'")." ECF 50 at 12.

First, the parenthetical is inaccurate in stating the court's "holding" was that the evidence was sufficient. Defendant Felix did not challenge the evidence's sufficiency. Rather, defendant Felix brought two distinct challenges: that the court erred by 1) not giving a lesser-offense instruction, and 2) not declaring a mistrial. *Felix*, 996 F.2d at 205. Second, the Opposition's parenthetical misleads by stating that Felix's words alone were sufficient. Here are the pertinent facts: A group of about twenty-five people were having a party at Felix's residence. *Id.* Robert and Bonnie Black Feather, Felix's neighbors, called the police and were informed that the police would not respond. *Id.* So, the Black Feathers walked over to the Felix residence. *Id.* An argument between the parties ensued. *Id.* Robert was pelted with full beer cans thrown by some of the partygoers, including Felix. *Id.* Robert was then intensely beat by the individuals at the party. *Id.* Robert suffered extreme physical injuries. *Id.*

> Numerous witnesses testified that **Felix was involved in the beating**. Some witnesses testified that after Felix's argument with Robert and her physical struggle with Bonnie, **[Felix] yelled "Get him!"** Eight witnesses testified that they had seen Felix in the group surrounding Robert as he was being beaten: some testified that they had seen **Felix beating him with a club**; some stated that they had seen **[Felix] punching him with her hands**; and others testified that they had seen her standing beside Robert but had not seen her strike him. Additionally, some witnesses testified that Felix had yelled such comments as, "Get him," "Hit him

again," and "Kill him," as Robert was being pummeled.

*Id.* at 205–06 (emphasis added). The holding and the facts *Felix* are a far cry from the Opposition's terse, misleading parenthetical. *Felix* does not support the argument that an aiding-and-abetting charge magically immunizes against First Amendment challenges. Felix was not just an alleged accomplice whose words incited a perpetrator. Evidence showed she was both a direct assaulter and had influence to direct others in their assaultive behavior.

     1.    **First Amendment protection is only stripped here by assuming Mr. Wise aided a specific (unnamed) perpetrator through incitive speech.**

The Opposition concedes that Mr. Wise's spoken words don't constitute fighting words or true threats. ECF 50 at 15 n.4. So, the only argument the Opposition has left is to claim that Mr. Wise's utterances make him an aider and abettor for inciting some unnamed perpetrator to assault some unnamed officer and cause a civil disturbance by those same words. ECF 50 at 11.

In looking at whether then-President Trump has immune from civil liability for allegedly inciting January 6 protesters with his Rally Speech, *Thompson v. Trump*, 590 F. Supp. 3d 46, 80 (D.D.C. 2022), *aff'd sub nom. Blassingame v. Trump*, 87 F.4th 1 (D.C. Cir. 2023) states: "The context in which those words are spoken and what is said matter." ECF 50 at 14. Defense does not disagree with that general premise but disagrees with the Opposition's conclusion that Mr. Wise's statements qualify as "incitement" to strip his words of First Amendment protection. First, as noted above, the Opposition misleads by claiming that "rioters mere feet away were engaging in assaults on law enforcement." ECF 14. At 16:22:16, "rioters" were not near Mr. Wise and did not hear or react to his words. At 16:22:38, clashing rioters were about 25 feet away from Mr. Wise, not mere feet. They could not have heard him during the back-and-forth scuffles at the scrimmage line. While Mr. Wise was not a fan at a football game, it is also true that his words could not be

heard by rioters, meaning he did not incite anyone.

**2.** **By refusing to file a bill of particulars, the government enables itself to argue that the Court lacks sufficient facts for ruling on Mr. Wise's as-applied First Amendment challenge.**

While simultaneously refusing to file a bill of particulars, the Opposition urges this Court to punt Mr. Wise's as-applied challenge until a Rule 29 motion at trial. ECF 50 at 9–10. But doing so would let the government have its cake and eat it too while leaving defense in the dark regarding the perpetrators and victims for Counts 1 and 2.

The Opposition cites only nonbinding district court cases that eschewed as-applied challenges as premature where the factual record was not developed. *See, e.g.*, *United States v. Gray*, 652 F. Supp. 3d 112, 132 (D.D.C. 2023) (challenging § 1752(a)(1) charge). But none of the cases cited in the Opposition come close to addressing the specific as-applied challenge presented here. Notably, cases concluding that as-applied challenges are premature without factual development have "routinely" involved challenges to 40 U.S.C. § 5104(e)(2)(G). *United States v. Adams*, No. CR 23-326 (JDB), 2024 WL 1716631, at *5 (D.D.C. Apr. 19, 2024). Not so. Mr. Wise brings an as applied challenge to Counts 1 and 2, which charge civil disorder and forcible assault. Moreover, the district court cases upon which the Opposition relies do not cite binding precedent and none adequately explain why an as-applied challenge should be postponed until a Rule 29 motion is brought. ECF 50 at 9–10. In addition, none of the cited cases concern a purely speech-based as-applied challenge to the assault and civil disobedience statutes. All these distinguishing features support this Court requiring a bill of particulars at least as to Counts 1 and 2 and then, based on that, a bill of particulars ruling on Mr. Wise's purely speech-based as-applied challenge pretrial rather than waiting for a Rule 29 motion.

**3.      The Court's mode of analysis in *O'Brien* finds no application here.**

The Opposition suggests that the analysis in *United States v. O'Brien*, 391 U.S. 367 (1968) should apply here. ECF 50 at 16. Not so. Here, Mr. Wise is charged with assault and civil disorder based on his speech, not his conduct. At issue in *O'Brien* was *conduct* that was arguably "expressive conduct," not pure speech. O'Brien burned his registration certificate. *Id.* at 375. The Supreme Court refused to "accept the view that an apparently limitless variety of *conduct* can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea." *Id.* at 376 (emphasis added). The expressive-conduct issue in *O'Brien* is not presented here where Mr. Wise's alleged conduct only involved words. Thus, *O'Brien* is inapposite.

**4.      Speech that aids and abets criminal conduct can support a criminal charge, but when pure speech is involved of the alleged aider and abettor, a principal and a victim must be identified or free speech is chilled.**

"[M]uch of what the First Amendment vigorously protects" some view as repugnant, like "flag burning, funeral protests, and Nazi parades." *McCutcheon v. Fed. Election Comm'n*, 572 U.S. 185, 191 (2014) (citations omitted). Despite the profound offense such spectacles cause, the First Amendment surely protects political protests despite popular opposition. *Id.*

Moreover, "[i]t is generally recognized that there can be no conviction for aiding and abetting [and inciting] someone to do an innocent act." *Shuttlesworth v. City of Birmingham, Ala.*, 373 U.S. 262, 265 (1963) (setting aside convictions "for inciting, aiding, and abetting a violation of the city trespass ordinance."). To the extent Mr. Wise viewed *excessive* force taking place and contemporaneously responded to that with words, he could have been encouraging lawful self-defense.

Charging aiding and abetting does not vaporize the First Amendment. The government must prove that Mr. Wise spoke the alleged words (e.g., "Kill 'em") with "the specific intent to facilitate the commission of [the crimes of assault and civil disobedience] by others." *United States*

*v. Ali*, 870 F. Supp. 2d 10, 20 (D.D.C. 2012) (cleaned up). "[L]iability for aiding and abetting requires that a wrongful act be carried out." *United States v. Hansen*, 599 U.S. 762, 771 (2023). But here, no one was incited by Mr. Wise's words and thus he did not aid or abet the commission of an illegal act. Aiding-and-abetting liability requires "an intent to bring about a particular unlawful act." *Id.* Yet, Mr. Wise had no such intent.

> **5.      The Opposition's reliance on *Woodhull* is misplaced because Woodhull presented a facial, pre-enforcement challenge by sex workers to a statute that targeted online sex trafficking.**

The Opposition's reliance on *Woodhull Freedom Found. v. United States*, 72 F.4th 1286, 1299 (D.C. Cir. 2023) is misplaced. There, the court rejected a pre-enforcement facial challenge by sex workers to § 1591(e)(4) because § 1591's "definition of 'participation in a venture' permissibly prohibits aiding and abetting a venture that one knows to be engaged in sex trafficking while knowingly benefiting from that venture." *Id.* at 1299. Because the provision did not have an expansive scope, but instead, proscribed only speech that fell within the traditional bounds of aiding-and-abetting liability, the proscribed conduct was not protected by the First Amendment. *Id.* Unlike in *Woodhull*, Mr. Wise does not bring a facial challenge to Counts 1 and 2. Although the First Amendment allows restrictions of "speech integral to criminal conduct," the government should be required to supply a bill of particulars at least as to Counts 1 and 2. Requiring that would enable the Court and the defendant to determine whether Counts 1 and 2 should survive a motion to dismiss and whether the government can argue that some specific protester was aided, abetted, and incited to violence against a specific officer because of Mr. Wise's utterances.

"The example usually given by those who would punish speech is the case of one who falsely shouts fire in a crowded theatre. This is, however, a classic case where speech is brigaded with action." *Brandenburg v. Ohio*, 395 U.S. 444, 456–57 (1969) (Douglas, J., concurring). With

that example, the speech and the reaction "are indeed inseparable and a prosecution can be launched for the overt acts actually caused." *Id.* (Douglas, J., concurring). According to Justice Douglas: "Apart from rare instances of that kind, speech is, I think, immune from prosecution." *Id.*

### 6.  Parroting statutory elements is not invariably sufficient for an indictment to fairly apprise a defendant of the essential facts so that he can marshal a defense.

Parroting the statutory language is not invariably sufficient. *United States v. Williamson*, 903 F.3d 124, 131 (D.C. Cir. 2018). For instance, in *Russell v. United States*, 369 U.S. 749 (1962), the government indicted the defendants for refusing to answer questions before a congressional sub-committee. *Id.* at 752. The statute barred individuals from refusing "to answer any question pertinent to the subject under inquiry" before a congressional committee. 2 U.S.C. § 192. The indictment contained no information identifying the matter "under inquiry" before the subcommittee. *Russell*, 369 U.S. at 752. The Court held that the indictment was insufficient. *Id.* at 764. Because "the very core of criminality" under the statute is "pertinency to the question under inquiry," the matter under inquiry is "central to every prosecution under the statute." *Id.* The Court thus held that the defendants could not be fairly informed of the charges against them unless the indictment identified the subject of the subcommittee's inquiry. *Id.* Here, too, Mr. Wise cannot be fairly informed of the alleged victims of his speech or the alleged perpetrators without notice of the same. Yet rather than filing a bill of particulars to inform Mr. Wise of the perpetrators and victims in Counts 1 and 2, the Opposition instead elects to throw a bunch of spaghetti noodles at the wall at trial to see if any of them stick. Defense cannot adequately prepare for an August 26 trial with the

lack of essential facts that approach creates.[1]

**E.    The Opposition misconstrues inapposite caselaw to justify refusing to specify the principal's identity for aiding and abetting liability to attach to Mr. Wise for the alleged assault and alleged civil disobedience charged in Counts 1 and 2.**

The Opposition does not say why the government will not identify who the principal is for Counts 1 and 2. Instead, the Opposition claims it does not have to specify a principal. The Opposition misleadingly cites *United States v. Staten*, 581 F.2d 878, 887 (D.C. Cir. 1978) to support the proposition that to find a defendant guilty as an aider and abettor, the principal need not be identified so long as the government proves that someone was the principal. ECF 50 at 25.  Hogwash.

To be sure, the issue in *Staten* was **not** a challenge to a lack of notice resulting in an inability to prepare for trial, which is what Mr. Wise raises here. The issue in *Staten* concerning aiding and abetting was whether sufficient evidence was presented at trial to establish that Staten aided and abetted a drug enterprise and whether the district court erred by instructing the jury on aiding and abetting liability. *Id.* at 886–87.

*Staten* found that "nothing about drug-possession offenses is so distinctive as to remove them from the ambit of aiding-and-abetting doctrine." *Id.* at 886. The case presented an appropriate "occasion for inquiry whether [Staten] was an aider and abettor since the Government's evidence hardly confined [Staten]'s role to that of a principal." *Id. Staten* makes clear that there must be a guilty principal before there can be an aider and abettor. *Id.* And *Staten* says nothing about the need for the government to provide Mr. Wise sufficient notice of who the principal was here based on the charges here.

---

[1] *See United States v. Raymond*, No. CR 21-380 (CKK), 2023 WL 6294178, at *1 (D.D.C. Sept. 27, 2023)(Ordering that the government file a bill of particulars because "Defendant cannot adequately prepare a defense without the Government identifying the true names of the victims alleged in the indictment.")

Although the evidence at trial "did not conclusively single out either Bobby Arnold, Versinia Thompkins" or Staten "as captain of the enterprise," *id.*, Staten obviously knew that either he, Arnold, or Thompkins was alleged to be the principal. Given those facts, "[i]t was not essential that the principal in the operation be identified so long as someone had that status." *Id.* Clearly, the facts in *Staten* distinguish that case. Staten was present in the apartment where the drugs were found, and the circumstances supported finding that Staten assisted Thompkins in attempting to remove the contraband from sight; Staten even concealed some of the drugs and money in his pockets. *Id.* at 887. Staten's conviction, whether as a principal or an aider and abettor, was well founded. But the Opposition's reliance on *Staten* is not.

The weakness of the Opposition's reliance on *Staten* is show by the Opposition's inclusion of a "see also" citation to the "withdrawn" and superseded opinion in Oliver North's case. ECF 50 at 25 (citing *United States v. North*, 910 F.2d 843, 913 (D.C. Cir.), *opinion withdrawn and superseded in part on reh'g*, 920 F.2d 940 (D.C. Cir. 1990)).

In *North*, "the jury acquitted North as a principal [for Count 6] but convicted him as an aider and abettor." *Id.* The trial court in *North* did not force the government to choose between arguing that Oliver North was a principal or an aider and abettor for Count 6. *Id.* And it is unremarkable the D.C. Circuit in *North* affirmed the district court's denial of Oliver North's specific request for a bill of particulars which sought to force the government to make that binary choice between principal and aiding and abetting liability, where Count 6 provided "a rather detailed recitation of the charge the government proposed to prove at trial" *Id.* (cleaned up).

### F.    *United States v. Connell* **supports the need for a bill of particulars here.**

The Opposition fails to rebut *Connell*'s import to this case; rather, the Opposition simply points out that aiding and abetting was not formally charged there even though aiding and abetting

is merely a theory of liability. ECF 50 at 17. The Opposition also claims that the defense has tons of evidence from which it can guess which victim(s) and which perpetrators(s) the government will identify for the first time at trial. ECF 50 at 24–25.

"A bill of particulars properly includes clarification of the indictment,"[2] which is what Mr. Wise seeks: clarification of the victim and perpetrator for Counts 1 and 2. Courts have granted bills of particulars in other § 231(a)(3) cases relating to the events of January 6. *Connell*, 2023 WL 4286191 at *6. In *Connell*, the indictment lacked identification of the officers. *Id.* at *2. The court looked to other indictments charging § 231(a)(3) and found that many contained at least some information about the officer involved, like their initials or name. *Id.* The court in *Connell* further held that even though there was no uniform approach to drafting indictments of § 231(a)(3) violations, the government in many cases "is clearly capable of providing some level of detail that would allow a defendant to identify the officer in question." *Id.* at *6.

Mr. Wise's Indictment falls short, as it fails to notify Mr. Wise of the victim's identity. Without that information, Mr. Wise is unable to prepare a defense. Here, there are too many officers depicted in the videos at Mr. Wise's level and on the Upper West Terrace to narrow the field of possible victims — including rows and rows of officers, all involved in the scrum, in the same location at the same time.

The Indictment does not identify the officer, the location of the alleged incident, nor the specific time the alleged incident took place. As in *Connell*, where the court ruled that this same lack of information necessitated a bill of particulars, Mr. Wise requires a bill of particulars

---

[2] *United States v. Raymond*, No. CR 21-380 (CKK), 2023 WL 6294178, at *4 (D.D.C. Sept. 27, 2023).

identifying the officer and their employment to prepare a defense. This is especially because video footage for the crucial timeframe the government has informally identified shows many hundreds of protestors and police at Mr. Wise's level and on the Upper West Terrace. Further, on May 3, 2024, the government provided the defense a long "list of officers with BWC from the relevant time period that were in the area of Mr. Wise, while noting the list was not exhaustive." From that list, the government, on May 12, 2024, identified via email "the following officers who most clearly either observe or are a part of the assaultive conduct on the Upper West Terrace at the relevant time" and listed the names of 24 officers, one of whom was not included in the May 3, 2024 list.

Here, a bill of particulars is necessary because, without the information identifying the victim officer, there is "'a genuine risk … of conviction resulting from different jurors concluding the defendant committed' the alleged acts against different officers." *Id.* at *4 (cleaned up) (internal citation omitted). All twelve jurors must unanimously agree on the specific person who was forcibly obstructed, impeded, and interfered with. "Stating the charges with precision is important because 'a jury in a federal criminal case cannot convict unless it unanimously finds that the Government has proved each element.'" *Id.* (quoting *Richardson v. United States*, 526 U.S. 813, 817 (1999)). If it is important for the jury to know the identity of the victim in reaching a unanimous verdict under Section 231(a)(3), it is also essential for a defendant to know the identity of the victim prior to trial to prepare a defense.[3]

Finally, the fact that the Indictment parrots the text of the statute, without further detail, means that the Indictment is insufficient. *Russell*, 369 U.S. at 765. Also, a bill of particulars may be necessary to satisfy jurisdictional requirements. *United States v. Brown*, No. 22-CR00214-JAD-

---

[3] In this regard, § 231 and § 111 are the same.

**Page 16**     Reply to Government Opposition (ECF 50)

DJA, 2023 WL 7017622 *1, *2 (D. Nev. Oct. 25, 2023). Therefore, the indictment does not contain enough facts to apprise Mr. Wise of his charges.

### G.    Count 1 does not identify a specific victim officer.

The Indictment does not specify any act of obstructing, impeding, or interfering that allegedly violated § 231(a)(3). It does not name the alleged victim. It does not provide which federally protected function was adversely affected. If Count 1 survives, a bill of particulars is necessary for Mr. Wise to adequately prepare a defense.

Beyond its First Amendment infirmities, Count 1 is deficient in at least two additional respects. First, it fails to identify the federal officer Mr. Wise allegedly obstructed, impeded, and interfered with. Second, Count 1 fails to specify which federal function was impacted. Thus, Mr. Wise asks this Court to order a bill of particulars as this information is not readily available in discovery, and those facts are necessary for him to understand the charges and prepare a defense to the allegations in Count 1 (and 2).

### 1.    The identity of the federal officer that Mr. Wise obstructed, impeded, and interfered with is jurisdictional and necessary for Mr. Wise to adequately prepare a defense.

First, a bill of particulars is needed here for jurisdictional purposes. The Opposition seeks to distinguish *United States v. Mostofsky*, 2021 WL 3168501 at *4 (D.D.C. July 27, 2021) on the basis that Mostofsky did not know if he was being charged with nonviolent speech, which prevented him from filing an as-applied challenge. ECF 50 at 23, 26. But the same is true here given the lack of essential facts: i.e., the identity of (a) a specific victim officer and (b) direct perpetrator who was encouraged by Wise's words. Without those facts, this Court and Mr. Wise are left in the dark, leaving the government free to fill in the blanks when it sees fit. That is not justice.

The Opposition lists the facts from the Complaint, case-specific discovery, and global

discovery as sufficient to put Mr. Wise on notice of the identity of (a) a specific victim officer and (b) direct perpetrator who was encouraged by Wise's words. ECF 50 at 23. If that were true, why won't the government just identify (a) and (b)? Worse, the Opposition then references a "reverse proffer highlighting key government evidence" and then wrongly claims that "[a]ll this information... has been available to the defendant for months." ECF 50 at 23. Not so. The reverse proffer was not provided to the defense until June 2, 2024. More important, the reverse proffer does not identity (a) the specific victim officer or (b) the direct perpetrator who was alleged encouraged by Wise's words to commit assault and civil disobedience as alleged in Counts 1 and 2.

### H.     The Opposition fails to identify a specific victim officer for Count 2 even though the identity of the assault victim is an element of the offense.

As this very Court explained in explained *United States v. Cua*, 657 F. Supp. 3d 106, 122 (D.D.C. 2023), Mr. Cua could "only be convicted under the physical-contact provision if he "assault[ed]" Officer G.L., and the Indictment, in fact, charged him with "assault[ing]" Officer G.L. (as well as "resist[ing], oppos[ing], imped[ing], intimidat[ing], and interfer[ing] with" him). *Id.* (citing Dkt. 90 at 3). There, unlike here, the assault charge, clearly informed Cua "of the precise offense of which he is accused," so that he could "prepare his defense" and "plead double jeopardy in any further prosecution for the same offense." *Id.* (citation omitted).

#### 1.     The identity of the federal officer Mr. Wise allegedly assaulted, resisted, opposed, impeded, intimidated, and interfered with is necessary for Mr. Wise to adequately prepare a defense and because juror unanimity is required that information must be disclosed.

To prove that a defendant is guilty beyond a reasonable doubt of violating 18 U.S.C. § 111(a)(1), the government must show that the defendant: "forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any [federal officer or agency employee] while engaged in or on account of the performance of official duties." *United States v. Kimes*, 246 F.3d 800, 807 (6th

Cir. 2001). Although the defendant need not be aware that the victim they are accused of assault-
ing, resisting, opposing, impeding, intimidating, or interfering with is a federal officer, the govern-
ment is still required to prove the victim's employment as the offense's jurisdictional element.
*United States v. Groseclose*, No. 21-CR-311 (CRC), 2024 WL 68248, at *7 (D.D.C. Jan. 5, 2024).

Moreover, the government must prove, and the jury must unanimously find the identity of
the victim. *See Richardson v. United States*, 526 US 813, 817–19 (1999) ("Federal crimes are made
up of factual elements, which are ordinarily listed in the statute that defines the crime. A (hypo-
thetical) robbery statute, for example, that makes it a crime (1) to take (2) from a person (3) through
force or the threat of force (4) property (5) belonging to a bank would have defined the crime of
robbery in terms of the five elements just mentioned. Cf. 18 U.S.C. § 2113(a). Calling a particular
kind of fact an "element" carries certain legal consequences.") Here, the victim is a necessary
element that the jury must unanimously agree upon. *United States v. Connell*, No. CR 21-0084
(PLF), 2023 WL 4286191, at *4 (D.D.C. June 30, 2023); *id.* at 5–7 (for § 231 charge); *United States
v. Warnagiris*, No. CR 21-00382 (PLF), 2023 WL 6926491, at *16 (D.D.C. Oct. 19, 2023); *id.* at 15
(for § 231 charge).

As in Count 1, dismissal or a bill of particulars is needed here for jurisdictional purposes.
Without the identity of the alleged victim, it is unclear how the government intends to prove the
jurisdictional element of 18 U.S.C. §§ 111(a)(1), and 2. Discovery does not specify the identity of
the individual Mr. Wise allegedly assaulted, resisted, opposed, impeded, intimidated, and inter-
fered with. The government included a long "non-exhaustive" list of "at least" nine officers. Be-
cause Mr. Wise did not touch or threaten any federal officer on January 6, 2021, the alleged vic-
tim's identity remains a mystery. Mr. Wise is "entitled to know the identity of the officer — or

officers — in question with respect to" his § 111(a) charge. *Connell*, 2023 WL 4286191 at *3.

Here, dismissal or a bill of particulars is needed because with assault charges "the government's failure to identify the victim in a Section 111(a)(1) charge creates 'a genuine risk ... of conviction resulting from different jurors concluding the defendant committed' the alleged acts against different officers." *Id.* at *4 (citing *Sayan*, 968 F.2d at 65). "Stating the charges with precision is important because 'a jury in a federal criminal case cannot convict unless it unanimously finds that the Government has proved each element.'" *Connell*, 2023 WL 4286191, at *4 (quoting *Richardson*, 526 U.S. at 817). If it is important for the jury to know the identity of the victim in reaching a unanimous verdict under § 111(a)(1), it is also essential for a defendant to know the victim's identity prior to trial, so that the defendant may understand the charge and properly prepare a defense. *Id.*

In *Connell*, the Court granted a bill of particulars because it is "essential for a defendant to know the identity of the victim prior to trial," so the defendant can properly prepare a defense. *Connell,* 2023 WL 4286191 at *4 Other January 6 defendants charged with 18 U.S.C. § 111 were given the initials and employment of the federal officer in their indictment. *Id.*; *See Warnagiris*, 2023 WL 6926941 at *8; *see United States v. GossJankowski*, Crim. No. 21-0123, Final Jury Instructions (D.D.C. Mar. 17, 2023) [ECF No. 166] at 30. Thus, Mr. Wise needs the identity and employment of the alleged victim federal officer to prepare his defense.

## I.    First Amendment implications weigh in favor of dismissing Counts 1 and 2 or at least requiring a bill of particulars.

Given the information the government has currently provided, Mr. Wise's actions that allegedly violated § 231(a)(3) and § 111(a) consists of words — i.e., "speech." Without any further information from the government, the First Amendment is implicated, and offers protection

against such government intrusion. With First Amendment protections, a motion to dismiss is proper for the § 231(a)(3) and § 111(a)(1) charges. If the government has information or plans to allege that Mr. Wise's conduct consisted of speech and other action (e.g., physical violence), then a bill of particulars is necessary to provide information about such actions for Mr. Wise to prepare a defense.

### 1.    Mr. Wise's speech does not constitute incitement.

For words to be incitement, the speaker must intend to incite imminent lawless action, and the words must be likely to produce that action. *Brandenburg*, 395 U.S. at 447. Here, the likelihood that Mr. Wise's words would produce lawless action is insufficient. Mr. Wise was in a crowd of thousands,[4] some of whom were excited, agitated, yelling, and chanting. The likelihood of an assaultive protestor hearing Mr. Wise's words is extremely low, considering the amount of people in the crowd all making noise themselves, including law enforcement. The likelihood that then, someone heard Mr. Wise's words and acted upon them specifically are also exceedingly low. The crowd at the Capitol building was large and loud. Mr. Wise did not have the ability to direct, influence, or control anyone in the crowd.

The words Mr. Wise uttered were unlikely to produce lawless action. In *Claiborne*, where there were emotional appeals that referenced violence, the First Amendment prevailed since no lawless action occurred *because of* such appeals. *Claiborne*, 458 U.S. at 902. Similarly, Mr. Wise's emotional appeal did not result in lawless action, for it neither harmed nor incited anyone. Therefore, Mr. Wise's words do not constitute incitement, especially since the government has not

---

[4] Ryan Lucas, *Where the Jan. 6 insurrection investigation stands, one year later*, NPR, Jan. 6, 2022, https://www.npr.org/2022/01/06/1070736018/jan-6-anniversary-investigation-cases-defendants-justice (The Justice Department estimated that 2,000 to 2,500 people entered the Capitol building on January 6, 2021).

alleged **who** Mr. Wise allegedly incited. Thus, *Claiborne* controls.

### 2.    Speech alone is insufficient for a § 231(a)(3) charge.

In another January 6 case involving § 231(a)(3) violations, the defendants' speech was paired with action. *Connell*, 2023 WL 4286191. One defendant then said, "Are you ready to push? Come on! Let's go!" Statement of Facts for Stipulated Trial, *United States v. Connell*, 1:21-cr-00084 at 13 (D.D.C. filed Feb. 5, 2021) [ECF No. 100]. The defendants and the crowd then pushed forward against the Capitol Police, forcing the police to retreat. *Id.* The link between the words and the actions in *Connell* is completely absent here. That distinction is crucial. Without that link the Indictment cannot stand consistent with First Amendment protections.

Further, the Eleventh Circuit held that § 231(a)(3) violations involve "more than mere words." *United States v. Pugh*, 90 F.4th 1318, 1330 (11th Cir., 2024). The defendant in *Pugh* challenged her indictment on the grounds that § 231(a)(3) was unconstitutional, in part because it violated the First Amendment. *Id.* at 1323-24. The court found that both "obstruct" and "impede" did not "apply to speech or expressive conduct, except at the margins," stating that "[o]ne cannot block a fireman or law enforcement officer with speech alone." *Id.* Looking to the word "interfere," the court held that "[a]lthough 'interfere,' by itself, could include speech, it is best read in Section 231(a)(3) alongside 'obstruct' and 'impede' as prohibiting someone from hindering a law enforcement officer ... *with more than mere words.*" *Id.* (emphasis added).

The Opposition tries to sidestep *Pugh*'s analysis by, again, confusing conduct with words. ECF 50 at 17. The Opposition goes so far as to claim that "every single unauthorized trespasser [outside the Capitol] represented a danger to the police and Congress...." ECF 50 at 17. But Mr. Wise did not "crowd" an "area where law enforcement was attempting to dispel rioters." ECF 50 at 17. He stood at a distance and was below the Upper West Terrance.

Here, the government's discovery and indictment of § 231(a)(3) and § 111(a)(1) suggests that Mr. Wise's conduct involved speech alone, without any obstructive or assaultive conduct by Mr. Wise. The government has not alleged any facts about any physical altercation that Mr. Wise was involved with personally, nor any **specific** physical altercation that he aided, abetted, and willfully caused. Where in *Connell*, the defendant's speech was paired with action, Mr. Wise's speech was part of a cacophony of sounds and utterances.

### A.    This Court should order that the government identify the perpetrator(s) and victim(s) for Counts 1 and 2 so that Mr. Wise can prepare his defense.

Trial courts have discretion to determine whether a bill of particulars should be provided, and the court should grant a motion for a bill of particulars to the extent it believes it is necessary to allow the defendants to "adequately prepare for and avoid surprise at trial." *Warnagiris*, 2023 WL 6926491 at *13.

Remarkably, the Opposition opposes identifying the victim(s) for Counts 1 and 2 by trying to rely on the not-binding case of *United States v. Miller*, 883 F.3d 998, 1003 (7th Cir. 2018), in which the indictment is completely distinguishable. There, Miller was charged with mail fraud and aggravated identity theft. *Id.* at 1000. He had possessed personal information of at least 200 people, which he kept in a notebook. *Id.* He used that information to open credit cards with various banks under those individuals' names. *Id.* The indictment provided detailed information about the notebook and what information it contained. *Id.* at 1001. The defendant was convicted and subsequently appealed his conviction, arguing that the indictment was insufficient because it did not identify the victims. *Id.* at 1001-02. The *Miller* court held that the indictment was sufficient without the names of the victims because it contained other "limiting detail[s]," like "the time frame in which he committed the offenses, language of the pertinent criminal statutes, and detailed means by which

[the defendant] committed these offenses." *Id.* at 1003. The court held that the defendant had been sufficiently notified of the charges and did not need the names of the victims, which were contained in the notebook. *Id.* Unlike here where **no** victim is named, Miller's 21-page indictment specified Victims A, B, and C, with further details about the fraud they suffered. It further described how Miller possessed "a notebook containing more than 200 names, dates of birth, and Social Security numbers of various persons" which were used to commit mail fraud. *See* U.S. Dist. Ct. No. Dist. of Illinois Case 1:11-cr-292, *USA v. Ryan Miller and Benjamin Megginson*, at 12, 13, *available at this Pacer hyperlink:* Indictment.

Similarly weak is the Opposition's reliance on *United States v. Mendez-Colon*, 417 F. App'x 320, 322 (4th Cir. 2011) for the proposition that an indictment need not name an assault victim to survive scrutiny. There are many problems with this citation. First, Mendez-Colon did not challenge the fact that the indictment failed to name the victims. *Id.* Second, by failing to raise the issue in the district court, Mendez-Colon had to surmount the plain error standard of review. *Id.* Third, "the record [made] it clear the charged conduct related to the assaults of the two inmates and specifies the count relating to each inmate." *Id.* at 322. Thus, Mendez-Colon was on notice and had sufficient facts to support his guilty plea. In short, the Opposition's reliance on *Mendez-Colon* serves only to distract.

## III.    Conclusion

Mr. Wise's speech is protected by the First Amendment. And has Sixth Amendment and Due Process safeguards requiring that he be adequately advised of the charges against him so that he can properly defend against them. Mr. Wise did not touch or threaten any law-enforcement officer on January 6, 2021.

Thus, for the reasons set forth above, and in the Motion, it is respectfully requested that the Court enter an order affording the relief requested in ECF 33 & 39.

Respectfully submitted on July 2, 2024.

*s/ Kurt Hermansen*
Kurt David Hermansen, CA Bar 166349
Supervisory Assistant Federal Public Defender
859 Willamette St. Suite 200
Eugene, OR  97401
Tel: (619) 436-8117
Fax: (541) 465-6975
Email: kurt_hermansen@fd.org

**Attorney for Defendant Jared Lane Wise**
