**In the United States District Court
for the District of Columbia**

| | |
|---|---|
| **United States of America**, | Case No. 1:23-cr-00184-RDM |
| Plaintiff, | |
| v. | Motion to continue trial to a date on or after September 16, 2024; and |
| **Jared Lane Wise**, | Motion to compel discovery |
| Defendant. | |

Under the Fifth Amendment's Due Process Clause and the Sixth Amendment right to effective assistance of counsel, Defendant, Jared Wise, through counsel, Kurt David Hermansen, moves this Court and the government to accommodate a trial that commences on or after September 16, 2024 (ideally a date in October).

Further, this Motion also seeks to compel discovery that the defense needs to prepare for trial. Undersigned counsel hereby advises that a trial in August — without knowing in advance who the unnamed victim of Counts One and Two is — presents an insurmountable obstacle to counsel's ability to effectively represent Mr. Wise. To avoid violating Mr. Wise's constitutional rights to effective assistance of counsel and to a fair trial, defense counsel avers that the following prerequisites are needed: (1) a trial date on or after September 16, 2024, and (2) requiring that the government officially specify who the victim of Count One and Two is (i.e., through a superseding indictment or a Bill of Particulars).

### A.      Motion to Continue Trial Date

The defense acknowledges agreeing to advancing the September 5, 2024 date to August 26, 2024; a date that allowed co-counsel to stay on the case for trial and that was available on both attorneys' calendars once undersigned counsel cancelled his vacation plans. However, the defense continues to maintain that a later date (ideally in October) would serve to ensure that Mr. Wise's constitutional right to a full and effective defense preparation. Although the defense team is doing everything possible to be prepared for the currently scheduled August 26, 2024 trial, the defense hopes that one or more of the Court's or the lead AUSA's trials will resolve to permit trial in this case to take place **on any date on or after September 16, 2024 (ideally in October)**.

### 1.      Government discovery obligations have not been met.

Notably, the government should adhere to a "generous policy of discovery" in criminal cases under which it discloses any "information that a defendant might wish to use." *Turner v. United States*, 582 U.S. 313, 324 (2017) (citation omitted). As the Supreme Court has recognized, "and as the Government agrees," "this is as it should be." *Id.* (cleaned up)(citing *Kyles v. Whitley*, 514 U.S. 419, 439 (1995)(explaining that a "prudent prosecutor's better course is to take care to disclose any evidence favorable to the defendant.")(cleaned up).

That enlightened approach has not been followed in the prosecution of Mr. Wise. Because discovery regarding January 6 is immense, the sheer size doesn't allow the defense to pinpoint where to look for evidence. It is impossible to find what the defense needs without the focusing power of a Bill of Particulars for at least Counts One and Two. Without knowing the victim, how can Mr. Wise prepare an effective defense?

2.      **The defense needs more time to prepare for trial.**

In short, the need to find evidence without direction from the government makes an August 26 trial date incompatible with Mr. Wise's Sixth Amendment right to effective assistance of counsel.

Defendant respectfully requests that any suitable calendar opening that may arise be reserved for a trial in this matter. **Lead government counsel previously advised that he has the following trials scheduled**:

| Date | Trial |
|---|---|
| Monday **09/16/2024** | |
| Monday **09/23/2024** | |
| Monday 09/30/2024 | *U.S. v. James Allen Knowles*, 23-cr-275-1 (JMC)) |
| Monday 10/07/2024 | *U.S. v. Theo Hanson*, 23-cr-57 (RCL) |
| Tuesday 10/15/2024 | *U.S. v. David Scott Kuntz*, 23-cr-427 (DLF) |
| Monday **10/21/2024** | |
| Monday **10/28/2024** | |
| Monday **11/04/2024** | |
| Monday 11/18/2024 | *U.S. v. Joshua Kaleb Youngerman*, 23-cr-269 (TJK) |
| Monday **11/25/2024** | |

B.      **Motion to Compel Discovery**

1.      **Mr. Wise requested, but has not received, disclosure of Jared Wise's location at all times, on January 6, 2021, when he was on the Capitol Grounds.**

In his June 2, 2024 discovery letter, the AUSA provided a table to facilitate the review of CCTV video footage while making clear that the information is not exhaustive of the defendant's

movements, nor of the CCTV evidence the United States may seek to introduce at trial. In a June 24, 2024 email the AUSA repeated that the government had produced or provided access to the videos and images of the defendant at the U.S. Capitol building on January 6, 2021, "that it has identified to date and **which it currently intends to use during its case-in-chief."** (emphasis added). To provide effective representation, defense counsel needs the government to identify anywhere Mr. Wise was on January 6, 2021, near where teargas, flashbang grenades, baton strikes, or other uses of force occurred. Mr. Wise's exposure to those events before he confronted officers with harsh criticism and before he allegedly said "kill 'em" is crucial to Mr. Wise's state of mind and intent. The defense does not have the tools (e.g., facial recognition software) to review all videos from that day and search for Mr. Wise. The volume of video provided by the government makes it impossible.

    **2.**    **Providing evidence in "global discovery" does not help Mr. Wise prepare for trial.**

Filed under seal is a concerning example of what the government provided on May 14, 2024. Ex. A. The government claimed this bird's-eye view of Mr. Wise was already made "available" to us in the global discovery. A red circled image in the middle-lower-left area of the photo is allegedly Jared Wise. We do not possess the technology, resources, or **time** to find images like this in global discovery ourselves.

Why is this relevant? Knowing Mr. Wise's location during the hours leading up to the events at 16:22:16, will enable the defense to show the flashbang grenade bombardment and teargas Mr. Wise experienced and witnessed. It will also show other forms of crowd dispersal and use of force violations, all of which triggered his PTSD and dissociative state. Several of the videos the

government is providing the defense in case-specific discovery are open-source. The open-source videos containing footage between 16:19 and 16:23 hours can be synced with the body worn camera footage the government has highlighted for us. However, there are a handful of other open-source videos in which the time cannot be established by the defense with our limited time and resources before for the August 26, 2024 trial date. As the government has not produced (or perhaps, does not possess) the metadata for those videos, we are unable to establish the timeframe they cover. To be clear, the AUSA has provided us with Jared's location for certain spans of time, but **we are missing the following *relevant* timeframes: 13:20 to 14:02 hours and 14:49– 16:19 hours**.

> **3.      The defense needs a complete list of police grenade and gas use on the West Plaza from 13:20 to 14:23 hours and from 14:49 to 16:19 hours.**

The government responded to this request in a June 2, 2024 discovery letter, stating: "the United States does not have and does not anticipate having a 'detailing [of] the number of times each weapon or munition was used on January 6, 2021' or a 'complete list of police grenade and gas use on the West Plaza.' The defense has access to the body worn camera footage and can review these videos to the extent it deems doing so appropriate."

The government's suggestion that defense counsel view body worn camera footage to determine which police munitions Jared Wise may have seen is not practical, especially considering counsel is unaware of Wise's exact location from 13:20 to 14:23 hours and from 14:49 to 16:19 hours. As the government has provided neither Mr. Wise's location nor a list of the munitions used on January 6 near Mr. Wise's locations, defense counsel is unable to provide effective assistance.

4.     **The defense needs the name(s) of the specific protestor(s) Mr. Wise is alleged to have aided and abetted in the felony civil disorder charge (Count One) and the felony forcible assault charge (Count Two).**

The government's response to this request is contained in his June 2, 2024 discovery letter, which states:

> [T]the United States provides the below **nonexhaustive** list of cases it has identified in which defendants were charged with assaultive conduct under either 18 U.S.C. § 111 or 18 U.S.C. § 231, based on conduct on the Northwest Courtyard on the Upper West Terrace at the time in question. The undersigned has identified these cases through conferring with colleagues working on January 6, 2021 prosecutions; accordingly, the below list is **not intended to be exhaustive.**
>
> - *United States v. Michael Leon Brock*, 21-cr-500 (CJN)
> - *United States v. Thomas Harlen Smith*, 21-cr-599 (RBW)
> - *United States v. Donnie Wren*, 21-cr-599 (RBW)
> - *United States v. Kenneth Joseph Owen Thomas*, 21-cr-552 (DLF)
> - *United States v. Jesse James Rumson*, 23-cr-70 (CJN)

*Id.* (emphasis added).

Even if this list *were* exhaustive, the defense does not have enough time to obtain and review the discovery from all those cases before the trial date.

There are a total of at least 2,508 **files** in global discovery relating to these five defendants who may *or may not* be people the government is asserting Mr. Wise could have been aiding and abetting (see the following table).

| Defendant Name | Number of files in global discovery *(using "CODE_IndivDefendant" filter)* |
| --- | --- |
| Brock, Michael | 36 |
| Smith, Thomas | 45 |
| Wren, Donnie | 1,189 |
| Thomas, Kenneth J.O. | 1,238 |

| Defendant Name | Number of files in global discovery *(using "CODE_IndivDefendant" filter)* |
|---|---|
| Rumson, Jesse | 0[1] |

Why is this relevant? The defense needs to interview the people Mr. Wise is alleged to have been aiding and abetting if their counsel will allow it. The defense needs to review the discovery in the respective cases to locate additional relevant BWC and open-source videos, and any other evidence that might assist in the defense of Mr. Wise.

5.      **The defense needs the name(s) of the specific victim officer(s) Mr. Wise is alleged to have forcibly assaulted (in violation of 18 U.S.C. § 111(a)) and the name of the specific victim officer(s) of the civil disorder charge (in violation of 18 U.S.C. § 231(a)(3)).**

On January 16, 2024, defense counsel asked the government for the "names of any alleged victim officers." No response to this request was made until the government referenced it in their April 23, 2024 discovery letter:

> You have requested the identities of alleged victims, their disciplinary records, any written statements about alleged victims, and their body worn camera footage. See Requests 2a, 2b. To the extent relevant to this case, this information has been provided through case specific and global discovery and will continue to be provided. Additionally, the government objects to a blanket request for officers' personnel records. Please provide an explanation as to the relevance and materiality of these items in this case and identify the specific items within the file that you are requesting. In advance of trial, the government will produce any additional information required to comply with its Jencks and Giglio obligations regarding specific officers if the government decides to call such officers as witnesses.

---

[1] Within the Relativity database, case-specific discovery, if uploaded at all, is usually tagged with a filter named "*CODE_IndivDefendant*" in which the user can select a specific name of a specific Defendant. There is no such tag for Mr. Rumson. When the name "Rumson" is searched in the global database without any filters, 28 documents result. These documents do not appear to be targeted, case-specific discovery files.

On April 30, 2024, defense counsel emailed government counsel:

> Regarding the specifics of your letter, we understand that some requests were beyond the limits of Rule 16. At the same time, many of our requests go to the heart of the defense case. I understand that the government has one prosecution-focused view of what happened and has its case in chief ready. But the defense needs a broader camera angle to capture the complexity of what Jared Wise did, did not do, and experienced during the worst moments of the day that could provide a legal defense.
>
> We also need to know the names of alleged victims of the alleged assault and 231 charge. Without that information we're operating in the dark.
>
> We will soon be asking for discovery of the names or body camera numbers of certain law enforcement officers whose body cameras would have capture key video angles that we need to watch.
>
> If we are left responsible for looking through global discovery to find what we need, beyond what you will use in your case-in-chief, we'll need a lot more time to prepare for trial. Given the enormous technological capabilities at your disposal, we were hoping to expedite matters by asking for specific things to be produced as "case-specific discovery" as opposed to "global" discovery so that we can pinpoint what is need for our case in chief.
>
> If you are unwilling to reproduce global discovery, we respectfully request:
>
> - You provide us the "BegBates" numbers for documents in Relativity. Providing this information would help us expedite trial preparation by the defense.
>
> - You provide us with the "title" for defense-pertinent videos in evidence.com.  Providing this information would also help us expedite trial preparation by the defense. If we must look through all the videos in evidence.com to find videos of what was occurring around Jared Wise and with Jared Wise on J6, our task will take many months given our very limited resources.

On May 3, 2024, the government responded with an *unexhaustive* list of seventy officers:

> [W]ith BWC that may depict the area where your client was present, but it does not include officers who may have been nearby securing

other locations (e.g., the Upper West Terrace Door, the top of the
northwest stairs, the Senate Wing Door, or the Parliamentarian
Door). Further, it is important to note that this list is not meant to
be exhaustive, but merely a supplement to what the government has
previously provided depicting your client and a supplement to your
own review of the BWC footage based on the tools provided in global
discovery. I compiled this list largely by using the global discovery
tools available to you. You should use the tools available to you in
global discovery to conduct your own investigation to the extent you
believe it is appropriate.

On May 12, 2024, the government identified from the May 3, 2024 list of seventy officers,

an *unexhaustive* list of twenty-four officers who "most clearly either observe or are a part of the

assaultive conduct on the Upper West Terrace at the relevant time."

In their June 2, 2024 discovery letter, the government identifies an *unexhaustive* list of nine

officers who are alleged to be victims. The government is sure to clarify:

"[T]he list of **victim** officers would include ***at least*** the following [nine] officers."

(emphasis added). The letter also states:

First, as you know, global discovery includes use of force reports
from January 6, 2021. As referenced in the first global production
letter you received, use of force reports and other documents related
to use of force policies were included in Productions 9, 10, 13, and
28. The United States encourages the defense to make use of global
discovery, including by searching the names of officers through rel-
evant databases for responsive material.

Second, as part of its trial preparation, the United States will identify
which, if any, law enforcement officers it will call to testify at trial.
When such officers are identified, the United States will identify dis-
coverable statements, interview reports, and disciplinary records,
and will produce those records to you.

The government's suggestion that defense counsel simply "[search] the names of

officers" in the global discovery database (currently consisting of 8,150,982 files) is not

practical.  Defense counsel's paralegal has had several one-on-one meetings with the representatives of Deloitte and they have personally assisted her in creating the most effective search terms and filtering strategies.  During these meetings, defense counsel's paralegal learned the following:

- o Searching **documents** in global discovery is largely reliant on the *quality* of the document and the document being properly processed through Optical Character Recognition (OCR).  Unfortunately, the OCR quality in the global discovery is inconsistent.

- o Searching **media** in discovery,  is reliant on the quality and accuracy of the AI-generated **transcription** of the media. In the global discovery database,  if transcriptions of audio or video files exist, the transcript is dependent on the clarity of the voice speaking.  A mumbling voice, for example, may not be transcribed as accurately as a voice clearly pronouncing every word.

- o Unlike in searches for individual *defendants* using the "*CODE_IndivDefendant*" filter), such tags do not exist for individual *officer* names.

- o Defense counsel is not familiar with the internal procedures and form numbers and titles used by the Metropolitan Police Department which could otherwise be helpful in searching for files.

- o Even if the government's list of 24 witness and victim officers *were* exhaustive, and assuming the files were processed perfectly by OCR, and assuming no misspellings of the officer's last name, the following table depicts the number of resulting files *(not pages)* the defense team would need to review over the next

eight weeks to locate the discovery it requires to effectively defend Mr. Wise.
To protect their identities the officers' initials are used in the table below. A
table including the officer's full names is filed under seal as Ex. B.

| Officer | Global Discovery Search Result (*number of files*) | Officer Included in the Unexhaustive List of Nine *Victim* Officers? | Officer Included in the Unexhaustive List of 24 *Witness* Officers? |
|---|---|---|---|
| (T.A.) | 25 | X | X |
| (D.B.) | 130,984 | X | X |
| (C.B.) | 949 | X | X |
| (V.B.) | 5 | | X |
| (T.B.) | 569,755 | X | X |
| (E.C.) | 299 | X | X |
| (D.C.) | 350 | | X |
| (P.D.) | 226,153 | X | X |
| (K.D.) | 16 | | X |
| (J.D.) | 170 | | X |
| (H.G.) | 155,366 | | X |
| (J.H.) | 8 | X | X |
| (F.K.) | 59,712 | | X |
| (D.P.L.) | 18 | X | X |
| (T.L.) | 168 | | X |
| (S.O.) | 130,203 | | X |
| (A.P.) | 683 | | X |
| (M.P.) | 220 | | X |
| (K.R.) | 1,357 | | X |
| (L.T.) | 3,029 | | X |
| (M.V.) | 7 | X | X |
| (C.V.) | 7 | | X |
| (K.V.) | 12 | | X |
| (Q.W.) | 571,914 | | X |
| | **GRAND TO-TALS:** | **928,198 files** | **1,851,410 files** |

**6.      The defense needs all case-specific discovery, including documents with "skipped" serial numbers.**

Defense counsel has requested from the government all discovery with the prefix FBI serial number 0176-SA-3577551. This is the FBI serial number assigned to the investigation of Mr. Wise

Page 11 — Motion to continue trial to a date on or after September 16, 2024; and Motion to
Compel Discovery

by the FBI. Below are the serial numbers of the documents that were surely skipped. Defense counsel is only certain these numbers were skipped because discovery with the serial numbers before *and after* these missing numbers was already provided). There are likely more documents that were skipped.

| |
|---|
| 0176-SA-3577551_00000**[xx]**_1A0000**01**-0000**03** |
| 0176-SA-3577551_00000**[xx]**_1A0000040-0000001 |
| 0176-SA-3577551_00000**[xx 76]**_1A0000044-0000001 |
| 0176-SA-3577551_00000**[xx 80]**_1A0000046-0000001 |
| 0176-SA-3577551_00000**[xx 83]**_1A0000049-0000001 |
| 0176-SA-3577551_00000**[xx 84]**_1A0000050-0000001 |
| 0176-SA-3577551_00000**[xx 85]**_1A0000051-0000001 |
| 0176-SA-3577551_00000**[xx 88]**_1A0000054-0000001 |
| 0176-SA-3577551_0000007 |
| 0176-SA-3577551_0000022 |
| 0176-SA-3577551_0000031 |
| 0176-SA-3577551_0000048 |
| 0176-SA-3577551_0000076 |
| 0176-SA-3577551_0000091 [2] |

Citing Rule 16 and repeatedly referencing what they'll use for the "case-in-chief," the government claims the defense doesn't get to obtain the FBI reports that concern Mr. Wise. But cases like *United States v. Stever*, 603 F.3d 747, 753 (9th Cir. 2010) shows that is not so. Rule 16(a)(1)(E)(i) provides a broad mechanism for production of all documents within the government's possession, custody, or control that are material to preparing the defense. *Id.* Rather than the higher bar of *Brady*, the government must produce "information helpful to the defense" under Rule 16. *Id.* at 752. As in *Stever*, the discovery violation implicates the Fifth and Sixth Amendment right to present a complete defense under *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) and

---

[2] This serial number is also referred to in section 10 below.

*Crane v. Kentucky*, 476 U.S. 683, 690 (1986). *See United States v. Price*, 566 F.3d 900, 903 (9th Cir. 2009). Notably, *Brady* suppression occurs when the government fails to turn over even evidence that is 'known only to police investigators and not to the prosecutor.'" *Price*, 566 F.3d at 908 (quoting *Youngblood v. West Virginia*, 547 U.S. 867, 869–70 (2006) (quoting *Kyles v. Whitley*, 514 U.S. 419, 438 (1995))).

The proper test for pretrial disclosure of exculpatory evidence should be an evaluation of whether the evidence is favorable to the defense, i.e., whether it is evidence that helps bolster the defense case or impeach the prosecutor's witnesses. *Stever*, 603 F.3d at 753; *Price*, 566 F.3d at 903. If doubt exists, it should be resolved in favor of the defendant and full disclosure made. The government should therefore disclose all evidence relating to guilt or punishment which might reasonably be considered favorable to the defendant's case, even if the evidence is not admissible so long as it is reasonably likely to lead to admissible evidence. *Price*, 566 F.3d at 911–13.

In its June 2, 2024 discovery letter, the government stated: "You have requested 'skipped' serial numbers from the FBI's case file in this matter. … There is no basis to assert that every document within an FBI case file is discoverable, and you have cited no such authority. The United States is aware of its discovery obligations, has complied, and will continue to comply with them, including my producing material from the FBI's case file regarding the defendant."

The defense needs Mr. Wise's FBI personnel records, especially the following:

- his use-of-force training records.

- his 2004 FBI academy training by the Anti-Defamation League.

- his performance reviews while employed by the FBI.

- his review of his supervisor, Charles Berger while Wise was employed by the
  FBI.

On January 16, 2024, defense counsel requested from the government the entirety of Mr. Wise's FBI personnel file. On April 23, 2024, the government asserted that the request was "overbroad or irrelevant to the facts of the case." On May 14, 2024, defense counsel greatly narrowed the request to the above listed bullet points. On June 2, 2024, the government's discovery letter asserted:

> You have requested certain of the defendant's FBI records. … As previously noted in our April 23, 2024 letter, the United States is unaware of any basis on which this material is discoverable. As noted in Section I of this letter, to the extent you continue to seek this information, we request that you provide a legal basis and an explanation of the relevancy of this material to this case."

As has already been made clear to the government (and the Court in Mr. Wise's still-pending motion for a subpoena for Mr. Wise's FBI file), that FBI file, or at least the above listed bullet points from that file, is needed to show that Mr. Wise was uniquely positioned on January 6, 2021, to conclude that he was witnessing and experiencing extreme uses of force that law enforcement deployed against Trump supporters. That use-of-force started hours before 16:00 hours and at great distances from the Capitol Building itself. Although the government's case will focus on events immediately surrounding 16:00 hours, the defense needs to educate the jury about what Mr. Wise experienced leading up to the events charged in the Indictment because (as our timely expert notices inform the government) those events affected Mr. Wise's mental state and intent and explain some of his words and actions. To be fair to Mr. Wise, the jurors need to view those words and actions in the context of what Mr. Wise experienced that day.

7.    **The defense need the names and body worn camera numbers of specific offic-
ers and the names, biographical information and any collected cell phone or
camera footage from specific protestors.**

In their June 2, 2024 discovery letter, the government responded to defense requests for

the identity of specific officers and specific protestors, along with any seized cell phone footage

from the devices of the specific protestors as follows:

> You have requested the names and/or body worn camera numbers
> for various officers indicated in photographs. … You have also re-
> quested the names and biographical information for various individ-
> uals holding cell phones, as well as cell phone footage they took. …
> In a good faith effort to provide you with any such information, the
> undersigned has conferred with colleagues working on January 6,
> 2021 prosecutions, but I have been unable to identify any of the in-
> dividuals you indicated to date. To the extent the United States
> identifies such information, and it is otherwise discoverable, it will
> be provided to you.

While defense counsel appreciates the efforts of government counsel, considering the gov-

ernment has the resources to locate Mr. Wise (who appears like a speck) in an aerial shot from

what appears to be at least one hundred feet away, defense counsel asks the Court to compel the

government to use additional available resources to identify the specific people in these videos so

that defense counsel can investigate further. The requests for information relating to specific of-

ficers and specific protestors are filed as exhibits to this motion since they include photographic

snapshots from discovery. *See* Exs. C–J.

**8.      The defense needs any pole cam footage collected during the surveillance of Jared Wise and reports of any additional surveillance of any type (e.g., aerial helicopter surveillance) not yet received in discovery.**

On January 16, 2024, after reviewing a February 15, 2023 FBI "Request for Pole Camera" report in case-specific discovery (See WISE-000291), defense counsel requested any pole camera footage.  Defense counsel renewed the request on May 14, 2024.

On June 2, 2024, in a discovery letter, the government asked defense counsel to "(1) identify the provision of Rule 16 or any other legal authority that supports your request; and (2) provide an explanation of the relevance and materiality of the requested materials to this case."

This information is needed both for the motion to suppress evidence and for possible impeachment of the investigation of this case.

**9.      The defense needs information relating to the specific exceptions that warranted Wise's inclusion on the TSA Watchlist (ESEL).**

On January 16, 2024, after reviewing an April 1, 2023 email between the FBI and the Terrorist Screening Center in case-specific discovery (See WISE-000297), defense counsel requested information relating to the specific exceptions that warranted Mr. Wise's inclusion on the TSA Watchlist.  Defense counsel renewed the request on May 14, 2024.

On June 2, 2024, in a discovery letter, the government asked defense counsel to "(1) identify the provision of Rule 16 or any other legal authority that supports your request; and (2) provide an explanation of the relevance and materiality of the requested materials to this case."

This information is needed both for the motion to suppress evidence and for possible impeachment of the investigation of this case. The investigation of this case is tainted by a confidential informant (whose identity is known to the defense) who defrauded Mr. Wise in a real estate transaction and thus has a motive to lie to investigators and fabricate evidence. Yet, the FBI refuses to

meet with Mr. Wise to hear his detailed, documented proof of the fraudulent real estate deal involving property in France, which clearly falls under FBI jurisdiction.

This information is needed both for the motion to suppress evidence and for possible impeachment of the investigation of this case. It is also needed for the vindictive/selective prosecution motion.

**10.    The defense needs information collected by and relating to FBI sources and informants.**

On January 16, 2024, after reviewing the following discovery:

- WISE-002785 (a March 24, 2022 FBI CHS Reporting Document); and

- WISE-000340 (an April 14, 2023 FBI FD-1023 Reporting Document),

defense counsel requested "any documents, media, or records relating to all CHS's" and "*all* available images and recordings, located using facial recognition software" as well as "all documents relating to CHS Number S-00106573" and "Secondary Case Number 176-SA-3558667." Bates WISE-002785 identifies the assigned FBI source numbers (including S-00106573, along with two other source numbers) for a "team of open-source researchers" and other sources, who collaborated with the FBI to identify Capitol rioters. According to the report, these sources can conduct facial recognition queries against an extensive collection of open-source January 6 video footage. Defense counsel does not possess these resources.

Also on January 16, 2024, after reviewing the following discovery:

- WISE-000448 (a March 22, 2022 FBI FD-1057 Report); and

- WISE-000454 (a March 28, 2022 FBI FD-1057 Report),

defense counsel requested, as it applies to WISE-000448, "the name of the informant who 'told FBI that Jared WISE … [told informant that Wise] … was inside the US Capitol building on January 6, 2021'"; and, as applicable to WISE-000454, "[t]he name of the informant who, on January 26, 2022, reported to the FBI that Wise told them he was inside the US Capitol building on January 6, 2021." Defense counsel believes this is the previously mentioned confidential informant who defrauded Mr. Wise in an international real estate transaction.

On April 23, 2024, in a discovery letter, the government responded to these requests:

> In several requests, *[sic]* have requested information about individuals that have provided information to the United States. *See* Requests 25, 30, 31, 33, 48. The defendant is not entitled to this information. The information, to the extent it exists, is privileged. *See Roviaro v. United States*, 353 U.S. 53 (1957) (holding that the government enjoys a qualified, though "time-honored" privilege to withhold the identity of its informants from criminal defendants); *United States v. Brodie*, 871 F.2d 125, 128 (D.C. Cir. 1989); *In re Sealed Case*, 856 F.2d 268 (D.C. Cir. 1988) 4 (law-enforcement privilege); *In re Anthem, Inc. Data Breach Litig.*, 236 F. Supp. 3d 150 (D.D.C. 2017); *Sulemane v. Mnuchin*, No. 16-1822, 2019 U.S. Dist. LEXIS 5, 2019 WL 77428 (D.D.C. 2019) (law enforcement privilege is a qualified one that "serves to preserve the integrity of law enforcement techniques and confidential sources, protects witnesses and law enforcement personnel, safeguards the privacy of individuals under investigation, and prevents interference with investigations"). Under the Supreme Court's decision in *Roviaro v. United States*, 353 U.S. 53 (1957), the informer's privilege "permits the government to withhold disclosure of an informant's identity or the contents of a communication which would endanger the secrecy of that information." *United States v. Yunis*, 867 F.2d 617, 622 (D.C. Cir. 1989). "This privilege exists to further 'the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation.' *Roviaro* held that this privilege must give way when disclosure of the information 'is relevant and helpful to the defense of an accused.'" *Id.* (quoting *Roviaro*, 353 U.S. at 60-61).

> The government is aware of its obligations to disclose impeachment material under *Giglio v. United States*, 405 U.S. 150 (1972) and 18 U.S.C. § 3500. In the event this matter proceeds to trial, and in the event the government calls any of these individuals as witnesses at trial, it will comply with its *Giglio* and Jencks obligations. *See generally United States v. Edelin*, 128 F. Supp. 2d 23, 38 (D.D.C. 2001) ("[T]he government must provide impeachment styled information concerning government witnesses in time for defendants to make use of it.").

On June 26, 2024, a CD labeled "4th Round Discovery" along with the serial number assigned to Wise's FBI investigation was mailed in an Urgent Overnight FedEx envelope to defense counsel. The face of the CD had an "unclassified" stamp. *See* Ex. K. The return address was "FBI San Antonio" which is the FBI office in which the case agent works. As discovery motion due dates were quickly approaching, defense counsel's paralegal worked into the late evening on June 26, 2024, reviewing the discovery on the CD. Amongst the discovery items were some of the "skipped" serial numbered documents previously mentioned in section "6" of this motion. Most notably, Serial 0176-SA-3577551_0000091 was a **completely unredacted copy** of an FBI 302 report which described a "follow up" interview with a confidential informant who defrauded Mr. Wise in an international real estate transaction. The report also mentioned the availability of a translated transcript of the interview, which was conducted using a French interpreter.

Because the discovery was provided without a discovery letter (which the government provided in the previous rounds of discovery), defense counsel emailed the government the following morning (June 27, 2024) to inquire further. It was then that the government informed defense counsel the CD was sent in error and instructed defense counsel to destroy the materials

(which defense counsel did promptly). Defense counsel also made clear to the government that our office had already reviewed the contents of the CD.

This information is needed both for the motion to suppress evidence and for possible impeachment of the investigation of this case. The investigation of this case is tainted by a confidential informant (whose identity is known to the defense) who defrauded Mr. Wise in a real estate transaction and thus has a motive to lie to investigators and fabricate evidence. Yet, the FBI refuses to meet with Mr. Wise to hear his detailed, documented proof of the fraudulent real estate deal involving property in France, which clearly falls under FBI jurisdiction.

In *Roviaro v. United States*, 353 U.S. 53, 59 (1957), the Court indicated that the government has a qualified privilege to withhold disclosure of the identity of informants. However, "once the identity of the informer has been disclosed to those who would have cause to resent the communication, the privilege is no longer applicable." *Id.* at 59; *United States v. Day*, 384 F.2d 464, 465 (3d Cir. 1967). Notably, the D.C. Circuit overturned the quashing of a subpoena based on the informer's privilege. *Westinghouse Elec. Corp. v. City of Burlington, Vt.*, 351 F.2d 762, 771 (D.C. Cir. 1965)(finding the district court erred in using the informer's privilege as a broad reason to quash the entire subpoena). *Westinghouse* overturned the district court's order because *Roviaro* established that "once the identity is revealed, the privilege terminates." *Id.* at 768. *Roviaro* also states that the qualified privilege must give way when the contents of the informant's "communication is relevant and helpful to the defense" or is "essential to a fair determination of a cause." *Roviaro*, 353 U.S. at 60.

Here, the privilege is terminated because the government accidentally disclosed who the informant is, which only confirmed what Mr. Wise long suspected. To determine whether

Page 20 — Motion to continue trial to a date on or after September 16, 2024; and Motion to Compel Discovery

disclosure is needed, the court would normally employ a balancing test between "the public inter-est in protecting the flow of information" and "the individual's right to prepare his defense." *Id.* at 62. But because the privilege terminated when the government disclosed the informant's iden-tity, Mr. Wise's right to prepare his defense is the only thing hanging in the balance. Although the government instructed the defense to delete the accidentally produced discovery (which has been done) the toothpaste can't be put back in the tube at this point.

### C.       Conclusion

Based on the foregoing, this Court should compel the government to produced relevant discovery for defense purposes, not just discovery that is limited to what the government intends to use in its case-in-chief. The defense respectfully requests a status hearing to discuss the possi-bility of moving trial date to give the defense adequate time to prepare.

Respectfully submitted on July 2, 2024.

*s/ Kurt Hermansen*
Kurt David Hermansen, CA Bar 166349
Supervisory Assistant Federal Public Defender
859 Willamette St. Suite 200
Eugene, OR  97401
Tel: (619) 436-8117
Fax: (541) 465-6975
Email: kurt_hermansen@fd.org

**Attorney for Defendant Jared Lane Wise**