UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 1:23-cr-184 (RDM) |
| | : | |
| JARED LANE WISE, | : | |
| | : | |
| Defendant. | : | |

**UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO CONTINUE TRIAL TO A DATE ON OR AFTER SEPTEMBER 16, 2024 AND MOTION TO COMPEL DISCOVERY (ECF 70)**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, after having met and conferred with defense counsel, respectfully submits this response to the defendant Jared Wise's Motion to Continue Trial to a Date on or after September 16, 2024 and Motion to Compel Discovery ("Def's Mot.") (ECF 70).

**I.      Defendant's Motion to Continue Trial**

The Government disputes Defendant's contention that his right to a fair trial would be violated if trial on the existing charges were to proceed on the scheduled trial date. Def's Mot. at 1. For reasons that the parties will discuss with the Court at the upcoming scheduled status conference, however, the Government does not oppose Defendant's motion to continue trial to a date suitable for the Court and the parties in October or November of this year.

**II.     Defendant's Motion to Compel Discovery**

The Government has agreed to produce certain additional material to Defendant, which the Government anticipates will render moot some of the defendant's discovery requests. The Government, for the reasons set forth below, opposes other discovery requests that seek information that the Government is not required to disclose and, in some cases, is not in the Government's possession, custody, or control. The Government respectfully submits that those

aspects of the motion should be denied.

### a. Defendant's request for disclosure of "Jared Wise's location at all times, on January 6, when he was on the Capitol Grounds."

Defendant requests that the Government identify his location during all the times that he was on Capitol Grounds on January 6, and specifically that the Government "identify anywhere Mr. Wise was on January 6, 2021, near where teargas, flashbang grenades, baton strikes, or other uses of force occurred." Def's Mot. at 3-4. The Government has provided in discovery all the relevant information regarding Defendant's locations on January 6 of which it is aware and that is within its possession, custody, and control. This includes extensive video evidence produced in case-specific discovery showing Defendant captured on surveillance video, body-worn camera video, and third-party video obtained by the Government. The Government, however, is not responsible for generating information that it does not have to assist the defendant's defense: that is the job of defense counsel. The request for information beyond that which the Government possesses should be denied.

By his motion, Defendant seeks to require the Government to identify additional information regarding his locations and surroundings that it does not have. Yet it is axiomatic that the Government's discovery obligations are restricted to the information that is in its possession, custody, and control. *See* Rule 16(a)(1)(E) ("Upon a defendant's request, the government must permit the defendant to inspect and to copy . . . items, if the item is *within the government's possession, custody, or control* and (i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant.") (emphasis added). Defendant's request here would require the Government to search for evidence that it does not have. Courts have routinely rejected such

requests because the Government "do[es] not have a constitutional duty to perform any particular tests" or investigation that may lead to exculpatory or impeachment material. *Arizona v. Youngblood*, 488 U.S. 51, 59 (1988).[1] Rather, defendants must conduct their own investigation to locate the relevant evidence they seek. 18 U.S.C. § 3006A(e)(1) (providing procedures for defendants to obtain investigate services from the court); *United States v. Burroughs*, 613 F.3d 233, 239 (D.C. Cir. 2010) (discussing the defendant's burden to show necessity to receive funds for an investigator). Thus, where the defendant wants to collect and review evidence, the remedy is not to have the Government do that task for him. Rather, the defendant has the burden to do so himself, even if doing so is expensive or time-consuming. This legal concept is neither new nor novel. *See, e.g., United States v. Alverio-Melendez*, 640 F.3d 412, 424 (1st Cir. 2011) ("The failure to create exculpatory evidence does not constitute a *Brady* violation."); *United States v. Gray*, 648 F.3d 562, 567 (7th Cir. 2011) ("Gray [argues] that in advance of trial the government should have directed EDS to create and run programs to extract data from its database that would be useful to the defense. That argument is a non-starter. It implies that the state has a duty not merely to disclose but also to create truthful exculpatory evidence. The failure to create exculpatory evidence does not constitute a *Brady* violation.") (emphasis in original and citations omitted); *United States v. Graham*, 484 F.3d 413, 417 (6th Cir. 2007) ("*Brady* clearly does not impose an affirmative duty upon the government to take action to discover information which it does not possess."); *United States v. Edwards*, 442 F.3d 258, 266 (5th Cir. 2006) ("The prosecution has no duty to turn over

---

[1] The application of this rule extends, but is not limited, to the recovery of fingerprints, *Brown v. United States*, 881 A.2d 586, 594 n.11 (D.C. 2005) (internal citation omitted), collection of DNA evidence, *Youngblood*, 488 U.S. at 58-59, and performance of comparative ballistics analysis, *Bellinger v. United States*, 127 A.3d 505, 520-521 (D.C. 2015).

3

to the defense evidence that does not exist.") (editorial marks omitted); *United States v. Monroe*, 943 F.2d 1007, 1011 n.2 (9th Cir. 1991) ("*Brady* does not require the government to create exculpatory evidence that does not exist."); *United States v. Sukumolachan*, 610 F.2d 685, 687 (9th Cir. 1980) ("*Brady* [] does not require the government to create exculpatory material that does not exist."); *Werth v. United States*, 493 F. App'x 361, 366 (4th Cir. 2012) ("While the government is obligated to disclose favorable evidence in its possession, it is not required to create evidence that might be helpful to the defense."); *United States v. Nguyen*, 98 F. App'x 608, 609 (9th Cir. 2004) ("*Brady* does not require the government to interview witnesses or otherwise create exculpatory evidence not then in existence.").

Moreover, the Government here has already gone beyond its obligation to produce in case-specific discovery all of the video evidence of which it is aware that shows the defendant on January 6, 2021. In June 2023, the Government—while under no obligation to do so—also provided the defendant with a reverse proffer presentation featuring some of this evidence. The Government's presentation highlighted video evidence showing Defendant's location on Capitol Grounds at various times, including video evidence showing his presence on the West Front at approximately 2:02 p.m. and 2:14 p.m.; his ascent up the Northwest Stairs at approximately 2:20 p.m.; his breach of the Senate Wing Door at approximately 2:24 p.m. and his exit from the same area at approximately 2:31 p.m.; his presence on the Upper West Terrace at approximately 2:49 p.m.; his movement from the north side of the Capitol to the northwest corner of the Upper West Terrace at approximately 4:19 p.m.; and his participation in the conduct on the Upper West Terrace at approximately 4:21 p.m., which is central to the crimes charged in Counts One and Two (violations of 18 U.S.C. §§ 231(a)(3) and 2 and 111(a) and 2, respectively).

Defendant's request that the Government perform his investigation is particularly ill-suited here because, through significant efforts, the Government has made available to Defendant through global discovery a large volume of videos and other evidence related to the attack on the Capitol. Defendant can search through this material himself, just as the Government has and will continue to do, to try to identify additional material that could be relevant to its defense. Defendant blithely contends that "[p]roviding evidence in global discovery does not help Mr. Wise prepare for trial." Def's Mot. at 4. Scores of January 6 defendants, however, have found materials within the Government's discovery productions and used it to prepare for trial. *See, e.g., United States v. William Pope*, 21-cr-128 (RC), ECF Nos. 72 at 22-24; 81 at 14; 82; 90 at 2; *United States v. Eric Christie*, 23-cr-5 (APM) (defense counsel identified radio recordings within global discovery that it contended were exculpatory); *United States v. Bradley Bennett*, 21-cr-31 (JEB) (defense counsel coordinated with Relativity representations and created a presentation for plea negotiation purposes); *United States v. Jonathan Munafo*, 21-cr-330 (JEB) (defense counsel reviewed global discovery for comparable defendants similarly-situated); *United States v. Elliot Resnick*, 23-mj-58 (same); *United States v. Leo Kelly*, 21-cr-718 (RCL) (defense counsel identified police materials claimed to support ongoing restricted perimeter litigation); *United States v. Kenneth Thomas*, 21-cr-552 (DLF), ECF No. 96 (defendant's preliminary exhibit list contained 426 items, including footage from MPD that was not provided in case-specific discovery but was a part of global discovery); *United States v. Daniel Gray*, 21-cr-495 (ABJ) (defendant provided an analysis of evidence found by the defendant in global discovery).

The ability of defendants to successfully review and analyze the global discovery materials reflects the many tools that the Government has provided defense counsel to run targeted searches.

Using Relativity, a defendant may search the voluminous global discovery, including all open-source material that the Government has collected. Through Evidence.com, a defendant can review all body-worn camera and closed-circuit videos from the U.S. Capitol (save those that are sensitive, which may be viewed separately by the defense when relevant). A defendant may trace his or her person, or any person, on Capitol grounds using the same methods employed by the government: a review of the materials in the databases. Review of any text-based materials or videos with useful information tagged to the file can be assisted by use of the databases' search function; a function that is the same for both the government and the defense.

In sum, the Government has met its discovery obligations by providing the relevant material of which it is aware and that is in its possession, custody, or control. *See United States v. Flynn*, 411 F. Supp. 3d 15, 32 (D.D.C. 2019) (holding that the requirements of *Brady* do not extend to information the Government does not possess or is not aware of and citing *United States v. Pollock*, 534 F.2d 964 (D.C. Cir. 1976) and *United States v. Turner*, 104 F.3d 217, 220 (8th Cir. 1997)). Defendant can utilize the materials provided in global discovery to try to identify additional relevant evidence, and the Government is under no obligation under Rule 16(a)(1)(E) to "do defense counsel's work for them[.]" *United States v. Sheppard*, No. 21-201 (JDB), 2022 U.S. Dist. LEXIS 232610, at *40 (D.D.C. Dec. 28, 2022). Accordingly, Defendant's request for disclosure of "Jared Wise's location at all times, on January 6, when he was on the Capitol Grounds" should be denied.

### b. Defendant's request for disclosure of a list of police grenade and gas use.

Defendant's motion to compel a "complete list of police grenade and gas use on the West Plaza from 13:20 to 14:23 hours and from 14:49 to 16:19 hours," Def's Mot. at 5, should be denied

for the same reasons as his motion for disclosure of all his locations at all times. The Government does not have and does not anticipate having such a list. The request thus falls far outside the ambit of the Government's discovery obligations. *See* Section II.a., *supra*; *United States v. Flynn*, 411 F. Supp. 3d 15, 32 (D.D.C. 2019).[2] Moreover, the information requested is irrelevant. The use of force by law enforcement to control the riot is untethered to Defendant's alleged conduct.

### c. Disclosure of specific protestors that Defendant is alleged to have aided and abetted and specific officer victims.

Defendant's request for the names of specific protestors that he is alleged to have aided and abetted in Counts One and Two (Def's Mot. at 6-7), and the names of the specific officer victims (*id.* at 7-11), seeks some of the same information requested in Defendants' pending motions for a bill of particulars. *See* ECF Nos. 33, 39. The Government respectfully refers the Court to its brief in opposition to Defendant's bill of particulars' motions and will forego repeating the substance of its opposition here. *See* ECF 50.

The Government adds, however, the following: in the reverse proffer presentation that the Government presented to Defendant in June 2023, the Government showed, among other things, six video clips—four clips from Metropolitan Police Department body-worn camera videos and two clips from publicly available videos—that capture, from different angles, Defendant's interactions with officers at approximately 4:21 p.m. These video clips also capture the assaultive conduct that occurred as Defendant shouted in the direction of the rioters attacking the police line,

---

[2] As a courtesy, the Government previously provided defense counsel with guidance regarding materials produced in global discovery that could potentially assist defense counsel in identifying the usage of gas and other munitions on January 6. These materials include police body-worn cameras and use of force reports. *See* Ex. 1, Letter from Anthony Mariano to Kurt Hermansen, 2-5 (June 2, 2024).

7

"Kill 'em! Kill 'em! Kill 'em!" The Government provided these video clips to Defendant in case-specific discovery.[3]

In light of the Government's case-specific discovery productions and reverse proffer presentation, Defendant is hardly "operating in the dark," as he contends, in preparing a trial defense to Counts One and Two. Def's Mot. at 8. Rather, Defendant has received from the Government, among other things, the following evidence related to the conduct undergirding Counts One and Two:

- six video clips (all of which are a few minutes in length or less) capturing the key relevant conduct, which inform Defendant of the specific time and place of the conduct; show Defendant's words and actions during the conduct; and show relevant actions of rioters and the impact of those actions on certain officers;

- the names of 70 officers who were in the vicinity of the conduct, which the Government provided Defendant by letter (*see* Def's Mot. 8-9);

- an identified subset of 24 of those 70 officers who, based on the Government's review, appear to have most clearly observed or been involved in the relevant conduct, which the Government also provided by letter (*id.* at 9);

- the names of nine officers who are alleged to be victims of the relevant conduct, also provided by letter (*id.* at 9);

- use of force reports, body-worn camera footage, and other materials provided in global discovery related to the aforementioned officers; and

- the names of five defendants prosecuted for assaultive conduct on the Northwest Courtyard on the Upper West Terrace at the time in question, also provided by letter (*id.* at 6).

Based on this ample record, Defendant's motion for further discovery should be denied.

**d. Disclosure of "skipped" serial numbers.**

Defendant requests that the Government provide every document in the FBI's case file,

---

[3] These video clips, labeled Exhibits 2 through 7, will be provided directly to the Court and defense counsel via USAfx.

irrespective of whether the document contains information subject to disclosure under Rule 16, *Brady,* or any other authority. Def's Mot. at 12-13. The request should be denied because the "skipped" serials that have not been produced do not contain discoverable information. Rather, these serials are comprised primarily of correspondence among law enforcement; internal memoranda documenting the completion of investigative or prosecutorial steps, such as the service of a grand jury subpoena or the production of discovery; and other investigative materials that do not contain evidence or information related to the defendant that has not been already produced. The Government generally agrees with Defendant's contention that "[t]he government should [ ] disclose all evidence relating to guilt or punishment which might reasonably be considered favorable to the defendant's case, even if the evidence is not admissible so long as it is reasonably likely to lead to admissible evidence." Def's Mot. at 13. None of these "skipped serials" falls into that category.

To the extent that any of these materials constitute statements by an FBI agent who will testify at trial, the Government recognizes that they may be subject to production under the Jencks Act. The Government will produce them accordingly at the appropriate time.[4]

    **e. Disclosure of Defendant's FBI personnel records**

Defendant has requested that the Government provide certain FBI personnel records related to his former employment. Def's Mot. at 13-14. The Government respectfully requests that the Court hold this request in abeyance because the Government has undertaken to identify, obtain, and voluntarily produce these records. The Government has initiated the process to obtain the

---

[4] The Government has agreed to produce to Defendant a few additional serials, which previously were not produced, which relate to statements made by an individual known to the Defendant to the FBI. *See* Section II.j., *infra.*

records and anticipates that it will be able to produce them in a relatively short time.

      **f. Disclosure of the "names and body worn camera numbers of specific officers and the names, biographical information and any collected cell phone or camera footage from specific protestors."**

Defendant has requested that the Government identify certain rioters and officers shown in screenshots of video taken from the Capitol, as well as any cell phone footage obtained from those rioters. Def's Mot. 15; Def's Ex. C-J. The Government appreciates that Defendant informed the Court that the Government has undertaken a good faith effort to identify the requested information but has been unable to do so. The Government, while not under any obligation to investigate Defendant's defense case, *see* Section II.a, *supra*, will continue to make good faith efforts to identify this information. Because this information is not in the Government's possession, custody, or control, however, Defendant's motion to compel this information should be denied. Rule 16(a)(1)(E).

      **g. Disclosure of additional surveillance information.**

Defendant seeks "pole cam footage collected during the surveillance of Jared Wise and reports of any additional surveillance of any type (e.g., aerial helicopter surveillance) not yet received in discovery." Def's Mot. at 16. This information fails Defendant's own test for discoverability because it does not "relat[e] to guilt or punishment which might reasonably be considered favorable to the defendant's case." *Id.* at 13. Rather, this information relates to the Government's means and methods for, among other things, preparing for a possible arrest. Defendant does not cite any legal authority supporting his request for disclosure here and the request should be denied.

### h. Disclosure of TSA Watchlist information.

Defendant's request for information "relating to the specific exceptions that warranted Wise's inclusion on the TSA Watchlist," Def's Mot. at 16-17, is similarly untethered to any issue related to Defendant's guilt or punishment for the charged crimes. The request is unsupported by any legal authority or argument explaining how this material is encompassed by the Government's discovery obligations. *Id.* Nor has Defendant explained how the prosecution team is beholden to materials held by a distinct Executive Branch agency, part of a different Cabinet Department, and not a member of the prosecution team. The request should be denied.

### i. Disclosure of information related to confidential sources.

Defendant seeks disclosure of information related to "a 'team of open-source researchers' and other sources, who collaborated with the FBI to identify Capitol rioters." Def's Mot. at 17. Defendant has not shown this information would be material to his defense—let alone potentially exculpatory—nor has Defendant shown that this information is otherwise discoverable under Rule 16, *Brady*, or any other authority. The request should be denied accordingly.

Further, to the extent the information exists, it is privileged. Under the Supreme Court's decision in *Roviaro v. United States*, 353 U.S. 53 (1957), the informer's privilege "permits the government to withhold disclosure of an informant's identity or the contents of a communication which would endanger the secrecy of that information." *United States v. Yunis*, 867 F.2d 617, 622 (D.C. Cir. 1989). "This privilege exists to further 'the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation.'" *Id.* (quoting *Roviaro*, 353 U.S. at 60-61).

*Roviaro* provides that this privilege may give way when disclosure of the information "is relevant and helpful to the accused's defense." *Roviaro*, 353 U.S. at 61-62. Defendant, however, has made no such showing here. The privilege therefore applies. *See United States v. Brodie*, 871 F.2d 125, 128 (D.C. Cir. 1989); *In re Sealed Case*, 856 F.2d 268 (D.C. Cir. 1988) (law-enforcement privilege); *In re Anthem, Inc. Data Breach Litig.*, 236 F. Supp. 3d 150 (D.D.C. 2017); *Sulemane v. Mnuchin*, No. 16-1822, 2019 U.S. Dist. LEXIS 5, 2019 WL 77428 (D.D.C. 2019) (law enforcement privilege is a qualified one that "serves to preserve the integrity of law enforcement techniques and confidential sources, protects witnesses and law enforcement personnel, safeguards the privacy of individuals under investigation, and prevents interference with investigations").

Defendant's only argument that this information would be helpful to the accused is that these sources can reportedly conduct facial recognition queries that Defendant cannot do himself. Def's Mot. at 17. The discovery rules, however, are not a vehicle by which a defendant can deputize a third-party to undertake investigative steps on defense counsel's behalf.

Furthermore, there are several facial recognition programs commercially available to the public of which Defendant could avail himself. One such program is Amazon's Rekognition, which allows users to upload media files or reference URLs containing media and run facial recognition against the individuals depicted in the media. *See* https://aws.amazon.com/rekognition/ (last accessed July 7, 2024). While Defendant may find it more convenient or cheaper to review media distilled by the Government, "*Brady* does not require the government to facilitate the compilation of exculpatory material that, with some industry, [the defendant] could marshal on their own." *United States v. Runyan*, 290 F.3d 223, 246 (5th Cir. 2002) (internal citation and quotation omitted).

In sum, this request should be denied.

### j.  Disclosure of reports related to an individual known to Defendant.

Defendant requests information related to an individual known to the Defendant who provided information to the FBI on or about January 26, 2022. Def's Mot. at 18-21. The Government has agreed to produce the documents in its possession, custody, or control memorializing Government interactions with this individual, which will render this request moot.[5]

### CONCLUSION

For the reasons stated above, the Government respectfully requests that the Court deny the Defendant's motion.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar Number 481052

By:     */s/ Jason Manning*
Jason M. Manning
Assistant United States Attorney
NY Bar No. 4574068
601 D Street NW, Washington, D.C. 20530
Tel. No.: (202) 436-5364
Email: jason.manning@usdoj.gov

*/s/ Taylor Fontan*
Taylor Fontan
Assistant United States Attorney
Indiana Bar No. 35690-53
601 D St. N.W, Washington, D.C. 20530
Tel. No.: (202) 815-8597
Email: Taylor.Fontan@usdoj.gov

---

[5] The Government provided courtesy copies of this material on July 9, 2024.