**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **No. 1:23-CR-00184-RDM** |
| | : | |
| **JARED WISE,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION TO COMPEL DISCOVERY FOR PROSPECTIVE CLAIMS OF SELECTIVE
PROSECUTION, SELECTIVE ENFORCEMENT AND VINDICTIVE PROSECUTION**

The United States of America, by and through the United States Attorney for the District of Columbia and undersigned counsel, respectfully submits this Response in Opposition to the defendant Jared Wise's "Motion to Compel Discovery in support of Mr. Wise's claims for selective prosecution, selective enforcement, and vindictive prosecution." (ECF No. 75). For the following reasons, Wise's motion to compel discovery in aid of his prospective claims for selective-prosecution, selective enforcement, and vindictive prosecution should be denied.

**PROCEDURAL HISTORY**

On April 12, 2023 Wise was charged by complaint with violations of 18 U.S.C. §§ 1752(a)(1) and (a)(2) and 40 U.S.C. §§ 5104(e)(2)(D) and (G). On May 1, 2023, Wise was arrested and on May 9, 2023, the Court held an initial appearance. At some point after Wise's initial appearance, the government contacted defense counsel to discuss discovery, a protective order, and a disclosure order. The government provided the defendant with a copy of the proposed protective order to govern the production of sensitive materials in the Capitol Siege cases. During these communications, defense counsel indicated that they would not agree to the motion for a

protective order, and litigation eventually ensued. (*See* ECF Nos. 11, 12, 13, 14, 15, 18; Minute Entry (08/08/2023); Minute Entry (08/14/2023)).

Separately, in May 2023, the government informed the defendant that the government planned to indict the case and add at least one felony charge. On May 31, 2023, a Grand Jury returned an indictment charging Wise with the four charges in the initial complaint and two additional charges: violations of 18 U.S.C. §§ 231(a)(3), 2 and 111(a)(1), 2. (ECF No. 9.)

While the parties' dispute about the protective order was pending, the government provided a reverse proffer to Wise on June 22, 2023. The government also produced non-sensitive discovery on July 18, 2023. After the Court entered the protective order in August 2023, the government continued to produce discovery. The parties also engaged in discussions regarding a potential plea but were unable to reach an agreement. (*See* ECF No. 20).

## **ARGUMENT**

### I.     **Wise Has Not Met The Rigorous Standard Required To Warrant Discovery To Prove A Selective-Prosecution Claim**

Wise seeks discovery in aid of a prospective claim that the government selectively targeted him for prosecution based on his political beliefs and activities. (ECF No. 75 at 12-16). Wise fails to make the requisite showings of discriminatory effect and discriminatory purpose, and instead relies on oft-rejected comparisons of his case to prosecutions in Portland and on a district court case in California, *United States v. Rundo*, that was recently reversed by the Ninth Circuit. The motion should be denied.

#### A.  **Legal Standard for Selective Prosecution**

As Wise himself concedes (ECF No. 75 at 8-10), because "[t]he Attorney General and United States Attorneys retain broad discretion to enforce the Nation's criminal laws," a "presumption of regularity supports their prosecutorial decisions and, in the absence of clear

evidence to the contrary, courts presume that they have properly discharged their duties." *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (internal quotation marks omitted). This presumption "rests in part on an assessment of the relative competence of prosecutors and courts." *Armstrong*, 517 U.S. at 465. "Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis courts are competent to undertake." *Armstrong*, 517 U.S. at 465; *see also Wayte v. United States*, 470 U.S. 598, 607 (1985) ("This broad discretion rests largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review."); *United States v. Fokker Servs. B.V.*, 818 F.3d 733, 741 (D.C. Cir. 2016) ("[J]udicial authority is . . . at its most limited when reviewing the Executive's . . . charging determinations because the Judiciary . . . generally is not competent to undertake that sort of inquiry" (internal citations and quotation marks omitted)). Given these considerations, there is a presumption of regularity attached to prosecutorial decisions and, with that, a presumption of good faith. *See, e.g.*, *Fokker Servs.*, 818 F.3d at 741. As a result, "[i]n the ordinary case, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Armstrong*, 517 U.S. at 464.

Wise must make two showings, each by "clear evidence," to establish his claim of selective prosecution. First, he must proffer "clear evidence" that similarly situated individuals of a different political beliefs were not prosecuted. *Armstrong*, 517 U.S. at 464. "[T]h[is] standard is "a demanding one." *Id.* at 463. A similarly situated offender is one whose "circumstances present no distinguishable legitimate prosecutorial factors that might justify different prosecutorial decisions" between that person and the defendant. *United States v. Judd*, 579 F. Supp. 3d 1, 4 (D.D.C. 2001).

3

The phrase "similarly situated" is "narrowly" interpreted. *United States v. Stone*, 394 F. Supp. 3d 1, 31 (D.D.C. 2019). In determining whether offenders are similarly situated, the court should "assess every material fact" that is "at least arguably material" to the prosecutorial decision. *United States v. Lewis*, 517 F.3d 20, 27 (1st Cir. 2008). Legitimate prosecutorial factors include "relative culpability, the strength of the case against particular defendants, willingness to cooperate, and the potential impact of a prosecution on related investigations." *United States v. Khanu*, 664 F. Supp. 2d 28, 32 (D.D.C. 2009).

In addition to showing the discriminatory effect of the government's prosecution of the defendant alongside its lack of prosecution of similarly situated individuals, a defendant must also show that the government singled him out for prosecution based on an impermissible reason. *See Stone*, 394 F. Supp. 3d at 30. Here, to show discriminatory purpose, the defendant must present clear, credible evidence that the government is prosecuting him "at least in part because" of his political beliefs. *Wayte*, 470 U.S. at 610.

The standard for obtaining discovery in support of such a claim is also a high one. The rigorous "showing necessary to obtain discovery should itself be a significant barrier to the litigation of insubstantial claims." *Armstrong*, 517 U.S. at 464; *see also United States v. Bass*, 536 U.S. 862, 864 (2002) (per curiam) (reversing selective-prosecution discovery order that "threatene[d] the 'performance of a core executive constitutional function'" (quoting *Armstrong*, 517 U.S. at 465)). To meet this standard, a defendant must "come forward with some evidence tending to show the existence of the essential elements of this defense." *United States v. Navarro*, 627 F. Supp. 3d 1, 5 (D.D.C. 2022) (quoting *Armstrong*, 517 U.S. at 468). That is, the defendant must put forward "'some evidence' tending to show both discriminatory effect and discriminatory intent." *Lewis*, 517 F.3d at 25 (quoting *Armstrong*, 517 U.S. at 468) ("[D]iscovery will not be

allowed unless the defendant's evidence supports each of the two furcula of his selective prosecution theory: failure on one branch dooms the discovery motion as a whole"). "If either part of the test is failed, the defense fails" and the defendant cannot "subject[] the Government to discovery." *Att'y Gen. of U.S. v. Irish People, Inc.*, 684 F.2d 928, 947 (D.C. Cir. 1982).[1] Importantly, conclusory allegations are not sufficient; instead, the defendant's evidence must be "credible"—something more than "personal conclusions based on anecdotal evidence." *Armstrong*, 517 U.S. at 470.

The standard for discovery is similar to that for *proving* a selective-prosecution claim. *United States v. Miller*, 1:21-cr-00119 (CJN), ECF No. 67 at 2 (D.D.C Dec. 21, 2021). Wise must offer "some evidence" tending to show both a discriminatory effect and discriminatory intent. *United States v. Bass*, 536 U.S. 862, 863 (2002). This is a "correspondingly rigorous" standard to guard against costly resource allocation and the disclosure of sensitive information. *Armstrong*, 517 U.S. at 468; *United States v. Khanu*, 664 F. Supp. 2d 28, 31 (D.D.C. 2009). The some-evidence standard "is only slightly lower" than the clear-evidence standard. *United States v. Hare*, 820 F.3d 93, 99 (4th Cir. 2016) (quoting *United States v. Venable*, 666 F.3d 893, 900 (4th Cir. 2012)) (quotation marks omitted); *United States v. Sellers*, 906 F.3d 848, 852 (9th Cir. 2018) (noting that the some-evidence "standard was intentionally hewn closely to the claim's merits requirements"); *United States v. Alameh*, 341 F.3d 167, 173 (2d Cir. 2003) ("The standard for discovery is correspondingly rigorous, . . . but of course not identical to the standard applied to the merits.");

---

[1] A defendant cannot shift the burden to the government by claiming he cannot obtain better evidence without discovery from the government.  It "is not enough to say that evidence will materialize if the discovery is ordered."  *United States v. Stone*, 394 F. Supp. 3d 1, 35 (D.C.C. 2019); *United States v. Arenas-Ortiz*, 339 F.3d 1066, 1071 (9th Cir. 2003) ("Merely demonstrating that better evidence cannot be obtained without discovery does not suddenly render otherwise insufficient evidence sufficient.").

*Lewis*, 517 F.3d at 25 ("The evidentiary threshold that a defendant must cross in order to obtain discovery in aid of a selective prosecution claim is somewhat below 'clear evidence,' but it is nonetheless fairly high.").

A colorable showing must be made with respect to both prongs of the test–that the prosecution has a "discriminatory effect" and that it arose from "discriminatory intent." *Stone*, 394 F. Supp. 3d at 31. And if either part of the test is failed, the defendant cannot "subject [ ] the Government to discovery," *id.*; *Irish People*, 684 F.2d at 947; *see also United States v. Blackley*, 986 F. Supp. 616, 618 (D.D.C. 1997).

**B.  Wise Has Not Established A Discriminatory Effect**

In order to prevail on his motion to compel discovery for a selective prosecution claim, Wise must provide evidence of a discriminatory effect, that is, "some evidence that similarly situated defendants . . . could have been prosecuted but were not." *Armstrong*, 517 U.S. at 469; *Branch Ministries v. Rossotti*, 211 F.3d 137, 144 (D.C. Cir. 2000). Wise points to the dismissal of unspecified prosecutions in Portland, Oregon. (ECF No. 75 at 3-4, 12-15). There are stark differences, however, between the underlying facts and activities of the 2020 Portland protest versus the January 6 attack. As Wise concedes, courts in this district have already relied on the surrounding circumstances and context to reject the contention that a defendant like Wise is considered a "similarly situated person" to individuals who were not prosecuted in Portland. *United States v. Judd*, 579 F. Supp. 3d 1, 8 (D.D.C. 2021); *Miller*, ECF No. 67 at 3; *United States v. Rhodes*, No. 22-CR-15 (APM), 2022 WL 3042200, at *5. And indeed, because of the important distinctions in the threats posed by the two riots, the Portland defendants are not similarly situated to Wise. *Judd*, 579 F. Supp. 3d at 8. Thus, Wise has not met "even the threshold" of a selective prosecution claim. *Id.*

*United States v. Miller* is squarely on point. Miller, another January 6 defendant, sought discovery in support of a prospective claim for selective prosecution.  In denying the defendant's motion for discovery, Judge Nichols held that while the conduct of the Portland rioters was obviously serious, it did not target a proceeding prescribed by the Constitution and established to ensure a peaceful transition of power. *Miller*, ECF No. 67 at 3. Nor did the Portland rioters, unlike those who attacked the Capitol, make it past the buildings' outer defenses. *Id*; *see also Judd*, 579 F. Supp. 3d at 7. The court thereby held that Miller "produced inadequate evidence of either discriminatory effect or discriminatory intent to obtain discovery here." *Miller*, ECF No. 67 at 3.

Similarly, the court in *Judd* denied defendant's request for discovery in aid of a prospective claim of selective prosecution. The court further explained how the conduct on January 6 was distinct from the Portland protest and thus, the defendant was not similarly situated:

> Putting aside any claims that January 6 rioters sought to tear down our system of government, their actions endangered hundreds of federal officials in the Capitol complex. Members of Congress cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters. *See* Lindsay Wise, Catherine Lucey, and Andrew Restuccia, *"The Protestors Are in the Building." Inside the Capitol Stormed by a Pro-Trump Mob*, Wall St. J. (Jan. 6, 2021, 11:53 P.M.). The action in Portland, though destructive and ominous, caused no similar threat to civilians… Given the "narrow[ ]" interpretation of "similarly situated," *Stone*, 394 F. Supp. 3d at 31, the Court cannot say that the Portland defendants "committed roughly the same crime under roughly the same circumstances" as Judd, *Khanu*, 664 F. Supp. 2d at 32.

*Judd*, 579 F. Supp. 3d at 8. The same conclusion is warranted here: the circumstances of the rioters' conduct in Portland and Wise's conduct here differ in kind and degree, and thus the Portland cases (and the government's prosecutorial decisions) are not sufficiently similar to show discriminatory effect.

Wise's effort to distinguish his conduct from Judd's conduct on January 6 (ECF No. 75 at 13-14) is unavailing: at bottom, the riot in Portland and the attack on the U.S. Capitol were

fundamentally different events. Moreover, the differences between Wise's and Judd's conduct are duly reflected in the government's charging decisions: Judd was charged with many felonies for which Wise was not charged, including physical violence and disorderly conduct with a deadly weapon in a restricted building; physical violence in the Capitol grounds; and assaulting a federal officer with a deadly weapon. *Judd*, 579 F. Supp. 3d at 3 (D.D.C. 2021). Wise's request for discovery fails accordingly. *Miller*, ECF No. 67 at 3; *Judd*, 579 F. Supp. 3d at 8.

### C. Wise Has Not Established Discriminatory Purpose

Even if Wise could demonstrate that he is similarly situated to the Portland cases, his request for discovery nevertheless would fail because he has not made the requisite showing of an improper prosecutorial motive. To do so, Wise must present credible evidence that the government chose to prosecute "at least in part because of, not merely in spite of," his protected characteristic. *Wayte*, 470 U.S. at 610; *United States v. Alcaraz-Arellano*, 441 F.3d 1252, 1264 (10th Cir. 2006) ("[T]he discriminatory-purpose element requires a showing that discriminatory intent was a motivating factor in the decision to enforce the criminal law against the defendant," which can be "shown by either direct or circumstantial evidence.").

None of the January 6 prosecutions, including the prosecution of the defendant in this case, have been motivated by a defendant's political beliefs. Wise's *ipse dixit* allegation that he is "being treated far more harshly than similarly situated offenders based on his political beliefs," ECF No. 75 at 12, simply ignores Wise's conduct on January 6, in which he stormed the Capitol as it was defended by outnumbered police; breached the Capitol building; ignored numerous signs that he was not allowed to remain on Capitol grounds; and encouraged rioters as they assaulted police officers. (*See* ECF No. 1-1). Wise points to no evidence of discriminatory intent other than his "personal conclusions based on anecdotal evidence." *Armstrong*, 517 U.S. at 470. This falls far short of what is required: "a defendant must provide something more than mere speculation or

8

'personal conclusions' of selective prosecution." *Stone*, 394 F. Supp. 3d at 31 (quoting *Armstrong*, 517 U.S. at 470); *Miller*, ECF No. 67 at 4.

Wise tries to bolster his argument by contending that he has been subject to "peculiarly aggressive" conduct by law enforcement.  (ECF No. 75 at 16-17). Yet the government's routine investigative activity, as well as its surveillance activity, hardly amount to "peculiarly aggressive" conduct.  Rather, the government investigated Wise over a period of time; evaluated whether he engaged in the alleged misconduct as part of a larger conspiracy; conducted surveillance in connection with its investigation and its planning for arrest; and then arrested Wise. These facts are consistent with the government's investigative and prosecutive activity in hundreds of cases arising from the attack on the Capitol.

In *Miller,* the court identified the legitimate law enforcement reasons as to why the government made different prosecutorial decisions with respect to individuals involved in the Portland cases and those involved in the January 6 attack on the Capitol.  The court found that were substantial differences in the evidence available for potential prosecutions of individuals in the two groups. *Miller*, ECF No. 67 at 4. For example, the January 6 attack happened in broad daylight and much of what occurred was captured on video, whereas in Portland, the police had substantially less video evidence because much of the illegal activity occurred at night. *Id.*

With respect to Wise specifically, the government has obtained and produced in discovery open-source videos, body worn camera videos, and CCTV footage that depict Wise's actions on January 6.[2]  *See Wayte,* 470 U.S. at 607 (recognizing that prosecutorial decisions include factors such as the "strength of the case."). Further, the same facts set forth *supra* supporting the

---

[2] Although Wise asserts that he "remains mystified as to the basis of these felony charges," ECF No. 75 at 4, the government provided Wise and his counsel with a reverse proffer in which the government specifically identified substantial evidence in in support of the indictment's charges.

conclusion that the Portland individuals and Wise are not similarly situated also support the conclusion that prosecutors had legitimate reasons for treating Wise's case differently from the Portland cases. These facts include, among others, the facts that the attack on the Capitol threatened civilian lives and disrupted a constitutionally mandated peaceful transfer of power, whereas the events in Portland did not.

Wise reaches beyond the repeatedly rejected comparison of his case to the Portland cases and urges the court to follow *United States v. Rundo*, in which a since-retired District Court judge in California dismissed the indictment of an alleged white supremacist charged with violations of the Anti-Riot Act on selective prosecution grounds.  (ECF No. 75 at 15) (citing *United States v. Rundo*, No. CR 18-00759-CJC-1-2, 2024 WL 725114, at *13–14 (C.D. Cal. Feb. 21, 2024); *see* "An Iconoclast Judge Takes a Bow," DAILY JOURNAL (May 31, 2024), available at: https://www.dailyjournal.com/articles/378988-an-iconoclastic-judge-takes-a-bow (last accessed: August 5, 2024). It is an unfortunate choice. The Ninth Circuit recently reversed the *Rundo* decision in an opinion that roundly rejected the District Court's ruling.  *United States v. Rundo*, -- F.4th --, 2024 WL 3449141, *1 (9th Cir. July 18, 2024).  The Ninth Circuit, among other things, held that the district court "compared apples to oranges" when concluding that Rundo was similarly situated to "Antifa and far-left groups" that had engaged in misconduct in California and elsewhere, *id* at *5; the district court erred when holding that Rundo was similarly situated to any individuals in those groups, *id.* at *6; the district court "conveniently omitted information" in conducting its analysis, *id.* at *9, n.11; and the district court used "flawed" reasoning in a "strained attempt to find impermissible motive," *id.* at *13. Following the Ninth Circuit's reversal, *Rundo* favors the government's position, not Wise's position.

In sum, the nature and circumstances of Wise's criminal conduct on January 6, 2021, render his conduct different in kind and in degree from the Portland cases upon which he relies. Wise joined a violent mob directly targeting the legislative branch, which posed "a grave danger to our democracy." *See United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The government's decision to charge Wise, while not charging other individuals involved in other conduct elsewhere, reflects a "distinguishable legitimate prosecutorial factor[] that might justify making different prosecutorial decisions." *Rossotti*, 211 F.3d 137, 145. Wise's request for discovery in aid of a meritless selective prosecution claim should be denied.

## II.    Wise Cannot Meet The Rigorous Standard Required To Warrant Discovery To Prove A Selective Enforcement Claim

Wise also seeks discovery in support of a prospective claim that the government has selectively investigated him because he is a former FBI agent. In support of his claim of selective enforcement, however, Wise has not offered the Court any evidence of discriminatory effect and discriminatory purpose, and the motion should be denied.

### A.  Legal Standard for Selective Enforcement Claim

"To obtain discovery for a selective enforcement claim, defendants must present some evidence tending to show both discriminatory effect and discriminatory intent—a showing that requires identification of similarly situated individuals outside a defendant's [] group who could have been targeted for enforcement but were not." *United States v. Eshetu*, No. 13-CR-262 (CRC), 2023 WL 7384996, at *13 (D.D.C. Nov. 8, 2023). This is the same standard articulated by the Court for selective prosecution claims in *United States v. Armstrong*, 517 U.S. 456 (1996).

**B.  Wise Has Not Set Forth Any Evidence Of A Discriminatory Effect Or Discriminatory Purpose To Support A Selective Enforcement Claim**

Wise only offers "mere speculation or 'personal conclusions'" to support his claim of selective enforcement. *Stone*, 394 F. Supp. 3d at 31 (quoting *Armstrong*, 517 U.S. at 470). Wise argues that he "believes that he may have been subjected to overly aggressive investigation because of his past as an FBI agent and, later as a whistleblower in a case subsequently investigated by the FBI." (ECF No. 75 at 17). Wise's dissatisfaction with how he thought he should be surveilled, arrested, and investigated does not come close to meeting his burden to demonstrate some evidence of a discriminatory effect or discriminatory purpose. He does not cite to any other case to support his bald contention that his investigation was different or "overly aggressive" in comparison to similarly situated defendants in the January 6 context or otherwise. (ECF No. 75 at 16-17.) Without providing any basis for the court to believe that a selective enforcement claim here could be meritorious, Wise's discovery requests amount to nothing more than a fishing information for non-discoverable information that is irrelevant to the upcoming trial.

Further, Wise currently has access to the surveillance and other investigative documentation of other January 6 defendants through the global discovery portal. A review of that discovery would reveal that the FBI's investigation into Wise arising from his conduct on January 6 is not unique. Many January 6 defendants, like Wise, are surveilled as part of the investigation or the planning of an arrest, and many January 6 defendants, like Wise, are not interviewed as part of the investigation. Wise may have his own opinion about whether or how he should have been investigated, but those opinions do not warrant granting him discovery in aid of a prospective selective enforcement claim.

III.    **The Government Did Not Bring Additional Charges Because Of Wise's Indication That He Opposed The Government's Proposed Protective Order**

Wise's vindictive prosecution claim is predicated on his unsupported allegation that the government brought two additional charges against him because he did not consent to the proposed protective order. (ECF 75 at 17-19). There is no dispute that the government was permitted to add different charges after Wise's initial arrest: the law is settled that the government is not beholden to its initial charging decision. And here, Wise has not provided any basis for the court to depart from the presumption that the government added the further charges as an appropriate exercise of prosecutorial discretion in the face of a developing assessment of the evidence.

A. **Legal Standard for Vindictive Prosecution Claim**

A defendant must provide some objective evidence tending to establish the vindictive prosecution defense in order to obtain discovery. *United States v. Oseguera Gonzalez*, 507 F. Supp. 3d 137, 175 (D.D.C. 2020). "The presumption of regularity applied to prosecutorial judgments applies equally in both contexts, as do the concerns about 'divert[ing] prosecutors' resources and ... disclos[ing] the Government's prosecutorial strategy.'" *Id*. (quoting *Armstrong*, 517 U.S. at 468).

"[T]he doctrine [of prosecutorial vindictiveness] precludes action by a prosecutor that is designed to penalize a defendant for invoking any legally protected right available to a defendant during a criminal prosecution." *United States v. Safavian*, 649 F.3d 688, 692 (D.C. Cir. 2011) (citation omitted). "A defendant may prove prosecutorial vindictiveness by submitting either (i) evidence of the prosecutor's actual vindictiveness or (ii) evidence sufficient to establish a realistic likelihood of vindictiveness, thereby raising a presumption the Government must rebut with objective evidence justifying its action." *Id*. "So long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to

13

prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Bordenkircher*, 434 U.S. at 364; *see also Goodwin*, 457 U.S. 368, 382-83 (1982) ("*Bordenkircher* made clear that the mere fact that a defendant refuses to plead guilty and forces the government to prove its case is insufficient to warrant a presumption that subsequent changes in the charging decision are unjustified.").

"[P]roof of a prosecutorial decision to increase charges after a defendant has exercised a legal right does not alone give rise to a presumption in the pretrial context." *United States v. Meyer*, 810 F.2d 1242, 1246 (D.C. Cir. 1987). To show vindictiveness in a pretrial posture, a defendant "must point to something more than routine invocations of procedural rights, such as declining a plea offer." *United States v. Michel*, No. 1:19-cr-148 (CKK), 2022 WL 4182342, at *8 (D.D.C. Sept. 13, 2022) (quoting *Meyer*, 810 F.2d at 1247). In the pretrial context, prosecutorial vindictiveness claims based on the addition of charges rarely succeed. "A defendant must show that the prosecutor's action was more likely than not attributable to vindictiveness." *Safavian*, 649 F.3d at 692. This is a difficult showing to make in a pretrial posture, where "'the prosecutor's assessment of the proper extent of prosecution may not have crystallized,' so an increase in charges may be the result of additional information or further consideration of known information, rather than a vindictive motive." *United States v. Slatten*, 865 F.3d 767, 799 (D.C. Cir. 2017) (quoting *Goodwin*, 457 U.S. at 381). Moreover, the "routine exercise of many pre-trial rights also weakens any inference of vindictiveness, *i.e.*, that a prosecutor would retaliate simply because a defendant sought a jury trial or pleaded an affirmative defense." *Id.* In addition, "'so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion.'" *Meadows*, 867 F.3d at 1313 (quoting *Bordenkircher v. Hayes*, 434 U.S.

357, 364 (1978)).

**B. Wise Cannot Show Actual Vindictiveness or Evidence Sufficient to Establish a Realistic Likelihood of Vindictiveness**

Wise cannot and does not claim to be able to show actual vindictiveness. Instead, Wise argues that the timing of the felony indictment soon after Wise refused to sign the protective order establishes a reasonable likelihood of vindictiveness. (ECF 75 at 17-19). This bare-bones allegation falls far short of warranting additional discovery.

The Supreme Court's decision in *Goodwin* is apposite here. In *Goodwin,* the government initially charged the defendant with misdemeanors and then added a felony charge after the defendant requested a jury trial. *Goodwin*, 457 U.S. at 370. The Court declined to apply a presumption of vindictiveness. It held, "[t]here is good reason to be cautious before adopting an inflexible presumption of prosecutorial vindictiveness in a pretrial setting. In the course of preparing a case for trial, the prosecutor may uncover additional information that suggests a basis for further prosecution, *or he simply may come to realize that information possessed by the State has a broader significance.*" *Id.* at 381 (emphasis added). The Court held that:

> [T]he timing of the prosecutor's action in this case suggests that a presumption of vindictiveness is not warranted. A prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution. An initial decision should not freeze future conduct. As we made clear in *Bordenkircher*, the initial charges filed by a prosecutor may not reflect the extent to which an individual is legitimately subject to prosecution.

*Id.* at 381-82. The Court concluded that "the mere fact that a defendant refuses to plead guilty and forces the government to prove its case is insufficient to warrant a presumption that subsequent changes in the charging decision are unjustified." *Id.* at 382-83. The Court thus declined to presume vindictiveness simply because the government brought additional or greater charges after the defendant made a pretrial demand for a jury trial. *Id.* at 384.

15

The observations that led the Supreme Court to reject Goodwin's vindictiveness claim are equally dispositive of Wise's motion. As in *Goodwin,* the government first charged the defendant with misdemeanors. When the government learned more about the defendant's conduct, evidence of his conduct was presented to a Grand Jury, which chose to indict the defendant on felony charges. The mere fact that Wise and the government litigated a routine dispute over the protective order in the interim does not give rise to establishing vindictive motive on the government's part.[3] *Goodwin*, 457 U.S. at 381-384.

*United States v. Allgood*, 610 F. Supp. 3d 239 (D.D.C. July 7, 2022), is also persuasive here. In *Allgood,* five days after the defendants exercised their speedy trial rights and the court set a trial date, the government notified the defendants of its intent to bring additional charges, including charges that carried mandatory minimum terms of incarceration. *Id.* at 249. Soon thereafter, the government superseded with additional charges providing for twenty-year mandatory minimum sentences. *Id.* The defendants moved to dismiss, arguing that the government acted vindictively to punish them for asserting their speedy trial rights. *Id.* at 246. They argued that they had established a "realistic likelihood" of vindictiveness based on (1) the timing of the government's decision to supersede, (2) the fact that the government "long knew" the information justifying the additional charges, (3) the lack of a prior warning about the additional charges, and (4) the absence of a nexus to plea negotiations.[4] This Court found the defendants' argument "at

---

[3] Wise's challenge to the protective order was hardly an extraordinary occurrence; the government has litigated protective order disputes in many January 6 cases. *See, e.g., United States v. Timothy Rowbottom,* 24-CR-211-TNM, ECF No. 20 (June 24, 2024) (granting government's motion for protective order over defendant's objection). Nor is it extraordinary to add additional charges after litigating a protective order. *United States v. William Pope*, 1:21-cr-128-RC, ECF No. 103 (April 26, 2023), ECF No. 159 (November 29, 2023) (the government filed a second superseding indictment after litigating the scope of the protective order).
[4] The *Allgood* defendants also made an "actual vindictiveness" argument, based on a supervisor's comments to a defense attorney. *Allgood,* 610 F. Supp. 3d at 246-47. This Court rejected this claim,

odds" with *Goodwin,* where similar facts did not create a presumption of vindictiveness. *Id.* at 249*; see also United States v. Simmons,* No. 18-cr-344 (EGS), 2022 WL 1302888, at *18 (D.D.C. May 2, 2022) (rejecting prosecutorial vindictiveness claim where "there is 'no fact beyond the mere sequence of events to support any presumption of improper motivation.'") (citing *United States v. Mills*, 925 F.2d 455, 463 (D.C. Cir. 1991), *overruled on other grounds by United States v. Mills,* 964 F.2d 1186, 1193 (D.C. Cir. 1992)); *United States v. Speed*, No. 22-cr-244 (TNM) (D.D.C. Feb. 28, 2023) (ECF No. 54) (denying defendant's motion to dismiss for vindictive prosecution in a January 6 case after the addition of a new felony charge six months after the initial criminal complaint). The same result in *Allgood* and *Goodwin* is warranted here because there is no objective evidence or, indeed, any evidence at all that the government was motivated by Wise's intention to object to the discovery protective order. *Slatten*, 865 F.3d at 799. ("[A]n increase in charges may be the result of additional information or further consideration of known information, rather than a vindictive motive."). Accordingly, the Court should reject Wise's motion to compel discovery in support of a prospective claim for vindictive prosecution.

---

finding that defendants failed to show that the supervisor's comments were motivated by defendants' assertion of their speedy trial rights. *Id.* at 247-48.

## <u>CONCLUSION</u>

For the foregoing reasons, Wise's motion to compel discovery in support of his prospective claims of selective prosecution, selective enforcement, and vindictive prosecution should be denied.

                       Respectfully submitted,

                       MATTHEW M. GRAVES
                       UNITED STATES ATTORNEY
                       D.C. Bar Number 481052

By:       */s/ Taylor Fontan*
             Taylor Fontan
             Assistant United States Attorney
             Indiana Bar No. 35690-53
             601 D St. N.W, Washington, D.C. 20530
             Tel. No.: (202) 815-8597
             Email: Taylor.Fontan@usdoj.gov

             */s/ Jason Manning*
             Jason M. Manning
             Assistant United States Attorney
             NY Bar No. 4574068
             601 D Street NW, Washington, D.C. 20530
             Tel. No.: (202) 436-5364
             Email: jason.manning@usdoj.gov