**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **Case No. 1:23-cr-00184 RDM** |
| | : | |
| **JARED LANE WISE,** | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S TRIAL BRIEF**

The United States of America respectfully submits this brief in advance of the trial scheduled to begin in this case on November 4, 2024. The brief describes the charges, analyzes the relevant law regarding aiding and abetting liability and group assaults, and provides a brief description of the facts the government intends to prove at trial. [Video Exhibits, Exhibit 1].

A.     **THE CHARGES**

Below, the government generally outlines the charges and elements for each charge. The government's full description of the charges and elements will be included in its proposed jury instructions.

1. **Count One - Civil Disorder and Aiding and Abetting, in violation of Title 18, United States Code, Sections 231(a)(3) and 2**

Count One of the Indictment charges Wise with civil disorder, in violation of Title 18, United States Code, Section 231(a)(3). Count One also charges Wise with aiding and abetting others to commit the offense.

Section 231(a)(3) provides that "Whoever commits or attempts to commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or the movement of

1

any article or commodity in commerce or the conduct or performance of any federally protected function—Shall be fined under this title or imprisoned not more than five years, or both."  18 U.S.C. § 231(a)(3).  The elements of the offense are as follows:

- First, the defendant knowingly committed or attempted to commit an act with the intended purpose of obstructing, impeding, or interfering with one or more law enforcement officers;

- Second, at the time of the defendant's actual or attempted act, the law enforcement officers were engaged in the lawful performance of their official duties incident to and during a civil disorder; and

- Third, the civil disorder in any way or degree obstructed, delayed, or adversely affected commerce or the movement of any article or commodity in commerce, or the conduct or performance of any federally protected function.

*See, e.g.*, *United States v. Pugh*, 20-cr-73 (S.D. Ala. May 19, 2021); *United States v. Rupert*, No. 20-cr-104 (D. Minn. Mar. 12, 2021) (ECF No. 81)); *United States v. Jensen*, No. 21-cr-6 (TJK) (ECF No. 97 at 21-22); *United States v. Webster*, No. 21-cr-208 (APM) (ECF No. 101 at 15-16); *United States v. Schwartz, et al.*, No. 21-cr-178 (APM) (ECF No. 172 at 17).

### 2. Count Two - Assaulting, Resisting, or Impeding Certain Officers and Aiding and Abetting, in violation of Title 18, United States Code, Sections 111(a)(1) and 2

Count Two of the Indictment charges Wise with assaulting, resisting, or impeding officers, in violation of Title 18, United States Code, Section 111(a)(1). Count Two also charges Wise with aiding and abetting others to commit the offense.

Section 111(a)(1) makes it a crime to "forcibly assault[], resist[], oppose[], impede[], intimidate[], or interfere[] with" a federal officer in the performance of the officer's duties. 18 U.S.C. § 111(a)(1).  The elements of the offense are as follows:

- First, the defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with a designated officer;

- Second, the defendant did such acts forcibly;

- Third, the defendant did such acts voluntarily and intentionally;

- Fourth, the person assaulted, resisted, opposed, impeded, intimidated, or interfered with was an officer or an employee of the United States who was then engaged in the performance of his/her official duties or assisting officers of the United States who were then engaged in the performance of their official duties; and

- Fifth, the defendant made physical contact with a person who was an officer or an employee of the United States who was then engaged in the performance of his official duties or who was assisting officers of the United States who were then engaged in the performance of their official duties, or acted with the intent to commit another felony.

*See, e.g.*, *United States v. Arrington*, 309 F.3d 40, 44 (D.C. Cir. 2002). The defendant need not "be aware that his victim is a federal officer. All the statute requires is an intent to assault, not an intent to assault a federal officer." *United States v. Feola*, 420 U.S. 671, 684 (1975). Section 111 does not require the federal officer be placed in fear, or that bodily injury be inflicted. *Lucas v. United States*, 443 F. Supp. 539, 544 (D.D.C. 1977), *aff'd*, 590 F.2d 356 (D.C. Cir. 1979).

### 3. Count Three - Entering and Remaining in a Restricted Building or Grounds, in violation of Title 18, United States Code, Section 1752(a)(1)

Count Three of the Indictment charges Wise with entering and remaining in a restricted building or grounds, in violation of Title 18, United States Code, Section 1752(a)(1). The elements of the offense are as follows:

- First, the defendant entered or remained in a restricted building or grounds without lawful authority to do so; and

- Second, the defendant did so knowingly.

### 4. Count Four - Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of Title 18, United States Code, Section 1752(a)(2)

Count Four of the Indictment charges Wise with disorderly and disruptive conduct in a restricted building or grounds, in violation of Title 18, United States Code, Section 1752(a)(2). The elements of the offense are as follows:

- First, the defendant engaged in disorderly or disruptive conduct in, or in proximity to, any

restricted building or grounds;

- Second, the defendant did so knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions; and

- Third, the defendant's conduct occurred when, or so that, his conduct in fact impeded or disrupted the orderly conduct of Government business or official functions.

**5. Count Five - Disorderly Conduct in a Capitol Building, in violation of Title 40, United States Code, Section 5104(e)(2)(D)**

Count Five of the Indictment charges Wise with disorderly conduct in a Capitol building, in violation of Title 40, United States Code, Section 5104(e)(2)(D). The elements of the offense are as follows:

- First, the defendant engaged in disorderly or disruptive conduct in any of the United States Capitol Buildings or Grounds;

- Second, the defendant did so with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress; and

- Third, the defendant acted willfully and knowingly.

**6. Count Six - Parading, Demonstrating, or Picketing in a Capitol Building, in violation of Title 40, United States Code, Section 5104(e)(2)(G)**

Finally, Count Six of the Indictment charges Wise with parading, demonstrating, or picketing in a Capitol building, in violation of Title 40, United States Code, Section 5104(e)(2)(G). The elements of the offense are as follows:

- First, the defendant paraded, demonstrated, or picketed in any of the United States Capitol Buildings; and

- Second, the defendant acted willfully and knowingly.

**B.   LEGAL FRAMEWORK**

In Counts One and Two, the government further alleges that Wise committed the offenses of obstructing officers during a civil disorder as charged in Count One and assaulting, resisting, or impeding officers as charged in Count Two by aiding and abetting others to commit the offenses.

4

Specifically, the government alleges that Wise aided and abetted the rioters that engaged in a scrum with law enforcement that occurred between 4:22 – 4:23 PM on the Upper West Terrace on the Capitol grounds. Wise did so by screaming "Yeah, fuck them! Yeah, kill 'em!" while pointing at the scrum of rioters pushing against the police line and then screaming "Kill 'em! Kill 'em! Kill 'em!" towards the scrum who continued to assault officers in the police line. In addition, the government alleges that Wise obstructed, impeded, or interfered or attempted to obstruct, impede, or interfere with law enforcement officers[1] during the commission of a civil disorder due to his presence in the restricted area, refusal to leave the restricted area, yelling at law enforcement, and directing others to engage with officers between 4:21 – 4:24 PM on the Upper West Terrace on the Capitol grounds.

### 1. Aiding and Abetting Liability

To show that Wise performed an act or acts in furtherance of the offenses charged in Counts One and Two – 18 U.S.C. §§ 111(a) and 231(a)(3) – the government must prove some affirmative participation by Wise which at least encouraged others to commit the offense. That is, the jury must find that the Wise's act or acts did, in some way, aid, assist, facilitate, or encourage others to commit the offense.

"Aiding and abetting" liability, or "accomplice" liability, is established by 18 U.S.C. § 2(a). It states, "Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." 18 U.S.C. § 2(a). Aiding and abetting is a theory of criminal liability, not a separate offense. *United States v. Ginyard*, 511 F.3d 203, 211 (D.C. Cir. 2008). "All that is necessary is to show some affirmative

---

[1] Wise is also charged with attempt to commit the crime of obstructing officers during a civil disorder in Count Two.

participation which at least encourages the principal offender to commit the offense, with all its elements, as proscribed by the statute." *United States v. Ali*, 718 F.3d 929, 936 (D.C. Cir. 2013).

Words of encouragement are a sufficient basis to show some affirmative participation by Wise to aid and abet others to commit the offense. Although one must act "forcibly" to be guilty as an accomplice, exerting force is not required to prove guilt on an aiding and abetting theory.

> [O]ne may become an accomplice without actually rendering physical aid to the endeavor. One may become an accomplice ... by words or gestures of encouragement.... The encouragement may come long before the time the crime was committed and may be communicated to the principal through an intermediary. It is sufficient encouragement that the accomplice is standing by at the scene of the crime ready to give some aid if needed, although in such a case it is necessary that the principal actually be aware of the accomplice's intentions. An undisclosed intention to render aid if needed will not suffice, for it cannot encourage the principal in his commission of the crime.

2 *LaFave*, § 13.2(a); *see also United States v. Garguilo*, 310 F.2d 249, 253 (2d Cir. 1962) (Friendly, J.) (a defendant's presence at the scene of the crime may be sufficient to support a conviction for aiding and abetting if his presence "proved to have positively encouraged the perpetrator himself"); *Long v. United States*, 360 F.2d 829, 835 (D.C. Cir. 1966) ("It is necessary only that the defendant knowingly associate himself in some way with the criminal venture to be an aider and abettor. Mere presence would be enough if it is intended to and does aid the primary actors."). *But cf. United States v. Barber*, 429 F.2d 1394, 1397 (3d Cir. 1970) (evidence that defendant was among approximately 15 men who attacked two FBI agents who had taken a suspect into custody was insufficient to support conviction for aiding and abetting the assault; "there is no evidence when or why [defendant] joined the group" or "proof of threatening words or gestures, or a display of weapons, or other sinister action by [defendant] or by any other member of the group in his presence before the sudden outbreak of fighting").

Words of encouragement offered by the accomplice can also suffice, whether explicit, *see United States v. Felix*, 996 F.2d 203, 208 (8th Cir. 1993) (evidence sufficient to prove aiding and abetting an assault where the defendant "yelled words of encouragement, such as 'Get him,' 'Hit him again,' and 'Kill him'"), or indirectly, *see United States v. Whitney*, 229 F.3d 1296, 1304 (10th Cir. 2000) (evidence of "words or gestures of encouragement" was sufficient to prove accomplice liability for interfering with federal housing rights on the basis of race, in violation of 42 U.S.C. § 3631(a) when defendant "used racial epithets when referring to [the victims], and discussed cross burning as a symbol of hatred towards African-Americans on the afternoon prior to the crime."). Even moving closer to a scene may establish encouragement.  *See United States v. Salamanca*, 990 F.2d 629 (D.C. Cir. 1993) (reversing conviction where the government failed to prove the defendant "drew near" during an assault).

Here, the government expects that the evidence will show (and thus, a jury may conclude) that: (1) Wise aided and abetted other rioters that obstructed, impeded, or interfered with law enforcement officers during the commission of a civil disorder that occurred between 4:21 – 4:24 PM on the Upper West Terrace on the Capitol grounds; and (2) Wise aided and abetted the group of rioters that engaged in a scrum with law enforcement that occurred between 4:22 – 4:23 PM on the Upper West Terrace on the Capitol grounds.

### 2.  Group Assaults and the Identification of Principals and Victims

Under aiding and abetting liability, a group of individuals committing, or encouraging, assaults within the same instance can be treated as one group assault and one principal. *See United States v. Rainbow*, 813 F.3d 1097, 1100-02, 1106-09 (8th Cir. 2016); *United States v. Felix*, 996 F.2d 203, 205-08 (8th Cir. 1993); *United States v. Patrick Edward McCaughey, III, Tristian Chandler Stevens, and David Mehaffie*, 1:21-cr-40 (TNM) (Sept. 13, 2022)[Exhibit 2].

For example, in *United States v. Felix*, the defendant was charged with assault with serious bodily injury after a group of people attacked the victim. *Felix*, 996 F.2d at 205-06. In the lower court, there was an unresolved dispute in fact of whether the defendant participated in the group assault by physically beating the victim and, if so, whether the defendant beating the victim rose to the level of serious bodily injury. *Id.* at 207-08. The Eighth Circuit found that – whether the defendant acted as a principal or an aider and abettor – the evidence was sufficient because of the very nature of the assault: one by mob. As the Circuit noted, "shouts must of necessity encouraged the commission of th[e] more serious offense". Indeed, the Court reckoned the fact that the defendant may not have actually struck the serious blow as a "distinction" without any difference. *Id*. at 208.

Here, as will be established, Wise's conduct – as an aider and abettor – is simply a question of whether his knowing presence and behavior, at a specific place, and a specific time, coupled with his aggression and words, establishes aid to the commission of a violent assault against police by other rioters.

Similarly, the Court in *United States v. Rainbow* concluded both defendants committed assault with a dangerous weapon as part of a group assault because at least one of the two defendants used a metal downspout while beating the victim. *Rainbow*, 813 F.3d at 1100-02. The *Rainbow* Court concluded that even if the other defendant had merely used his fists in the beating, he may still be convicted of assault with a dangerous weapon. *Id*. at 1106-09 (citing *Felix*, 996 F.2d at 205-08) (reasoning that each member within a group, acting in concert, to commit an assault are committing one assault). Therefore, under aiding and abetting liability, the court tethers the culpability of individuals whose actions influence, or are influenced by, another. *Id.* Accordingly,

these tethered actions are part of the same greater action, here, as in *Rainbow*, a single group assault. *Id.*

As a practical matter, this makes sense. Congress enacted §111 to broadly protect law enforcement officers. *See United States v. Arrington*, 309 F.3d 40, 46 (D.C. Cir. 2002) ("Congress intended § 111 to protect federal officers to the maximum extent possible[.]" (citation omitted)); *United States v. Walker*, 835 F.2d 983, 987 (2d Cir. 1987) (§ 111 enacted to protect federal officers and federal functions); *United States v. Beckner*, 983 F.2d 1380, 1385 (6th Cir. 1993) (same); *United States v. Jim*, 865 F.2d 211, 214 (9th Cir. 1989) (same). It did not distinguish single assaults on police, as opposed to mass assaults on police. Without aiding and abetting liability in the group context, officers would be afforded little legal protections from group assaults, whose culpability would be inoculated by virtue of a joint and chaotic assault, as opposed to a singular simple one.

To be clear, there cannot be a conviction under aiding and abetting liability unless the prosecution proves that the underlying offense was committed. *Gray v. United States*, 260 F.2d 483, 484 (D.C. Cir. 1958). However, the prosecution need not prove who committed the offense, but merely the fact that someone committed the offense. *United States v. Staten*, 581 F.2d 878, 886-87 (D.C. Cir. 1978); *United States v. Mullins*, 613 F.3d 1273, 1290 (10th Cir. 2010); *United States v. Harper*, 579 F.2d 1235, 1239-40 (10th Cir. 1978).

In *United States v. Staten*, a drug possession case, the defendant challenged their conviction as an aider and abettor when the evidence could not identify the principal of the operation. *Staten*, 581 F.2d at 880-82, 886-887. Pursuant to a search of an apartment, evidence presented at trial revealed large amounts of drug, drug paraphernalia, currency, and three occupants including the defendant. *Id.* at 880-82. The evidence did not show which of the three occupants was the principal of the drug operation. *Id.* at 887. However, the evidence showed that an offense was committed

and at least one of the occupants was culpable. *Id*. Therefore, the D.C. Circuit held that the jury could infer from the circumstances that someone held the status of principal, and need not decide which of the three occupants held that technical status. *Id*. (holding that identifying the principal is not an essential element of aiding and abetting liability). Furthermore, the D.C. Circuit affirmed the jury's findings that the defendant's presence in the apartment was not innocent, affirming the defendant's conviction as an aider and abettor. *Id*.

In *United States v. Harper*, the defendant similarly challenged their conviction as an aider and abettor when the prosecution did not prove who, specifically, the defendant aided and abetted. *Harper*, 579 F.2d at 1239-40. The court held that no such requirement exists, and that the prosecution need only prove that the offense was committed. *Id*. (reasoning that the principal's identity is not an essential element of aiding and abetting liability). It follows that the jury need not unanimously agree on who committed the substantive offense, but merely only that someone did. *Mullins*, 613 F.3d at 1290 (citing *Harper*, 579 F.2d at 1239).

These principles have thus understandably carried through to another January 6 prosecution, *United States v. Patrick Edward McCaughey, III, Tristian Chandler Stevens, and David Mehaffie*, 1:21-cr-40 (TNM). Among other things, Defendant Mehaffie was convicted of aiding and abetting violations of 111(a)(1) from 2:40 to 3:18 p.m. at an area on the west side of the Capitol building called the tunnel. Transcript of Oral Ruling/Verdict, ECF No. 638 at 31. Judge McFadden explained in his ruling that he analyzed the defendant's behavior during the specified time and at the specified place. (*Id*.) He found that "[d]uring all of that time, rioters packed the tunnel, attacking the police line and pressing against it, all with the intent to commit civil disorder . . ." (*Id*.). Judge McFadden further reasoned that, "The second element is that Mr. Mehaffie knew that assaulting, resisting, opposing, impeding or interfering *was going to be committed by others*

*or was being committed by others*. The video evidence shows clearly that he knew *others* were

engaged with police officers. Indeed, he was at the front of the police line at 2:42 p.m. while *others*

*around him were striking* at police." (*Id*. at 32) (emphasis added). No principal or specific assault

was identified – just the numerous strikes that rioters in the tunnel during the specific time period

were taking at police officers. Judge McFadden continued, "from his perch, Mr. Mehaffie saw

*rioters near him hurling objects into the tunnel, spraying various substances* as well as pushing as

a group." (*Id*. at 32) (emphasis added).

Ultimately, the Court found that Defendant Mehaffie's direction was enough to prove

beyond a reasonable doubt that he performed an act in furtherance of the offense. "Once Mr.

Mehaffie took his position, he began to *direct rioters* into the tunnel. Upon review of the entire

video, I count *at least 12 times where he gestured rioters* into the tunnel." (*Id*. at 33). In conclusion,

the court convicted Defendant Mehaffie on the basis that, "Mr. Mehaffie *directed rioters* into the

tunnel with the intent and purpose that they would interfere with police officers." (*Id*. at 35-36).

The Court did not need to specify the specific rioter engaging in a specific act in order to find

Defendant Mehaffie guilty beyond a reasonable doubt for aiding and abetting a felony violation of

Section 111(a).

In this case, a jury must decide whether Wise aided and abetted the rioters that engaged in

a scrum against the law enforcement line that occurred between 4:22 – 4:23 PM on the Upper West

Terrace on the Capitol grounds by screaming "Yeah, fuck them! Yeah, kill 'em!" while pointing at

the scrum of rioters pushing against the police line and then screaming "Kill 'em! Kill 'em! Kill

'em!" towards the scrum who continued to assault officers in the police line. The jury must also

determine whether Wise himself obstructed, impeded, or interfered with, or attempted to obstruct,

impede, or interfere with law enforcement officer during the commission of a civil disorder due to

his presence in the restricted area, refusal to leave the restricted area, yelling at law enforcement, and directing others to engage with officers between 4:21 – 4:24 PM on the Upper West Terrace on the Capitol grounds. As discussed in more detail below, the government will present evidence within this time period, at this location, of the officers and rioters present, including Wise, in order to prove Counts One and Two of the Indictment.

To address a previously discussed issue, the government need not identify the specific assault that Wise aided and abetted in order for the jury to come to a unanimous verdict. "If this verdict were held non-unanimous, then the government would seldom be able to convict the perpetrators of group violence of primary criminal conduct short of proving each individual's precise role in the crime. The division of roles may be murky, even where the active participation of group members is clear. Rarely, in fact, will the rationales of jurors be identical in a case of this sort [a group assault]." *United States v. Horton*, 921 F.2d 540, 546 (4th Cir. 1990). Here, there is no real dispute of the illegal assault. A group of rioters assaulted obstructed, interfered, or impeded with a line of law enforcement officers. The jury will, in turn, decide whether the evidence is sufficient to convict the defendant of aiding and abetting that group assault.

C.       **FACTS THE GOVERNMENT INTENDS TO PROVE AT TRIAL**

The following section sets forth some of the facts the government intends to prove at the upcoming trial. The government has not included all of its evidence. Instead, the government provides this information to assist the Court in preparation for trial.

The government expects the evidence at trial will show that on January 6, 2021, Jared Wise knowingly entered and remained in the United States Capitol Building and remained on Capitol Grounds and that he paraded, demonstrated, or picketed in the Capitol building.

On January 6, 2021, the area around the Capitol building and grounds was restricted due to Congress's task of certifying the electoral college votes from the November 2020 election, including then Vice President Pence's role of presiding over the process. The Capitol building was not open to the public that day and any unauthorized persons in the building could be a potential danger.

The U.S. Capitol Police set up barriers such as snow fencing and bike racks to demonstrate that the area around the Capitol building and grounds was restricted. They also set up signs along the fencing that said, "area closed."

1. **Wise Enters and Remains in the United States Capitol Building and Capitol Grounds**

On the morning of January 6, 2021, Wise was in the area of the Washington Monument in Washington, D.C.



*Image 1: Screenshot of Exhibit A, an open-source video (Wise circled in yellow)*

Wise walked to the Capitol grounds before the Capitol building had been breached.



*Image 2: Screenshot of Exhibit B, open-source video showing that the police line had not broken at this time and rioters had not yet made it past the officers and into the building (Wise circled in yellow)*

At approximately 2:02 p.m., Wise stood at the bottom of the scaffolding set up for the presidential inauguration stage.



*Image 3: Screenshot of Exhibit C, CCTV footage (Wise circled in yellow)*

At approximately 2:20 p.m., Wise went underneath scaffolding and ascended a staircase on the west side of the Capitol building to gain closer access to the Capitol building – within the U.S. Capitol restricted area. As Wise ascended the staircase, other rioters cheered on top of the balustrades along the staircase. Other rioters climbed up the walls near the stairs.



*Image 4: Screenshot of Exhibit D, CCTV footage (Wise circled in yellow)*

Once Wise went up the stairs, he was on the Upper West Terrace – still within U.S. Capitol restricted grounds. Then, at approximately 2:23 p.m., Wise entered the U.S. Capitol building through the Senate Wing Door on the west side of the Capitol building.



*Image 5: Screenshot from CCTV footage at Exhibit E (Wise circled in yellow)*

16

After entering through the Senate Wing Door, Wise clapped his hands and raised his arms in triumph. Wise walked through the area in the Capitol building called the Crypt and past the Memorial Door. Wise and the other rioters were stopped by a line of police officers. Eventually, officers pushed the rioters, including Wise, back towards the Crypt.



*Image 6: Screenshot from CCTV footage at Exhibit F (Wise circled in yellow)*

The evidence will show that Wise exited the Capitol building through a window adjacent to the Senate Wing Door at approximately 2:32 p.m..

 

*Image 7: Screenshots from CCTV footage at Exhibit G (Wise circled in yellow)*

After he exited the building, Wise remained on Capitol grounds for approximately two more hours.

### 2. Wise Aids and Abets Others to Assault, Impede, etc. Law Enforcement and Obstructs and/or Aids and Abets Others to Obstruct Law Enforcement

The government expects to introduce Metropolitan Police Department (MPD) Body Worn Camera (BWC) footage showing Wise engaging with police officers after he exited the building but remained on Capitol grounds. A little after 4:00 p.m., law enforcement established a line and were attempting to push rioters north, to get them off of the Upper West Terrace.

At approximately 4:21 p.m., on the Upper West Terrace, Wise approached the MPD officers, pointed at them, and said, "You guys are disgusting. I'm former—I'm former law enforcement. You're disgusting. You are the Nazi. You are the Gestapo. You can't see it" He continued, ". . . Shame on you! Shame on you! Shame on you!" As he screamed "Shame on you!" as he aggressively pointed his finger at the officers and leaned towards them. As captured in

Exhibit H, Officer R.N.'s BWC, the officers stepped forward and command Wise and the other rioters to "Move back." Wise remained in place and did not leave the Upper West Terrace. The officers continued to step forward and Wise continued to face them.



*Image 8: Screenshot from Exhibit H, Officer R.N.'s Body Worn Camera footage (Wise circled in yellow)*

Mere feet away from Wise, to the east and closer to the building—and a few feet higher on the Upper West Terrace—an extension of the police line was pushing back against a group of rioters engaged in assaultive conduct against the police. Rioters made multiple pushes towards the line of officers. Rioters yelled, "hold the line!" and "push em' back!" Then, a full scrum broke out. (Exhibit I).

Specifically, at approximately 4:22:19 p.m., officers are knocked to the ground by rioters. This is captured in Exhibit J, Officer T.A.'s BWC.



*Image 9: Screenshot of Exhibit J, Officer T.A. BWC footage*

As this occurred, and as officers were knocked to the ground directly in front of him, Wise turned in the direction of the violence, pointed, and shouted, "Yeah, fuck them! Yeah, kill 'em!" as depicted below.



*Image 10: Screenshot of Exhibit H, (Wise circled in yellow)*

20



*Image 11: Screenshot of Exhibit K, open-source video*

About 20 seconds later, at approximately 4:22:39 p.m., assaults continued against law enforcement, and Wise shouted in the direction of the rioters attacking the police line, "Kill 'em! Kill 'em! Kill 'em!"

Audio taken from the area where the assaults occurred demonstrates that Wise's statements were audible from that location. (Exhibits H, I, K, and L).

At trial, the government expects to introduce evidence of this conduct through multiple videos from different perspectives, including BWC, open source media, and CCTV video. For example, as depicted below in Image 12, the government expects it will provide images/or demonstratives to assist the jurors and the Court in understanding the location of the different sources of evidence.



*Image 12: Screenshot of Exhibit M, CCTV footage (Wise circled in yellow) with arrows identifying locations where BWC and open-source videos were taken.*

**D.   <u>CONCLUSION</u>**

The government expects to provide the Court with additional information through the other

pretrial filings, including proposed jury instructions and preliminary exhibit list.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     */s/ Sarah Rocha*
Sarah Rocha
Trial Attorney / Detailee
D.C. Bar No. 977497
601 D Street, NW
Washington, DC 20579
Tel. No.:  202-330-1735
Email: sarah.wilsonrocha@usdoj.gov

*/s/ Taylor Fontan*
Taylor Fontan
Assistant United States Attorney
Indiana Bar No. 35690-53
601 D St. N.W, Washington, D.C. 20530
Tel. No.: (202) 815-8597
Email: taylor.fontan@usdoj.gov