**In the United States District Court**
**for the District of Columbia**

| | |
|---|---|
| United States of America, | Case No. 1:23-cr-00184-RDM |
| Plaintiff, | Defendant's Response to Government's Trial Brief (ECF 105) |
| v. | and |
| Jared Lane Wise, | Motion to Continue Trial Date |
| Defendant. | |

The defendant, Jared Wise, by and through counsel respectfully submits this response to the Government's Trial Brief (ECF 105).

In so far as the Government's Trial Brief proposes jury instructions regarding the elements of the offenses, the defense objects to the extent that they are inconsistent with the defense Requested Jury Instructions supplied in ECF 113, and the defense incorporates herein the legal arguments provided in ECF 113 in support of its jury instructions.

Additionally, the defense reserves the right to object at a later date to the relevance or admissibility of the proposed exhibits outlined in the Government's Trial Brief. Exhibit lists are due on October 11, 2024, and the defense understands the proposed exhibits put forth in ECF 105 to be in aid of the Court and parties in assessing the contested Government's theory of the case, particularly whether there is sufficient specificity and legal support for the Government's group-assault theory, rather than to litigate the admissibility of the exhibits at this time.

Page 1 – Defendant's Response to Government's Trial Brief (ECF 105)

I.      **Reply**

    A.      **Trial Commences November 1, 2024, (not November 4), but the back-up trial
date of January 7, 2025, or some alternative date, is a better date for trial.**

        The trial is scheduled to begin on November 1, 2024 (not on November 4, 2024, as
ECF 105 indicates) with jury selection scheduled for that Friday. The starting date is important.
One of the defense experts must testify on or before November 8, 2024, because the expert is not
available after that date. To avoid having to call witnesses out of order, it is imperative that jury
selection take place on November 1, since we may be dark all or part of election day, November 5,
2024, and because Monday, November 11, 2024, is Veteran's Day.

        However, for many reasons, the defense requests that we adopt the back-up trial date of
January 7, 2025, or some alternative trial setting. All three defense experts are available for the
back-up trial date of January 7, 2025, and the parties had previously discussed and set aside that
date as an alternative trial setting. First, resetting to January 7, 2025, would ensure the trial goes
forward without a monumental election hanging in the balance. Given the likelihood that we won't
know the results of the election the week of November 4, having trial in January is the prudent
option, especially on January 7, when it will hopefully be clear that we won't have a repeat of
January 6, 2021. The concerns raised in the defense's motion for a change of venue (ECF 41) are
heightened during the current trial setting due to the politically charged environment, and the in-
creased news and media focus on issues surrounding President Trump's candidacy and possible
reelection, especially with how difficult some states are making it to efficiently count votes. No-
tably, there has already been greater media coverage this week, as new evidence has been made

public related to the prosecution of President Trump for the events of January 6, 2021,[1] and the focus and coverage is likely to accelerate in coming weeks.

Additionally, the Government's adherence to a group-assault theory continues to impede the ability for the defense to adequately prepare for trial to begin on November 1, 2024. At the motions hearing on August 26, 2024, the Court instructed the Government:

> [P]ropose for me a process where *we can narrow this down before we get to trial, where the defense still has enough time to prepare*? Because it does seem to me by the time we get to trial, we ought to at least know whether the officers were assaulted. And if they weren't assaulted during the relevant period of time, it seems to me they ought to be crossed off the list. And the government can say, we are not alleging that he aided and abetted the assault of officer X who was, in fact, not assaulted during the relevant period of time. And then, from there, I think it probably also would be helpful to narrow down the individuals who were the alleged assailants. I don't think you gave me a number before, but presumably if they have all -- I take it that since you were describing the statement of offense, these are all people who have pled guilty."
>
> MS. FONTAN: Sure, Your Honor."

ECF 99 at 62-63: 25-9 (emphasis added).

Later in that same hearing, the Government referenced five cases of rioters on the Upper West Terrace (ECF 99 at 72-73), and "at least 24 officers, 70 total officers on the upper west terrace" which had been identified. ECF 99 at 72: 21-22. The Court directed the Government, "on the motion to compel on the aiding and abetting, I am going to grant that in part and denying it in part. And I am granting it to the extent that I am ordering the government to provide the screenshots of each of the alleged assailants at the relevant time so we know with specificity who they are."

---

[1] Alan Feuer and Charlie Savage, THE NEW YORK TIMES, October 3, 2024, *Judge Unseals New Evidence in Federal Election Case Against Trump*, https://www.nytimes.com/2024/10/02/us/politics/trump-jan-6-case-jack-smith-evidence.html

ECF 99 at 68: 2-7. The attached Exhibit A has been provided by the Government. It provides screenshots (*not* at the relevant time), of *some* potential assailants. However it is clear from the Government's Trial Brief that they are in no way limiting their theory of the case to those identified rioters, nor narrowing their potential victims from the list of 24 officers.

The Court acknowledged at the August hearing the nature of the complexities for the defense and prosecution in proceeding with a group assault theory:

> [T]hese are complicated questions. It does strike me as that is potentially problematic. Because if the theory of the case is: Here were 24 people who assaulted 24 officers, and our theory is that Mr. Wise incited this assault. And if a jury might find that -- you know, I don't think officers 12 through 24 were actually assaulted or I don't see how assailants 12 through 24 could have possibly heard what Mr. Wise said. And then as to the first 12 -- there may be other defenses the defense would have. The person may have pled guilty to assault, but the person actually was defending themself or whatever else it might be. And I think -- I am concerned about the notion of group -- aiding and abetting a group assault where we may not know which individuals were able to hear what Mr. Wise was saying and be able to connect each of the dots.

ECF 99 at 64-65: 12-1. Additionally, the transcript from the trial of one of those Defendants' cases, Mr. Thomas, makes clear that even within the case of particular individuals from the Government's list there was confusion regarding which interactions and contact with officers would actually constitute the assault charge being prosecuted. Exhibit B, *Excerpt of Transcript of United States v. Kenneth Joseph Owen Thomas,* 21-cr-00552-DLF.

The Government's Trial Brief has not narrowed the interpretation of the facts. If the Government is allowed to proceed with an unspecified group-assault theory, or even if they are allowed to clarify the perpetrator(s) and victim(s) at a later time, the defense's preparation is significantly hampered by the need to individually review and assess the various videos, physical locations and

Page 4 – Defendant's Response to Government's Trial Brief (ECF 105)

relative angles, alleged perpetrators' ability to hear Mr. Wise's "incitement," their subsequent legal proceedings, self-defense claims, and purported injuries and medical records of various "rioters" and officers. This substantially expands the scope of preparation and relevant discovery to sift through, and supports a later trial date.

Additionally, at the time of the August 26, 2024, hearing the Court granted the defense's motion for subpoena *duces tecum* for the complete personnel file of Jared Wise from his time at the FBI. The Government has recently (on September 25, 2024), responded by essentially reproducing the same materials that had already been received, and two publicly available websites as pdf forms. *See* ECF 115. The defense continues to request these records and the complete fulfillment of the granted subpoena.

In light of the foregoing factors, the defense respectfully requests that the trial be continued to the previously discussed and reserved back-up trial date of January 7, 2025, or any other date deemed appropriate by the Court and for which the parties and witnesses are available.

**B.**	**Despite this Court's instruction to the Government to narrow their theory and provide the defense with identities of the principals Mr. Wise allegedly aided and abetted as well as the identities of the officers who were allegedly assaulted, the Government has nevertheless filed a Trial Brief that maintains a "group assault" prosecution aimed at convicting Mr. Wise through guilt by association rather than by proving incitement as the Supreme Court requires.**

*1.*	*The Court instructed the Government to provide a more specific theory on August 26, 2024.*

During the motions hearing on August 26, 2024, the need for specificity regarding the nature of the assault and civil disorder charges was raised a number of times. The Court advised the Government to file a trial memorandum by September 27, 2024, and noted: "I think there is a substantial question about whether the group assault theory works in this context." ECF 99 at 111, 23-25. The Government agreed to provide a Trial Brief which would "would outline their theory

Page 5 – Defendant's Response to Government's Trial Brief (ECF 105)

of liability as well as attach any videos of this — that form the basis of the 231 and the 111(a) as a means — I guess as a compromise to be able to articulate what the assaultive conduct was or what the aiding and abetting was." ECF 99 at 112: 14-19. As described above, a number of directions were given by this Court that the group-assault theory raises substantial concerns, and that perpetrators and victims should be identified for the defense as a means of narrowing the case prior to trial. The Government's Trial Brief instead proceeds with a broad description of "other rioters" who perpetrated the underlying offenses against "law enforcement." ECF 105 at 7.

> 2.   *The Government's theory of aiding and abetting runs counter to established Supreme Court First Amendment caselaw.*

Contrary to clearly established United States Supreme Court jurisprudence, the Government seeks to convict Mr. Wise of felony forcible assault and felony civil disorder based on his words, which allegedly aided and abetted rioters who fought with police in a scrum after multiple rows of police officers move forward lockstep into protestors, some of whom resisted. While some protestors fought with police, those protestors could not hear what Mr. Wise was saying from twenty-five feet away given the distance and all the ambient cacophony of noises. Because the Government can't prove their case the way the Supreme Court requires, i.e., in a manner that is consistent with the First Amendment, the Government's Trial Brief posits a trial of guilt-by-association even though Mr. Wise has no association with the protestors who pushed, obstructed, or assaulted officers.

Mr. Wise did not forcibly assault anyone and did not personally engage in civil disorder. So, the Government is using aiding and abetting along with a tacit "incitement" theory to argue that the jurors should find Mr. Wise guilty of felony forcible assault and civil disorder based on words he uttered on the Upper West Terrace. The "conduct" that Mr. Wise engaged in which

allegedly violated 18 U.S.C. § 231(a)(3) and § 111(a)(1) was mere speech and walking around the Upper West Terrace of the U.S. Capitol. Therefore, the First Amendment is implicated. *United States v. Freeman*, 761 F.2d 549, 552–53 (9th Cir. 1985).

Whether Mr. Wise's words incited anyone is a factual determination the jurors must make if the assault charge and the civil disorder charges survives a Rule 29 motion. The First Amendment's protection of speech has encompassed even extreme speech such as KKK rhetoric, *Brandenburg v. Ohio*, 395 U.S. 444, 445, 446 (1969), and an organizer/leader saying "[W]e're gonna break your damn neck," *N.A.A.C.P. v. Claiborne Hardware Co.*, 458 U.S. 886, 902 (1982). Emotionally charged rhetoric that includes references to violence, but does not cause lawless action,[2] is protected under the First Amendment. *Id.* at 928.

Crude forms of protest are protected under the First Amendment, which includes expressing visceral disdain for Government. *Cohen v. California*, 403 U.S. 15, 21 (1971); *Friend v. Gasparino*, 61 F.4th 77, 89 (2nd Cir. 2023). Admittedly, speech is not protected by the First Amendment if the trier of fact finds it qualifies as incitement, where (1) the defendant *intended* to incite imminent lawless action, and (2) the defendant's speech was *likely* to produce such action. *Brandenburg*, 395 U.S. at 447.[3]

The Supreme Court recently reaffirmed that the Government must prove the defendant specifically *intended* to incite illegal conduct with his speech. *Counterman v. Colorado*, 600 U.S.

---

[2] If violent rhetoric does not cause lawless action, it is protected by the First Amendment. If the violent rhetoric is immediately followed by lawless action, the inquiry as to First Amendment protections becomes whether the defendant can be held liable for the consequences of that unlawful conduct. *N.A.A.C.P.*, 458 U.S. at 902.

[3] *Brandenburg* "favors protecting speech over restricting it." Samantha Mitchell, *First Amendment Speech Protections in a Post-Dobbs World: Providing Instructions on Instructional Speech*, 91 FORDHAM L. REV. 1521, 1533 (2023).

66, 76 (2023) (the First Amendment protects speech "unless the speaker's words were 'intended' (not just likely) to produce imminent disorder."). "A strong intent requirement was, and remains, one way to guarantee history was not repeated. It was a way to ensure that efforts to prosecute incitement would not bleed over, either directly or through a chilling effect, to dissenting political speech at the First Amendment's core." *Id.* at 81. The government's theory and the jury instructions should reflect this clearly established Supreme Court law.

The Trial Brief claims that Mr. Wise "aided and abetted rioters that engaged in a scrum with law enforcement that occurred between 4:22 – 4:23 PM on the Upper West Terrance on the Capitol grounds." ECF 105 at 5. The "aiding and abetting" the Government references is Mr. Wise yelling things like "Yeah, kill 'em." ECF 105 at 5. Although the Trial Brief calls Mr. Wise's speech "acts," it concedes that the Government must prove that Mr. Wise's "acts" "encouraged others to commit the offense" of assaulting officers. ECF 105 at 5. The Trial Brief also admits that the Government must show that Mr. Wise's words "at least encourage[d] the principal offender to commit the offense …" ECF 105 at 5-6. Well, to do that consistent with the First Amendment, the Government must comply with clearly establishes Supreme Court law on incitement as set forth in *Brandenburg v. Ohio*, 395 U.S. 444, 445, 446 (1969), *N.A.A.C.P. v. Claiborne Hardware Co.*, 458 U.S. 886, 902 (1982), and *Counterman v. Colorado*, 600 U.S. 66, 76 (2023).

Some rioters' actions almost prevented the peaceful transition of presidential power, a hallmark of our democracy. Thus, the Department of Justice is engaged in a zealous quest in prosecuting J6 cases, to combat of the historic attack on our nation's Capitol. But that zealous quest should not blind us. If we abandon the First Amendment in this zealous quest, we would be abandoning another hallmark of our democracy. We need not sacrifice our sacred principles. The defense respectfully requests a trial that comports with clearly established Supreme Court law, which

Page 8 – Defendant's Response to Government's Trial Brief (ECF 105)

respects the First Amendment, and which requires that the Government either prove incitement or dismiss Counts One and Two.

> 3.  *The Government's theory of group assault is not supported by caselaw and raises profound issues for present a constitutionally adequate defense.*

The Court has already repeatedly raised its concerns about the Government's reliance on a group-assault theory in this case, and the defense shares those concerns, as fully outlined in the Motion to Dismiss Counts 1 and 2 as well as the motions for Bill of Particulars (ECF 33, 39), and incorporated herein.

The Government attempts in their Trial Brief to support their reliance on group assault. However, the caselaw they point to is factually distinct and does not support such a theory for Mr. Wise's case. In each cited case (aside from the "tunnel commander" which is addressed later), the prosecution identified specific perpetrators and specific victims involved in the charged assaults or crimes (in the assault cases, one victim being assaulted by a number of defendants simultaneously). In all of the cases, the offense is known and specified. Additionally, they all involve a defendant who actively and directly engaged in the assault or drug offense him or herself. None address Mr. Wise's scenario of having *no physical involvement* whatsoever, standing outside of a fracas, and yelling.

First, the Government points to *Untied States v. Felix*, 996 F.2d 203 (8th Cir. 1993); ECF 105 at 8. However in *Felix,* the defendant actively participated in the mob beating of a single individual; the appellate issue was whether she should have been permitted a lesser included offense instruction that relied upon the injuries that only she had caused, rather than the group of people who surrounded and beat the same victim. *Id.* at 207.

Defendant Felix did not challenge the evidence's sufficiency. Rather, Felix brought two distinct challenges: that the court erred by 1) not giving a lesser-offense instruction, and 2) not declaring a mistrial. *Id.* at 205. The pertinent facts: A group of about twenty-five people were having a party at Felix's residence. *Id.* at 205. Robert and Bonnie Black Feather, Felix's neighbors, called the police and were informed that the police would not respond. *Id.* So, the Black Feathers walked over to the Felix residence. *Id.* An argument between the parties ensued. *Id.* Robert was pelted with full beer cans thrown by some of the partygoers, including Felix. *Id.* Robert was then intensely beat by the individuals at the party. *Id.* Robert suffered extreme physical injuries. *Id.*

> Numerous witnesses testified that **Felix was involved in the beating**. Some witnesses testified that after Felix's argument with Robert and her physical struggle with Bonnie, **[Felix] yelled "Get him!"** Eight witnesses testified that they had seen Felix in the group surrounding Robert as he was being beaten: some testified that they had seen **Felix beating him with a club**; some stated that they had seen **[Felix] punching him with her hands**; and others testified that they had seen her standing beside Robert but had not seen her strike him. Additionally, some witnesses testified that Felix had yelled such comments as, "Get him," "Hit him again," and "Kill him," as Robert was being pummeled.

*Id.* at 205–06 (emphasis added). Felix was not just an alleged accomplice whose words incited a perpetrator. Evidence showed she was both a direct assaulter and had influence to direct others in their assaultive behavior. Additionally, *Felix* does not support the group assault theory here. In Mr. Wise's case, there was no coordinated assault of a single person by a mob, but rather a scuffle across a variety of potential victims and a disjointed set of potential perpetrators. Further, Mr. Wise was not himself a violent member engaged collectively with a "mob" assault, but standing outside of the scuffles and shouting.

Second, the Government points to *United States v. Rainbow,* 813 F.3d 1097 (8th Cir. 2016); ECF 105 at 8. *Rainbow* is similar to *Felix* in that it involves a specific, single victim being

collectively assaulted and attacked by multiple defendants (in this case, two). *Rainbow*, 813 F.3d at 1106. Again, the defendant did not raise the sufficiency of a group assault theory but rather requested a lesser included offense instruction for the injuries they had directly caused, rather than the injuries the other defendant had caused. *Id.* at 1105. The Court of Appeals found that the trial court did not abuse their discretion in denying the lesser included offense, highlighting the defendant's direct involvement in the assault: "[the defendant] overlooks the fact that both counts charged him with assaulting [the victim] individually and by aiding and abetting [his co-defendant], a fact that we find determinative of his argument under our holding in *United States v. Felix*, 996 F.2d 203 (8th Cir. 1993)." *Id.* at 1106-07.

Additionally, the Government relies on *United States v. Staten*, 581 F.2d 878 (D.C. Cir. 1978); ECF 105 at 9. The issue in *Staten* was not a challenge to a group-assault theory, and arguments regarding the need for specificity of the principal(s) and victim(s). Rather, the issue in *Staten* was whether sufficient evidence was presented at trial to establish that Staten aided and abetted a drug enterprise and whether the district court erred by instructing the jury on aiding and abetting liability. *Id.* at 886–87.

*Staten* found that "nothing about drug-possession offenses is so distinctive as to remove them from the ambit of aiding-and-abetting doctrine." *Id.* at 886. The case presented an appropriate "occasion for inquiry whether [Staten] was an aider and abettor since the Government's evidence hardly confined [Staten]'s role to that of a principal." *Id. Staten* makes clear that there must be a guilty principal before there can be an aider and abettor. *Id.*

Although the evidence at trial "did not conclusively single out either Bobby Arnold, Versinia Thompkins" or Staten "as captain of the enterprise," Staten obviously knew that either he, Arnold, or Thompkins was alleged to be the principal. Given those facts, "[i]t was not essential

Page 11 – Defendant's Response to Government's Trial Brief (ECF 105)

that the principal in the operation be identified so long as someone had that status." *Id.* The facts in *Staten* are distinct: Staten was present in the apartment where the drugs were found, and the circumstances supported finding that Staten assisted Thompkins in attempting to remove the contraband from sight; Staten even concealed some of the drugs and money in his pockets. *Id.* at 887. Staten's conviction, whether as a principal or an aider and abettor, was well founded. But the Government's reliance on *Staten* is not. Again, Staten was directly involved, and the Court did not find it necessary to differentiate his role as principal versus aidor and abettor among the three identified and involved perpetrators.

Next the Government points to *United States v. Harper*, 579 F.2d 1235 (10th Cir. 1978). This case is not a group theory. The offense at issue, a particular drug delivery, is known and specified; there is likewise a particular principal being aided and abetted, even if the identity of that person was not listed as an element in the jury instructions. At issue in *Harper* is the omission of the principal's name from the jury instructions, and in that context, the Court found "[i]t is not even essential that the identity of the principal be established." *Id.* at 1239. This is not the same as saying the principal could have been anyone in the vicinity. For the entirety of the Harper trial and appeal, the Government, the defense, the fact-finders, and the judges contemplated the behavior of an individual drug dealer whom Harper had abetted, even if the name of that dealer was never established for the jury. This does not stand for the proposition that it is unnecessary to specify the crime committed by the principal who is aided and abetted, but rather that their identity is not itself essential under those circumstances.

Finally, the Government discusses extensively the case of *United States v. Patrick Edward McCaughey, III, Tristian Chandler Stevens, and David Mehaffie*, 1:21-cr-40 (TNM), sometimes referred to as the "tunnel commander" case. Notably, this is not an appellate Court decision, but

Page 12 – Defendant's Response to Government's Trial Brief (ECF 105)

the Government instead relies on the reasoning provided during the verdict rendered by Judge McFadden. However, fully assessing Judge McFadden's reasoning in that case makes clear that Mr. Wise is in a different posture.

First, as this Court noted, the Judge as a single fact finder was able to ensure unanimity in determining the nature of the assault theory underlying the aid and abet in a manner that a jury in this case is not guaranteed to:

> First of all and most importantly, it was a bench trial. So he was the trier of fact. And there was no worry about unanimity, because he was unanimous with himself. But I worry a little bit that with a jury trial that there could be unanimity concerns and whether we would need a special verdict or what we would — how we would handle it. But what if Juror 1 thinks that Mr. Wise encouraged Assailant 1 to assault Officer 1 and Juror 2 thinks Mr. Wise encouraged Assailant 2 to assault Officer 2. And so that unanimity strikes me as presenting a potential problem here with the general theory.

ECF 99 at 115: 13-23.

Additionally, in that case the principal actors in the heave-ho assault were truly acting in collective unison, receiving direction and instruction from the defendant. This Court noted that fundamental difference from our case at the hearing in August:

> Because it does at some level, understanding that this is all a continuum, feel a step further away from the type of specificity that might be required than the tunnel commander-type circumstance where you are seeing people heave-hoing in unison in a tunnel working collaboratively, crushing officers. We know which officers are being crushed versus a situation in which there may have been as many as 24 separate assaults that took place

ECF 99, at 67: 9-15.

The transcript of the verdict in the tunnel commander case, provided by the Government as ECF 105-2, supports that essential distinction as being critical to the Court's determinations of

Page 13 – Defendant's Response to Government's Trial Brief (ECF 105)

guilt. Judge McFadden made explicit findings that the rioters were acting "as one": "footage shows rioters packed tightly against the police line. They begin to push as one group against the line[.]" ECF 105-2 at 9:15-16. Later the Court again notes, "[t]his involved coordinating their pushes to exert the greatest possible amount of force[.]" *Id.* at 10:10-11. In assessing the aiding and abetting theory, the Court found a "roiling *group* of rioters pushing *in unison*," and referred to them repeatedly as a "group." *Id.* at 15:1, 5, 19 (emphasis added). In assessing the defendant's actions in aiding and abetting, the Court referenced these as "actions to coordinate … the rioters. He took upon himself a leadership role[.]" *Id.* at 17:9-10. The term "coordinated" is used multiple times by the Judge to assess the aiding of a group. *Id.* at 17:15, 20 ("coordinated heave-ho"). The perpetrators conducted the pushing "en masse," with the defendants acting as an integral part of a coordinated group. *Id.* at 18:5. For all three defendant's, the Court found either a "mass push," or "coordination of a heave-ho," or "directing" rioters activities. *Id.* at 44:8-11. In Mr. Mehaffie's case, he was instructing the "group" as a whole to "push." *Id.* at 35:12. Additionally, although Mr. Mehaffie was convicted under § 111(a), the Court did not find a group assault in his case and instead found that he did not "escape liability for the nonassaultive conduct, including resisting[.]" *Id.* at 36:9-10.

This Court put it best in describing the distinction:

> [H]ere, there were a series of separate assaults that took place. And in a way that may be a little bit different from what was in front of Judge McFadden where you had a group of people who were all at the same time assaulting a group of police officers all at the same time. And it may be that there were numerous people involved in both sides of it, but it was a single assaultive attack that -- in which there were multiple victims whereas here, it is at least less clear to me that it was a single assault versus a series of assaults.

Page 14 – Defendant's Response to Government's Trial Brief (ECF 105)

ECF 99 at 116:1-9.

The Government's final citation to *United States v. Horton*, 921 F.2d 540 (4th Cir. 1990), deals again with a specific assault by multiple individulas (here, three) against a single victim. The evidence indicated that Horton, and two co-defendants, "participated jointly in the murder, but the exact role of each is unclear, and there is no direct evidence of who delivered the fatal blow." *Id.* at 544. Like in *Staten*, the "principal" is not determined. However this is not uncertain like in Mr. Wise's case. In *Horton*, the specific conduct and assault is known and the involved individuals are specified. The jury could find that Mr. Horton directly perpetrated the act, or that one of the other co-defendants was the principal. The essential fact is that all three defendants were involved in the murder and "the commission of a criminal offense is not in doubt[.]" *Id.* at 544. For Mr. Wise, the assaultive conduct itself is not specified because of the failure to identify the perpetrators and victims.

## II.   Conclusion

The Government's effort to continue with an unspecified group-assault aid and abet theory based on the mere words of Mr. Wise, standing outside of a cluster of disjointed, unspecified scuffles between protestors and officers, is unsupported by the caselaw and runs afoul of essential First Amendment protections. The defense is unable to appropriately prepare when the foundational, principal offenses are not sufficiently specified. As such, the defense maintains its motion for dismissal of Count 1 and 2 and motion for bill of particulars, or for the Court to order the Government to specify the principal actors that Mr. Wise allegedly aided and abetted and to specify the precise perpetrators and victims of the Assault and Civil Disorder charges.

In light of the Government's current Trial Brief, and the upcoming Presidential election, postponing the trial to the backup date of January 7, 2025, or other available date is appropriate and the the defense hereby requests such a continuance.

Respectfully submitted on October 4, 2024.

s/ Peyton Lee
Peyton Lee, OSB No. 164224
Assistant Federal Public Defender
101 SW Main Street, Suite 1700
Portland, OR 97204
Tel: (503) 326-2123
Email: Peyton_Lee@fd.org

s/ Kurt Hermansen
Kurt David Hermansen, CA Bar No. 166349
Supervisory Assistant Federal Public Defender
859 Willamette St. Suite 200
Eugene, OR  97401
Tel: (619) 436-8117
Fax: (541) 465-6975
Email: kurt_hermansen@fd.org

Attorneys for Defendant Jared Lane Wise