UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | |
| : | Crim. No. 23-CR-184 (RDM) |
| JARED LANE WISE, : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO CONTINUE TRIAL**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits its Opposition to Defendant's Motion to Continue Trial. ECF No. 122. The defendant relies on three reasons that the November 1, 2024 trial date should be continued to January 2025: 1) the increased media coverage and politically charged nature of the 2024 Election; 2) the government's reliance on the group assault theory expanding the scope of preparation for trial; and 3) the existence of an outstanding subpoena for the defendant's personnel file and training records. None of these reasons are sufficient grounds to continue the trial. The trial set for November 1, 2024 should proceed for the reasons set forth below.

I. PROCEDURAL HISTORY

Over 1,400 individuals have been charged thus far in connection with the attack on the U.S. Capitol on January 6, 2021. On January 6, 2021, Jared Wise, a former FBI Special Agent and Supervisory Special Agent, unlawfully entered Capitol grounds and entered the U.S. Capitol building. *See* ECF No. 1. The defendant entered the Capitol through the Senate Wing Door, approximately ten minutes after the first breach of the building. *See id.* After he entered the building, the defendant celebrated the riot by clapping and raising his arms triumphantly, while he walked toward the Crypt. *See id.* The defendant ultimately exited through a window adjacent to the Senate Wing Door after about nine minutes in the building. *See id.*

1

Almost two hours later that afternoon, the defendant confronted law enforcement trying to protect the Capitol and to clear the Upper West Terrace of rioters. The defendant approached officers and invokes his own law enforcement background, telling the officers: "You guys are disgusting, man. You guys are disgusting. I'm former—I'm former law enforcement. You're disgusting. You are the Nazi. You are the Gestapo. You can't see it, because you're chasing your pension, right? Pension? Your retirement, right?" *See id.* The defendant then pointed directly at the officers and called out, "Shame on you! Shame on you! Shame on you!" *See id.* The defendant then turned his attention north, where—a few feet in front of him, on a raised portion of the Upper West Terrace—rioters were pushing back against officers and causing some to fall to the ground directly in front of the defendant. *See id.* When the violence against officers was unfolding in front of the defendant, he turned toward the rioters above, swung his fist in the air, and shouted, "Yeah, fuck them! Yeah, kill 'em! Yeah!" *See id.* A few seconds later, as assaults continued, he shouted in the direction of the rioters attacking the police line, "Kill 'em! Kill 'em! Kill 'em!" *See id.*

For this conduct, the defendant was originally charged, by criminal complaint on April 12, 2023, with four misdemeanor offenses, ECF No. 1, and was arrested on May 1, 2023, ECF No. 5. On May 31, 2023, a grand jury returned an Indictment charging the defendant with both felonies and misdemeanors, including felony assault and civil disorder.

On May 1, 2024, the Court set a jury trial to begin on September 5, 2024. *See* Court's May 1, 2024 Minute Entry. On May 16, 2024, the defendant moved to continue the September 5 trial date to a date on or after September 16, 2024. *See* ECF No. 27. The Court denied the continuance determining that "[a]bsent compelling reasons, which the defense has not offered, delaying trial for weeks or months after the scheduled trial date will not serve the interests of justice." *See* Court's

2

May 24, 2024 Minute Order. After the defendant's continued request to continue the trial date, the trial was rescheduled to August 26, 2024. On July 2, 2024, the defendant filed an unopposed motion to continue the trial to on or after September 16, 2024. ECF No. 70. On July 11, 2024, the Court reset trial to November 1, 2024. *See* Court's July 11, 2024 Minute Order. Now, the defendant seeks a continuance to set trial 20 months after this case commenced.

II.     ARGUMENT

> **A. The Court is Capable of Resolving the Necessary Legal Issues within the Next Two to Three Weeks Before Trial and the Defendant is Otherwise on Notice of the Felony Charges Against Him**

The narrow question that remains in this case is whether the government can pursue a "group assault" theory as one of its theories of liability. *See* ECF No. 105; *See also* August 26, 2024 Minute Order. As discussed at length, the government is not required to identify the victims for 18 U.S.C. § 111(a) and 18 U.S.C. § 231(a)(3) charges; is not required to identify a "principal" under an aiding and abetting theory of liability (*See* ECF Nos. 50, 105); and the Court denied the defendant's motion for a bill of particulars for Counts Three, Four, Five, and Six. *See id.* The Court is capable of resolving this issue within the next few weeks before trial.

Although the defendant claims to not understand the felonious charges against him, that has not stopped the defendant from preparing jury instructions, voir dire, and gathering three experts to evaluate the defendant's conduct. In fact, one of its experts apparently has enough information of the defendant's conduct to put together a diagram calculating the measurements between the defendant and rioters and identify rioters that "probably never heard" the defendant. ECF No. 79-4 at 4. The defendant's other experts examined video evidence from the alleged felonious conduct and form their opinions. *See e.g.* ECF No. 79-3, 100). The defendant makes blanket assertions that pursuing a "group assault" theory would "expand the scope of preparation

3

and relevant discovery," but does not point to any credible reason the scope of preparation would substantially change. ECF No. 120 at 5.

The government is not required to unveil its theories of liability in order to help the defendant prepare for trial. *See United States v. Brodie*, 326 F. Supp. 2d 83, 91 (D.D.C. 2004). The government has identified the particular area that the defendant committed the felony conduct, the time the defendant committed the felony conduct, identified multiple rioters and provided photos of those rioters to the defense, identified numerous officers on the police line where the felonious conduct occurred, and described the felony charges at length in its trial brief. ECF No. 105. Further, by Friday, October 17, the government will provide its exhibits and witnesses to the defendant. To the extent that there are outstanding legal issues, the government expects that the Court will address the legal issues within the next few weeks. The defendant is on notice of the charges against him and delaying trial would not provide the defendant with any other information that would assist the defendant in preparing for trial.

The Court should see, as discussed below, the defendant's Motion as what it is: a delay tactic. The defendant has had over a year and a half to assess the contours of this case and has been on notice that the government plans to pursue a "group assault" theory as one of its theories of liability. The idea that the defendant is somehow unprepared to address the factual and legal issues is simply meritless. While it is true that there exist some legal issues that need further definition, that is no different than any trial that has occurred in this courthouse.

### B. The Election Plays No Role in the Issues at Trial and Is Not Grounds to Continue the Trial

The defendant's political affiliation, beliefs, political involvement, or the 2024 Election do not form the basis of the defendant's charges in this case. The jury will not be asked to decide any issues related to the 2024 Election nor will a jury be asked to infer the outcome of this case based

on the results of the 2024 Election. Whether the defendant committed a crime in January of 2021 is wholly distinct from the results of an election four years after the fact. As is routine to ask during the voir dire process, the parties and the Court will undergo a process dedicated to enduring that a jury is capable of deciding this case based on the evidence presented in the courtroom – not based on the current events taking place during the week of trial. Concerns the defendant raises in his motion to continue – and reasons that were already denied in his motion to change venue – can be examined and ameliorated throughout the voir dire process. *United States v. Webster*, 22-3064, 2024 WL 2712697, at *6 (D.C. Cir. May 28, 2024) (describing that voir dire as a "searching inquiry"). The fact that the defendant seems to use an election vote as a basis to continue a trial unrelated to the crimes at issue should serve to underscore the insubstantial nature of his request.

As already discussed between the parties and the Court, the government has no objection to breaking for part of the morning or afternoon of Tuesday, November 5, to allow jurors to perform their civic duty to vote.

### C. Although the Government is Making Significant Effort to Produce the Defendant's FBI Personnel File and Training Records as Soon as Possible, the Documents are Not Relevant or Admissible at Trial and Are not Material to the Charges

To be clear, the defendant is not entitled to his personnel file or training record with the FBI under Federal Rule of Criminal Procedure 16. The defendant has provided little effort to explain how such records (or such an expansive fishing expedition) will impact whether the defendant knowingly, willfully, or intentionally committed the conduct that the government has exhaustively laid out in pleadings and ongoing litigation. However, in an effort to work collaboratively with the defendant, the government is in the process of providing the defendant with some of his FBI personnel file and his training records, to the extent they still exist. The parties have provided the Court with an update regarding the status of providing the defendant's

personnel file and training records. *See* ECF No. 130. The government is in the process of reviewing what knowingly remains of the personnel file and the defendant's training record. While the government is taking affirmative steps to gather the information requested by the defendant, any delay of providing the documents to the defendant is not grounds for continuing the trial because these documents are not material to the issues at trial.

First, the defendant's personnel file has no bearing on the issues in this case. As discussed at the August 27th hearing and the October 7th hearing, the defendant believes that his personnel file will unveil some evidence of selective prosecution or otherwise demonstrate that the government is bringing charges against him because of his political beliefs and/or his soured relationship with former supervisors within the FBI[1]. The defendant has identified no other purpose or established how the defendant's personnel file is relevant to the charges in this case. This reason is not sufficient to delay trial, especially when motions for selective prosecution (which have not been filed in this case) are vehicles *for* the very discovery the government is now reviewing. A jury will not be asked to determine whether the government selectively prosecuted the defendant – that is an issue solely for the Court. The defendant has not identified any reason that additional records would be relevant to the charged conduct or would be admissible at trial. The request appears to be an unreasonable "fishing expedition" to see what turns up. That is not grounds to delay trial.

Second, evidence of training records containing use-of-force or excessive force training are not material to the charges in this case. In this case, whether officers engaged in improper

---

[1] There is currently no pending motion to dismiss the charges based on selective prosecution, selective enforcement, or vindictive prosecution.

and/or excessive force regarding other individuals or violated policies, procedures, or rules has no bearing on the defendant's guilt for his charged crimes.

Even if the officers' actions did influence the defendant or in some way relate to the defendant's *mens rea*, whether the officer's actions objectively were adequate or inadequate according to training documents would still be irrelevant to the charged crimes. The defendant is a former supervisory FBI agent. It is likely that the defendant at some point in his thirteen-year career with the FBI learned, to some extent, about excessive force. Which particular trainings he participated are not material to the charges in this case. Again, underscoring the fact that throughout this litigation, the defendant has yet to identify a public (or even under seal) reason as to why these records are not only material, but even marginally relevant, in the context of this trial. Indeed, it strains credulity to think that the defendant's past attendance of a specific training would somehow factor into a jury's determination as to whether – when the defendant screamed "kill 'em!" in the middle of a riot directing such exhortations towards police – the defendant acted with the requisite intent.

Lastly, even if there is evidence that the defendant attended use-of-force training, that evidence is not admissible. Whether officers engaged in misconduct with regard to other individuals or violated policies, procedures, or rules has no bearing on the defendant's guilt for his aiding and abetting a violent assault on officers on January 6, his active participation in a civil disturbance, and his unlawful presence on restricted Capitol Grounds during the certification of the 2020 Electoral College vote. This irrelevant evidence should therefore be excluded. Fed. R. Evid. 401, 402, 403. The government expects to move to exclude this evidence.

One last note: even if such information *were* admissible, it bears repeating how untethered these requests are to the case at hand. *If* the defendant attended a training related to the use of force,

7

and *if* that training somehow had some bearing upon his *mens rea* when he did what he is alleged to have done on January 6, 2021, how would this information transmute into a live legal issue? Moreover, presumably the defendant has a recollection of these training(s), which is what prompted the request in the first instance? Does he not have that information then? If he does not remember such training, then how would the existence of such training bear upon issues in this case? The point of these rhetorical questions is to highlight the obvious: while the government appreciates the defendant's prior civil service, his trainings or personnel actions have nothing to do with any of the elements of this case. Instead, the requests – absent more – appear to be a classic fishing expedition, disfavored by courts.

### III.    CONCLUSION

For the foregoing reasons, the government requests that the November 1 trial proceed as scheduled as the defendant has not provided compelling reasons to delay this trial to 20 months after the case commenced.

Respectfully submitted,
MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:    */s/ Sarah Rocha*
Sarah Rocha
Trial Attorney / Detailee
D.C. Bar No. 977497
601 D Street, NW
Washington, DC 20579
Tel. No.:  202-330-1735
Email: sarah.wilsonrocha@usdoj.gov

*/s/ Taylor Fontan*
Taylor Fontan
Assistant United States Attorney
Indiana Bar No. 35690-53
601 D St. N.W, Washington, D.C. 20530
Tel. No.: (202) 815-8597
Email: taylor.fontan@usdoj.gov