**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 1:23-cr-184 (RDM)** |
| | : | |
| **JARED LANE WISE,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S MOTION TO EXCLUDE DEFENDANT'S**
**PROPOSED EXPERT WITNESS TESTIMONY**

Pursuant to Federal Rules of Evidence 401, 403, 702, 703, and 704, the Court should

preclude Defendant Jared Wise from presenting evidence or testimony from two of his proposed

experts, Dr. Suzanne Best and Dr. Chuck Rylant. In addition, although the government does not

object to the lay witness testimony of Joshua Cohen summarizing evidence pursuant to Federal

Rule of Evidence 1006, the Court should preclude him from opining on acoustics, audiology, or

otherwise provide opinions within the purview of the jury.

**PROCEDURAL HISTORY**

As described in the prior filings on these issues, the government objects to the proposed

testimony of the Defendant's witnesses Dr. Suzanne Best, Dr. Chuck Rylant, and Joshua Cohen.

ECF Nos. 79, 91, 100, 114. In those filings, which are incorporated herein by reference, the

government described the charges in the case and applicable law and set forth its position that the

Defendant should be barred from presenting the proposed expert testimony. On October 7, 2021,

October 21, 2024, and November 7, 2024, the Court held *Daubert* hearings at which it heard from

all three proposed experts.

## APPLICABLE LAW

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony at trial. Rule 702 provides that an appropriately qualified witness may testify in the form of an opinion if "it is more likely than not that:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case."

*Id. See also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1995). The party proposing the expert testimony bears the burden of showing that the testimony satisfies Rule 702 and is therefore admissible. *See Meister v. Med. Eng'g Corp.*, 267 F.3d 1123, 1127 (D.C. Cir. 2001).

A trial court must act as a "gatekeeper" and exclude expert testimony if it is (1) not reliable or (2) not relevant. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993) (observing that Rule 702 assigns to the trial judge the task of ensuring "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand"). This test ensures that each testifying expert, "whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). An expert's opinion testimony will be excluded as unreliable if the expert is unqualified to provide the opinion, if the expert did not base the opinion on sufficient facts or data or employ reliable methods and principles, or if the expert did not reasonably apply appropriate methods and principles to the facts

of the case. *See* Fed. R. Evid. 702 (requiring expert testimony to meet these standards); *Kumho Tire*, 526 U.S. at 155-56 (affirming exclusion of expert testimony based upon unreliable methodology).

Expert testimony must also satisfy the basic relevancy rules set forth in Rules 401 and 403. As the Supreme Court explained, because "[e]xpert evidence can be both powerful and quite misleading . . . the judge in weighing possible prejudice against probative force under Rule 403 . . . . exercises more control over experts than over lay witnesses." *Daubert*, 509 U.S. at 595 (citations omitted).

## ARGUMENT

### I.     Dr. Suzanne Best

The Defendant proposes clinical and forensic psychologist Dr. Suzanne Best to opine on trauma and trauma reactions. *See* Oct. 7 Tr. at 48-52; Oct. 21 Tr. at 6-7, 38-43. Specifically, the Defendant proposes that Dr. Best testify that Wise developed posttraumatic stress symptoms which meet clinical criteria for post-traumatic stress disorder ("PTSD") based on his experience on January 6. As part of a PTSD diagnosis, the Defendant proposes that Best provide testimony that: (1) Wise experienced dissociation; and (2) his memory of his actions at the Capitol is incomplete as a result. In addition, the Defendant proposes that Best testify that Wise went in the direction of the riot "consistent with behaviors seen in individuals with law enforcement training and experience when faced with a traumatic event(s)." ECF No. 118-2 (Best Rule 16 Disclosure).

Although the government does not contest Dr. Best's academic pedigree or professional qualifications, the Defendant has not met his burden under Rule 702 to sponsor Dr. Best as an expert witness to opine on whether the PTSD diagnosis negates or affects his intent to commit the charged offenses. To the extent the Defendant proposes that Best testify regarding Wise's memory,

such testimony must be narrowly tailored pursuant to Rule 403 and offered only if Wise testifies regarding the events of January 6, 2021, is unable to recall some aspects of the day, and his credibility as to memory is questioned on cross-examination.

Finally, the Defendant has not met his burden under Rules 401 and 702 to offer testimony about "behaviors seen in individuals with law enforcement training and experience" because such testimony is not relevant to the instant case and Dr. Best's proposed opinion is not based on sufficient facts or data and she did not employ reliable methods and principles to form her conclusion.

A.    **Summary of Dr. Best's Proposed Opinions**

Dr. Best diagnosed Wise with PTSD based on the Clinician Administered PTSD Scale ("CAPS"). Oct. 7 Tr. at 81. Although the CAPS evaluation is a reliable method of diagnosis for PTSD, as stated in literature cited by the Defendant, "some of the PTSD symptoms . . . have been criticized for being empirically unfounded, notably the dissociative amnesia component." ECF No. 118-4 at 1.

One portion of the CAPS is to evaluate negative thoughts or feelings that began or worsened after the trauma, which can include "inability to recall key features of the trauma." *Id.* at 106-07. In this case, Dr. Best concluded based on Wise's statements that he was unable to recall certain events from January 6 that he experienced that symptom. *See* Oct. 21 Tr. at 13 (explaining it was based on Wise's statements to Dr. Best and to his housemate). Those self-reported statements are the basis for her conclusion that he experienced dissociation.

At the *Daubert* hearings, Dr. Best clarified that she was not providing an opinion on dissociative amnesia "as a disorder itself, but as a symptom of PTSD." Oct. 21 Tr. at 8. In her

report, she did not describe Wise as having dissociative amnesia.[1] She described him as having memory loss.

"Dissociation is a mental process the causes a lack of connection in a person's thoughts, memory and sense of identity." *Dissociation and Dissociative Disorders*, Mental Health America, https://mhanational.org/conditions/dissociation-and-dissociative-disorders (last visited Nov. 19, 2024); *see also What are Dissociative Disorders?*, American Psychiatric Association, https://www.psychiatry.org/patients-families/dissociative-disorders/what-are-dissociative-disorders (last visited Nov. 19, 2024).

Dissociation is a continuum of different behaviors with daydreaming and other mild forms of dissociation at one end of spectrum. *Id.*; *see also* Oct. 21 Tr. at 10-11. On the other end, more severe forms of dissociation include dissociative disorders as defined by the Diagnostic and Statistical Manual of Mental Disorders (DSM-5-TR), including dissociative identity disorder, dissociative amnesia, and depersonalization/derealization disorder. *Id.* In this case, Dr. Best was not able to testify as to where Wise fell in the spectrum. Oct. 21 Tr. at 10-13. She did not diagnose Wise with dissociative amnesia or any of the other dissociative disorders in the DSM-5-TR. *Id.* at 6-8.

In addition to her proposed testimony regarding PTSD and dissociation, in her Rule 16 disclosure, Dr. Best also provided the following proposed opinion:

> Mr. Wise's actions on the day of the events are consistent with behaviors seen in individuals with law enforcement training and experience when faced with a traumatic event(s): running toward rather than away from the sounds of munitions or explosions; being

---

[1] Her report includes a description of peritraumatic dissociation as a risk factor for PTSD and explained that it "can include feelings of confusion and disorientation, altered sense of time, and disturbed or entirely disrupted memory." ECF 118 at 11 (quoting Best's report). Dr. Best's Rule 16 disclosure states that "[a]s a result of this dissociative state, Mr. Wise is unable to recall some of the events of the day (diagnostically defined as dissociative amnesia)." ECF 118 at 8.

> compelled to investigate a potential disturbance; being compelled to
> assist civilians perceived to be under threat; and being deeply
> disturbed and traumatized by what he perceived as police brutality.

ECF No. 118 at 8. She explained at the *Daubert* hearing that her opinion was based on what Wise reported to her and her experience in working with first responders. Oct. 21 Tr. at 27-37. She was unaware of any research or literature supporting her opinion. *Id.* (explaining that she did not test her opinion, she did not use any principles or methodology in forming that opinion, and she was not aware if "there is a specific study that speaks toward whether a first responder would run toward a disaster or away from it.").

**B.**     <u>**Proposed Testimony Regarding Dissociation Should Be Excluded**</u>

    **1.   Dr. Best's Opinion Does Not Satisfy Rule 702**

The Court should reject Dr. Best's proposed testimony regarding dissociation because her opinion is not based on sufficient facts or data, and she did not employ reliable methods and principles to the facts of his case.

First, Dr. Best failed to consider sufficient facts or data about Wise's alleged dissociation and the triggering event for her PTSD diagnosis. Dr. Best did not consider whether Wise was a perpetrator on January 6. Oct. 21 Tr. at 7, 22. Her failure to do so is problematic because, as she testified, he would not fit the criteria for PTSD if he was a perpetrator threatening harm instead of witnessing or experiencing the trauma happening to him. *Id.*

In addition, Dr. Best did not form her opinions on sufficient facts or data because she based her testimony solely on information provided directly and indirectly by the Defendant and did not appropriately corroborate his statements to her. For example, she did not compare his report that he ran toward an explosion with any video evidence from January 6. Oct. 21 Tr. at 14-15. Dr. Best claimed to have corroborated his report based on what Wise told his housemate, Oct. 21 Tr. at 9-

10, however, her report's description of the housemate's interview did not mention Wise's alleged dissociation or memory loss. ECF No. 119-1 at 8.

Moreover, Dr. Best failed to adequately test for whether Wise was malingering, or exaggerating or feigning physical or mental illness. As the Defendant acknowledges, there is a meaningful percentage of offenders "intentionally fabricat[ing] memory loss to avoid punishment for a crime or other personal gain." ECF No. 118-5 at 6. To address the potential for malingered amnesia, "a proper diagnosis requires a thorough investigation using a multidisciplinary and multitechnique approach." *Id.* at 9. However, Dr. Best failed to do so when evaluating Wise. Oct. 21 Tr. at 20-26. She did not evaluate him for possible malingering using any specific tests for malingering or dissociation. *Compare* 118-5 at 9 *with* Oct. 7 Tr. at 99-100 *and* Oct. 21 Tr. at 20-25. Instead, she administered "a self report" test, the Personality Assessment Inventory (PAI), to Wise. Oct. 21 Tr. at 99. In her report, although she stated that the results "did not indicate an attempt to present himself in either an overly favorable or pathological light," she also indicated that his "responses to the assessment were at times inconsistent, though not to the extent that the profile was rendered invalid." ECF No. 119-1 at 9. She was unable to specifically describe the results of the malingering indexes from the PAI, her report did not include the metrics she evaluated as part of the PAI for malingering, and the underlying scores have not been produced. Oct. 21 Tr. at 23-25.

Thus, Dr. Best did not base her opinion on sufficient facts or data and did not employ reliable methods and principles. She failed to appropriately consider whether Wise could be diagnosed with PTSD based on his actions on January 6 and failed to evaluate him for malingering. The Defendant therefore has not met the required burden under Rule 702 to sponsor Dr. Best's testimony.

**2. Dr. Best's Testimony Should Be Excluded Under Rule 403 Because It Carries a Substantial Risk of Undue Prejudice or Confusion**

Even if the Court were to conclude that Dr. Best's testimony was otherwise admissible, it should be excluded because of the risk of confusing and misleading the jury by: (a) backdooring otherwise inadmissible hearsay; (b) calling for the Defendant's own prejudicial hearsay recitation; and (c) suggesting excuse or justification. If the Court were to allow Dr. Best to testify regarding memory, her testimony should be limited.

*a. Backdoor Otherwise Inadmissible Hearsay*

Dr. Best's testimony should also be precluded because it exists solely to backdoor inadmissible hearsay. An expert may rely upon hearsay statements in forming his opinions (Fed. R. Evid. 705), but "the underlying information" relied upon by the expert "is not admissible simply because the [expert's] opinion or inference is admitted." Fed. R. Evid. 703, Advisory Committee Notes, 2000 Amendments. "The expert must form his own opinions by applying his extensive experience and reliable methodology to the inadmissible materials. Otherwise, the expert is simply repeating hearsay evidence without applying any expertise whatsoever, a practice that allows the proponent to circumvent the rules prohibiting hearsay." *See also Gilmore v. Palestinian Interim Self-Government Authority*, 843 F.3d 958, 972 (D.C. Cir. 2016) (internal quotations and citations omitted).

Here, Dr. Best's opinions are based on interviews with the Defendant and reports from the Defendant's friends. ECF No. 79-2 at 2-17. The Defendant told Dr. Best that he forgot certain parts of the day on January 6, and Dr. Best will be telling the jury that he told her that he forgot certain parts of the day on January 6. It is clear then that Dr. Best is at least partially (if not wholly) basing her findings on statements by the Defendant and others, and these statements are therefore, likely to be part of her testimony at trial. For these reasons, the Defendant's proposed expert

testimony should be barred to the extent the defense attempts to introduce hearsay evidence – including the Defendant's statements regarding his experience in the U.S. Capitol – under the guise of expert testimony. Simply put, a criminal defendant, like any litigant, cannot use an expert witness to place his own explanation of his conduct before the jury without subjecting himself or some other percipient witness to cross-examination.

### b. Excuse or Justification

Courts have appropriately closely scrutinized psychiatric evidence, as "the strict use of psychiatric evidence to negate mens rea may easily slide into wider usage that opens up the jury to theories of defense more akin to justification." *United States v. Pohlot*, 827 F.2d 889, 905 (3d Cir. 1987) (exclusion of evidence showing personality disorder). *See also United States v. Davis*, 863 F.3d 894, 908 (D.C. Cir. 2017) (exclusion of evidence showing ADHD); *United States v. Lilley*, No. 15-6415, 2017 WL 7048806, at *4-5 (6th Cir. July 26, 2017) (same for dyslexia, depression, anxiety, and symptoms of post-traumatic stress disorder); *United States v. Andrews*, 811 F. Supp. 2d 1158, 1172 (E.D. Penn. 2011) (same for bipolar disorder). As Judge Hogan explained in precluding evidence of the defendant's ADHD diagnosis under Rule 403 in *United States v. Davis*, such evidence "is precisely the type of 'justification or excuse' evidence that is not permitted because of the danger that it will mislead the jury." 78 F. Supp. 3d 17, 21 (D.D.C. 2015).

The danger of confusion or misleading the jury is particularly present in this case because the Defendant proposes for Dr. Best to testify regarding an after-the-fact condition developed as a result of Wise's participation in the riot. In *United States v. Childress*, the D.C. Circuit cautioned that an expert's testimony must be limited to the expert's "diagnoses, the facts upon which those diagnoses are based, and the characteristics of any mental diseases or defect the expert[] believes

the defendant possessed during the relevant time period, staying clear of directly or indirectly opining on the ultimate issue of specific intent." *United States v. Childress*, 58 F.3d 693, 728 (D.C. Cir. 1995) (quoting *United States v. Gold*, 661 F.Supp. 1127, 1131 (D.D.C. 1987). Here, Dr. Best does not opine that the Defendant had PTSD during the relevant time period, but that it was developed several months or years later, based on his experiences on January 6.

Dr. Best's proposed testimony regarding dissociation also carries a risk of misleading or confusing the jury because she does not offer an opinion regarding when on January 6 Wise experienced dissociation or the severity of Wise's alleged dissociation. She did not reliably test or measure it and testified that there is no way to do so. The testimony is inherently confusing because her opinion is that he experienced dissociation as a symptom, but she did not diagnose him with any of the dissociative disorders, including dissociative amnesia.

Therefore, because whatever probative value is supplied by Dr. Best's testimony is substantially outweighed by the risk that her testimony will supplant the jury's determinations on intent, it should be precluded.

c. *If the Court Allowed Testimony Regarding Memory, Dr. Best's Testimony Should Be Limited and Exclude Irrelevant Hearsay*

If the Court were to allow Dr. Best to provide testimony regarding Wise's inability to recall certain aspects of January 6, such testimony should only be allowed to rebut credibility challenges and be narrowly tailored to relevant and admissible evidence.

For any of Dr. Best proffered testimony to overcome Rule 403's balancing test, the Court should determine that: (a) the Defendant has testified or otherwise provided admissible evidence about his memory; and (b) that his credibility has been sufficiently challenged based on his alleged inability to recall portions of the day's events. Because much of the basis for her opinions is

statements made by the Defendant, requiring those conditions be met is necessary to avoid the considerable risk that her testimony could be used as a vehicle to introduce his hearsay statements.

If those conditions were met and Dr. Best were to testify, her testimony should be limited. Dr. Best's report and proffered testimony is replete with unduly prejudicial, confusing, misleading, and irrelevant information. As one example, although Dr. Best stated that her diagnosis of PTSD was based on January 6, 2021—not any prior events—her report and proffered testimony includes many irrelevant details about his background and prior experiences, including his work experience with the FBI. Similarly, in her report, she describes "his perceived law enforcement surveillance" and refers to his reaction to "his arrest and the current charges." ECF No. 119-1 at 11.

While an expert is entitled to rely on inadmissible evidence in forming her opinion, she must form her own opinions by applying her experience and methodology to the inadmissible statements, rather than "simply transmit the hearsay to the jury." *United States v. Mejia*, 545 F.3d 179, 197 (2d Cir. 2008). The Court should guard against an expert "repeating hearsay evidence without applying any expertise whatsoever," a practice that allows the proponent of the expert "to circumvent the rules prohibiting hearsay." *Id.* (internal quotation marks and citation omitted).

For these reasons, any testimony offered by Dr. Best about what the Defendant said, what he told his housemate, or any other hearsay statements would confuse the jury and prejudice the government.

**C.      Dr. Best's Opinion Comparing Wise to Individuals with Law Enforcement Training and Experience Should Be Precluded**

Because there is not a sufficient basis for Dr. Best's opinion about Wise's actions as compared to "individuals with law enforcement training and experience," her proposed testimony on that topic should also be excluded.

In her Rule 16 disclosure, Dr. Best proposes to offer the opinion that "Mr. Wise's actions on the day of the events are consistent with behaviors seen in individuals with law enforcement training and experience when faced with a traumatic event(s)." ECF No. 118-2 at 1. She does not opine on the topic in her report. *See* ECF No. 119.

Dr. Best's proposed opinion is irrelevant. It is also unreliable because she did not consider the facts and circumstances of Wise's conduct. Other than his statements to her, Dr. Best does not have any basis to state that Wise "[ran] toward rather than away from the sounds of munitions or explosions; [was] compelled to investigate a potential disturbance; [was] compelled to assist civilians perceived to be under threat; and [was] deeply disturbed and traumatized by what he perceived as police brutality." ECF No. 118-2. In its review of the evidence in this case, the government has not identified any examples of Wise rendering first aid, calling 911 or reporting what he saw to the authorities, or otherwise taking actions consistent with her recitation. Thus, allowing Dr. Best to opine on what Wise told her—without any corroboration of his conduct on January 6—would only serve to bolster and give credence to Wise's statements.

Dr. Best's proposed opinion should also be excluded because her commentary on "individuals with law enforcement training and experience" does not meet the criteria for an expert opinion pursuant to Rule 702. At the *Daubert* hearings, Dr. Best explained that the basis for her proposed opinion was her general clinical experience working with first responders. Oct. 21 Tr. at 27. The proposed opinion is not based on Dr. Best's training, research, or education, and it is not a theory sufficiently tested, subjected to peer review, and accepted within the relevant scientific community. She testified that she was unaware of any scientific literature on the topic. Oct. 21 Tr. at 27-37. The Defendant has not proffered any other basis for her proposed testimony that Wise—

according to his self-description of his actions—acted consistently on January 6 with "individuals with law enforcement training and experience."

In sum, her proposed testimony regarding Wise's actions on January 6 and "individuals with law enforcement training and experience" should be excluded.

**II.      Dr. Chuck J. Rylant**

On June 24, 2024, the Defendant disclosed Dr. Chuck J. Rylant as one of the experts he plans to call at trial. Dr. Rylant's opinion has since evolved. The Defendant seeks to have Dr. Rylant testify about the following:

- Based upon a reasonable degree of professional certainty, that a former, experienced law enforcement officer observed what reasonably appeared to be improper and/or excessive force.

- Based upon a reasonable degree of professional certainty, that under the emotional stress and cognitive load caused by the chaos of the protests at the U.S. Capitol Building, auditory exclusion would be a normal human response that should be expected due to the unconscious, cognitive impact of selective attention.

Nov. 7 Tr. at 7, 18.

Dr. Rylant should be precluded from testifying about what a former, experienced law enforcement officer would have experienced or perceived on January 6, 2021 and that auditory exclusion is a normal, human response during the events of January 6, 2021 for multiple reasons.

**A.      Dr. Rylant's Opinion About What a Former, Experienced Law Enforcement Officer Would Have Perceived Should Be Precluded**

**1.   Dr. Rylant's Opinion is Not Based on Scientific Knowledge**

Dr. Rylant's expert testimony should be precluded because his opinions regarding a former, experienced law enforcement officer's state of mind on January 6 is not based on sufficient facts or data, are not the product of reliable principles and methods, and any principle or method that he

did use was not applied reliably to the facts of this case. *See Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579 (1995).

    *a.   Dr. Rylant Does Not Rely on Sufficient Facts or Data*

First, Dr. Rylant's opinion regarding what a former, experienced law enforcement officer's state of mind or perception of police activity on January 6 is not based on sufficient facts or data. Evidence is subject to exclusion where it is not founded on objective data, studies, or sampling techniques. *U.S. v. Rockwell Space Operations Co.*, 2002 WL 864246 (S.D. Tex. 2002). Dr. Rylant's failure to rely on sufficient facts and data is evident based on Dr. Rylant's vast generalizations and inability to identify what he relied on to determine what a former, experienced law enforcement officer would have perceived. After being asked multiple times what he relied upon to form his opinion, Dr. Rylant and the Defense could not consistently identify what videos or facts he relied upon to form his opinion.

For instance, in his most recent report, Dr. Rylant relied on four open-source videos and various body worn camera footage from the Upper West Terrace at around 4:20 PM to form his opinion. ECF No. 123-1 at 7. However, on direct examination, Defense counsel asked Dr. Rylant's opinions regarding various body worn camera videos in a different location (West Plaza at around 1:35 PM) rather than the body worn camera videos cited to in Dr. Rylant's expert report. Nov. 7 Tr. at 48-52.

Even Dr. Rylant admitted that pinpointing exact moments in the video evidence that a former, experienced law enforcement officer would perceive officers as using excessive force was difficult. He testified that his "effort was to look at this from a broad perspective and say, what could some hypothetical person perceive to be excessive, not necessarily say for sure that the defendant or someone like the defendant actually observed, because that was difficult to determine

with the evidence that we have." Nov. 7 Tr. at 9-10. The record is devoid of any meaningful measure of detail about the points in the day in which a former, experienced law enforcement officer would have the state of mind that officers were engaging in excessive force. Dr. Rylant cannot accurately point to specific videos or specific moments in which he can opine that a former, experienced law enforcement officer perceived officer action to be excessive.

   *a.  Dr. Rylant Used No Reliable Principles or Methods Applied to the Facts of This Case*

Dr. Rylant's opinion must also be precluded on the basis that it is not the product of reliable principles and methods, and, if he did use some sort of methodology, any principle or method that he did use was not applied reliably to the facts of this case.

Dr. Rylant's testimony has morphed and changed over time since his first report. First, he could give his opinion regarding how Jared Wise had an emotional and/or psychological reaction to police action that affected his decision making. ECF No. 73-3 at 6. Dr. Rylant came to his opinion without interviewing or reviewing statements by Wise, without knowing what Wise saw or where he was located throughout Capitol grounds on January 6, and without connecting any of Wise's decision making to his experience of allegedly witnessing the officers engaging in excessive force. *Id.* at 6-8. Then, relying on the same literature, same articles, and same video evidence, Dr. Rylant swapped out "Jared Wise" with "former, experienced law enforcement officer." ECF No. 96-1 at 6. The only change to the report was the change from "Jared Wise" to "former, experienced law enforcement officer." *Id.* Then, at the latest hearing, Dr. Rylant changed his opinion again that a former, experienced law enforcement officer witnessed excessive force. Nov. 7 Tr. at 26-27. The shapeshifting nature of his opinions themselves are inherently unreliable and demonstrate his lack of methodology.

Even now, fourth time is not a charm on Dr. Rylant's opinion as it still follows no methodology and demonstrates no reliability. The government expects the Defendant to equate Dr. Rylant's testimony to the testimony at issue in *Diaz v. United States*, 144 S. Ct. 1727 (2024) in which the Supreme Court decided the narrow question of whether, under Rule 704(b), an expert can conclude that "most people" in a group have a particular mental state. *Id*. at 1735. Although Dr. Rylant's testimony may fall into this category, his testimony is still subject to the gatekeeping functions of Rule 702 and 403.

Dr. Rylant's opinion cannot meet this requirement under Rule 702 because there is no reliable measurement or definition of what constitutes a former, experienced law enforcement officer. When asked how he defines a "former law enforcement officer" for purposes of his opinion, he stated that it could include someone who only completed one day out of the academy or someone that was a law enforcement officer for 20 years. Nov. 7 Tr. at 29-30. He did not rely on any formal methodology or literature to form that definition, only his knowledge that most jurisdictions have minimal requirements to be a peace officer and some basic level of training that would allow them to be able to determine whether they could perceive excessive force on January 6. *Id.* Dr. Rylant cites to no studies on the consistency of officer training across jurisdictions or officer training between different types of law enforcement officers. Nor does he rely on a particular per-reviewed study or methodology to test his conclusion that a former, experienced law enforcement officer perceived events in a certain way.

The lack of a reliable methodology is highlighted when Dr. Rylant testified about the individual inquiry that would be necessary to determine what a former, experienced law enforcement officer perceived. Dr. Rylant testified that ultimately, it is an individual inquiry depending on the training an officer received, the officer's experience, the person who trained the

16

officer, and when the officer was trained. Nov. 7 Tr. at 53, 59. As an example, Dr. Rylant testified that law enforcement policy changing over time and the evolution of the law would affect how a former law enforcement officer perceived a use-of-force event. *Id.* at 53. Any method of determining what a former law enforcement officer experienced and perceived requires an individual inquiry into the former law enforcement officer herself. As Dr. Rylant stated, whether a former law enforcement officer remembered specific training "could or could not as well" affect whether the former law enforcement officer perceived something to be excessive. There can be no reliable method in which to generalize what all former law enforcement officers perceived during a riot. Dr. Rylant may make conclusory opinions that it is obvious that officers are engaging in excessive force, but that opinion is not backed by any peer reviewed articles, methodology, or process that can be tested. Therefore, Dr. Rylant's proffered testimony does not meet this prong of Rule 702.

## 2. Dr. Rylant's Opinion Does Not Assist the Trier of Fact and Should Otherwise Be Excluded Under the Rule 403 Balancing Test

Even if Dr. Rylant engaged in some methodology when coming to his conclusion, Dr. Rylant's testimony regarding what a former, experienced law enforcement officer perceived on January 6 does not assist the trier of fact and should otherwise be excluded under Rule 403.

Dr. Rylant's testimony does not assist the trier of fact as required by Rule 702 and does not pass the Rule 403 balancing test because his opinion is so general that it would not help the jury decide the issues in this case. Generally, what a former, experienced law enforcement officer – whether one day out of the academy or 20 years retired – would have perceived is not relevant to this case. It's only relevant what the Defendant himself perceived and his state of mind at the time he perceived it. If the Defendant "is right that an expert opinion about the mental state of 'most' people like the Defendant is not 'about' the Defendant's mental state, it is hard to see how that

opinion might be relevant." *Diaz v. United States*, 144 S. Ct. 1727, 1744 (2024) (*Gorsuch dissenting*). What the Defendant perceived either contributed to his intent or not – the jury can make that determination without Dr. Rylant's testimony.

Dr. Rylant testified that he did not know and did not base his opinion on whether the Defendant *had* any knowledge of law enforcement inadequacies or that he witnessed certain "excessive force" events. Expert opinions about the Defendant's "state of mind at the crucial moment" when committing a criminal act may "easily mislead" the jury into "thinking the opinions show more than they do." *Clark v. Arizona*, 548 U.S. 735, 776 (2006). Dr. Rylant's testimony is entirely untethered to the Defendant altogether. For example, Dr. Rylant cannot confirm that the Defendant even witnessed this alleged excessive or improper force by officers. The videos and other evidence Dr. Rylant rely on to form his opinion about excessive or improper force contains footage of various areas of the Capitol grounds at varying times.

Even if the Defendant was nearby, there is no way for Dr. Rylant to determine what the Defendant perceived, saw, or heard. Most of the specific examples of police behavior in Dr. Rylant's opinion do not contain the Defendant or contain multiple angles of a single event. What officers were doing at other areas on Capitol grounds or an analysis of police action after the fact have no relevance to the Defendant's state of mind, intent, or any other trial issue.

Lastly, testimony that hinges on analyzing officer actions on January 6 is prejudicial because it turns the focus of trial on whether the officers engaged in excessive force, not what the Defendant's intent was on January 6. The jury will not need to determine whether officers engaged in excessive force on January 6 to determine whether the Defendant had the requisite intent to commit the crimes charged. Allowing Dr. Rylant's testimony regarding excessive force or what someone may have perceived as excessive force would only create a mini-trial of an issue that

does not help the jury understand or determine the Defendant's intent. It appears to turn a trial of the Defendant's conduct into one about whether officers handled themselves appropriately during a violent riot. This would be patently confusing to a trier of fact. The jury can watch the videos that Dr. Rylant relies on to form his opinions and form their own opinions as to what was happening on January 6 on Capitol grounds, what the officers were doing, how the Defendant was acting, what he was saying, and what he was doing. Dr. Rylant's testimony also defies his own parameters. Experiencing trauma and reacting strongly to said trauma by police is one thing, but the fact pattern here involves Wise apparently getting so angry and upset that he demanded other rioters kill police. And he did so repeatedly, and in concerted fashion.

Ultimately, the prejudice of allowing Dr. Rylant to testify about what a former, experienced law enforcement officer may have perceived weighs too heavily. Dr. Rylant's opinion appears to exist solely to backdoor what would be otherwise inadmissible hearsay that is uncorroborated, often confusing or misleading, or lacking context in its entirety.

**B.    Dr. Rylant's Opinion Regarding Auditory Exclusion Should Be Precluded**

Dr. Rylant's opinion regarding auditory exclusion was not disclosed timely and should be excluded on that basis. His opinion should also be excluded because is not based on scientific knowledge and its negligible probative value is substantially outweighed by the risk of confusion and waste of time.

**1.    Dr. Rylant's Opinion Regarding Auditory Exclusion Failed to Comply with the Disclosure Requirements under Rule 16**

Dr. Rylant's opinion regarding "auditory exclusion" was disclosed three months after the deadline the court imposed in its June 8, 2024 order and should be excluded. *See* ECF No. 35; *Estevis v. City of Laredo*, No. 5:22-CV-22, 2023 WL 9312081, at *10 (S.D. Tex. Dec. 28, 2023). The defense initially produced Dr. Rylant's expert report on June 24, 2024. *See* ECF No. 79-3. It

did not contain any mention of auditory exclusion. A briefing schedule was set, and the government and Defendant submitted their respective briefs regarding the admissibility of the proffered expert testimony. After the briefs were submitted and three days before a motions hearing before the Court, the Defendant submitted a "supplemental" expert report that changed Dr. Rylant's opinion. *See* ECF No. 96-1. It did not contain any opinion related to auditory exclusion. *Id.* On October 7, during the middle of the parties' first *Daubert* hearing, the Defendant disclosed Dr. Rylant's current expert report, which contained the auditory exclusion opinion. ECF No. 23-1. The Defendant did not comply with the Court's order and Rule 16, and therefore, Dr. Rylant's opinion should be excluded under Rule 16.

In the alternative, the government requests that the Court preclude the Defendant from introducing any additional expert opinions. Allowing the Defendant to continue modifying and adding to their expert opinions is prejudicial to the government as the parties are near trial and not substantially justified.

### 2. Dr. Rylant's Opinion Regarding Auditory Exclusion is Not Based on Scientific Knowledge

Dr. Rylant is not qualified to give expert opinion on auditory exclusion. Although he may have studied aspects of auditory exclusion in pursuit of his clinical psychology degree, his "specialization was in psychology and physiological aspects of law enforcement, use of force decision-making," not auditory exclusion. Nov. 7 Tr. at 60-61. Dr. Rylant has not published in the field of auditory exclusion, has not conducted studies regarding auditory exclusion, or received any kind of formal specialized education on the subject. He also does not have a degree or education in audiology. To the extent that Dr. Rylant has specialization in auditory exclusion, it is only in the context of psychology and physiological aspects of law enforcement, use of force decision-making – not generally for people in riots.

Second, Dr. Rylant does not rely on reliable methodology or peer-reviewed studies or articles in forming his basis that people generally experienced emotional stress and cognitive load that caused auditory exclusion on January 6 because there is not a reliable method to determine whether someone was experiencing auditory exclusion due to experiencing emotional stress or cognitive load. *See e.g., M.A.C. v. City of Los Angeles*, No. CV164477DMGAJWX, 2018 WL 6173383, at *3 (C.D. Cal. Jan. 24, 2018) ("Plaintiffs challenge auditory exclusion as "junk science" because literature on the subject is composed of anecdotal, self-reporting persons with "test-taker bias." The Court agrees."). In fact, Dr. Rylant pointed out that it is impossible: "There is no measure that you can do afterwards. Like I can't watch a video, I can't do a test on an individual to determine what level of stress they experienced hours, days, weeks in the past. It just doesn't exist with modern technology." Nov. 7 Tr. at 57.

Dr. Rylant relies on a few studies for the general proposition that auditory exclusion exists, and it can be triggered in stressful situations. For example, Dr. Rylant relies on a study for the general proposition that people struggle to hear and see everything when visual stimuli and audio stimuli compete. ECF 23-1 at 7, f.n. 12. The study did not involve law enforcement, did not analyze use-of force-events, and was not conducted in the context of a riot. Id. He also relies on a study that pertains to competing stimuli during the use of cell phones when driving. Id. at 6, f.n. 10. But ultimately, Dr. Rylant testified that while "all human beings have these psychological responses, but we don't know to what degree an individual will because it is always some what [sic], as you say, individualized." Nov. 7 Tr. at 59-60. Although Dr. Rylant can discuss the existence of auditory exclusion and that people on January 6 at the Capitol may have experienced emotional stress and cognitive load, there is no reliable way to apply it and measure its effects on individuals on January 6. Therefore, the testimony must be excluded.

**3. Dr. Rylant's Opinion Does Not Assist the Trier of Fact and Should Otherwise Be Excluded Under the Rule 403 Balancing Test**

Dr. Rylant's opinion regarding auditory exclusion would not be helpful to the trier of fact because it is vague, overbroad, and cannot withstand the Rule 403 balancing test.

Dr. Rylant does not offer a particular opinion that may relate to the Defendant or any other person on January 6, but rather creates a blanket opinion that can encompass anyone. The January 6 riot lasted for hours. While the entirety of the riot was violent to a certain extent, there were a vast number of experiences on different areas of Capitol grounds. A generalized determination that it is possible that some of the people on Capitol grounds on January 6 experienced periods that they could not hear is not probative. Even if it was, its probative value does not outweigh the potential for confusing the jury and wasting time.

Dr. Rylant's proffered expert opinions cannot meet the standards set forth in Rule 702 for expert testimony and do not otherwise pass the Rule 403 balancing test. Therefore, the Court should preclude his expert opinions.

**III.    <u>Joshua Cohen</u>**

The court should preclude Mr. Cohen's expert testimony because his proffered testimony is within the province of the average juror. As described in the government's Reply in Support of its Motion to Preclude Defendant's Expert Witnesses,[2] the government takes no issue with Mr. Cohen's testimony regarding video exhibits to assist the jury's understanding of the evidence provided. Mr. Cohen does not need to be admitted as an expert to present the video or diagram evidence, which is fact testimony. However, the government moves to preclude Mr. Cohen's opinions about what people, including the Defendant, heard or saw on January 6, 2021.

**A.    <u>Video Evidence Can Be Properly Evaluated by the Jury Without an Expert</u>**

---

[2] The government incorporates by reference its arguments in ECF No. 79 at 13-16, ECF No. 91 at 6-8.

Joshua Cohen's opinions are within the purview of an average juror. Expert testimony concerning knowledge within the province of the average juror is not admissible. *United States v. Libby*, 461 F. Supp. 2d 3, 7 (D.D.C. 2006). Therefore Mr. Cohen's expert opinions should be excluded.

Testimony at the *Daubert* hearing confirmed that the majority of Mr. Cohen's purported expert opinions were narrations and observations that came from watching the videos provided to him by the Defendant. For example, Mr. Cohen formed his first opinion by synchronizing videos and watching the videos multiple times. Nov. 7 Tr. at 91. Mr. Cohen's next opinion is also based on him watching videos. Mr. Cohen formed his opinion that "Jared Wise was not being directly confronted by police or defying posted barriers" based on watching the videos provided by the defense. *Id.* at 91-92. These opinions are well within the purview of the jury.

The same can be said for the videos that Mr. Cohen created for the Defendant and that are a reflection of the opinions expressed in Mr. Cohen's expert report. In creating these exhibits, Mr. Cohen used recognizable enhancements to make it easier for the jury to view and understand the evidence: he slowed certain videos down, he circled the Defendant, he zoomed in on the Defendant, and he synchronized videos. Although his work requires great skill and precision, his enhancements are not so complex that he needs to provide expert testimony to the jury. Mr. Cohen can explain what enhancements he made to the exhibits as a lay witness.

**B.**  **Mr. Cohen Is Not an Expert in Acoustics and His Opinions about Acoustics Should Be Excluded Accordingly**

The portions of Mr. Cohen's opinions that contain various conclusions about what certain rioters, including the Defendant, could have or would have seen or heard on January 6, 2021 should precluded because Mr. Cohen presents no expertise that forms the basis for his opinions.

Mr. Cohen made it clear in his testimony at the Daubert hearing: he is not an expert in acoustics and cannot opine on what anyone heard on January 6. Nov. 7 Tr. at 84. Mr. Cohen can testify about what he heard in videos and present a diagram based on his review of the video as a demonstration for the jury. However, he cannot opine on a person's ability to hear or not hear throughout the duration of the riot. As he explained at the hearing, "[t]he opinion that we gave is not based on an audio expertise for how far sound would travel and thereby depending on the measurements -- the opinion is based on careful review of all of the body-worn camera footage that we were provided and identifying which cameras picked up those words and which ones didn't." Nov. 7 Tr. at 85.

Similarly, Mr. Cohen cannot opine on what people saw or did not see on January 6. As described above, Mr. Cohen's opinions regarding what could have been heard or could have been seen are based on his review of the video evidence provided to him. As noted before, Mr. Cohen should be permitted to testify about what he observed or heard in a video. But drawing conclusions as to what someone saw or heard is outside the scope of lay witness testimony and not supported by any expertise.

## CONCLUSION

For the foregoing reasons, including those described in its prior filings objecting to Defendant's proposed experts, the Court should exclude the proffered testimony of Dr. Suzanne Best and Dr. Chuck Rylant. Although the government does not object to lay testimony of Joshua Cohen describing videos and other evidence he has summarized, the Court should preclude him from making arguments based on the summarized evidence about what someone saw or heard, or otherwise providing expert testimony.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar Number 481052

By:    */s/ Taylor Fontan*
       Taylor Fontan
       Assistant United States Attorney
       Indiana Bar No. 35690-53
       601 D St. N.W, Washington, D.C. 20530
       Tel. No.: (202) 815-8597
       Email: Taylor.Fontan@usdoj.gov

       */s/ Sarah Rocha*
       Sarah Rocha
       Trial Attorney / Detailee
       D.C. Bar No. 977497
       601 D Street, NW
       Washington, DC 20579
       Tel. No.:  202-330-1735
       Email: sarah.wilsonrocha@usdoj.gov