**In the United States District Court
for the District of Columbia**

| | |
|---|---|
| United States of America,<br><br>                              Plaintiff,<br><br>v.<br><br>Jared Lane Wise,<br><br>                              Defendant. | Case No. 1:23-cr-00184-RDM<br><br>Response to ECF 150: Supplemental Incitement, Aiding and Abetting, and Causation Briefing for Jury Instructions |

The defendant, Jared Wise, by and through Assistant Federal Public Defender Peyton Lee and Supervisory Assistant Federal Public Defender Kurt Hermansen, herein files this Response to ECF 150: Supplemental Incitement and Aiding and Abetting Instruction Briefing, to assist the Court.

## Table of Contents

I.  Introduction ........................................................................................................... 2

II. Analysis ................................................................................................................ 3

    A.  A First Amendment Jury Instruction on Incitement Is Required. ........................ 4

    B.  Aiding and Abetting requires that a defendant substantially assisted the principal in carrying out the offense. .............................................................. 11

    C.  Aiding and abetting requires that the defendant's substantial assistance effectively assist and/or contribute to the success of the principal. ..................................................................................................... 14

    D.  The hypotheticals posed by this Court are distinguishable and would require the principal to hear, and be assisted by, the aider and abettor. .................................................................................................... 16

    E.  Conspiracy and other January 6th cases are not instructive in the aiding and abetting analysis. ................................................................................. 18

        1.  Conspiracy ................................................................................................ 18

        2.  Other January 6 cases ............................................................................... 18

III. Conclusion .......................................................................................................... 20

## I. Introduction

At the October 21, 2024, hearing this Court stated: "I am going to want additional briefing from the parties." ECF 143 Tr. at 109:17. An "important" issue the Court identified is: "how aiding and abetting liability applies in this context." ECF 143 Tr. at 110:10-11. This Court continued: "I think the far harder question which is not really developed in the briefing is the extent to which aiding and abetting requires actual causation and if so, what that causation standard is." ECF 143 Tr. at 111:8-11. If causation is required, "causation can take a variety of different forms. It can be but for causation, it can be contributing causation, it may be some effect. I don't know exactly what the standard will be." ECF 143 Tr. at 137:17-19.

The defense offers the following analysis in support of the requested jury instructions, and in response to the Government's Supplemental Trial Memo, ECF 150.

II.   Analysis

As a preliminary matter, the Defense incorporates by reference herein the requested proposed jury instructions submitted as ECF 113 (which replaced ECF 108), and the Supplemental Instructions requested in ECF 140, and supplements those requests with the following analysis and modifications.

Additionally, there are two overarching considerations that must frame the aid-and-abet analysis in this case, as presented by the Government's theory of the case in ECF 150, at 4. First, the aid-and-abet theory of liability for Mr. Wise regarding Count 1 and Count 2 relies on Mr. Wise's *words* as the conduct that allegedly constituted the aiding and abetting. *See,* ECF 150 at 4 ("Wise aided and abetted the rioters that engaged in a scrum with law enforcement … Wise did so by screaming "Yeah, fuck them! Yeah, kill 'em!" while pointing at the scrum of rioters pushing against the police lien and then screaming "Kill 'em! Kill 'em! Kill 'em!" towards the scrum who continued to assault officers in the police line."). The implications of a purely verbal aid-and-abet theory is important. It means that cases the Government relies upon that involve direct action or material assistance do not appropriately inform the aiding and abetting analysis in this case. *See, e.g.,* ECF 150 at 5-6 (citing *Williams v. United States*, 190 A.2d 269, 269-70 (D.C. 1963), for the proposition that "it is not essential that there by any direct communication between the actual perpetrator and the person aiding and abetting." In fact, *Williams* was a case about the physical actions taken by the "four other defendants, moving within a foot or two of the struggle, placed themselves in such positions as to block [the victim's] attempt to escape." *Id.* at 269). Additionally, the reliance on words requires appropriate limitations to be set under First Amendment analysis, to make sure the effort to criminalize Mr. Wise's speech does not run afoul of First Amendment

protections. These protections go to the core question the Court seeks briefing on; that is the nature of the causation required.

Second, the Government's shifting definition regarding who constitutes the criminal principals in this case cannot be permitted. The Government's group-assault theory and expansive interpretation for Civil Disorder — that Mr. Wise's "presence in the restricted area and refusal to leave the restricted area, [and] yelling at law enforcement" — are not legally grounded in the aid and abet caselaw and risk further trampling First Amendment protections. ECF 150 at 4. The Government must be particular about which principals are being aided and abetted and as to what criminal act for an appropriate instruction to be provided. *See, Rosemond v. United States*, 572 U.S. 65, 76 (2014) ("[A] person aids and abets a crime when (in addition to taking the requisite act) he intends to facilitate that offense's commission. An intent to advance some different or lesser offense is not … sufficient: Instead, the intent must go to the specific and entire crime charged[.]") (internal citation omitted)).

### A.   A First Amendment Jury Instruction on Incitement Is Required.

The "conduct" that Mr. Wise engaged in that allegedly violated 18 U.S.C. § 231(a)(3) and § 111(a)(1) was mere speech and walking around the Upper West Terrace of the U.S. Capitol. Therefore, the First Amendment is implicated. *United States v. Freeman*, 761 F.2d 549, 552-53 (9th Cir. 1985).

Whether Mr. Wise's words incited anyone is a factual determination the jurors must make if the assault charge and the civil disorder charges are to survive the Defense Motions to Dismiss, for a Bill of Particulars, and a future Rule 29 motion. The First Amendment's protection of speech has encompassed even extreme speech such as KKK rhetoric, *Brandenburg v. Ohio*, 395 U.S. 444,

445, 446 (1969), and an organizer/leader saying "[W]e're gonna break your damn neck," *N.A.A.C.P. v. Claiborne Hardware Co.*, 458 U.S. 886, 902 (1982). Emotionally charged rhetoric that includes references to violence, but does not cause lawless action,[1] is protected under the First Amendment. *Id.* at 928. Crude forms of protest are protected under the First Amendment, which includes expressing visceral disdain for Government. *Cohen v. California*, 403 U.S. 15, 21 (1971); *Friend v. Gasparino*, 61 F.4th 77, 89 (2nd Cir. 2023). These protections apply not only to the allegations of "kill 'em!" statements, but further encompass any Government theory of Count 1 which seeks to cover purely political expressions like calling the officers "Nazi" and "Gestapo."

In ECF 113, with highlighted emphasis added here, Defense requested the following instruction based on what *Brandenburg* requires to convert speech from protected to unprotected incitement of illegal conduct:

> If the government's theory for the assault and civil disorder charges is based on Mr. Wise's words and aiding and abetting liability, you cannot find Mr. Wise guilty unless you unanimously find that the government has proven each of the following elements beyond a reasonable doubt:
>
> **Elements**
>
> First, that Mr. Wise intended his words to produce or incite imminent lawless action.
>
> Second, that Mr. Wise's words were ==likely to produce or incite== imminent lawless action.
>
> If you find that there was lawless action, but that the government has not proven that Mr. Wise's words were ==likely to, or did not,==

---

[1] If violent rhetoric does not cause lawless action, it is protected by the First Amendment. If the violent rhetoric is immediately followed by lawless action, the inquiry as to First Amendment protections becomes whether the defendant can be held liable for the consequences of that unlawful conduct. *N.A.A.C.P.*, 458 U.S. at 902.

produce such lawless action, then the government has not met its burden, Mr. Wise's words are not excluded from First Amendment protections under an incitement theory, and you must not find Mr. Wise guilty.

In ECF 140, Defense's proposed the following jury instruction based on *Claiburne*'s causation-requirement-modification to *Brandenburg*'s incitement standard:

If the government's theory for the assault and civil disorder charges is based on Mr. Wise's words and aiding and abetting liability, you cannot find Mr. Wise guilty unless you unanimously find that the government has proven each of the following elements beyond a reasonable doubt:

**Elements**

First, that Mr. Wise intended his words to produce or incite imminent lawless action.

Second, that Mr. Wise's words produced, caused, and incited imminent lawless action.

If you find that there was lawless action, but that the government has not proven that Mr. Wise's words were likely to and did produce such lawless action, then the government has not met its burden, Mr. Wise's words are not excluded from First Amendment protections under an incitement theory, and you must find Mr. Wise not guilty.

Many pleadings in the case discuss incitement in detail. *See* ECF 33 at 16, 33; ECF 68 at 25; ECF 87 at *passim*; ECF 113 at 9-14; ECF 120 at 6-7. This supplement seeks to summarize the defense's request and legal support for that request.

The Government's approach to Mr. Wise's case is unconstitutional because it fails to incorporate an incitement limitation. On June 25, 2024, the government asked this Court to approve its vague approach for Count One's Civil Disorder felony and Count Two's forcible felony assault charges through reference to aiding and abetting or incitement law. ECF 50 at 14 n.4. However,

the government has not grappled with clearly established United States Supreme Court law on incitement, and instead relies on outdated aiding and abetting instructions without incorporating First Amendment protections related to incitement. This approach is unconstitutional as it infringes on Mr. Wise's free speech rights.

Although an incitement instruction would not be required in many circumstances, it is here. For example, an incitement instruction would not be required when a mob boss tells his underling to assault someone, and the underling clearly hears him and carries out the order. That hypothetical scenario presumes the underling heard the mob boss's instruction. (Plus, the words themselves could be charged as a solicitation, which is an inchoate crime.) In contrast, the issue before Mr. Wise's jury will be whether some specific assaulter heard Mr. Wise's words and was incited by them. Similarly, an incitement instruction is not required when solicitation or conspiracy are charged for the uncompleted crime because for those inchoate crimes the words or agreement constitute the offense, which need not be completed.

Unlike those familiar scenarios, this case is complicated factually and legally because the government charges Mr. Wise with two felonies based on his speech alone, without a conspiracy and seemingly without wishing to establish a specific principal, or that a principal necessarily heard or complied with Mr. Wise's words of encouragement. Although Mr. Wise did not touch or threaten a law-enforcement officer, the government charges him with forcible felony assault and felony civil disorder on the assumption that Mr. Wise's words may have encouraged some unnamed stranger to assault and impede an unnamed law-enforcement officer.

Charging aiding and abetting does not sidestep the First Amendment. The government must prove that Mr. Wise spoke the alleged words (e.g., "Kill 'em") with "the specific intent to facilitate

Page 7    Response to ECF 150: Supplemental Incitement, Aiding and Abetting, and Causation Briefing for Jury Instructions

the commission of [the crimes of assault and civil disorder] by others." *United States v. Ali*, 870 F. Supp. 2d 10, 20 (D.D.C. 2012) (cleaned up). "[L]iability for aiding and abetting requires that a wrongful act be carried out." *United States v. Hansen*, 599 U.S. 762, 771 (2023). Here, the First Amendment requires evidence that Mr. Wise specifically intended his words to facilitate the commission of the crime, and that the principals were incited by Mr. Wise's words.

The D.C. Circuit has found that First Amendment incitement requirements cannot be supplanted by aiding and abetting language. In one case involving an injunction that included aiding and abetting, the D.C. Circuit struck the words "inducing" and "encouraging" from the injunction and replaced them with the word "inciting." *Nat'l Org. for Women v. Operation Rescue*, 37 F.3d 646, 657-58 (D.C. Cir. 1994). Operation Rescue had argued that the injunction, by including the words "inducing" and "encouraging," would "proscribe mere abstract advocacy of illegal sit-ins, in violation of the principles enunciated in *Brandenburg v. Ohio*." *Id.* at 657. The D.C. Circuit found that replacing the words saved the injunction from being overinclusive and in violation of due process. *Id.* at 657-58. Just as the court struck the words "inducing" and "encouraging" to avoid an overbroad injunction, this Court should not allow aiding and abetting liability language like "inducing" or "encouraging" (as those words are too broad and violate protected political speech), and certainly should not allow those terms without also including an incitement/causation jury instruction.

Aiding and abetting liability does not erase context-specific First Amendment protections. In *United States v. Hassan*, 742 F.3d 104 (4th Cir. 2014), like Mr. Wise's case, the prosecution moved to preclude the defense "from arguing to the jury that their alleged unlawful conduct was protected by the First Amendment." *Id.* at 114. The trial court determined "that granting the

government's motion would go too far." *Id.* (citing the district court opinion). The Court in *Hassan* found that while the First Amendment provides no constitutional right to actively support violent crime, the government went too far in suggesting "that defendants should not be allowed to mention the First Amendment at all at trial, a restriction that strikes the court as inappropriate." *Id.* Although defendants cannot use First Amendment arguments to invite jury nullification, they can argue that speech is protected, unless the jury determines based on the fact and context-specific circumstances that the speech constituted incitement. *Id.*

Notably, in *Hassan*, 742 F.3d at 129, the court assumed the following "instructions correctly recite the legal principles espoused therein:"

> Number 40: The First Amendment protects speech that encourages others to commit violence, unless the speech is capable of producing imminent lawless action. Speech that makes future violence more likely, such as advocating for illegal action at some indefinite time in the future, is protected. Thus, speech may not be punished just because it makes it more likely that someone will be harmed at some unknown time in the future.
>
> Number 45: The First Amendment right to free speech protects the right of an individual or group to advocate for the use of force or advocate for the violation of law so long as the speech is: 1) not directed to incite or produce imminent lawless action and 2) is not likely to incite or produce imminent lawless action. The First Amendment even protects an individual's right to praise groups or persons using terrorism as a means of achieving their ends. Advocacy is pure speech protected by the First Amendment.

*Id.* at 128.

It was not error to give different First Amendment instructions in the *Hassan* conspiracy-to-commit-acts-of-terrorism case, because "the appellants were *not prosecuted for inciting violence* [ ] nor would the instructions have permitted any convictions on that ground." *Id.* at 129

(emphasis added) (finding the court did not abuse its discretion by declining to give proposed instruction 40 or 45 because the defendants were charged with conspiring).

Criminal charges based on incitement speech requires proof of intent, as well as a discussion of the First Amendment protections that apply to such speech. Following *Claiborne*, the government must show that the speech **caused** the violence. A strong intent requirement remains as one way "to ensure that efforts to prosecute incitement" do "not bleed over, either directly or through a chilling effect, to dissenting political speech at the First Amendment's core." *Counterman v. Colorado*, 600 U.S. 66, 81 (2023) (noting that specific intent to incite is required in the incitement context).[2]

> Like threats, incitement inheres in particular words used in particular contexts: Its harm can arise even when a clueless speaker fails to grasp his expression's nature and consequence. But still, the First Amendment precludes punishment, whether civil or criminal, unless the speaker's words were "intended" (**not just likely**) to produce imminent disorder.

*Id.* at 76 (citing *Hess v. Indiana*, 414 U.S. 105, 109 (1973) (per curiam) (emphasis added); *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969); and *NAACP v. Claiborne Hardware Co.*, 458 U.S.

---

[2] Given the prosecution's incitement-speech offer of proof, with aiding and abetting for liability, the jury can conclude that Mr. Wise's speech converted from protected to incitement only if the jurors unanimously finds that Mr. Wise acted "purposefully" with the "conscious[ ] desire[ ]" to achieve the "result" (*i.e.*, the result of inciting someone to assault an officer and commit acts of civil disorder). *Id.* at 78–79 (citing *United States v. Bailey*, 444 U.S. 394, 404 (1980).
   Even in dissent in *Counterman*, Justice Barrett could not deny that "[s]peakers must specifically intend to incite violence before they lose First Amendment protection." *Counterman*, 600 U.S. at 112–13 (Barrett, J., dissenting). "A specific intent requirement helps draw the line between incitement and 'political rhetoric lying at the core of the First Amendment.'" *Id.* (Barrett, J., dissenting) (citing *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 926–927 (1982)). In *Claiborne*, where there were emotional appeals that referenced violence, the First Amendment prevailed since no lawless action occurred because of such appeals. *Claiborne*, 458 U.S. at 902.

886, 927–29 (1982)). "That rule helps prevent a law from deterring 'mere advocacy' of illegal acts—a kind of speech falling within the First Amendment's core." *Id.* (citing *Brandenburg*, 395 U.S. at 449).

### B. Aiding and Abetting requires that a defendant substantially assisted the principal in carrying out the offense.

The Supreme Court holds that "a person may be responsible for a crime he has not personally carried out if he **helps another to complete its commission**." *Rosemond v. United States*, 572 U.S. 65, 70 (2014) (emphasis added).

For aiding and abetting liability, the discussion in *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 486 (2023) is instructive. Aiding and abetting "is inherently a rule of secondary liability for wrongful acts." *Id.* at 494. It is "an ancient criminal law doctrine that has substantially influenced its analog in tort." *Id.* at 488. While the rules for aiding and abetting in a criminal context may be different than in a tort context, the Supreme Court has identified these doctrines as "rough[ly] simila[r]." *Id.* at 493.

In *Twitter*, the Supreme Court wanted to keep liability for aiding and abetting "grounded in culpable misconduct." *Twitter*, 598 U.S. at 490. The Court required that a defendant "'in some sort associate himself with the venture, that he participate in it as something that he wishes to bring about, that he seek by his action to make it succeed.'" *Id.* (citing *Nye & Nissen v. United States*, 336 U.S. 613, 619 (1949)). So, a defendant "has to take some 'affirmative act' 'with the intent of facilitating the offense's commission.'" *Id.* (citing *Rosemond*, 572 U.S. at 71). "Such intentional participation can come in many forms, including abetting, inducing, encouraging, soliciting, or advising the commission of the offense, such as through words of encouragement or driving the getaway car." *Id.* (citing 2 LaFave § 13.2(a), at 457-60). "Regardless of the particulars, however,

Page 11    Response to ECF 150: Supplemental Incitement, Aiding and Abetting, and Causation Briefing for Jury Instructions

it is clear that some culpable conduct is needed." *Id.* No matter what the context, "[t]he phrase 'aids and abets' in § 2333(d)(2), as elsewhere, refers to a conscious, voluntary, and culpable participation **in another's wrongdoing**." *Id.* at 493 (emphasis added).

Therefore, the aiding and abetting framework is as follows: First, "the party whom the defendant aids must perform" an illegal act. *Id.* at 486 (cleaned up). Second, "the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance." *Id.* (citation omitted). Third, "the defendant must knowingly and **substantially assist** the principal violation." *Id.* (emphasis added); *see also Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983) (aiding and abetting requires that "the defendant must knowingly and **substantially assist** the principal violation") (emphasis added). To substantially assist the principal assaulter with words, it necessarily follows that the actual assaulter must hear the words and be encouraged (i.e., incited) by them.

D.C. Circuit caselaw supports that substantial assistance is required. Recently, the D.C. Circuit decided *Amazon Services LLC v. United States Department of Agriculture*, 109 F.4th 573 (D.C. Cir. 2024). The Department of Agriculture penalized Amazon for processing shipments of plant and animal products that violated the Plant Protection Act and the Animal Health Protection Act. *Id.* at 574-75. Amazon was held liable through the theory of aiding and abetting. *Id.* at 577. In its analysis, the court cited *Twitter* to state that the terms "aid, abet, cause, or induce" "carry a well-established legal meaning when used … to establish civil liability for aiding and abetting unlawful conduct." *Id.* at 578. While *Amazon* is a civil case, the court states that "the understanding of its scope in the criminal law has substantially influenced its analog in tort." *Id.* (internal quotations omitted). Therefore, its analysis is applicable here. The court stated that, for "aiding-and-

abetting liability to attach, the aider-abettor must have 'knowingly and **substantially assist[ed]** the principal violation.'" *Id.* at 581 (citing *Twitter*, 705 F.2d at 411) (emphasis added).

In another case, the D.C. Circuit applied the "substantially assist" framework to an anti-terrorism case. *Ofisi v. BNP Paribas*, 77 F.4th 667, 676 (D.C. Cir. 2023). In *Ofisi*, family members of victims who died in the 1998 U.S. embassy attacks in Kenya and Tanzania sued an international bank, alleging that the bank had aided and abetting the terrorist attacks. *Id.* at 670. The court stated that, for the defendants to be found guilty through aiding and abetting liability, "(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; [and] (3) the defendant must knowingly and **substantially assist** the principal violation." *Id.* at 672-73 (citing *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983) (emphasis added).

After analyzing caselaw, *Halberstam* turned to the *Restatement* to determine what constitutes substantial assistance to the principal. 705 F.2d at 483. "The cases support the five factors identified in the *Restatement*: [1] the nature of the act encouraged; [2] the amount [and kind] of assistance given; [3] the defendant's absence or presence at the time of the tort; [4] his relation to the tortious actor; and [5] the defendant's state of mind." *Id.* at 483-84. "[M]any variables enter[e]d into the equation on how much aid is 'substantial aid.'" *Id.* at 483. The Court must analyze "the *nature of the act* involved" in determining "what aid might matter." *Id.* at 484. The Court in *Halberstam* contrasted the actions of a defendant which had "sparked the negligent action" versus times when mere verbal support "would have been of lesser import" and not part of the "key

assistance rendered[.]" *Id.* All five factors depend on a causal relationship between the nature of the assistance and the principal's criminal (or tortious) conduct.

  **C.**  **Aiding and abetting requires that the defendant's substantial assistance effectively assist and/or contribute to the success of the principal.**

  The Supreme Court has held that aiding and abetting requires "that a defendant 'in some sort associate himself with the venture, that he participate in it as something that he wishes to bring about, that he seek by his action to make it succeed.'" *Nye & Nissen v. United States*, 336 U.S. 613, 619 (1949) (quoting *United States v. Peoni*, 100 F.2d 401, 402 (2d Cir. 1938)). The Eighth Circuit held that definition means that "there must exist some affirmative participation which at least encourages the perpetrator." *United States v. Wiebold*, 507 F.2d 932, 934 (8th Cir. 1974) (quoting *United States v. Thomas*, 469 F.2d 145, 147 (8th Cir. 1972).

  More recently, the Supreme Court stated that "[f]acilitation-also called aiding and abetting- is the provision of **assistance** to a wrongdoer with the intent to further an offense's commission." *United States v. Hansen*, 599 U.S. 762, 771 (2023) (emphasis added). Aiding and abetting is a criminal theory "targeting those who support the crimes of a principal wrongdoer." *Id.* The Court cited Black's Law Dictionary that defined "abet" in criminal law meant to "encourage, incite, or set another on to commit a crime." Id. at 772 (citing Black's Law Dictionary 6 (1st ed. 1891)). "While the crime of solicitation is complete as soon as the encouragement occurs … liability for aiding and abetting requires that a wrongful act be carried out." *Id.* at 771 (citing LaFave § 13.2(a)).

  The Government asserts that "[s]ufficiency of wrongdoing in the context of a verbal encouragement of an assault has existed for over a century," citing *Kuney v. Dutcher*, 56 Mich. 308, 312-13 (1885). ECF 150, at 5, n. 4. In fact, the parenthetical quotation from the *Dutcher* case is not a holding by the Michigan Supreme Court (even in 1885), but rather a portion of the jury

instructions that formed the basis of the appeal. The Court made clear that the jury instructions, when taken collectively, could not have been misconstrued by the jury to infer guilt simply on mere presence. *Id*. at 313 ("The whole must be taken together, and does not, either alone or in connection with other parts of the charge, countenance any idea that actual complicity need not appear. It is the other circumstances proved which must determine the intent, and not merely the absence of disapproval or opposition.").

Further, the Government's citation to *Delgado* is supportive that the defendant must in fact "contribute to the success of 'the specific underlying crime' for which the defendant is charged with aiding and abetting. *United States v. Delgado*, 972 F.3d 63, 75 (2d Cir. 2020), *as amended* (Sept. 1, 2020). Further, The Court went on to say that:

> "[T]he actus reus element of federal accomplice liability is not so capacious as to encompass any act taken in relation to some identified criminal activity. Rather, our case law imposes at least two limitations. First, we have repeatedly emphasized that, to convict a defendant of aiding and abetting a crime, the government must prove that the defendant's **efforts contributed towards [the] success of the crime** . . .The government must prove that the defendant furthered the criminal act. . . . Second, to support accomplice liability, the assistance rendered by a defendant **must contribute to the success of the specific underlying crime** for which the defendant is charged with aiding and abetting.

*Id.* (internal quotations and citations omitted) (emphasis added).

The jury must determine not just that Mr. Wise intended his alleged words of encouragement to produce the complete set of elements required for the principal charges, but also that those words were substantial assistance and contributed to the success of the principal's commission of the offense.

Page 15　Response to ECF 150: Supplemental Incitement, Aiding and Abetting, and Causation Briefing for Jury Instructions

### D. The hypotheticals posed by this Court are distinguishable and would require the principal to hear, and be assisted by, the aider and abettor.

The first hypothetical this Court posed was "if someone gives someone gun and says, take this gun … with you while you commit the robbery and the person leaves the gun in the car and takes the knife and commits the robbery with the knife, that might be sufficient." ECF 143 Tr. at 112. In hypothetical scenario, the person telling the recipient to "take this gun," is certainly heard by the principal (not necessarily true for Mr. Wise), is providing specific actions and material support not just verbal encouragement (unlike Mr. Wise), and still may not be aiding and abetting under the analysis in *Delgado* and *Rosemond.* As articulated in *Delgado*, "the assistance rendered by a defendant **must contribute to the success of the specific underlying crime** for which the defendant is charged with aiding and abetting." 972 F.3d at 75. Arguably, the lack of use of the firearm may mean that the assistance did not contribute directly to the success (although the defendant in the hypothetical is almost certainly liable under a conspiracy charge). Additionally, *Rosemond* evaluates almost this exact issue in analyzing the requirement for *specific intent* as it relates to aiding and abetting a § 924(c) when the defendant did not necessarily know about the firearm. The Supreme Court in *Rosemond* holds that the intent prong of aiding and abetting is "satisfied when a person actively participates in a criminal venture with full knowledge of the circumstances constituting the charged offense." 572 U.S. at 77.

> "[K]nowledge of a firearm must be advance knowledge—or otherwise said, knowledge that enables him to make the relevant legal (and indeed, moral) choice. When an accomplice knows beforehand of a confederate's design to carry a gun, he can attempt to alter that plan or, if unsuccessful, withdraw from the enterprise; it is deciding instead to go ahead with his role in the venture that shows his intent to aid an armed offense. But when an accomplice knows nothing of a gun until it appears at the scene, he may already have completed his acts of assistance; or even if not, he may at that late point have

Page 16    Response to ECF 150: Supplemental Incitement, Aiding and Abetting, and Causation Briefing for Jury Instructions

> no realistic opportunity to quit the crime. And when that is so, the defendant has not shown the requisite intent to assist a crime involving a gun."

*Id.* at 78. It is possible the defendant in the Court's hypothetical would not be responsible for aiding and abetting the use of the knife if they did not know about that portion of the intended crime. *Id.* at 75-76 ("[A]n aiding and abetting conviction requires not just an act facilitating one or another element, but also a state of mind extending to the entire crime.").

The second hypothetical this Court posed was "the labor leader in front of the hall and is saying, we are going to go down the street and burn down the factory … The leader leads the person out and they go down and burn the place down." ECF 143 Tr. at 112. Again, this is distinguishable from Mr. Wise because the aider says something to the principal, which the principal *hears* and the principal acts *upon that direction* to carry out what the aider said.

The third hypothetical this Court posed was "if you have somebody saying 1, 2, 3, heave, 1, 2, 3, ho', and you see the crowd moving." ECF 143 Tr. at 113. As discussed in ECF 120, Defendant's Response to Government's (First) Trial Brief, at 12-14, the tunnel commander conduct is distinct from Mr. Wise's conduct, as the principals demonstrate both hearing the tunnel commander's speech and acting upon that encouragement in coordinated action. In many ways, it is the direction and coordinating by the aider-abettor tunnel commander that contributes to the success of the activities in directing the way the assault was carried out. That is distinct in at least two ways from Mr. Wise, as it is not clear that the principals can hear Mr. Wise's statements, nor that the statements in any way contribute to or drive their activities.

### E. Conspiracy and other January 6th cases are not instructive in the aiding and abetting analysis.

#### 1. Conspiracy

Any cases about conspiracy is irrelevant to the analysis in this case on aiding and abetting liability. With conspiracy, the words themselves are the crime. Conspiracy is completed upon the speaker uttering the words themselves. With aiding and abetting, there must be actions committed that are in furtherance of the crime.

The D.C. Circuit Court of Appeals has clearly demarcated the legal difference between civil conspiracy and aiding-abetting liability. *Halberstam*, 705 F.2d at 477. For a civil conspiracy charge, "proof of a tacit, as opposed to explicit, understanding is sufficient to show agreement." *Id.* The critical distinction between civil conspiracy and aiding-abetting liability is:

> that a conspiracy involves an agreement to participate in a wrongful activity. Aiding-abetting focuses on whether a defendant knowingly gave "substantial assistance" to someone who performed wrongful conduct, not on whether the defendant agreed to join the wrongful conduct.

*Id.* Therefore, conspiracy cases are not instructive on jury instruction issues in this case since the elemental requirements of conspiracy are vastly different than aiding-abetting liability.

#### 2. Other January 6 cases

Other January 6 cases are not instructive to the aiding and abetting liability for Mr. Wise because the nexus between those defendants' conduct and the conduct in Mr. Wise's case are dissimilar.

In *United States v. Grider*, the defendant was charged and convicted of aiding and abetting the obstruction of an official proceeding under § 1512(c)(2), among other charges. 651 F. Supp. 3d *1, *4 (D.D.C. 2022). The defendant actively assisted other rioters in breaking police

barricades, creating a ladder for other rioters, offering a police helmet to other rioters, among other acts of assistance. *Id.* at *7-11. Here, it would be unfair to compare the conduct of Mr. Wise to the defendant in *Grider* as Mr. Wise's conduct falls nowhere near the scope of the conduct committed by the defendant in *Grider*. There is a clear nexus between the conduct of the defendant in *Grider* to the actions of other clearly established principals, clear injuries, and clear encouragement from the defendant. Although it was a bench trial, if a jury were given proper instructions on aiding-abetting liability, a jury could find a nexus between all three elements and find liability for violating § 1512(c)(2). Here, the government has not listed a principal who Mr. Wise aided or abetted and who would need to hear his alleged words of encouragement. The government also has not established a specific victim. Any attempt by the jury to convict Mr. Wise would therefore result in the overinclusion of the acts of various actors that cannot be appropriately tied to Mr. Wise.

Another case, *Thompson v. Trump*, adopts aiding-abetting liability under *Halberstam*. 590 F. Supp. 3d 46, 122-123 (D.D.C. 2022). In that case, the court found a claim for aiding-abetting liability could proceed because President Trump, as someone with "'a position of authority' gives a 'suggestion extra weight'" when he gave a speech at his January 6th Rally. *Id.* at 122 (quoting *Halberstam*, 703 F.2d at 481-82). It would be inappropriate to compare the aiding-abetting liability analysis in *Thompson* to Mr. Wise's case, since he does not have a position of authority and is a stranger to the principals and other protestors. Further, it is uncertain if anyone heard Mr. Wise, whereas arguably everyone on January 6th who attended the speech, listened to President Trump's alleged words of encouragement.

The Defense incorporates by reference herein the analysis provided in ECF 120, Defendant's Response to Government's (First) Trial Brief, at 12-14, for discussion of the distinction

Page 19   Response to ECF 150: Supplemental Incitement, Aiding and Abetting, and Causation Briefing for Jury Instructions

between Mr. Wise's conduct and the so-called "tunnel commander" case, *United States v. Patrick Edward McCaughey, III, Tristian Chandler Stevens, and David Mehaffie,* 1:21-cr-40 (TNM).

## III.   Conclusion

The First Amendment as well as aiding and abetting caselaw require that this Court instruct the jury that the Government must prove causation, both as a foundational component of any incitement theory of liability and as a foundational component of aiding and abetting liability, for Mr. Wise to be found guilty of Counts One and Two. Such liability requires a specific intent, associated with a specific offense, which can only be defined in relationship to distinct principals and victims, as the Court has previously required.

Respectfully submitted on December 5, 2024.

*s/ Peyton Lee*
Peyton Lee, OSB No. 164224
Assistant Federal Public Defender
101 SW Main Street, Suite 1700
Portland, OR 97204
Tel: (503) 326-2123
Email: Peyton_Lee@fd.org

*s/ Kurt Hermansen*
Kurt David Hermansen, CA Bar No. 166349
Supervisory Assistant Federal Public Defender
859 Willamette St. Suite 200
Eugene, OR  97401
Tel: (619) 436-8117
Email: kurt_hermansen@fd.org

**Attorneys for Defendant Jared Lane Wise**