```
 1                  IN THE UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF COLUMBIA
 2

 3    UNITED STATES OF AMERICA,
                                            Criminal Action
 4              Plaintiff,                   No. 1: 23-184

 5         vs.                               Washington, DC
                                             January 3, 2025
 6    JARED LANE WISE,
                                             9:43 a.m.
 7              Defendant.
      _____/
 8

 9                 TRANSCRIPT OF PRETRIAL CONFERENCE
                  BEFORE THE HONORABLE RANDOLPH D. MOSS
10                   UNITED STATES DISTRICT JUDGE

11    APPEARANCES:

12    For the Plaintiff:       Sarah Wilson Rocha
                               DOJ-CRM
13                             219 S. Dearborn Street
                               5th Floor
14                             Chicago, IL 60604

15                             Taylor Fontan
                               DOJ-USAO
16                             601 D Street, N.W.
                               Washington, DC 20530
17

18

19                 APPEARANCES CONTINUED ON NEXT PAGE

20

21

22    Court Reporter:         SHERRY LINDSAY
                               Official Court Reporter
23                             U.S. District & Bankruptcy Courts
                               333 Constitution Avenue, NW
24                             Room 6710
                               Washington, DC 20001
25
```

```
 1                      APPEARANCES CONTINUED

 2

 3      For the Defendant:      Kurt David Hermansen
                                FEDERAL PUBLIC DEFENDER
 4                              DISTRICT OF OREGON
                                Eugene Office
 5                              859 Willamette Street
                                Suite 200
 6                              Eugene, OR 97401

 7                              Peyton Elizabeth Lee
                                FEDERAL PUBLIC DEFENDER
 8                              District of Oregon
                                101 SW Main Street
 9                              Suite 1700
                                Portland, OR 97204
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

| | |
|---|---|
| 1 | P R O C E E D I N G S |
| 2 | THE COURTROOM DEPUTY:  Criminal case number 23-184, |
| 3 | *United States of America versus Jared Lane Wise*. |
| 4 | Would counsel please approach the podium, state their |
| 5 | name for the record, starting with government counsel. |
| 6 | MS. FONTAN:  Good morning.  Taylor Fontan for the |
| 7 | government. |
| 8 | THE COURT:  Good morning. |
| 9 | MS. ROCHA:  Good morning, Your Honor.  Sarah Rocha |
| 10 | for the government.  And we are also joined by paralegal |
| 11 | specialist, Taylor Wilbert. |
| 12 | THE COURT:  All right.  Good morning to all of you. |
| 13 | MS. LEE:  Good morning, Your Honor.  Assistant |
| 14 | Federal Public Defender Peyton Lee from the District of Oregon. |
| 15 | MR. HERMANSEN:  Good morning, Your Honor. |
| 16 | Supervisory Assistant Federal Public Defender from the District |
| 17 | of Oregon, Kurt Hermansen, on behalf of Jared Wise who is |
| 18 | present. |
| 19 | THE COURT:  All right.  Good morning to all of you as |
| 20 | well.  So we are here for our pretrial conference.  I have a |
| 21 | number of items on my to-do list.  And you may have other |
| 22 | issues that you want to raise as well.  Let me just start with |
| 23 | just a couple of odds and ends where I want to make sure that |
| 24 | the issues have been resolved or if they have not been resolved |
| 25 | that I know what still needs to be resolved. |

```
 1              First of all, I think with respect to --
 2              MS. LEE:  Your Honor --
 3              THE COURT:  Yes.
 4              MS. LEE:  I apologize for interrupting.  We wanted to
 5   check.  Our investigator, Mr. Grade, was hoping to be let in
 6   through the Zoom.  If we could make that available to him just
 7   in case he needs to coordinate witnesses.
 8              THE COURT:  Any objection to that?
 9              No.  That is fine.  Let me ask the deputy clerk to do
10   that.
11              THE COURTROOM DEPUTY:  Yes, Your Honor.
12              MS. LEE:  Thank you.
13              THE COURT:  I don't think we need him for the issues
14   that I want to address now though.  The defense motions for
15   bills of particular at dockets 33, 34, 36 and 39.  I think that
16   I have addressed that by ordering that the government identify
17   the five principals.  But let me just ask, Ms. Lee or
18   Mr. Hermansen, whether there is anything that remains
19   unresolved with respect to any of those motions.
20              MR. HERMANSEN:  Your Honor, at the last hearing I
21   believe the government indicated they were going to file the
22   list of the five principals, so we are waiting for that.
23              THE COURT:  All right.  Ms. Fontan.
24              MS. FONTAN:  Your Honor, we intend on using the
25   principals that have already been provided to the defendant and
```

1    we can file that -- the same document today with the Court.

2              THE COURT:  Okay.  Do you know -- as you stand here

3    today, do you have the list?  Can you read them in the record

4    so we don't have to wait for that?

5              MS. FONTAN:  Your Honor, I can at some point today.

6    I need to look it up.  I have it.  It is not -- it is on my

7    computer, I just have to find it.

8              THE COURT:  If I can ask that you do that sometime

9    this morning.

10             MS. FONTAN:  Sure.

11             THE COURT:  I will then -- I suppose I am granting in

12   part the motions for bills of particulars at 33, 34, 36 and 39.

13   And I have already directed that the government provide the

14   list of names and will make sure that it is done by the end of

15   the day today.

16             THE COURTROOM DEPUTY:  I'm sorry, Judge.

17             THE COURT:  That is okay.

18             (Pause.)

19             THE COURT:  All right.  And then, in addition, there

20   was the motion requesting -- or for a subpoena requesting the

21   personnel file, which is at docket 103.  Is there anything else

22   that needs to be produced with respect to the personnel file at

23   this point?

24             MS. ROCHA:  No, Your Honor.  All of the materials

25   have been produced.

```
1                    THE COURT:  Okay.  Does the defense agree with that?

2                    MS. LEE:  We understand the government has

3        presented -- that everything responsive to what the Court

4        previously ordered has been provided.

5                    There is a separate motion --

6                    THE COURT:  Okay.

7                    MS. LEE:  -- to quash a subpoena we requested be

8        served for general --

9                    THE COURT:  No.  No.  I will get to that.  That is on

10       my list separately.

11                   MS. LEE:  Great.

12                   THE COURT:  Okay.  I also will check that item off my

13       list.  And the Court again has granted at least in part the

14       motion at docket 103.

15                   Mr. Hermansen.

16                   MR. HERMANSEN:  Your Honor, may we go back for one

17       moment to the bill of particulars?

18                   THE COURT:  Yes.

19                   MR. HERMANSEN:  The other one thing is we had cited

20       case law saying that for the 231 charge, the civil disorder,

21       that the officer needs to be named.  So we did cite district

22       court case law on that.  I don't know if the Court had ruled on

23       that part.

24                   THE COURT:  All right.  Ms. Fontan.

25                   MS. FONTAN:  Your Honor, before I specifically
```

1    address that, I am going to go ahead and read the names in the

2    record.

3              THE COURT:  Thank you.

4              MS. FONTAN:  The first is *Rumson*, which is case

5    23-CR-70; second is *Brock*, 21-CR-500; the third is *Smith*,

6    21-CR-599; next is *Wren*, 21-CR-599; and the last is *Thomas*,

7    21-CR-552.

8              And just for the record, this is the same screenshot

9    of listed defendants that was sent to the defense in August, so

10   it is the same defendants.

11             In terms of the officers being named, I think we have

12   already had a discussion about this back in August.  And based

13   on our discussion it -- the concern of the Court really had to

14   do with unanimity and identifying the principals in this case.

15   And now that we have narrowed the time -- the scope of the time

16   with the 111 and the 231, that is congruent with other case law

17   that we have -- we are not required to identify the specific

18   officer.  We have identified the area that the officer has --

19   that -- the area that the officers are in, the time frame that

20   the officers are in and that is all that the law requires.

21             THE COURT:  But let me ask about that.  Do you know

22   who these officers are?  I mean, we have narrowed it down to a

23   very brief window of time --

24             MS. FONTAN:  Sure.

25             THE COURT:  -- where there are five individuals who

1    are the principals.  You have the video.  I think everyone can

2    look at that and know which officers were potentially

3    assaulted, interfered with or obstructed within that very brief

4    window by those particular individuals.  But the question is,

5    do you know who those officers are and can you give the defense

6    their names?

7              MS. FONTAN:  Your Honor, we have.  We have provided

8    the officers that are in that area at that time and two of them

9    are our witnesses.  And all of their statements, obviously --

10   excuse me -- have been provided to the defendant.

11             THE COURT:  So you have identified the officers that

12   were in that area?

13             MS. FONTAN:  Yes.

14             THE COURT:  All right.  Mr. Hermansen, anything else

15   on this?

16             MR. HERMANSEN:  Yes, Your Honor.  There were, I think

17   70 officers is the number that comes to mind that were

18   identified in the area.  As far as the officers --

19             THE COURT:  Well, I mean -- maybe I need to go back

20   to Ms. Fontan on this.  But I think we are maybe not defining

21   the area sufficiently if there are 70 officers, because I have

22   at least seen some of the video.  And there were not 70

23   officers who were standing in proximity to the five individuals

24   that we are talking about.  So that is really my question is

25   can you identify the officers that were in proximity to and

```
 1     actually had contact with the five individuals or who were
 2     interfered with by those five individuals?  Presumably you
 3     probably know from the other cases who they are.
 4              MS. FONTAN:  Yes, Your Honor.  So those are
 5     identified in the other cases.  And I think -- and I apologize.
 6     I don't have the letters specifically pulled up from discovery.
 7     But my just remembering I think we ended up narrowing it up to
 8     12 different officers that were standing at the front line.  I
 9     mean, part of the problem, right, is this was a scrum and
10     officers were switching in and out.  And, you know, there was a
11     lot of contact.
12              THE COURT:  Right.
13              MS. FONTAN:  So and, Your Honor, I apologize again.
14     I can pull up the letter, but I think the most recent of the
15     discovery letters we narrowed it down to I think it was 12
16     officers.  And we have provided as part of our -- as part of
17     our evidence and our exhibits, I think, nine different officers
18     that were standing at the front of the -- of the line there
19     that were victims of the assault.
20              THE COURT:  Okay.  Have you identified those officers
21     by name?
22              MS. FONTAN:  Yes, that is correct.  And many of them
23     are being used as exhibits by the defense.
24              THE COURT:  All right.  Thank you.
25              All right.  Mr. Hermansen, back to you.
```

1          MR. HERMANSEN:  So one particular concern, Your
2    Honor, of the five principals, Thomas -- so Thomas did go to
3    trial.  He is the fifth one named by the government.  He went
4    to trial and he was charged with assaulting Ainsworth and so
5    the initials were I believe AI or -- so in the charging
6    document in the indictment and in the jury instructions they
7    used the officer's initials.
8          In that case, although Thomas was convicted of
9    multiple charges and assaults throughout the day, the jurors
10   deliberated and my memory is it was for like four days.  And
11   they were given what the Ninth Circuit has called an Allen
12   charge, but a charge to keep deliberating.  And they did keep
13   deliberating and they returned a verdict on all charges except
14   for the charge that is key to this case.  The judge then
15   dismissed that charge.
16         So my concern is that, you know, we have one of
17   the -- is if Mr. Wise is convicted of assaulting, aiding and
18   abetting Thomas and assaulting Ainsworth, the principal was
19   his -- that charge was dismissed.  The jury heard all of the
20   evidence, couldn't convict him.
21         THE COURT:  Well, so this is a different issue than
22   the issue of just the bill of particulars.  So let me -- with
23   the bill of particulars, is there anything else you have on
24   that?  The government has represented that they have identified
25   12 and 9 in particular and given you the names of those

```
 1    individuals.
 2              MR. HERMANSEN:  Well, I guess my argument would be
 3    that if a bill of particulars is not required in naming the
 4    officers for the 231, which we argue that it should be
 5    required, because then we are not on notice -- I think the
 6    government's counterargument is you have the videos, you see
 7    who is being assaulted.  And -- but I think at the very least
 8    there needs to be in the -- in the final jury instructions an
 9    identification of who is the victim, otherwise it --
10              THE COURT:  That is a different issue.  And I agree
11    we may have to get to that one.  I do conclude that we are okay
12    with respect to the bill of particulars at this point.  And
13    we'll take up the jury instructions and we'll have to consider
14    these questions later with respect to the final jury
15    instructions.
16              Oh, and also, Mr. Hermansen, you can correct me if I
17    am wrong about this, but -- although I can understand why a
18    defendant might be unhappy and perhaps even perplexed if the
19    principal is acquitted or charges are dismissed against a
20    principal in a separate trial, I am not aware of any principle
21    of law that says that the -- that there is, in essence,
22    collateral estoppel where the government would then be barred
23    by that from bringing a separate prosecution against the agent
24    or aider and abettor under those circumstances.
25              And, in fact, I am pretty sure that at least our
```

1    standard instructions in this district say for aiding and

2    abetting liability that you don't even need to know who the

3    principal is and the principal doesn't have to be charged and

4    things of that nature.

5              MR. HERMANSEN:  So it feels like a due process

6    violation where one person -- and I don't know that it is

7    collateral estoppel, but one person is -- a jury hears all of

8    the evidence against that person, they don't convict, the judge

9    dismisses, I think this jury should be able to hear that.

10             THE COURT:  That I -- you'll have to -- you can raise

11   that later with me.  I am doubtful that comes in.  I imagine,

12   for example, that if there were convictions in the other four

13   cases, you would be objecting strenuously if the government

14   came in and said, look, we got convictions in the other cases,

15   members of the jury, you don't even need to think about it,

16   because we tried the other cases and the four at least of the

17   principals were convicted of this.  And you would probably and

18   rightfully object with steam coming out of your ears if the

19   government tried to do that.  Is that fair?

20             MR. HERMANSEN:  Yeah.  I think -- I mean, everyone

21   has the right to a fair trial.  I think when we are talking

22   about just the facts of what happened with Thomas, raise the

23   specter of unfairness where a DC jury heard all of the evidence

24   against that defendant with the same videos and came to a

25   different conclusion.

1           THE COURT:  They didn't come to a conclusion at all

2    is my understanding from what you just said.

3           MR. HERMANSEN:  Correct.  Right.  They concluded on

4    all other of the counts except for that one.  And the judge

5    looking at it and said, I am dismissing.

6           THE COURT:  Sometimes, you know, the government

7    forgets to introduce evidence or gets additional evidence in a

8    subsequent case.  I don't think that means that the government

9    couldn't possibly carry its burden, because it didn't succeed

10   in convincing one jury.  You are welcome to file a motion on

11   this, if there is case law that I am not aware of that I should

12   be looking at, I would very much appreciate that.  So I will

13   leave it that way, if you want to file a motion with respect to

14   this issue, you are welcome to do so.

15          All right.  Two questions relating to the voir dire.

16   One is, did I give you all a deadline to give me a list of

17   names of individuals who either may be witnesses or whose names

18   may be mentioned at trial, simply for purposes of asking

19   prospective jurors whether they know any of those individuals,

20   Ms. Rocha?

21          MS. ROCHA:  Your Honor, I can't remember if we filed

22   the witness list back in October.  But we did just recently

23   make a change to switch the name of the Capitol Police witness,

24   but we have got the names of our witnesses that we can provide

25   to the Court now.  However --

1          THE COURT:  If you can just when we are done here

2     today, if you can just file that on the docket just so that I

3     have that.  And as I said, that is just for purposes of the

4     voir dire.  And I am going to ask the defense the same thing.

5     Any names that may come up during trial, if you by the end of

6     the day, you can give me a list of those names.  And I will

7     tell both sides that I am not going to identify whose witnesses

8     they are or even necessarily that they are witnesses.  So you

9     don't need to worry that if it turns out that they don't show

10    up that the jury is going to think that you let them down

11    somehow.

12         MS. LEE:  I appreciate that, Your Honor.  Would the

13    Court like us to file that as well or simply send it to the

14    Court.

15         THE COURT:  I don't think either side needs to file.

16    If you want to email it to the clerk, that is fine.  I just

17    need to have it to insert in the voir dire.

18         MS. LEE:  We can email our list today as well.

19         THE COURT:  All right.

20         MS. FONTAN:  While we are on the topic of witnesses,

21    Your Honor, this may be to a different point of the to-do list,

22    which I can appreciate.  But the government did want to ask

23    just some clarifying questions about the -- some of the names

24    on the defense witness list.  We are familiar with a few of

25    them, but just for clarification and to make sure that we don't

1    have any -- you know, there aren't any issues to raise, for

2    example, if a witness was within the restricted perimeter and

3    that person needed counsel, could have some criminal

4    culpability, there were just a few -- we can deal with that,

5    obviously, at another time.

6          THE COURT:  I think if you haven't done so already,

7    you ought to address that with the defense first.  And then

8    only if there is a disagreement or issue that you need to bring

9    to me, let me know about it.

10         MS. ROCHA:  Okay.  Will do.  Thank you, Your Honor.

11         THE COURT:  I had another question about the voir

12    dire.  I was able to confirm this morning that the Court will

13    be closed -- and that will mean that there will not be security

14    or staff here -- on Thursday in recognition of the memorial for

15    President Carter.  So we are going to lose that Thursday as a

16    trial day.  You all may also be aware that there is a potential

17    for a snowstorm here.  I will tell you that Washington is

18    notorious for getting all worked up for a big snowstorm and

19    then having a dusting.  But who knows, it is possible.  The

20    snow is expected on Sunday and into Monday.

21         I encourage particularly anyone who has to travel to

22    take that into consideration and making sure that -- you may be

23    here for the duration at this point already.  But don't assume

24    you are going to be getting a flight that is landing on Monday.

25    But this is all a lead up to my question of what should I tell

1    the jury about when we anticipate all of the evidence will be

2    presented or the -- when we will have concluded the

3    presentation of the evidence.  The draft currently says

4    January 14th, but I want to know whether that remains

5    realistic.

6              MS. ROCHA:  From the government's perspective, Your

7    Honor, we have five witnesses in our case in chief.  So I

8    think, you know, obviously, some of that is very dependent on

9    how long cross-examination takes.  I think we have estimated

10   two to three days, but I think most likely two days is our

11   expectation, based on how other trials have gone.

12             THE COURT:  Okay.

13             MS. ROCHA:  While we are talking about that, Your

14   Honor, in the event that we successfully pick a jury on the

15   first day early into the afternoon, would Your Honor like us to

16   have a witness available or -- this is purely just so that we

17   can let our witnesses know.  Would you expect that we would put

18   on witnesses on Tuesday I guess that is?

19             THE COURT:  It is possible you might get to your

20   first witness.  I think everyone certainly should be prepared

21   to open on Tuesday.  It is possible we will get to the first

22   witness.

23             MS. ROCHA:  Good to know.  Thank you, Your Honor.

24             THE COURT:  What about the defense on timing?

25             MR. HERMANSEN:  I am happy for Ms. Lee to chime in,

```
1    but -- so if we are picking a jury on the 7th --

2              THE COURT:  Correct.

3              MR. HERMANSEN:  -- I believe the government's

4    estimate is optimistic.  So I think the government's evidence

5    will hopefully be in on Friday the 10th.

6              THE COURT:  That seems a little less -- I mean, if

7    there are five witnesses -- I don't know how long obviously

8    each witness would be, but --

9              MR. HERMANSEN:  I just --

10             THE COURT:  Typically sort of -- maybe you are used

11   to longer cross-examinations than I usually see.  Usually in

12   these cases where there have been five witnesses, I would

13   expect you would get done in a couple of days.

14             MR. HERMANSEN:  Okay.  I inquired with my colleagues

15   at the Federal Public Defender in DC.  They thought the average

16   was four days on a similar case.

17             THE COURT:  I think I have seen more witnesses

18   frankly in other cases.  But, okay.  But let's say Thursday

19   afternoon or Friday morning the government finishes up.

20             MR. HERMANSEN:  So I think the 16th is a likely time

21   for us to be done.

22             We have the list of witnesses?

23             MS. LEE:  I do.  I think it is very possible we are

24   done the 15th.  And, obviously, there is a large conditional

25   component for Mr. Wise and some of the length of the experts as
```

1   the Court has referenced.  But I think it is probably safest to

2   say -- and I don't know if the government would intend to call

3   a rebuttal case, but if the phrasing is the same as that draft

4   voir dire of "on or before" I think the 16th is a safer day

5   than the 15th to say "on or before."

6            THE COURT:  Okay.  Any objection to me using the 16th

7   then?

8            I do think the last thing you want to do is tell

9   jurors you are going to be done and not be done.

10           MS. ROCHA:  Your Honor, we may raise objections

11   depending on the length of whatever some of these anticipated

12   witnesses would be and whether -- and relevance and for

13   whatnot, but for purposes of the voir dire, I would much rather

14   tell the jurors a longer period of time and not run into any

15   scheduling issues or issues with their expectations.

16           THE COURT:  Okay.  All right.  So while we are on the

17   voir dire, let me just ask whether there are any additional

18   final comments or suggestions with respect to the voir dire?

19           MS. ROCHA:  Not from the government, Your Honor.

20   Thank you.

21           THE COURT:  Ms. Lee.

22           MS. LEE:  The only thought that I had in reviewing it

23   was question 13 -- and this is maybe a strange place to put

24   it -- but feelings or opinions about the outcome of the 2020

25   presidential election.  I wonder if it made sense to ask about

1    2020, 2024.  I know that 2024 is not directly related, but it

2    might capture some current concerns.

3              THE COURT:  Any objection from the government to

4    adding that?

5              MS. ROCHA:  I don't think it is relevant necessarily

6    to the issues in this particular case, but I don't have any

7    objection to asking about it.

8              THE COURT:  I will say the 2020, 2024.

9              Okay.  What about on the preliminary jury

10   instructions?  I did add the language about the *Brandenburg*

11   standard at the request of the defense.  Is there anything else

12   that anyone wants to suggest with respect to the preliminary

13   jury instructions?

14             MR. HERMANSEN:  So going right to the *Brandenburg*

15   instruction --

16             THE COURT:  Yes.

17             MR. HERMANSEN:  I see that the Court has settled on

18   the language right out of *Brandenburg*, which was the likely to

19   incite.  So -- and the Court indicated in its order that any

20   objections that aren't stated are waived.

21             THE COURT:  Yeah.  So what are you asking me to do

22   instead?

23             MR. HERMANSEN:  So what I argued in my pleadings is

24   that the Court should give the more recent Supreme Court gloss

25   on it, which is the causation that it incited.

1          THE COURT:  That is the *Claiborne Hardware* you are

2    relying on for that?

3          MR. HERMANSEN:  Yes, Your Honor.

4          THE COURT:  I will take another look at *Claiborne*.

5    My impression when I looked at it was that *Claiborne* was

6    dealing with another circumstance, but I will give *Claiborne*

7    another look.

8          MR. HERMANSEN:  And I do have some suggested changes

9    on page -- let's see.  So on page 7, I am guessing that because

10   these are preliminary instructions and not final instructions,

11   on page 7, the Court is giving an instruction on section 231.

12   And in its current form, it says one or more law enforcement

13   officers.  And it says officers or -- officer or officers.  So

14   for preliminary, I get that.  But I am going to be making some

15   arguments for the final jury instructions that those be named.

16         THE COURT:  Okay.  You are -- that is preserved and

17   you are welcome to raise that later.

18         MR. HERMANSEN:  And then on page 8, the Court is

19   giving an instruction on attempt as part of Count 1.  And under

20   the 2nd prong it says that the defendant took a substantial

21   step toward committing -- obstructing officers during a civil

22   disorder, which strongly corroborates -- I am not sure where

23   that language comes from.  It sounds to me like it is directing

24   a verdict to say -- I think this should be up to the jury

25   whether it corroborates or not.  And the word "strongly" feel

1    like the Court is telling them --

2         THE COURT:  I mean, I would have thought the word

3    "strongly" actually benefited the defense.  If you don't want

4    it in there, I am happy to take it out.

5         MR. HERMANSEN:  Strongly corroborates or --

6         THE COURT:  That is what the government has to prove.

7         MR. HERMANSEN:  Yeah.  It sounds to me like it is

8    saying the substantial step -- my cocounsel might be saying,

9    don't argue this, Kurt.  Am I reading it wrong?  Because it

10   sounds like --

11        THE COURT:  Would you be happy if I change the word

12   "which" to "that"?

13        MR. HERMANSEN:  I think it sounds like the

14   substantial step -- if there is a substantial step that means

15   that he committed the crime.  That is the way I am reading it.

16        THE COURT:  That is not how I am reading it.  I am

17   reading it to say that the government has to prove there was a

18   substantial step that strongly corroborates.

19        MR. HERMANSEN:  Okay.  Yeah, if -- I think if there

20   were disorder, comma, which strongly corroborated or confirmed

21   that the defendant intended to commit the crime, I think that

22   would --

23        THE COURT:  So inserting a comma?  The jury is not

24   going to hear the comma.  I mean, I can pause, but --

25        MR. HERMANSEN:  Yeah.  Inserting a comma and making

1    it past tense instead of corroborates confirmed or --

2    corroborated or confirm that the defendant intended to commit

3    that crime.

4         THE COURT:  Well, I don't think the past tense makes

5    sense there, because it is the -- it is not that in the past it

6    corroborated, but that it took a substantial step and the jury

7    finds that that substantial step strongly corroborates that.

8         MR. HERMANSEN:  All right.  I am happy with the

9    comma.

10        THE COURT:  All right.  I will add a comma.  I will

11   do my best to remember to pause there.

12        MR. HERMANSEN:  On page 9, Your Honor, at the top

13   there is a fifth element.  And, again, we are still talking

14   about 231.  For the aiding and abetting instructions it says,

15   "in some way"-- it is actually the sixth element.  That the

16   defendant acts or -- act or acts, comma, in some way, comma,

17   aide, abet, assist, facilitate or encourage --

18        THE COURT:  Right.

19        MR. HERMANSEN:  In some way, to me, and cocounsel

20   might disagree, but it sounds like it is watering it down.  I

21   think it should say in a substantial way.  And I believe the

22   case law supports that it has to substantially assist the

23   principal.

24        THE COURT:  So I think this may be a difference

25   between Ninth Circuit and D.C. Circuit law on this question,

1    perhaps.  But I am pretty sure that this comes out of our red

2    book here.  I can look at -- of our jury instructions here.

3    But I think -- and I would have to go back and look at this.

4    But my recollection is that the Supreme Court in its most

5    recent precedent on aiding and abetting has said that it does

6    not have to be substantial.  But I would have to -- if the

7    parties want me to look at anything -- if you have any support

8    for the fact under current law it is a substantial step, it has

9    to -- in a substantial way, that is fine.  But I -- my

10   recollection is the most recent Supreme Court does say it

11   doesn't have to be substantial.

12          MR. HERMANSEN:  And my recollection is that -- and we

13   will see who is right, I guess -- I think the red book does say

14   in some way.  I think that is where it comes from is the red

15   book.

16          THE COURT:  Yeah.

17          MR. HERMANSEN:  But I think the most Supreme Court --

18   the Supreme Court's most recent gloss on aiding and abetting

19   says substantial.

20          THE COURT:  If you can find that for me and point me

21   to it I will certainly consider that.

22          MR. HERMANSEN:  Yes, Your Honor.

23          The last time we in were in court, the Court had

24   floated, in fact, instead of in some way.  And I think that is

25   more accurate and doesn't feel like it is watering it down.

```
 1              THE COURT:  I will -- if any -- either of you want to
 2   point me to some relevant authority on this, I am happy to look
 3   at that authority.
 4              MR. HERMANSEN:  And then the same -- it is the same
 5   issue on page 11.  There is -- just because on the top of page
 6   11, there is the same aiding and abetting instruction.
 7              THE COURT:  Yeah.  Okay.
 8              MR. HERMANSEN:  And then, Your Honor, on page 11,
 9   elements of Count 3, I am a little confused about the title and
10   the first element, because the title says entering and
11   remaining in a restricted grounds.  And the first element is
12   entering and remaining in a restricted building.
13              THE COURT:  Let's see here.
14              MR. HERMANSEN:  And I believe the government can
15   correct me if I am wrong, but I think they indicated at a
16   hearing that it is --
17              THE COURT:  Yeah.  So you are right, it should -- I
18   mean, it should say, entering and remaining in a restricted
19   building or grounds, which is what the statute --
20              MR. HERMANSEN:  Yeah.  I think they had said -- we
21   had talked about that it could be confusing and about -- and we
22   wouldn't have notice of what it is if they are talking about
23   when Mr. Wise is saying to Officer Niewenhous, Nazi, Gestapo.
24   When he is saying that, is that going to be -- I'm sorry.
25   Wrong count.
```

1          I think on this one though, we did get clarification

2    that they were talking about building, which is why I think it

3    reads this way and just that the title didn't get changed.

4          THE COURT:  All right.  Let me ask whether --

5          MS. FONTAN:  Your Honor, so just to clarify what we

6    were talking about in the previous hearing was not the 1752.

7    It was the 5104, which is the Capitol building.  And that is

8    where it is the more narrow language.  So 1752(a)(1) and

9    1752(a)(2) should be in a restricted building or grounds.

10         MR. HERMANSEN:  So I think for Count 3, the

11   discussion was that it was on the upper west terrace, I believe

12   it is, yeah.

13         THE COURT:  Let me let the parties confer about that

14   and see if there is agreement about what happened before.  And

15   if you need to point me to something that has been represented

16   to the Court previously, I am happy to look at that.  But maybe

17   you can amongst yourselves work that out if you want to point

18   Ms. Fontan to what you are talking about, Mr. Hermansen.

19         MR. HERMANSEN:  So on Count 4, which now although it

20   is an (a)(2) instead of (a)(1).  This one I believe the

21   government is saying in the building.  The language "in

22   proximity to" worries me that it is vague and what does "in

23   proximity to" mean?  That is the first element.

24         THE COURT:  I don't think that is an objection to the

25   preliminary jury instructions.  If there is something else that

1    you think you can timely raise with respect to that, you are

2    welcome to do so.  But I don't think that is a concern with

3    respect to the language of the preliminary jury instructions as

4    to whether the indictment is vague.

5              MR. HERMANSEN:  Unless Ms. Lee had anything, that is

6    all we had, Your Honor.

7              THE COURT:  Okay.  All right.  Thank you.  And I will

8    look at those couple of issues.  And as I said, if you have

9    authority that you want me to look at on the aiding and

10   abetting standard, I will look at that and I will take a final

11   look at *Claiborne Hardware*.

12             MS. FONTAN:  Your Honor, may I be heard on those

13   issues?

14             THE COURT:  Yes, please.

15             MS. FONTAN:  Okay.  Thank you.

16             I have an easy fix first.

17             THE COURT:  Okay.

18             MS. FONTAN:  On page 12, it says 5104(e)(2)(F) and it

19   should be (g) for the parading, demonstrating and picketing.

20             THE COURT:  Page 12, it says (e)(2)(F) and it should

21   be (G)?

22             MS. FONTAN:  Yes.  Correct.  And then, Your Honor --

23             THE COURT:  Okay.

24             MS. FONTAN:  -- if I may be heard on the -- there

25   were a couple of different issues that the defense brought up

1   with changing the substantially assist elements and also the

2   *Brandenburg* issue.

3          THE COURT:  Right.

4          MS. FONTAN:  So I will start first with the aiding

5   and abetting standard.  And the government briefed this in

6   their causation brief, however, I will address some of it now.

7   So in *Rosemond v. United States* which is 572 U.S. 65, 2014.

8   That is when the Supreme Court analyzed section 2 for aiding

9   and abetting a crime, which was when it -- which determined

10  that it took an affirmative action in furtherance of the

11  offense with --

12         THE COURT:  You have got to slow down.

13         MS. FONTAN:  I'm sorry.

14         Which determined that aiding and abetting for

15  liability -- for criminal liability, it requires taking an

16  affirmative act in furtherance of that offense with the intent

17  of facilitating the offense's commission.  And that is in part

18  where we are pulling the "in some way" language.

19         THE COURT:  And actually now that you are saying

20  this -- and this may help Mr. Hermansen as well -- it is coming

21  back to me is I think in the *Twitter* case, the Supreme Court

22  used the substantial language.  But it was interpreting

23  language that was actually in the civil context in the statute

24  there and was not interpreting the common law of aiding and

25  abetting when they said that.  That was my recollection.

```
 1              MS. FONTAN:  That is -- exactly, Your Honor.  And
 2      that is why the substantially assist language is not applicable
 3      or not binding in this case.
 4              And I will also just point the Court also to *United
 5      States versus Monroe,* which is 990 F.2d 1370, D.C. Circuit
 6      1993.  And that language states that it requires some
 7      affirmative participation for criminal aiding and abetting.  So
 8      based on that language, the binding law in this case doesn't
 9      require substantial assistance because those -- the substantial
10      assistance language only appears in civil aiding and abetting
11      liability.  And that was what was interpreted in the Supreme
12      Court *Twitter* case.
13              So moving on to, I guess, the government's objection
14      to the preliminary instructions.  And that would be giving the
15      *Brandenburg* instruction as written.
16              THE COURT:  Right.
17              MS. FONTAN:  And I think in the last hearing when we
18      had this discussion, the way that we had discussed it was not
19      that the government must show beyond a reasonable doubt these
20      elements.  It was phrased in a way that was -- I think it was
21      something like, using the two elements of *Brandenburg*, but
22      saying that is not protected speech.  I think the danger of
23      phrasing it like this and saying that the government must show
24      beyond a reasonable doubt is that it adds -- or it confusingly
25      adds elements to what the government must prove.  And I don't
```

1    think we would have a problem -- obviously, we would want to
2    see what the instructions said.  We are not opposed to giving a
3    First Amendment just general instruction I think in the way
4    that Your Honor had suggested before.  But I think doing the
5    language the government must show beyond a reasonable doubt as
6    elements that don't exist.  And, again, I know in our briefing
7    we discussed how the aiding and abetting instruction as
8    written -- and now additionally with the sixth element that the
9    Court added to aiding and abetting, it only further establishes
10   the point that aiding and abetting or the instruction is
11   constitutional and meets the *Brandenburg* test.  And just to
12   clarify -- to be more specific, when the government must show
13   beyond a reasonable doubt that he did so with the intent to
14   cause -- to cause imminent lawless action is subsumed by the
15   second and sixth element of aiding and abetting.  And I think
16   the same can be said for the second and fifth elements as well
17   for this test.
18           THE COURT:  I don't disagree that it is subsumed.
19   But I also -- I suppose don't see a downside in including it.
20   And it may well protect your record more if there were a
21   conviction on appeal to have given it in any event.  And if
22   it -- if it is subsumed, it is subsumed so you are not going to
23   be required to prove anything else.
24           MS. FONTAN:  I understand your point, Your Honor.
25   And I think what our concern is that it can get very confusing

1    as to what the jury should be focused on.  And I think just

2    specifically with -- because with an incitement instruction and

3    what -- the whole purpose of *Brandenburg* and incitement is to

4    look at the language of what the person is saying.  And I think

5    maybe some of this can be resolved with definitions and the

6    final instruction on, you know, what incite -- what incite

7    means and maybe some of these other words too.  But we are just

8    concerned it takes the focus away from the really more

9    stringent requirement that he aided and abetted and focused now

10   on, did he incite?  Did he not incite?  Was there imminent

11   lawless action when they really don't -- the jury doesn't need

12   to decide that.  Because if they decide that he aided and

13   abetted and if they -- yeah, if they decide that the defendant

14   meets all of the elements of aiding and abetting, then we don't

15   even get to -- we don't even need to get to *Brandenburg*.  And I

16   think we are just concerned that it could be confusing for the

17   jury.

18        THE COURT:  I understand your point about potential

19   confusion.  And I am happy to continue to think about that one

20   as well.

21        MS. FONTAN:  Your Honor, one more small thing on that

22   point.  And, you know, the defense takes the position and I

23   think the Court now has required that the government -- well, I

24   know that the Court has now required that the government

25   identify these officers and these victims.  Incitement doesn't

1    require any identification.  And I think that can be -- I

2    thought it -- I think that could further the confusion if we

3    are saying at one point, it doesn't matter who your -- as long

4    as you are shouting it at someone, now in this other aiding and

5    abetting now we have to.  So I think it gets confusing that

6    way.

7              THE COURT:  Yeah.  I mean, I understand that point.

8    And I actually -- I am not defense counsel.  I am not sure if I

9    were defense counsel I would want this instruction.  And this

10   is something -- I think I have made this point a couple of

11   times previously.  And I am willing to defer to defense counsel

12   as to whether they want this type of instruction.  But I think

13   that the *Brandenburg* standard is less demanding than the aiding

14   and abetting standard.  And so to the extent that you are

15   raising the question about confusion, I think the risk of

16   confusion is not that the jury is going to hold the government

17   to a higher standard, but to a lesser standard.  And that is

18   why if I were defense counsel I think that I might not want to

19   include this language for that reason.

20              And I -- if people have suggestions on how to clarify

21   the language, I would be open to it.  It is a correct statement

22   of the law, but I think is less demanding than the aiding and

23   abetting standard.  And to include it does pose some risk that

24   the jurors will apply the *Brandenburg* standard.  And

25   conceivably one would hope not, but conceivably would not apply

1    the aiding and abetting standard.  So I think your risk of

2    confusion does concern me.  And but I think it is a risk to the

3    defense.  And the defense is the one that is asking that I

4    include this language.

5              MS. FONTAN:  And perhaps, like Your Honor suggested,

6    this could be resolved with additional definitions or

7    explanations afterward.  Because as I pointed out before, I

8    think some of the language can be confusing.  And I think the

9    government intends on making it clear that it doesn't have to

10   be an individual for purposes of incitement.  So that is more

11   of a preview, I guess, of what we will probably be proposing

12   for final instructions.

13             THE COURT:  Okay.  Fair enough.  All right.

14             Mr. Hermansen.

15             MR. HERMANSEN:  So, Your Honor, I respectfully and

16   strongly disagree that aiding and abetting is stronger in its

17   current form when it says in some way.  And I briefed this

18   extensively in -- I would ask the Court to look again at ECF

19   1 -- I am having a hard time -- 155, so not only are we relying

20   on the *Twitter* case, but I think getting to the heart of the

21   causation issue the Supreme Court in *Rosemond* didn't -- in 2014

22   said that a person may be responsible for a crime he has not

23   personally carried out if he, "Helps another to complete its

24   commission."

25             So you have to help them actually complete it.  And

1    then I talked about *Twitter*.  And I know that was a civil case

2    that the Court is correct, that statute had the word

3    substantial in it.  But then we go on to add additional

4    support, including D.C. Circuit case law, that supports

5    substantial assistance being required.

6            THE COURT:  Okay.  Give me those case cites.

7            MR. HERMANSEN:  Yes, Your Honor.  So the first one is

8    recently the D.C. Circuit decided *Amazon Services LLC versus*

9    *United States Department of Agriculture*.

10           THE COURT:  That sounds like a civil case.

11           MR. HERMANSEN:  It is a civil case, but they talk

12   about criminal law in that case.

13           THE COURT:  Okay.  Give me the cite.

14           MR. HERMANSEN:  109 F.4th 573.

15           THE COURT:  Okay.

16           MR. HERMANSEN:  That is from this year, 2024.

17           THE COURT:  Okay.

18           MR. HERMANSEN:  In that case, the Department of

19   Agriculture penalized Amazon for possessing shipments of plant

20   and animal products that violated the Plant Protection Act and

21   the Animal Health Protection Act.  And so aiding and abetting

22   is how Amazon was held liable.  And the Court there, the D.C.

23   Circuit, looked to *Twitter* and *Twitter's* definition of aid,

24   abet, cause or induce.  So those words, aid, abet, cause or

25   induce -- and they say they carry a very well established

1    meaning when used to establish civil liability in aiding and

2    abetting.  And they also talk about the scope of it in -- of

3    tort law being the same as criminal liability.

4         And in another case the D.C. Circuit applied the

5    "substantially assist framework," to an antiterrorism case.

6    That case is 77 F.4th 667 and then the pinpoint cite is 676.

7    That case is from 2023.  And these are all cited around page 13

8    of our ECF 115 -- I'm sorry -- 155.

9         So that case said the defendant must knowingly and

10   substantially assist the principal violation.  And they are

11   relying there on a 1983 D.C. Circuit case.  And so we go on and

12   we discuss all of those cases.  And I think that is the right

13   standard for aiding and abetting is substantially --

14        THE COURT:  Okay.  I will go back and look at those

15   again.  What do you say though about just the fact that the

16   *Brandenburg* instruction is potentially confusing and after

17   having instructed the jury on what the elements are, then

18   setting forth what the jurors may then perceive as a different

19   set of elements from what I have just instructed them on?

20        MR. HERMANSEN:  So we have a criminal case where the

21   First Amendment is implicated because it is speech alone.  And

22   I think that is why it is tricky.  And we are all trying to

23   navigate that.  But my position is that the -- there is a

24   reason that the government only wants aiding and abetting.  And

25   although today they are saying we are okay with the Court

1    giving a First Amendment instruction, they fought that all

2    along.  And I view aiding and abetting as a way to try to

3    sidestep the First Amendment.  And there is -- we have -- and

4    it is going to be difficult to -- for the jurors to parse the

5    different statements that Mr. Wise made.  He made some

6    statements that are clearly protected under the First

7    Amendment.  And the jurors are going to hear those, because the

8    government is going to play him saying to Officer Niewenhous,

9    Nazi, Gestapo.  They are absolutely going to play that for the

10   jury.  They are also going to play the statements of, "Kill

11   'em, kill 'em."  So the jurors -- my concern is that the jurors

12   are going to convict Mr. Wise because they don't like what he

13   is saying.  And so to -- so that is my view is that we can't --

14   it is -- the Bill of Rights are inconvenient and they are

15   inconvenient for a reason.  They are to limit the government's,

16   you know -- and so I think it does protect -- and I hear the

17   Court.  I do hear the Court when you are --

18            THE COURT:  My concern is for your client.

19            MR. HERMANSEN:  No, I get it.  And I will very

20   carefully think about -- I know -- I hear you.

21            THE COURT:  Okay.  All right.

22            All right.  I will take a look at those remaining

23   issues.

24            Let's see here.  How long do you anticipate your

25   opening statements lasting?

```
 1              MS. FONTAN:  Fourteen minutes.

 2              THE COURT:  Fourteen minutes.  Okay.  You have timed

 3      it already.

 4              All right.  And the defense.

 5              MS. LEE:  Substantially.  An hour.

 6              THE COURT:  An hour?  That seems -- I will give you

 7      an hour.  I have got to tell you again, from your client's

 8      perspective, I -- you know, it doesn't strike me as helpful to

 9      give an hour-long opening in a case like this.  Really, an

10      hour?

11              MS. LEE:  I would rather overestimate for the Court,

12      but I --

13              THE COURT:  Okay.  I will tell you though, I am

14      strongly of the view -- and I will interrupt people.  Opening

15      statements are not argument.  They are summarizing what the

16      evidence will show and that is it.  And I don't want anything

17      other than a summary of what you believe the evidence will show

18      in the case.  And if you think you have got an hour of a

19      summary of what the evidence will show, you are welcome to

20      that.  But I well then limit both sides to an hour for their

21      opening statements.

22              But make sure you are only summarizing what the

23      evidence will show in your view.  All right.

24              MS. LEE:  Your Honor, I apologize.  Could I return

25      briefly to the voir dire?  We had an additional question we
```

```
 1    wanted to request.

 2              THE COURT:  I'm sorry.  Say again?

 3              MS. LEE:  Could we return briefly to the voir dire?

 4    We had an additional question we wanted to request.

 5              THE COURT:  Okay. all right.

 6              MS. LEE:  And as way of background, it seems that

 7    this is a somewhat common perception that would be hard to

 8    address or disabuse folks of and I think would make it very

 9    difficult to have a fair and impartial trial if the answer was

10    yes.  So we are requesting the question, "Do you believe

11    protestors on January 6 killed any police officers that day?"

12              THE COURT:  What is the government's view on that?

13              MS. ROCHA:  Your Honor, the government objects.  I

14    think there are some questions about people's strongly held

15    feelings.  And I think that we are -- to the extent that

16    someone has the view that I think defense counsel is concerned

17    by, I think that is subsumed by the other comments.  I think

18    also the way the question is phrased is extremely inflammatory

19    and factually inaccurate.  And I think just sort of raising

20    that -- like the idea of the Court uttering those words I don't

21    think makes sense here.  I am happy to discuss it more if the

22    Court would like to --

23              THE COURT:  I have to say, I am not inclined to give

24    that instruction or to pose that as a question, because I think

25    it, frankly, opens a can of worms in which the jurors are going
```

1    to ask me -- start asking questions about what happened that

2    day and whether there were officers who died subsequently to

3    events of that day based on what happened that day.  And there

4    have been reports about suicides.  And I do think that to the

5    extent the question goes to the particular case, there may be a

6    point in time in which it is appropriate to say to the jury,

7    that -- and I am confident that the defense will say this and

8    maybe the government would say it and maybe if not, the Court

9    would say it as well -- is that none of the five officers who

10    were at issue in the case were killed.  And there is not any

11    suggestion they were actually killed in this case.

12            MS. ROCHA:  I think they will see the video, they

13    will hear testimony from the officers.  I think that is a more

14    appropriate way to deal with that.  I certainly think that to

15    the extent that a potential juror has a strong belief that they

16    would not be able to follow the law or the facts in the case, I

17    think that is addressed by the other questions.

18            THE COURT:  All right.

19            MS. LEE:  Just briefly, Your Honor.  My concern is

20    that to the extent that people think this is just a neutral

21    fact about January 6, in staffing and trying to talk to this

22    case -- with people, it does seem to be that a number of people

23    have that belief.  There were early news articles -- whatever

24    reason, people have the belief that officers were killed on

25    that day.  That someone might not answer yes to the questions

1    we currently have, because they might not think of that as an

2    opinion.  They might just think that is something they know in

3    the abstract and in general about the events of that day.  And

4    it is hard for us to otherwise suss that out.

5                THE COURT:  One thing I would consider doing if you

6    wanted me to do is to get into a little bit more detail about

7    what the Government's allegations are in the case.  And in the

8    voir dire, I do it very generally.  If you wanted me to get

9    into further detail saying those allegations include that

10   Mr. Wise yelled "Kill 'em, kill 'em" during a conflict

11   involving police officers and then ask, you know, do these --

12   would you be able to be fair and impartial in light of these

13   allegations?  I would be open more to something more like that.

14   I worry about highlighting particular allegations in the case

15   over others, if we go down that road though.

16               MS. LEE:  Let me confer before we ask for that, but I

17   appreciate that as an alternative.

18               THE COURT:  Okay.

19               MS. LEE:  I am concerned and we can address this at a

20   later time if this became a request.  But I actually worry

21   about the opposite inference if we say none of these five

22   officers were killed that day.  I actually think that will sort

23   of imply some other ones were.  That is not something I would

24   likely request as the defense because of the exact concern

25   people might think elsewhere someone was.  I will discuss with

1     the team.

2              THE COURT:  Okay.  Thanks.  All right.

3              So before we break, maybe there is just a couple of

4     smaller things I can resolve.  One is that government filed a

5     motion in limine at docket 65 that I had previously reserved in

6     part on with respect to whether the defense can refer to or

7     offer arguments relating to the First Amendment.  And I don't

8     know, Ms. Lee, what you had in mind by way of your opening

9     since it is about summarizing the evidence anyway.  I guess to

10    the extent you are looking for guidance for purposes of your

11    opening, particularly if I give the instructions or some

12    version of the preliminary instructions that I have indicated,

13    I don't see a problem with your saying that, you know, Judge

14    Moss has just instructed you that as a matter of the First

15    Amendment, you can only find the defendant guilty if the

16    government shows that he acted with an intent to cause imminent

17    lawless action and that his speech was likely to incite

18    imminent lawless action.  The evidence will show, that X, Y and

19    Z.  So if you are simply referring to the law as I have given

20    it to the jury, and then explaining what the evidence will or

21    will not show about that, I don't see a problem with it.

22             My bigger concern was with counsel sort of

23    substituting their legal argument for my legal instructions

24    with the jury.  But since openings are not about argument of

25    any type, that is probably not an issue here.  But, Ms. Lee, is

 1    there -- do you need more guidance on that or does that address

 2    your concerns?

 3            MS. LEE:  I believe that that addresses my concerns.

 4    I think -- you know, I think we have instructions that kind of

 5    cover what we think is First Amendment protected.  It is

 6    possible I will say something like, you don't have to agree

 7    with what he said or something like that.

 8            THE COURT:  That is completely fine.

 9            MS. LEE:  Those kind of very simple --

10            THE COURT:  That is completely fine.  You are

11    entitled to do that.

12            Okay.  All right.  And then maybe one more thing

13    before we break, which is where are we with respect to the

14    motion to quash the subpoena which was the one that was just

15    filed over the holidays?

16            MS. LEE:  Your Honor, the Court has heard a lot about

17    the FBI personnel file in the past.  This was a request that I

18    understand the government did not wish to accept service for

19    the FBI for general records that are somewhat available online

20    but that we would like a subpoena duces tecum for the

21    expectation that there is cross-examination of Mr. Wise if he

22    testifies about his training.  It would be nice to be able to

23    corroborate that, yes, you get trained on these kinds of use of

24    force tactics and components.  I don't really think the Court

25    needs much more from me about what we have discussed in the

1    past.

2         THE COURT:  Yeah.  I suppose if I understand this

3    correctly, it is a fair point that -- you can stay there,

4    Ms. Lee, if you want.  It is a fair point that if what you are

5    simply trying to avoid is surprise where you put your client on

6    the stand, he testifies and then he is cross-examined with a

7    document that the government at least implies he would have or

8    should have received access to when he worked at the FBI with

9    respect to the relevant standards and you haven't seen that

10   document in preparing him before he testifies, that strikes me

11   as a fair concern if that is what you are getting at.

12        MS. LEE:  Actually sort of the flip side, which is

13   that I think they corroborate the training he might have

14   received at the FBI, as opposed to kind of a question which

15   says, you don't really know about these topics or some

16   questioning along that line.  I think they support that FBI

17   officers are kind of trained in these use of force techniques.

18        THE COURT:  I guess there is a question about whether

19   they are trained about in the abstract versus what he was

20   personally trained about.  Do you have any reason to think that

21   he received this?

22        MS. LEE:  Well, we have done a few different rounds

23   of ways to get at this.  And we have received what I understand

24   to be the complete records as kept by the the FBI with regards

25   to his personnel file.  And then there have been discussions

1    about much of that general training information is not kept in
2    a personal personnel file, which makes sense to me.  You
3    wouldn't want to duplicate the training manual for every FBI
4    agent forever.  You keep sort of broader training materials to
5    the extent they exist elsewhere.  So this was a request for the
6    general training materials that might not otherwise live in his
7    particular personnel file.
8          THE COURT:  All right.  Let me hear from Ms. Fontan
9    or Ms. Rocha on this.  Maybe there is just that the subpoena
10   hasn't been served, in which case I'm not sure there is
11   anything ripe in front of me.
12         MS. ROCHA:  Correct, Your Honor.  I think we wanted
13   to bring it to the Court's attention given the timing.  We have
14   addressed at length before the government has gone through
15   extraordinary efforts to gather these materials.  But at this
16   point, you know, based on -- it doesn't meet the need here.  I
17   don't see how there is any relevance to these documents.  The
18   government certainly has no intention of -- you know, to Your
19   Honor's concern, somehow cross-examining him with some kind of
20   training document that hasn't been produced in discovery.  I
21   don't see the relevance of how these materials would be.  It
22   is -- what he knew at the time -- we have gone through these
23   efforts to kind of gather the materials available so that they
24   had them for defense counsel.  But I don't see the relevance or
25   how this meets any of the standards.  And I think

1    preliminarily, I am not sure that it has actually been served

2    or that there is sufficient time for it either, given the

3    holidays and how -- the timing of everything.

4             But happy to answer additional questions for the

5    Court.

6             THE COURT:  All right.  Ms. Lee, anything else on

7    this?

8             Have you served the subpoena?

9             MS. LEE:  No.  Previously the US Attorney's Office

10   had agreed to accept service for FBI agents.  They declined to

11   accept service in this instance, so we have not served the FBI

12   agents.  We have done our best to be particular.  We attached

13   what was publically available, the kind of particular nature of

14   what we were trying to request, so my hope would be that would

15   not be a complicated thing to provide service for and to bring

16   records for, but that is our -- I can check with Mr. Grade.  I

17   don't believe he has separately served the FBI agent again.

18   Our previous --

19            THE COURT:  I am not sure -- is it the FBI agent or

20   is it the FBI itself that would get served?

21            MS. LEE:  We thought it might be simplest to use the

22   agents who are otherwise appearing to have them provide the

23   records.  There is at least one FBI agent -- and the government

24   in the past that had accepted service for FBI records.  So I

25   can check with Mr. Grade.  I don't think it has been separately

```
1    served on the FBI.
2              THE COURT:  Okay.
3              MS. ROCHA:  Your Honor, I neglected to mention --
4              MR. GRADE:  Your Honor, This is Ben Grade.  It was
5    served on legal counsel here in Portland who said that they
6    would provide the records.
7              THE COURT:  I'm sorry.  Who was it served on?
8              MR. GRADE:  The legal counsel at the FBI's office
9    here in Portland.  They said that they would provide the
10   records.
11             THE COURT:  Okay.  Well, if they said they would do
12   so --
13             MS. ROCHA:  Your Honor, that is different than the
14   government's understanding.  We have been in touch with the
15   FBI.  And I don't believe that there are records forthcoming.
16   So I don't want to suggest that they were aware we were filing
17   the motion to quash.  It is noted in the government's motion to
18   quash.
19             But I would also say this sort of raises the whole
20   specter of *Touhy* and a whole host of other issues.  And I
21   didn't want to neglect to mention that as well.
22             THE COURT:  Have you spoken to folks in the Portland
23   office?
24             MS. ROCHA:  I was aware that they received it and it
25   was then sort of sent to us as, you are the lawyers on the
```

```
1    case.  I am not aware of them doing any other efforts with the
2    subpoena.
3              THE COURT:  Why isn't that sufficient for service
4    purposes, if it was served on the Portland office?
5              MS. ROCHA:  It may be.  I heard this sort of second
6    hand, to the extent that it has been served.  That is possible.
7    I don't know when it was served.  I don't know the timing of
8    the events.
9              Mr. Grade may.
10             MR. GRADE:  Yes.  It was served last -- I believe it
11   was on Monday.  Was it Monday?  And I was told they would try
12   to get it by today if not by next week.
13             THE COURT:  Well -- go ahead, Ms. Lee.
14             MS. LEE:  It sounds, Your Honor, like it has been
15   served.  It was forwarded to counsel.  I don't know if the
16   motion to quash has paused further efforts.  My hope is it
17   would be a fairly simple set of records if the Court did not
18   quash the subpoena.
19             THE COURT:  All right.  Well, Ms. Rocha, why don't
20   you contact the office in Portland?  But I actually think if
21   this is a document that they can readily place their hands on
22   that it is not unduly burdensome for them to do it and it
23   doesn't strike me as irrelevant in the case, I do think that it
24   is a couple of steps removed in that we don't know whether this
25   is anything that Mr. Wise himself ever saw.  But to the extent
```

1   that the question of whether Mr. Wise was engaged in third

2   party self-defense and these guidelines are what governs the

3   FBI's officers' use of force --

4           Now, of course, these weren't FBI officers

5   themselves, they were the Capitol Police.  And so I guess -- I

6   guess I am coming back -- so maybe Ms. Lee can explain to me

7   if -- I understand why what the FBI's policies are would make a

8   difference if Mr. Wise actually was trained on those policies

9   and that it goes to what he was trained on.  But if there is

10  not evidence or reason to think he was trained on it -- I could

11  see why the Metropolitan Police Department and the Capitol

12  Police's policies might make a difference, but why would the

13  FBI policy be the one that makes a difference here?

14          MS. LEE:  And, Your Honor, we do believe he would be

15  trained on those types of materials.  And it wouldn't --

16          THE COURT:  Don't --

17          MS. LEE:  We believe --

18          THE COURT:  When you say those types, do you think he

19  was trained on these particular materials?

20          MS. LEE:  I guess, I want to be --

21          (Pause.)

22          MS. LEE:  Your Honor, Mr. Wise has represented to us

23  that he was and that he was specifically trained on the kind of

24  strikes.  And this would go to his reasonable belief at the

25  time of the assaults.

1          THE COURT:  Okay.  All right.  Ms. Rocha.

2          MS. ROCHA:  Your Honor, I would like to be heard on

3     the burden issue and the timing and the overall kind of

4     sequence of events here.  Because in terms of how it sort of

5     impacts next steps, certainly, Your Honor, you know, putting

6     aside sort of relevance and other issues, if these things were

7     easily obtainable and something that we could quickly gather

8     and provide, we certainly would rather do that than file a

9     motion and proceed and waste the Court's time.

10         THE COURT:  Right.

11         MS. ROCHA:  But I think as we addressed at length

12    with the original subpoena, the government went through

13    extraordinary efforts to gather and produce these materials,

14    which arguably -- you know, the government's position was some

15    of them, not relevant, and didn't meet the standard.

16         Here, we have literally an 11th hour, eve of the

17    holiday subpoena that is really -- this is not the proper venue

18    to gather and ask for this information.  It is -- you know, we

19    have a pending request that if the Court were not to -- to

20    grant our motion, what the extent of the burden would be, due

21    to the holidays and the timing of all of this and given, you

22    know, all of the different events that are happening in this

23    short, you know, week of Christmas, week of New Year's and then

24    this week, you know, I don't have ready answers to Your Honor.

25    But, for example, one of the items requested is all rules,

1    regulations and policies set forth.

2         Something else asks for the basic field training

3    course which we discussed before.  You know, the FBI is not in

4    a position to provide the way back -- you know, I don't know

5    whether they are asking for, you know, the one in -- I believe

6    this document is from 2017 or they are asking for the one

7    that --

8         THE COURT:  I think what they are asking for is what

9    is cited in the 2012 policy; right?

10         MS. ROCHA:  Right.  But the basic field training

11   course, I presume, but I don't know for sure, that is sort of

12   the Quantico materials.

13         THE COURT:  I see.

14         MS. ROCHA:  This subpoena is really not asking for

15   something that is narrowly tailored that is targeted to the

16   issues in the case.  They have this particular document that

17   they have.  We have provided other -- another material that

18   talked about the use of force.  As Your Honor has mentioned,

19   the FBI -- the particular officers at issue in this case were

20   from the Metropolitan Police Department, the United States

21   Capitol Police and assisted by various local officials.  But

22   not -- they were not -- in that scrum, there were not -- you

23   know, there is no uniformed FBI officer at this particular

24   point in time.  So even for the government at this late time,

25   you know, days before trial to spend the time coordinating with

1    the FBI to get, for example, all rules, regulations and

2    policies, this is a very burdensome request and abuse of the

3    subpoena process.  This isn't the proper way to go about

4    gathering these materials.  And I think --

5               THE COURT:  What is the proper way to do that?

6               MS. ROCHA:  Well, Your Honor, for example, there is

7    discovery process.  They sought the subpoena before.  They

8    sought a different motion to compel that I know Your Honor

9    ruled on.  We had the -- they filed the motion to compel.  We

10   had discussion about at the hearing about the motion to compel.

11   And late Friday, you know, on the eve of sort of a holiday week

12   is when we got the email saying if we would accept service for

13   this FBI subpoena of documents.

14               THE COURT:  So it is really just a timing issue?

15               MS. ROCHA:  I think it is a timing issue, Your Honor.

16   I think it is all of the other issues that we had raised before

17   about the extent to which these FBI records are relevant to

18   this case.  It is really what Mr. Wise knew, what is in his

19   head, not what is in some, you know, rule, regulation, policy

20   document.

21               THE COURT:  Although --

22               MS. ROCHA:  The FBI's rules on use of force and such

23   things are not relevant to the issues in this trial, to the

24   extent these material would be appropriate to go through this

25   effort at this eleventh hour.

1            THE COURT:  Well, Mr. Grade has indicated he was told

2    by the Portland office that they were just about ready to

3    provide them.

4            MS. ROCHA:  If Mr. Grade has provided information, we

5    would appreciate a copy of those materials.  That is not --

6            THE COURT:  No.  No.  No.  What I was saying is that

7    he was told by the Portland office that they could have it to

8    him in short order.

9            MS. ROCHA:  In which case, if those materials are

10   provided, we would appreciate a copy of them in which case that

11   is done.  But to the extent the government, meaning the parties

12   here, the witnesses that are to testify at trial, the

13   Washington field office, to the extent there is any suggestion

14   that anyone from the government -- from our -- you know,

15   government as defined by, you know, the prosecution team in

16   this case, I don't think it is appropriate.

17           THE COURT:  The subpoena is not directed to you.

18           MS. ROCHA:  Correct.

19           THE COURT:  It is not directed to the US Attorney's

20   Office.  And to the extent that the party to whom the subpoena

21   is directed is served has indicated they can respond, it seems

22   to me the burden issues are not real issues.  If there is a

23   burden issue that you want to raise down the road and they get

24   back to you and you have a conversation with them and they say,

25   no, that is not what we actually said.  We said we would start

1    gathering them, but it is going to take us six weeks to do this

2    or it is going to be a huge undertaking, that is a different

3    matter.  But if it is something where someone in Portland has

4    already started the process of gathering and they can turn it

5    over without any significant burden to do so, I don't see any

6    reason not to.

7            MS. ROCHA:  What Mr. Grade is saying is different

8    than what my understanding was.  But certainly if these

9    materials are being gathered and provided, you know, I

10   certainly have no objection.  I think, you know, to the extent

11   that there is any suggestion that anyone else is going to do

12   anything else is where we have -- why we raised the motion to

13   quash.

14           THE COURT:  This is not directed at the prosecution

15   team.  It is directed to the FBI.  And to the extent that the

16   FBI can respond, I mean, that is not unduly burdensome to the

17   FBI, I don't see a reason why they shouldn't do so.

18           MS. ROCHA:  Your Honor, the FBI was aware we were

19   filing the motion to quash.  Should we -- how would Your Honor

20   like me to --

21           THE COURT:  Why don't you --

22           MS. ROCHA:  -- follow up with them?

23           THE COURT:  I think you can tell them that the Court

24   has indicated to the extent that they can respond to that

25   without any undue burden that they should do so.  And if there

1    is an undue burden, I need to understand what that burden is.

2              MS. ROCHA:  Understood, Your Honor.  Thank you.

3              THE COURT:  All right.  Anything further on this?

4              MS. LEE:  No, Your Honor.  Thank you.

5              THE COURT:  All right.  Why don't we go ahead and

6    take a break.

7              Yes.

8              (Pause.)

9              MS. LEE:  Just so the Court knows -- apologies.  I

10   was going to suggest reading the names of the officers into the

11   record as we had the names of the principals to put the names

12   of the nine officers in.  And we are just confirming whether

13   those need to be initials or if we are free to read those into

14   the record so we can return to that.

15             THE COURT:  Okay.  That is fine.

16             MR. HERMANSEN:  I suggest maybe we could put their

17   last names into the record and just seal that portion where we

18   say their last names and then we would be done if the

19   government is okay with that.

20             MS. FONTAN:  I would rather just --

21             THE COURT:  I am going to take a break anyway, so why

22   don't you take the time to run that down and you can get

23   whatever guidance you need.

24             Let me just take a look.

25             (Pause.)

1          THE COURT:  All right.  So why don't we take our

2    lunch break.  It is a little early.  Why don't we come back at

3    1:30.

4          I will tell you, I have on my list of items

5    remaining, I have a question I want to ask on the *Daubert*

6    issue.  And maybe I should tell you what the question is now

7    just so you can be looking at this yourselves.  But I was told

8    I think at the last hearing that Dr. Rylant was qualified to

9    testify as an expert on auditory exclusion.  And that the basis

10   for that conclusion was his dissertation on police use of force

11   decisions, psychological and physiological factors affecting

12   performance under pressure.  This is a 142-page document.  And

13   I did not see references to auditory exclusion in that

14   document.  But if you want to over the lunch break read through

15   that document yourselves and point me to the pages where, in

16   your view, he is discussing auditory exclusion, I would be

17   happy to consider that.

18         All right.  So I will see you all back at 1:30.

19         (Recess taken at 11:45 a.m.)

20         THE COURT:  All right.  Turning back to the

21   preliminary jury instructions for a moment.  First of all, the

22   question of whether criminal aiding and abetting liability

23   requires that the defendant had substantially assisted the

24   principal, I think the law is actually quite clear that is the

25   standard for civil cases, but not in criminal cases.  And in

1    *Rosemond verses United States*, the Supreme Court in 2014 wrote,

2    "Indeed, as yet a third treatise underscored, a person's

3    involvement in a crime could be not merely partial but minimal

4    too.  The quantity of assistance was immaterial, so long as the

5    accomplice did something to aid the crime.  After all, the

6    common law maintained every little bit helps.  A contribution

7    to some part of the crime aids the whole.  That principal

8    continues to govern aiding and abetting law under section 2."

9            And the cases that I was pointed to don't conflict

10   with that proposition at all.  The *Amazon* case uses the word

11   civil three times in three sentences in describing the standard

12   that applied there, does not suggest that the standard is in

13   criminal cases is substantial.  Nor could the D.C. Circuit,

14   obviously, disagree or set aside Supreme Court precedent on the

15   point.  And then, the -- I was also pointed to *Ofisi versus*

16   *BNP,* which again is a civil case and cites to the standard that

17   applies in civil cases as being "substantially assist" and

18   quotes *Halberstam* for that position.  And as the D.C. Circuit

19   explained in *Amazon Services, Halberstam* concluded that for

20   civil aiding and abetting liability to attach, the aider and

21   abettor must have knowingly and substantially assisted the

22   principal violation.

23           So I think the law on that question is clear and that

24   all that is required is some assistance or that the accomplice

25   did something to aid the crime.  And, quite frankly, I don't

1    have a strong view about whether the instruction says, did in

2    some way aid or did in fact aid.  I think that my recollection

3    is the in some way follows the red book.  And unless both

4    parties were content to insert in fact in its place, I guess I

5    would just stick with that.

6          Then the other question is *Claiborne*.  And I went

7    back and reread *Claiborne*.  And I don't think *Claiborne* can be

8    fairly construed to have modified the *Brandenburg* test.  And,

9    in fact, I think the Court was pretty clear that it was

10   applying *Brandenburg*.  And in *Claiborne Hardware* the Court

11   quotes *Brandenburg versus Ohio* and says, "We relied on the,

12   quote, principle that the constitutional guarantee of free

13   speech and free press do not permit a state to forbid a

14   prescribed advocacy of the use of force or law violation except

15   where such advocacy is directed to inciting or producing

16   imminent lawless action and is likely to incite or produce such

17   action."

18         And it is true in the next paragraph the Court

19   includes two sentences which one might argue move from likely

20   to incite to actually incite is the standard.  The first

21   sentence reads "After describing Charles Evers' speech in which

22   he urged black citizens to unify and support and respect each

23   other and to realize the political, economic power available to

24   them, the Court went on and said, in the course of those pleas,

25   strong language was used.  If that language had been followed

1    by acts of violence, a substantial question would be presented

2    whether Evers could be held liable for the consequences of that

3    unlawful conduct." I don't think that language modifies in any

4    way the *Brandenburg* standard. And, in fact, under *Brandenburg*,

5    one of the steps in the analysis is deciding whether the

6    advocacy was likely to incite. And if the advocacy did in fact

7    incite, that would be substantial evidence that it was likely

8    to incite.

9            And then the other sentence reads, "When such appeals

10   do not incite lawless action, they must be regarded as

11   protected speech." But I don't think that sentence is properly

12   read to say, when such appeals do not actually cause lawless

13   action, they must be regarded as protected speech. It says

14   when such appeals do not incite lawless action. And the

15   American Heritage Dictionary defines the word incite to mean to

16   provoke or encourage or to move to action. And that again is

17   consistent with -- I think with the *Brandenburg* test. And the

18   Court can be read there to say and is best read to say, "When

19   such appeals do not urge lawless action, they must be regarded

20   as protected speech." I think that reading of that sentence

21   there is not only supported by the dictionary, but also by the

22   sentence or sentences that come right before that, which say,

23   "Strong and effective extemporaneous rhetoric cannot be nicely

24   channeled to purely dulcet phrases. An advocate must be free

25   to stimulate his audience with spontaneous and emotional

1    appeals for unity and actions in common cause."  The Court

2    isn't saying there that it is permissible to engage in speech

3    that is directed to inciting lawless action and that is likely

4    to do so.

5         So I still think that notwithstanding *Claiborne*

6    *Hardware*, that *Brandenburg* sets forth the correct standard.  I

7    did go back and look at that paragraph.  I guess it only

8    appears once -- that paragraph in the preliminary jury

9    instructions.  And I toyed with finding some way to do what the

10   government was suggesting and put it in terms of definitions.

11   I didn't find a way to do that that was less confusing than it

12   is now.  And so I think my inclination is to leave it as it is

13   in the proposal or to drop it, if the defense wants me to drop

14   it.

15        And I just would ask, Mr. Hermansen, that you confer

16   with Mr. Wise and that Mr. Wise discuss with you whether he

17   wants to keep that paragraph in.  Because I do think there is

18   some risk of jury confusion when we are setting forth what

19   sounds like two standards.  I think it is not misleading,

20   because it is clear it says in addition.  And it is not saying

21   in the alternative, it is in addition to.  But I also just want

22   to make sure that it is Mr. Wise's preference to keep that in

23   or that you think that is the right thing to do after

24   consulting with him.  Because as I indicated to Ms. Fontan, I

25   think that everything that is in that paragraph is captured by

1    the aiding and abetting instruction already.

2            And to the extent there is any risk of confusion, the

3    only risk of confusion is one that the Court -- the jury might

4    apply a less demanding standard.  As I said, I don't think that

5    is a significant risk in light of the use of the word "in

6    addition."  To the extent there is a risk, it is a risk to the

7    defense.  And I just want to make sure that Mr. Wise in

8    consultation with his counsel has made a decision that he does

9    want to include that.

10            MR. HERMANSEN:  I will do so, Your Honor.

11            THE COURT:  Okay.  All right.  Thank you.

12            All right.  So I think that resolves things with

13    respect to the voir dire and the preliminary jury instructions.

14    I asked the question about Dr. Rylant's dissertation.  And,

15    Ms. Lee, or, Mr. Hermansen, did you find some discussion in the

16    dissertation of auditory exclusion?

17            MR. HERMANSEN:  So, Your Honor, his dissertation is

18    broader than that.  It is about fight and flight.  And so we

19    have a number of reasons that support his opinion that in this

20    case -- which is the third opinion about auditory exclusion.

21    And I am specifically relying on document 123-1.  123-1 is the

22    October 7th amended report which sets forth the bases for his

23    opinions and his qualifications.  Again, that is 123-1.

24            And in that document, he first gives some definitions

25    about fear and then fight and flight and talks about decision

1    making.  And then all within that larger umbrella of how people

2    react under stress, which is the main focus of his dissertation

3    broadly and the focus of his testimony in this case, he then

4    turns to selective attention.  And selective attention is

5    part -- is one part of how the brain reacts when one is under a

6    super stressful situation.  And then one part of selective

7    attention -- and this is on page 7.  And we get to intentional

8    deafness, also known as auditory exclusion.  So it is in that

9    context -- it is one of many things that can happen like in a

10   police shooting or a police use of force or anytime the police

11   have a very stressful event with like January 6, both the

12   police -- and so it -- normally, it is the police who don't

13   hear things.  And the testimony of Dr. Rylant at the *Daubert*

14   hearing I believe was that -- and in some of his prior

15   testimony.  He has previously testified in federal court about

16   auditory exclusion.  Some of the testimony he has given is

17   about officers who -- another officer will be saying stop or

18   the officer will be saying, it is not a real gun.  And when an

19   officer is under stress, they may not hear that.

20        So it can be auditory exclusion.  It can be focus of

21   attention.  And it is all about how the brain functions under

22   high levels of stress.

23        THE COURT:  Right.  Just to back up.  I get that.

24   But I think the question that I had asked previously and where

25   you pointed me to the dissertation or Dr. Rylant -- I can't

1    remember, one of the two of you pointed me to the dissertation

2    and I said, is there any scholarly basis or foundation you can

3    point me to for that opinion?  And you said, yes, his

4    dissertation.  So that is -- my question for you is where in

5    the dissertation is it?

6            MR. HERMANSEN:  So his dissertation relies on various

7    sources.  But his report 123-1 also cites a number of -- and

8    they are in the footnotes, Your Honor.

9            THE COURT:  Okay.

10           MR. HERMANSEN:  So if we go to page -- and they are

11   starting with footnote -- I believe it is footnote 6.

12           THE COURT:  Okay.

13           MR. HERMANSEN:  So footnote 6, 7, 8, 9, 10 -- so all

14   of the footnotes that are under selective attention and then

15   the footnotes that are under -- intentional deafness or

16   auditory exclusion -- and those footnotes are in pages 6 and 7

17   of his report.  So those are scholarly articles that he is

18   relying on.  But that is in addition to his -- he trains other

19   officers on use of force.  He is always going -- and I have

20   recently given the government an updated resume, CV for him so

21   they can see that he is continuing to go to these courses.  He

22   is still training other law enforcement officers about use of

23   force.  And he, himself, as a law enforcement officer, and on

24   the SWAT teams and things -- like he ended up having to retire

25   because of a use of force incident and injuries that he had.

1    And so he personally has experienced, you know, different

2    focused -- so it started with that, right, as him being a law

3    enforcement officer and then getting his PhD and focusing his

4    entire life on explaining what happens under these stressful

5    situations.

6             THE COURT:  So the concern -- and I think one of the

7    concerns that underlies *Daubert* is that a jury could be misled

8    by a, quote, expert testifying on something and say, well, you

9    know, the expert testifies with respect to this, so it must

10   have some scientific validity.  And it may be that lay

11   testimony with a proper instruction about what lay testimony is

12   would be entirely appropriate and sort of, in my experience and

13   you may have experienced this yourself in real life, members of

14   the jury, where, you know, you are at a football game and

15   everyone is cheering and you don't hear the person next to you

16   telling you that they have gone to the restroom.  And,

17   therefore, you look and say, where is my friend or whatever it

18   might be.  That is lay opinion testimony.  It is the sort of

19   testimony that any juror might be able to draw for themself or

20   conclusion.  I think we all would agree that when there is a

21   lot of commotion and noise going on that we are prone to hear

22   what we are focusing on at that point in time.  And you can't

23   hear everything at the same moment.  The question that I posed

24   and I am sill posing here is, is there a scientific basis for

25   this?  And if so, I just need to be able to read it in my own

1    way and look at it.  And, you know, we spent a lot of time

2    going through what you pointed me to last time was his

3    dissertation and didn't see it there.  Maybe it is there and we

4    just missed it.  But I am asking you -- and now you have given

5    me -- you said, look at the footnotes, Judge.  If you have

6    given me all of those articles, I can read them all.  I have

7    only got a limited time to do all of my other cases too.  I am

8    just asking, show the darn sentence that says that, show me the

9    paragraph where they say so and so studied this issue and this

10    is what the study showed.

11         MR. HERMANSEN:  So the two answers -- the broad issue

12    of scientific testimony -- I believe the Court is using that a

13    broader group, which includes things that are not science.

14    Like there is hard science and soft science.

15         THE COURT:  I understand there might be more recent

16    *Daubert* jurisprudence on this.  But still if it is expert, it

17    is more than common sense experience that we all are familiar

18    with.

19         MR. HERMANSEN:  Correct.

20         THE COURT:  It is something that can be studied in

21    some way or some analysis where that person is actually

22    bringing a particular science in a broad fashion expertise or

23    scientific in a broad fashion expertise to bear on that

24    question, something that has been studied and analyzed.

25         MR. HERMANSEN:  It has been studied.  It has been

1    analyzed.  And it has been studied and analyzed by many people,

2    including Dr. Rylant.  So on page 11 of his report, he talks

3    about his methodology.  So he gathered information.  It is the

4    way that psychologists gather information.  And this is just

5    true.  It is not -- it is not DNA or hard science.  But you --

6              THE COURT:  I'm sorry.  Page 11 of his report?

7              MR. HERMANSEN:  Yes, Your Honor.

8              THE COURT:  The report you referred me to, page 11 is

9    just his reference materials.  Are you talking about his

10   dissertation?

11             MR. HERMANSEN:  There is a heading, 123-1 has --

12             THE COURT:  I'm sorry.  123-1?

13             MR. HERMANSEN:  Yes.  It has got his methodology.

14             THE COURT:  Okay.  That is page 11.

15             MR. HERMANSEN:  And then the reference -- so the

16   footnotes are just short for the reference materials that are

17   then cited on pages 12, 13 all of the way through 17.

18             THE COURT:  I guess my question is still the same.  I

19   am reading what he says about his methodology here.  But my

20   question is just is this anything that has -- including

21   Dr. Rylant has studied where he has relied upon and pointed us

22   to that study, auditory exclusion.

23             MR. HERMANSEN:  I thought he testified to that at the

24   hearing, but I can --

25             THE COURT:  I asked what the studies were, the

1    analysis was.  I thought it was you, but maybe it was

2    Dr. Rylant who said, yes, the dissertation and then we looked

3    at the dissertation and we don't see it.

4        MR. HERMANSEN:  I believe the dissertation came up at

5    the last hearing.  I think Ms. Lee said me to like, oh, well,

6    his dissertation is broader than that how I had been describing

7    it, but that we weren't relying just on his dissertation,

8    certainly.

9        THE COURT:  All right.  So let me ask -- I am happy

10   to give you a break to get back to me.  I just want someone to

11   say, Judge, here is the study, it is, you know, from "The New

12   England Journal of Medicine" or whatever journal it is, a

13   peer-reviewed study, here it is.  Here is a copy of it.  Judge,

14   if you look at pages 7 through 12 of that study, it explains

15   the study that was actually conducted to show how auditory

16   exclusion works.

17       MR. HERMANSEN:  Okay.  And just so the Court is

18   aware, in -- I have also reviewed this with Dr. Best and she --

19   she also is --

20       THE COURT:  She hasn't been offered as an expert on

21   that topic.

22       MR. HERMANSEN:  Yeah.  She said there is lots and

23   lots of studies.

24       THE COURT:  We are like a couple of days away from

25   trial.  You had to have disclosed this to the government in a

1    way that allowed them to prepare for trial.  Maybe they are in

2    the footnotes.

3              MR. HERMANSEN:  They are.

4              THE COURT:  Okay.  That is all I have been asking

5    for.

6              MR. HERMANSEN:  Okay.

7              Your Honor, Ms. Lee has the study cited in footnote

8    12 that we can email the Court.

9              THE COURT:  I'm sorry?

10             MR. HERMANSEN:  Ms. Lee has the study cited in

11   footnote 12 of Dr. Rylant's report that we can email to you.

12             THE COURT:  Okay.  If you could do that, I would

13   appreciate it.

14             (Pause.)

15             THE COURT:  Could you email that to the government at

16   the same time?

17             MS. LEE:  Yes, I will email everyone.  What is the

18   Court's preference for what email to send it to with the Court?

19             THE COURT:  For the Court, you can send that to the

20   chambers email.

21             (Pause.)

22             THE COURT:  Have you sent that yet?

23             MS. LEE:  Oh, I am hitting send, just one moment.

24             THE COURT:  Okay.

25             MS. LEE:  Your Honor, I don't know if the Court wants

1    to come back to this.  There are a number of studies in the

2    selective attention portion which I think is part of the

3    opinion that I have not pulled and put together.  But I would

4    be happy to pull --

5              THE COURT:  All right.  Why don't we do this.  I will

6    give you some time.  What I really want -- ideally you can go

7    to the lawyer's lounge here and print out a copy and highlight

8    it and say, Judge, here are the paragraphs I want you to read

9    in this study.

10             But while we are at it, I have got the same question

11   with respect to Dr. Best.  And as I have previously indicated,

12   I am prepared to allow her to testify with respect to the

13   affects on memory of being in a dissociative state, assuming

14   that memory is at issue in the case.

15             I am far less certain about whether she should be

16   allowed to testify about how one being in a dissociative state

17   could bear on one's ability to form an intent.  And that is for

18   two reasons.  One is, I don't think that has been disclosed or

19   I don't think it was disclosed in her expert report.  Her

20   expert report -- the summary, does refer to the disruption of

21   normally integrated functions of consciousness, memory,

22   identity and/or perception of the environment concurrent with

23   traumatic experience.  But then it says as a result of this

24   dissociative state Mr. Wise is unable to recall some of the

25   events of the day.  There is nothing about how his being in a

1  dissociative state had any affect on his ability to act with

2  intention or volition.  So I think that is problem one.

3          But problem two is that I, again, as with Dr. Rylant

4  asked the defense and said, show me the study that you

5  disclosed that actually talks about a study of that issue that

6  would be at bearing here.  And the only thing that was brought

7  to my attention is the Borden and Whitehurst piece, which has a

8  discussion about Canadian law and something called the

9  automatism defense in Canada.  But that is the only discussion

10 there with respect to intent.  And it is not, again, a study of

11 or analysis of any scientific or similar manner of how being in

12 a dissociative state affects one's ability to act with

13 intention or volition.  But instead that portion of it is just

14 a description of Canadian law and Canadian case law.  And I

15 don't think there is anything else that I am aware of in that

16 study that says -- or that paper that says, here is a study

17 that has been done on this.  So for those two reasons, I am

18 skeptical that she can appropriately testify with respect to

19 how the disassociated state may have affected Mr. Wise's state

20 of mind other than with respect to his memory as I think is

21 disclosed and perhaps just at a very high level of generality

22 and very much in passing about consciousness.  But to go deeper

23 than that and to start talking about volition, I just don't

24 think that is disclosed to start with.  And I don't -- I have

25 my doubts about whether there is anything that is cited that

1    would qualify or satisfy the *Daubert* standard.  But, again, I

2    will -- with respect to both of them, if you want to take the

3    time to go through and find me the studies that were actually

4    cited and produced or referenced in the expert reports here and

5    highlight for me the passages that I should look at showing

6    that there is some study or expert testimony analysis that has

7    been done of those issues, I would be happy to consider that

8    still.

9          But for now, I am not yet convinced either on the

10   auditory exclusion issue or I think more significantly with

11   respect to Dr. Best's testimony with respect to state of mind

12   going beyond memory.  And as I said as to Dr. Best, I think it

13   for two reasons.  One, is it wasn't disclosed in the report.

14   And, two, I still to this day have not seen any analysis.  And,

15   in fact, when I asked her about it whether there has been any

16   study about this at the hearing in any way, I think her

17   response was, that is a good idea, maybe I should study that.

18         All right.  So that is where I am with respect to the

19   experts at this point.

20         Yes.

21         MR. HERMANSEN:  Your Honor, I don't think that

22   accurately describes the record.  I think the Court was asking

23   her about her opinion of -- in her experience, law enforcement

24   officers go toward where -- as a first responder would and that

25   is where she said, yeah, that is something that I should study.

1        THE COURT:  No.  Let's see here.

2        MR. HERMANSEN:  I am like 99 percent sure.

3        THE COURT:  I think you are looking at something

4    different than what I am looking at, but let me see here.

5        So I said, Are there peer-reviewed articles or

6    studies that I should look at that measure that?

7        And that is a -- we have studied the amount of memory

8    loss.  And we have concluded that to the extent to which the

9    person actually was acting in a manner -- was able to act in a

10   deliberate intentional manner -- anything, you know, studies

11   that I can look at that say, here is a peer-reviewed study or

12   analysis of some type that will attempt to measure that?

13       And by that, what I am referring to there is the

14   ability to act in a deliberate and intentional manner.

15       And she responds, "Well, I am not aware that there

16   are that are that specific.  That is a good question though.  I

17   will have to -- that gives me a new idea for a research study."

18       MR. HERMANSEN:  Okay.  I stand corrected on that.  I

19   think the Court did exclude the part I was talking about.

20       So the Court's inquiry was very, very specific so she

21   wouldn't --

22       THE COURT:  That is sort of beside the point.

23       MR. HERMANSEN:  So after the hearing, we did --

24       THE COURT:  Okay.

25       MR. HERMANSEN:  Exhibit 7, 8, 9, 10, 11, 12, docket

1    124, I can go through these and highlight them.  Those are --

2              THE COURT:  I'm sorry.  Which docket are you on?

3              MR. HERMANSEN:  It is document 124.

4              THE COURT:  Hold on a second, let me pull it up.

5              MR. HERMANSEN:  The role of panic and acute

6    associative actions following trauma.

7              THE COURT:  No.  She definitely discloses and talks

8    about panic.  So I will pull up the docket here.  Do you want

9    to walk me through these exhibit by exhibit?

10             MR. HERMANSEN:  So the first one is the role of panic

11   in acute dissociative reactions following trauma.  So in panic

12   you are -- one of the things that she testified to is that you

13   are not even aware -- you cannot even be aware of being there.

14   So in order to --

15             THE COURT:  Show me --

16             MR. HERMANSEN:  I would have to read the --

17             THE COURT:  I have given you the opportunity to do

18   that.

19             MR. HERMANSEN:  Okay.

20             THE COURT:  That is what I said.  Okay.

21             All right.  But it still -- with Dr. Best, I also --

22   I have the separate concern that you will still also have to

23   address whether this was disclosed in her expert report as

24   well, because I have my doubts about that.

25             All right.

1        I am prepared to give you the decision on the
2   suppression motions as well.  And I am going to deny those
3   motions at dockets 43 and 101.  And just to summarize or
4   recall, the defendant has moved to suppress three different
5   sets of evidence relating to three separate warrants.  The
6   first was the evidence seized pursuant to a search warrant
7   issued on May 5th, 2022.  And then there was another search
8   warrant issued on November 23rd, 2022.  And then there was the
9   evidence seized from the search warrant from Mr. Wise's
10  residence on April 24th, 2023.  There previously was a motion
11  with respect to evidence seized, either directly or as the
12  fruits of the poisonous tree relating to a traffic stop
13  conducted by the California Highway Patrol.  And it is my
14  understanding that that motion is moot, just because the
15  government does not intend to use anything that is in any way
16  related to that traffic stop.
17       So starting with the two AT&T search warrants.  As I
18  mentioned, there was one that was issued on May 5th, 2022, and
19  another on November 23rd, 2022.  The May 5th warrant allowed
20  law enforcement to search name, address, payment and call
21  records connected to the AT&T account related to the telephone
22  number ending in 1300 from November 1st, 2020 to February 1st,
23  2021.  It allowed law enforcement then to seize all evidence of
24  violations of 18 U.S.C. section 1752 and 40 U.S.C. section
25  5104(e) and (f) including location information, information

1    concerning persons who have, "Collaborated, conspired or

2    assisted the commission of the criminal activity under

3    investigation and information indicating the account user's

4    state of mind related to the criminal activity under

5    investigation."

6           The November 23rd warrant allowed law enforcement

7    access to records of voicemails, texts and multimedia messages

8    from November 1st, 2020 to January 31st, 2020.  Mr. Wise argues

9    that the May 5th warrant was overbroad, because the time range

10   authorized was unsupported by probable cause.  And he seeks to

11   suppress all evidence from that warrant that was obtained

12   before or after January 6, 2021.  Notably, Mr. Wise does not

13   contend that the government lacked probable cause supporting

14   the search for the phone records on January 6.  And, instead,

15   he argues that search was simply overbroad and it shouldn't

16   have included dates before or after January 6, because the

17   officers who swore out the affidavits in support of the search

18   warrant didn't provide any explanation about why they believed

19   that Mr. Wise was collaborating with anyone, so there was no

20   reason to think that the calls before or after January 6 would

21   uncover any evidence related to the violations at issue.

22          Probable cause, however, requires only a probability

23   or substantial chance of criminal activity or evidence of

24   criminal activity, not an actual showing of such activity or

25   evidence of such activity.  And that is from *District of*

*Columbia versus Wesby* at 583 U.S.C. 48 at 57.  The standard is
satisfied when the search warrant application provides a
substantial basis for concluding that a search warrant will
uncover evidence of wrongdoing and a nexus between the items
seized and criminal behavior.  That is from *United States*
*versus Griffith* from the D.C. Circuit 867 F.3d 1265 at 1271.

          "There does not need to be ironclad proof that a
search will uncover evidence, rather there only needs to be a
reasonable basis to infer that relevant evidence would be
found."  That is *United States versus Thomas,* 899 F.2d 11 --
1252 at 1255 from the D.C. Circuit.

          And here I conclude that there was a reasonable basis
to infer that relevant evidence would be found in Mr. Wise's
call records for both before and after January 6.  The time
period stretched from around the time of the 2020 election up
until the few weeks after the attacks on the Capitol.  And I
think evidence during that period of time was likely to be
found, as it has in many of these cases relating to motive,
planning or coordination or efforts to conceal the conduct that
occurred on January 6 after it occurred, which also can bear on
state of mind and whether the defendant was aware of his or her
culpability and took steps to hide his or her actions.

          "A warrant authorizing the search of electronic data
is sufficiently particular if its scope is limited to evidence
pertaining to a specific time."  That is *United States versus*

1    *Smith* from this court on July 15th, 2021 in 19-CR-324.

2            As the Seventh Circuit put it in the *United States*

3    *versus Bishop* at 910 F.3d 335 at 337, "It is enough if the

4    warrant cabins the things being looked for by stating what

5    crime is under investigation."

6            And seizure here was limited to the evidence of the

7    specific criminal conduct under investigation.  And courts have

8    upheld much broader searches of digital information when the

9    seizures themselves are limited to evidence pertaining to the

10   specific crime.  That is from Judge Howell's opinion in United

11   States versus Smith at 221 Westlaw 29822144 at *8.

12           Mr. Wise also argues that it was unreasonable to

13   believe that the records of the calls alone without their

14   content would lead to relevant evidence.  As an initial matter,

15   I don't think the government should be faulted for taking

16   matters a step at a time and obtaining the call records as an

17   intermediary and less intrusive step for seeking the content.

18   And here, in any event, the government possessed from the tower

19   dump records of cell phones that were present at the Capitol on

20   January 6.  And those records could easily be cross-referenced

21   with the records of Mr. Wise's calls in ways that could bear on

22   his conduct on January 6.  Knowing who Mr. Wise was in contact

23   with before or after January 6, is potentially relevant to

24   planning or knowledge, which are relevant to the charges

25   against him and the charges that were under investigation or to

1      evidence that he was trying to hide his involvement.

2            Mr. Wise's argument with respect to the November 23rd

3      warrant also fails.  He argues that evidence seized pursuant to

4      that warrant should be suppressed, because the second warrant

5      was supported by evidence seized from the May 5th warrant.  But

6      I have already concluded that warrant was supported by probable

7      cause and so that argument fails.

8            And in addition, he also raises the same arguments

9      with respect to overbreadth.  And I reject those arguments for

10     the same reasons that I have just given.  And, in fact, if

11     anything they are weaker in this context than they were with

12     respect to the earlier warrant.

13           Mr. Wise also argues and submitted a supplemental

14     brief arguing that both warrants were improper, because they

15     relied on an improper geofence warrant or geofence warrants.

16     And he, among other things, seeks a *Franks* hearing related to

17     the failure to disclose the geofence warrant in the other two

18     warrants.  As an initial matter, that is just factually

19     incorrect.  There is not any basis to believe that the

20     government did rely on the geofence warrants with respect to

21     either May 5th or November 23rd, 2022 AT&T warrants.  Rather,

22     what the government did rely upon were the cell tower dumps

23     that were executed pursuant to a warrant signed by a magistrate

24     judge.

25           And Mr. Wise asks the Court to hold that the cell

1    tower dump violated his rights about the Fourth Amendment based

2    on the Fifth Circuit recent decision in the *United States*

3    *versus Smith* at 110 F.4th 817.  Smith held that a geofence

4    warrant is a general warrant.  And that warrants of that type

5    are categorically prohibited by the Fourth Amendment.  But

6    there are several reasons why *Smith* doesn't support Mr. Wise's

7    argument here.

8         First, as I just noted, the warrant at issue here was

9    not a geofence warrant, but rather was a cell tower dump

10   warrant.  And there are significant differences with respect to

11   those types of technology and types of warrants.  To be sure,

12   there was a geofence warrant executed in conjunction with the

13   investigations of January 6.  But that was not the one used

14   with respect to this case or the subsequent warrants against or

15   involving Mr. Wise.  But more importantly, to my mind, the

16   concerns that animated the Supreme Court in the *Carpenter* case,

17   and then at least partially animated the Fifth District's

18   analysis in *Smith* are just not implicated in this case

19   involving this particular tower dump warrant.  Because here,

20   that warrant was focused on a very circumscribed place.  And

21   that place was government property.  And it was during a period

22   of time that the government property was closed to the public.

23        In addition, there was -- and as we all know,

24   extensive camera footage of who was present on that government

25   property at that time.  And I am not convinced there was in any

1  event even a reasonable expectation of privacy in the fact that

2  a particular cell phone was located on the grounds of the

3  Capitol during the period of time that those grounds were

4  closed for purposes of the certification of the presidential

5  election.

6          In addition, obviously, it goes without saying the

7  Fifth Circuit's decision in the *Smith* case is not binding in

8  this circuit.  And there is not any law in this circuit that is

9  similar to *Smith*.  And other judges on this court have actually

10 upheld even the January 6 geofence warrants.  I don't have to

11 reach that in this case, but I will point to *United States*

12 *versus Easterday* at 712 F. Supp. 3d 46 at 49 as one of those

13 examples.  But third, even if the Court did conclude that *Smith*

14 applied or the reasoning of *Smith* applied in this context and

15 even if the Court were convinced that *Smith* were persuasive,

16 the *Leon* good faith exception would apply here.

17         The warrant in this case was executed three years

18 prior to the Fifth District decision in *Smith*.  And even *Smith*

19 determined that suppression was unwarranted because the

20 officer's actions was "reasonable and appropriate,"

21 "considering the novelty of the technique and the dearth of

22 court precedent".  So if *Leon* applied in the *Smith* case there

23 is absolutely no reason that it would not apply here.  But I

24 also independently conclude that *Leon* clearly does apply here.

25         Mr. Wise argues that because the warrant in this case

1    were sworn out three years after the one in *Smith*, the

2    technique was no longer novel.  And the good faith exception

3    shouldn't apply.  But the officers who executed the warrant at

4    issue here were confronted with the same dearth of precedent

5    that confronted the officers in the *Smith* case, so the same

6    analysis applies.

7            Stepping back from the cell tower dump warrant, which

8    I conclude is both -- was both valid and also in any event

9    doesn't support suppression under the good faith exception.

10   More generally with respect to the May 5th, 2022 and

11   November 23rd, 2022 warrants, the Court is persuaded that the

12   *Leon* good faith exception would apply in any event, even if

13   there were any question about probable cause and that exclusion

14   would be inappropriate under the good faith exception.  Under

15   that exception, suppression of evidence is usually not required

16   when officers conduct a search in reasonable reliance on a

17   search warrant issued by a detached and neutral magistrate.

18   That is the *United States versus Cardoza*, 713 F.3d 656 at 658.

19           And as the Supreme Court wrote in *Leon* itself,

20   "Evidence obtained from a search should be suppressed only if

21   it can be said that the law enforcement officer had knowledge

22   or may properly be charged with knowledge that the search was

23   unconstitutional under the Fourth Amendment."  The warrant here

24   was issued by a detached and neutral magistrate.  And, in fact,

25   each of the warrants were issued by a separate and neutral and

1    detached magistrate and it was not so lacking indicia of

2    probable cause as to render official belief in its existence

3    entirely unreasonable, quite the contrary.

4          In response to the government's identification of the

5    *Leon* good faith exception, Mr. Wise states that the exception

6    cannot apply when the warrant was supported by an affidavit

7    that lacked sufficient probable cause.  That is just not an

8    accurate statement of law.  That would render *Leon* a nullity.

9    And simply say, well, *Leon* -- the good faith exception doesn't

10   apply when there is no reason to apply the exception.  And that

11   is just not the law.

12         He also asserts that the agents here were grossly

13   negligent in failing to justify why the entire date range

14   needed to be searched and that law enforcement agents should

15   recognize when they have no reasonable basis to search such a

16   wide range.  But as I discussed, a reasonable officer could

17   have reasonably assumed that the date range searched would

18   yield potentially relevant evidence of Mr. Wise's planning or

19   knowledge with respect to the actions that occurred on

20   January 6.  So the date range was certainly not entirely

21   unreasonable.  And indeed two magistrate judges of this court

22   concluded the date range was appropriate.

23         As I said before, Mr. Wise at one point asked the

24   Court to suppress all derivative evidence seized after the

25   California Highway Patrol stopped him on April 2, 2023.  But

1    the government has indicated that it doesn't intend to

2    introduce evidence from the traffic stop or subsequent search

3    of Mr. Wise's car where the affidavit supporting probable cause

4    contained a photo from that traffic stop.  And so the Court

5    concludes that motion is moot.

6         And then finally turning to the search of Mr. Wise's

7    home.  He asks that the Court suppress all evidence seized

8    pursuant to a search warrant issued on April 24th, 2023 from

9    his residence in Oregon, which included digital devices and

10   digital records -- I'm sorry.  Mr. Wise argues that the search

11   warrant was not supported by probable cause, because the

12   digital files and devices are a type of evidence that goes

13   stale quickly.

14        When assessing staleness, courts consider the

15   totality of the circumstances to determine "Whether at the time

16   an affidavit was presented to a magistrate, it established

17   probable cause that evidence would be found at the location of

18   the search."  That is *United States versus Ali* at 877 F. Supp

19   2d 10 at page 33.

20        As this Court held in the *United States versus Edelin*

21   at 128 F. Supp. 2d 23 and pages 46 to 47, "When the evidence

22   sought is of a type that will be maintained after the criminal

23   activity is ceased, the older information can still be

24   considered reliable when used to obtain a search warrant."

25        But on the other hand, some evidence such as

1    contraband, will become stale quickly, because it is likely to

2    be sold or disposed of within a short period of time.  And that

3    is from *United States versus Johnson,* from the D.C. Circuit,

4    437 F.3d 69 at 72.

5         And by way of example, one might have illicit drugs

6    that are possessed for purposes of resale.  And when a

7    substantial period of times passes, one might reasonably infer

8    that drugs have either been consumed or sold.  The April 24th,

9    2023 warrant authorized law enforcement to search Mr. Wise's

10   residence, including his laptop computers, mobile phones and/or

11   tablets.  The affidavit stated that the officers believe that

12   relevant records would be stored on such digital devices

13   because she knew from experience that "Computer files or

14   remnants of such files could be recovered months or even years

15   after they have been downloaded onto a digital device."

16        "Electronic files downloaded to a digital device can

17   be stored for years at little or no cost."

18        And "When a person deletes a file on a digital device

19   the data contained in the file does not actually disappear,

20   rather the data remains on the digital device until it is

21   overwritten."

22        The affidavit also described how forensic evidence

23   can be recovered to indicate who has used or controlled the

24   device.  And the affidavit indicated that with respect to the

25   January 6 defendants in particular, "As widely reported in the

1    news media related to this matter, many individuals committing

2    the targeted offenses kept and posted videos, photographs and

3    commentary about their participation in these offenses,

4    essentially bragging about their participation."

5         Probable cause can be supported by an affiant officer

6    drawing reasonable inferences from his or her training.  And

7    here, the officer's experience provided support to infer that a

8    search of Mr. Wise's digital devices would turn up evidence of

9    the crimes charged.  The particular event that the crimes were

10   investigating was tied to circumstances that further alleviate

11   staleness concerns.  As the affidavit indicates, investigations

12   into the January 6 defendants have shown that such defendants

13   have kept evidence of their participation in the events of

14   January 6, including digital evidence.  To take just one

15   example, "Participants in the riot engaged in extensive filming

16   of their conduct and have kept these films on their phones as

17   momentos."  And that is from *United States versus Sullivan*,

18   which is 21-CR-78.

19         And finally, electronic records of the type at issue

20   here are likely to continue to exist over extended periods of

21   time.  Although it is possible that Mr. Wise could have

22   intended to delete or remove such files and indeed could have

23   taken efforts to try and obstruct any investigation, any

24   efforts of him to do so might have themselves indicated a

25   guilty state of mind and could have been relevant evidence in

1    the case.

2            But in any event, as the government has explained,

3    even deleted electronic records can often be recovered through

4    forensic analysis.  And so given all of this and the totality

5    of the circumstances, the Court concludes that there was

6    probable cause to conduct the search of Mr. Wise's home and of

7    his digital devices.

8            But, again, even if the information in the search

9    warrant was stale -- and I don't think it was for the reasons

10   that I have discussed -- the evidence collected would still be

11   covered by the good faith exception from *Leon*.  The warrant

12   like the one at issue here was issued by a detached and neutral

13   magistrate yet again and was not so lacking in indicia of

14   probable cause as to render official belief in its existence

15   entirely unreasonable.  And as I indicated, quite the contrary.

16   I think there was sufficient basis to believe there was

17   probable cause, but if that is wrong, there would not be a

18   basis to suppress the evidence under *Leon*.  And the defense

19   doesn't argue or present any meaningful argument as to why *Leon*

20   would not apply here.

21           So the Court will deny each of the suppression

22   motions.

23           All right.  Is there anything else that the parties

24   would like to bring up today?

25           MR. HERMANSEN:  Your Honor, I -- while the Court was

1    ruling on the suppression motion, I found some support for

2    Dr. Rylant, so I can refer to the Court to --

3              THE COURT:  Can I ask you to -- I don't know if you

4    have access to the printers in the attorney's lounge.  You can

5    give me the --

6              You don't have access to those?  You should.  We can

7    arrange that for you if you are going to be working here.

8              MR. HERMANSEN:  I know.  It would be nice.

9              THE COURT:  Talk to us about that.  We should be able

10   to arrange that for you.  But in any event, why don't you give

11   me -- you can give me the citations to the docket?

12             MR. HERMANSEN:  I have it, yeah.

13             THE COURT:  Give me the docket citations.

14             MR. HERMANSEN:  Yes, Your Honor.  So 86-3, Exhibit C,

15   the first paragraph -- it is a control of attention shifts

16   between visual and audition in human cortex.  So it talks about

17   how the brain goes between visual and hearing.  In that first

18   paragraph, it mostly talks about visual, but because it is

19   brain scans, it does say that attention to one sensory modality

20   either visual or auditory can impair the perception of

21   otherwise salient events.

22             THE COURT:  That is docket 86-3?

23             MR. HERMANSEN:  Yeah.  It is Exhibit C.

24             THE COURT:  In the first paragraph?

25             MR. HERMANSEN:  In the first paragraph.  And then so

1  it is actual brain scans, hard science.  So I definitely wanted

2  to refer the Court to that.  It is not right on point with

3  auditory exclusion, but it is how the brain goes between -- it

4  can focus on visual to the detriment of hearing things.

5          And then the same 86-7, so attachment 7 is also

6  called Defendant's Exhibit G.

7          THE COURT:  Okay.

8          MR. HERMANSEN:  And that is -- the first paragraph

9  talks about working in demanding or threatening situations,

10  taxes our cognitive capacity.  Measures support and training

11  aimed at improving this capacity mainly focus on cognitive

12  capabilities.  And so that whole article talks about the same

13  thing under the rubric of stressful situations and how the

14  brain has to allot resources to one --

15          THE COURT:  I'm sorry.  Are you asking me to look at

16  the entirety of the two articles or are there particular pages?

17          MR. HERMANSEN:  That article puts it all in context

18  and it has some charts.

19          THE COURT:  I just need to know with my limited time

20  what you are asking me to read.

21          Are you asking me to read the entire article?

22          MR. HERMANSEN:  Only if the Court wants the full

23  context.  But it is not on point with auditory exclusion, so if

24  the Court doesn't have time, I understand that.

25          THE COURT:  All right.

1          MR. HERMANSEN:  So 86-8 is Exhibit H.  And this gives

2    examples of police officers not being able to remember things.

3    And the very first example at the very top is -- so this is the

4    psychology side of how we study things.  It is after the fact.

5    You have to interview people and see what their experience was.

6    And in this case, the officer didn't remember hearing the

7    shots, but afterwards, his ears were even ringing.  So it is

8    both memory and ability to hear and not being able to hear in

9    the moment, because you are focusing, for example, on the gun.

10    Under that statement exhibit --

11          THE COURT:  So what page of that do you want me to

12    read?

13          MR. HERMANSEN:  So that was the very first page of

14    that exhibit.

15          THE COURT:  Okay.

16          MR. HERMANSEN:  And then turning to page 3 of that

17    exhibit, you can -- there is -- the research shows the

18    percentages of deficits that officers experience.  And

19    diminished sound, 82 percent of participants said that they had

20    diminished sound.

21          And then on the next page, page 4, 84 percent of

22    another study -- so this feels like -- I think this is meta

23    analysis.  84 percent had diminished sound.  And 39 had

24    dissociation, a sense of detachment or unreality.  And then

25    there is a discussion of diminished sound on page 5.

```
 1              THE COURT:  That was page 4 was the other stuff?

 2              MR. HERMANSEN:  Yes.  These are all -- these

 3    attachments are some of the articles that Dr. Rylant is relying

 4    on.

 5              THE COURT:  Okay.

 6              MR. HERMANSEN:  That same Exhibit H, page 11, is --

 7    so AELE -- A-E-L-E -- workshop, this gives more of those

 8    officer perceptions.  And 84 percent sound diminished on page

 9    11.  Another study, 51 percent had sounds being quieter.  And

10    it gives a whole range of different deficits that people can

11    experience under stress.

12              THE COURT:  Okay.

13              MR. HERMANSEN:  Page 13 talks about auditory blunting

14    at any time, 82 percent.  So those were all attached to

15    document 86.

16              THE COURT:  All right.  I will look at those.

17              All right.  Anything else you want me to address

18    today?

19              MS. FONTAN:  Your Honor, we can deal with this today

20    or after jury selection.  But I know there are at least three

21    exhibits that the defense has indicated that they are going to

22    be objecting to that I would like to use in opening.  I don't

23    know if it is best if we submit them to the Court or how you

24    would like to address that.

25              THE COURT:  What are the exhibits?
```

1          MS. FONTAN:  So the first is the map of the

2    restricted area, the red restricted area.

3          THE COURT:  Right.

4          MS. FONTAN:  And the other two, one is a -- well,

5    actually the two other are open-source videos, but I am just

6    using a screenshot from both.

7          THE COURT:  What is the objection to those?

8          MS. FONTAN:  And let me grab the exhibit numbers so

9    that defense can --

10          MS. LEE:  I will need to know what exhibit numbers we

11    are talking about, sorry.  And we have a similar concern in

12    terms of exhibits being used in the defense opening that there

13    is not an agreement to preadmission.

14          THE COURT:  All right.  You can bring those to my

15    attention as well.

16          MS. FONTAN:  So for the government, it is 501, 106

17    and 514.

18          THE COURT:  Do I have the copies of these?  Have you

19    given me the exhibit books yet?

20          MS. FONTAN:  Yes.

21          THE COURT:  Which ones are they for the defense?

22          MS. LEE:  I apologize, Your Honor.  I did not have

23    the list ready.  Give me just a moment.

24          THE COURT:  Do I have the Defendant's Exhibits at

25    this point?

```
 1              MS. LEE:  We have binders available.  And I believe
 2    we have sent --
 3              THE COURT:  So why don't I do this?  I need to look
 4    at the other material as well.  I can step off the bench.  I
 5    will look at the Government Exhibits.  Why don't you give the
 6    deputy clerk the exhibits and either tag them or a list of
 7    which exhibits you want me to look at and I will come back out.
 8              MS. LEE:  Okay.
 9              THE COURT:  All right.
10              (Recess taken at 2:39 p.m.)
11              THE COURT:  All right.  Does the government have
12    anything to offer with respect to the auditory exclusion issue,
13    anything else on the question?
14              MS. FONTAN:  No, Your Honor.  I think we will just
15    rest on everything that we have brought up at this point.
16              THE COURT:  All right.  I went back and I looked at
17    these studies that Mr. Hermansen pointed me to.  And although I
18    am not sure that they are directly on point, I think that in
19    particular, 86-8, Exhibit H, is sufficiently on point to clear
20    the *Daubert* hearing hurdle.  And this was disclosed.  And so I
21    will go ahead and allow Dr. Rylant to testify with respect to
22    auditory exclusion.  To the extent that is relevant -- and as I
23    understand the extent that it -- where it is relevant here is
24    with respect to the question about whether the five individuals
25    heard what Mr. Wise said.
```

1          Though, just to summarize, you know, I have concluded

2    that Dr. Best can testify with respect to Mr. Wise's memory and

3    how the dissociative state may have affected his memory,

4    assuming that his memory is at issue in this case and we may

5    have to decide down the road whether that requires some

6    ordering of witnesses.  I haven't decided that question yet.

7    But I think she can testify on that.  We have already concluded

8    that Mr. Cohen can testify -- that the testimony he proffered

9    is nonexpert testimony.

10          Dr. Rylant can testify, as I have indicated before,

11   about specific instances of excess or potentially excessive

12   force that Mr. Wise saw, but that he can't just testify more

13   generally with respect to the events that were occurring at the

14   Capitol.  And this isn't a case in which we are just going to

15   put the response by law enforcement on trial.  To the extent

16   there is a self-defense or third party self-defense theory in

17   this case, I think it is relevant.  And Dr. Rylant has

18   sufficient expertise to testify about whether what Mr. Wise was

19   experiencing or what he saw constituted excessive force.  But

20   beyond that, I don't think that it is -- that there is

21   sufficient grounds.  And I think there, in addition to

22   relevance, I think there is a significant 403 issue with

23   putting on trial everything that happened that day or even

24   anything that happened that Mr. Wise didn't experience in some

25   way or that didn't have some effect on his actions that day.

1    I will allow Dr. Rylant to testify with respect to

2    auditory exclusion.  And I remain doubtful with respect to

3    whether Dr. Best has adequately disclosed any expert opinion

4    with respect to the manner in which experiencing a dissociative

5    state could effect one's volitional or intentional conduct.

6    And I don't see, at least at this time, a disclosure that would

7    support that testimony, nor have I seen any studies that she

8    has pointed to that would adequately support that type of

9    testimony given her limited knowledge with respect to what

10    Mr. Wise was actually experiencing at any particular point in

11    time.

12    And in addition to that, I also continue to have a

13    significant 403 issue that any testimony she did offer on that

14    could be substantially more prejudicial than probative and

15    could confuse the jury.  But I will still allow the defense to

16    come forward and convince me that I am mistaken about that if

17    they would like to do so.

18    I will say, although I am allowing in some of this

19    expert testimony, but not all of it, I am I have to say a

20    little bit just concerned by the notion that the defense thinks

21    there is an hour of material to discuss here in openings.

22    And I don't say that to limit the time.  I will give

23    the defense an hour if they want an hour.  But I say that just

24    to make clear, I want to make sure we are not going down the

25    rabbit hole in this case and getting into a lot of things that

1  will take the jury off task in the case.  And as I said, I

2  don't think this case is about in general how law enforcement

3  behaved on that day.  I think it is with respect to what

4  Mr. Wise personally experienced that day.  And if there is a

5  basis for a self-defense theory, you know, auditory

6  exclusion -- you know, I am not the one examining the witness

7  or giving the opening.  It is hard for me to imagine more than

8  four or five sentences, for example, in an opening on that

9  topic.  And say, you will hear testimony that people, when they

10  are under stressful situations dealing with lots of auditory

11  input have to pick and choose between what they select.  And

12  there is no reason here -- the evidence will show there is no

13  reason to conclude that what he selected was these words.

14          It is just hard for me to imagine it taking terribly

15  long to get into that.  And, again, with Mr. Wise's

16  testimony -- I mean, his memory and Dr. Best -- you may want to

17  say in your opening -- and, again, I am not dictating what you

18  say.  I am saying this more just to make sure there is not a

19  disconnect in between what we all have in mind in what is going

20  to be appropriate in this trial.  But perfectly fine to say,

21  you may hear testimony that Mr. Wise's memory is not good about

22  what happened that day.  That doesn't mean that he is making

23  things up.  It doesn't mean that he is not telling you the

24  truth.  As you will hear, there is testimony that he was

25  experiencing a dissociative state, which interfered with his

1    memory.  That explains, you know, why he can't remember.  I
2    don't see why we are going to need a great deal of time or
3    effort on that.
4            Again, I am not limiting the time of what you do.
5    But I am saying, I just -- I am concerned that we not lose
6    focus on what is relevant in the case by going down paths that
7    are fairly removed from the case.  And, for example, Mr. Wise's
8    memory is only relevant if it becomes relevant.  If Mr. Wise
9    chooses to testify and can't remember things and there is
10   reason to think that calls into question the veracity of his
11   testimony.  That is a couple of steps removed.  It is fair
12   enough.  I am prepared to allow it.  But I don't think it is
13   anywhere near the central issue in the case.  It is more really
14   in terms of an effort to rehabilitate him if he does testify in
15   ways in which he doesn't have a clear memory.  It is fair game
16   in that regard.  But it is not what is central in the case.
17           Again, auditory exclusion, to the extent there is a
18   question about whether the individuals heard what Mr. Wise
19   allegedly said, fair game, entitled to get into that.  I can't
20   imagine the expert testimony is, again, a huge dive on that
21   issue versus, it was loud that day.  There was a lot of
22   commotion.  You are going to hear the video.  You are going to
23   hear how loud it was.
24           But, again, I am somewhat concerned that given what I
25   know of the nature of this case, an hour seems like a lot.  I

```
 1   mean, I just finished another trial in which my deputy clerk
 2   can correct me.  Maybe the opening was about that long in the
 3   Green case.  And it was a case in which the government had
 4   probably a couple dozen witnesses.  The trial -- the
 5   government's case lasted three weeks long.  It was a RICO,
 6   double murder, kidnapping case.  And so that is all just to
 7   say, let's make sure we are on the same page and not taking the
 8   jury off in directions that are not relevant to the issues
 9   presented in the case.  I wouldn't want to interrupt anybody in
10   an opening.  But if we are heading down a path that is just
11   entirely irrelevant, I may have to alert you to that as we are
12   going.
13           All right.  So I guess we are going to reconvene on
14   Monday.  You have a time for that?
15           THE COURTROOM DEPUTY:  10:30, Your Honor.
16           THE COURT:  10:30.  Anything else before we adjourn
17   today?
18           MS. ROCHA:  Your Honor, about court on Monday,
19   assuming there is no -- the snow is light or it is easy to get
20   along, I presume that would be in person.  But to the extent
21   that there is still travel -- there still may be issues, even
22   those of us local, would the Court be amenable to doing that
23   remotely?
24           THE COURT:  Well, let me ask Mr. Wise that question
25   or if counsel wants to consult with him.  If there is an issue
```

1   with a snow closure and you are sitting in a hotel room or in a

2   hotel rooms or office space is it okay with you to do this

3   remotely or do you want to wait until we can do it in person?

4            MS. LEE:  We'll all be close by, so I think

5   preference is to do it in person, if we can.

6            THE COURT:  I am not worried about getting here

7   myself and your getting here.  And I suspect the government

8   could probably find a way to get here.  I am a little bit more

9   concerned about whether there will be staff here to actually

10  handle things.  Staff I guess I suppose can be remote if needed

11  to be.  But sometimes, the staff is traveling in from outside

12  the city and it is not as simple as walking or taking the

13  metro.

14           MS. ROCHA:  I guess we can deal with it as it comes,

15  I guess.

16           THE COURT:  So can I make sure that the deputy clerk

17  has your telephone numbers in case we do need to reach out to

18  you with respect to any emergency closure?  All right.

19           Yes.

20           MS. LEE:  A few matters to come back to, Your Honor,

21  that we spoke about earlier.  One was the reading into the

22  record the list.  The government had indicated that they have

23  narrowed to nine.  They had sent us that nine, but it seems

24  would like to go back to the 15 that had been an older, more

25  expansive list.  It is certainly our preference, having been

```
1    limited at some stage to nine, it seems appropriate at this
2    time to read those nine into the record, but I will let them
3    address that if they want.
4              THE COURT:  Okay.  Ms. Fontan.
5              MS. FONTAN:  Your Honor, I think I mentioned before,
6    so the nine officers were the nine body-worn that we listed as
7    exhibits in the trial.  However, there is a list of 15, nine of
8    which are the exhibits that we gave as the victim officers in a
9    discovery letter.  So that is what I was -- I think I referred
10   to the letter first and then --
11             THE COURT:  I think you may have said 12 and nine,
12   rather than 15, but a slip of the tongue.
13             MS. FONTAN:  Sorry, Your Honor.  So, yeah, it was 15
14   and nine, but the nine is part of the 15.
15             THE COURT:  So what does the letter say?  Do you have
16   the letter in front of you?
17             MS. FONTAN:  I do.
18             So it is the list of victim officers would include at
19   least the following officers.  Again, this list is not
20   exhaustive and does not restrict the government's proof at
21   trial and then it lists the officers.
22             THE COURT:  And then the 15?
23             MS. FONTAN:  Let's see.  So part of the problem --
24   I'm sorry, Your Honor.  So part of the problem is there are --
25   there are two different lists.  And we identified officers that
```

1   are up at the top as well as down below.  So we identified --

2   we identified nine then and then there is overlap between the

3   officers that we provided the body-worn camera in our exhibit

4   list.

5           THE COURT:  I'm sorry.  So but you identified nine in

6   response to the question -- in response to the question -- in

7   response to these are the victims?

8           MS. FONTAN:  In -- yes.  Yes, that is correct.

9           THE COURT:  Okay.  So why don't we stick to the nine

10  then if those are the ones you identified as the victims.  I

11  understand you indicated it was a non-exhaustive list, but I

12  think we are at the point in time where we need to exhaust.

13          MS. FONTAN:  I understand that, Your Honor.  The

14  only -- I guess we also provided that these -- all of the

15  body-worn when our original exhibit list was due, which was in

16  October.  In our witness list, for instance, one of the -- and

17  this I should say too, for instance, like one of the officers

18  that is testifying who wasn't at the top, but will be

19  testifying in trial is not listed on here.

20          THE COURT:  Was he assaulted?

21          MS. FONTAN:  So he wasn't -- I guess part of the

22  problem is when we are talking about the 231 and the 111 --

23          THE COURT:  I see.

24          MS. FONTAN:  -- he is attached to the 231 conduct.

25  So the list of victim officers were the officers that were on

1    the top portion of the upper west terrace.  So I guess it

2    depends how the Court -- how we deal with this at the

3    conference for our jury instructions.  Because we don't think

4    we need to name -- we don't call them victim officers in terms

5    of the 231, which is why they weren't included.

6              THE COURT:  Right.  Right.  So why don't we start

7    though with the 111 issue.

8              MS. FONTAN:  Okay.

9              THE COURT:  And are you content to rest on the nine

10   for the 111?

11             MS. FONTAN:  Correct.

12             THE COURT:  So for the 111, it will be those nine.

13   And --

14             MS. FONTAN:  I can read them into the record, Your

15   Honor.

16             THE COURT:  Okay.  Why don't you do that?

17             MS. FONTAN:  That is Alberti, Bennett, Boyd, Brown,

18   Caballero, Dean, Hansohn, Leono and Van Duyse, D-U-Y-S-E.

19             THE COURT:  All right.  Was that nine?

20             MS. FONTAN:  I think that is nine.

21             MR. HERMANSEN:  I apologize.  I have eight and it is

22   a slightly different nine than was emailed.  So could I get

23   those nine really quickly again?

24             MS. FONTAN:  Sure.  Here, actually it might be easier

25   if I show it to you.

```
 1              MS. LEE:  Okay.  Thank you.

 2              THE COURT:  Okay.

 3              MS. LEE:  And I apologize, is it the Court's order

 4    that officers do not need to be identified for the civil

 5    disorder portion?

 6              THE COURT:  No.  No.  I want to make sure, first of

 7    all, we are in agreement for the nine for the 111 count.  Do

 8    you count nine and do you have the same nine on your list?

 9              MS. LEE:  I count nine.  It is a slightly different

10    nine than the combinations have been at different times, but we

11    have nine --

12              MS. FONTAN:  I think the nine -- the nine on our

13    body-worn is not the nine that we provided initially.  And that

14    is because we are not going to be using all of the body-worn

15    camera from these --

16              THE COURT:  So the nine that you just read are for

17    purposes of the trial, that is what you are limiting yourself

18    to for the 111 count?

19              MS. FONTAN:  If the Court is ordering that we limit

20    ourselves to that?

21              THE COURT:  Yes.

22              MS. FONTAN:  Our position is not that we need to do

23    that, but --

24              THE COURT:  Well, realistically -- I understand.  You

25    may be right, I don't know for sure.  But it doesn't strike me
```

1    that sort of two or three days before trial the government is

2    in a position you are going to be able to go in and prove that

3    someone else was assaulted, when you don't even have that

4    person on the list at this point.

5              MS. FONTAN:  I understand that, Your Honor.  I think

6    part of it is though given the nature of this assaultive

7    conduct --

8              THE COURT:  Right.

9              MS. FONTAN:  -- there could be multiple officers that

10   are hit, some officers that we couldn't tell exactly who got

11   hit, like who the identity of the person that got hit.  So I

12   think when we are providing this list, the -- the assault is

13   just across multiple victims.  That is part of the problem.

14             THE COURT:  Right.  It is one thing, I guess, if the

15   government doesn't know who an officer is.  And you can refer

16   to that person as Officer A.  And Officer A is the person who

17   is standing right here.  And we know who that person is.  That,

18   I think is fine.  But if the government can't identify who the

19   officer is, either by some indicia like that or by name, it is

20   hard for me to believe at trial the government is going to be

21   able to prove beyond a reasonable doubt that that officer was

22   assaulted.  If you are sufficiently confused that you don't

23   even really know yourself who that person is.

24             MS. FONTAN:  Sure.

25             THE COURT:  You are saying maybe there is someone

1    else out there.  But it does seem to me to be a reasonable

2    request to sort of limit this universe as to who the officers

3    are that were assaulted.  But as I said, if there was someone

4    who you just don't know the officer's name because they have

5    their back to the assault and there is no film of them from the

6    front and the person was hit over the head, fair enough.

7         MS. FONTAN:  Sure, Your Honor.  That was part of the

8    confusion, because there are some officer body-worn that were

9    down below that we are not contending were victims of that

10   assaultive conduct.  So I think our position is that it is the

11   officers that were on the upper west terrace that we have

12   provided.

13        THE COURT:  That was -- I mean, I am persuaded that

14   it makes sense to narrow it.  So the question is just is the

15   nine sufficient from your perspective or is there anyone else

16   on that, that you want to put on the list that you think

17   actually a reasonable jury might conclude beyond a reasonable

18   doubt was assaulted, because of anything that Mr. Wise did or

19   where Mr. Wise contributed in some way?

20        MS. FONTAN:  Understood.

21        THE COURT:  So if it is someone all of the way on the

22   other side of the terrace, it is highly improbable that

23   something that Mr. Wise said would have had any effect on it.

24        MS. FONTAN:  No, I understand, Your Honor.  I think

25   the only other person we would add who I think we have

1   provided -- let me double check.  I think we have provided

2   their body-worn footage as part of our exhibits.  And that is

3   Officer Veizaj, V-E-I-Z-A-J.  So we will limit those officers

4   to the nine officers plus Officer Veizaj for the 111(a).

5              THE COURT:  Okay.  For the 111, I understand.

6              Ms. Lee.

7              MS. LEE:  Understood.  I have that list of 10 now,

8   that we are limiting the victims for the 111(a)(1) too.  Too as

9   in T-O-O there.

10             THE COURT:  And do you all want to be heard on the

11  231 now?  I do think that -- I think the government's argument

12  in this context in my mind is better taken where you are

13  dealing with civil disorder that involves committing an act

14  that obstructs any fireman or law enforcement officer from

15  engaging in their lawful duties.  I could see how that could be

16  a less descript group than someone who is actually a victim of

17  an assault where the person was actually struck or they weren't

18  struck, for example.

19             MS. LEE:  And, Your Honor, I don't know if this is

20  more of a discussion for jury instructions at a later stage.

21  We continue to believe for unanimity reasons that there should

22  be specificity about it, even if that is this set of five

23  officers here, are the subject of that civil disorder.  But

24  precisely because of the broader, vaguer nature of that crime,

25  I think it is all of the more important for the government to

1    be specific about what constituted the civil disorder for which

2    Mr. Wise is being charged.  If that is more expansive than the

3    ten and subsumed by the assault, if that is a separate set of

4    officers, I think we need that list, because it is not, you

5    know, he was standing over here and kind of bumping against

6    people five minutes beforehand.  I have concerns because of the

7    nature of that offense.  So we continue to think naming the

8    officers is important.

9         THE COURT:  Let me ask Ms. Fontan if she can describe

10    for me at least who the group of officers are who were subject

11    to the obstruction impediment, interference for purposes of

12    231.

13         MS. FONTAN:  Your Honor, in our original trial brief,

14    we narrowed it down to that -- I think a 3-minute period or a

15    4-minute period.

16         THE COURT:  Okay.  On the lower west terrace.

17         MS. FONTAN:  On the upper west terrace.

18         THE COURT:  Okay.

19         MS. FONTAN:  Between and I think it is 4:20 to 4:24

20    or -- I can't remember exactly which minute it starts, but it

21    is a narrowed time period of when he was obstructing.  And that

22    was him being up on the upper west terrace as the police line

23    were attempting to clear the area is what we are saying he

24    obstructed.  And he -- and our alternative theory is that he

25    aided and abetted others by encouraging them to engage in

1    obstructive conduct for that line of police officers.  And that

2    has been consistent with how the 231 -- there is no specific

3    act in a 231.  All of that conduct is part of the obstruction.

4          THE COURT:  Right.

5          MS. FONTAN:  Which means that he is obstructing all

6    of the officers that are trying to push the rioters off that

7    area.

8          THE COURT:  Have any of my colleagues ever addressed

9    that question, the specificity question or have I?

10         MS. FONTAN:  And I apologize, Your Honor.  I was

11    trying to pull up some of the case law.  It has been addressed

12    in a bill of particulars.  I think it is Canwell or *Cantwell.*

13    I can provide that to the Court.  I think it is in both of our

14    briefings -- past briefings.  But I know that a Court has

15    determined that for a bill of particulars we needed to testify

16    generally the group of officers in order to make sure the

17    unanimity issue is not an issue.  But I think here, we have

18    addressed that it is a -- we have given an area.  It is the

19    police line that is clearing the upper west terrace from 4:20

20    to 4:24.  And we have given that conduct and that is sufficient

21    for unanimity purposes.

22         THE COURT:  All right.  Ms. Lee.

23         MS. LEE:  My colleague is telling me that we might

24    have a case that we believe required specification of the

25    officers for the bill of particulars, particularly in light of

1    the two alternative theories that the government is proceeding

2    on.  I think the question of which officers -- we have five

3    principals who have been identified.  We have a list of ten

4    officers that are official victims for 111(a).  It seems

5    appropriate to specify -- an original list we had been given

6    was I believe 70-something officers, but I could have that

7    wrong, in that area around that time that was not narrowed

8    further by the government.  And I might not have that number

9    exactly right.  But I would like to wait just a moment to see

10   if I have the case.

11          THE COURT:  If there is a case you want me to look

12   at, I am happy to do it.

13          I will tell you what, rather than doing legal

14   research while I am sitting here, why don't I just -- for

15   present purposes we have identified those ten for the section

16   111.  And on Monday, if need be, we can address whether there

17   is any further specificity that is required for the 231 count.

18   As I indicated, I am persuaded at least at this point by the

19   notion that the violation of 231 can involve a group and indeed

20   a large group of officers who are trying to clear a space and

21   someone is simply standing in that space and not leaving is

22   interfering with the ability of all of those officers to

23   perform their job in clearing that space.  But if there is

24   authority to the contrary, I am happy to consider it on Monday.

25   And as I think everyone has acknowledged, we will have to

1    address the issues further in the context of the jury

2    instructions.

3              All right.  I will see you all then on Monday.  Have

4    a good weekend.

5              Don't leave DC, because you may not get back.

6              (Proceedings concluded at 3:25 p.m.)

1                    C E R T I F I C A T E

2

3          I, SHERRY LINDSAY, Official Court Reporter, certify

4    that the foregoing constitutes a true and correct transcript of

5    the record of proceedings in the above-entitled matter.

6

7

8

9

10                   Dated this 5th day of January, 2025.

11

12                   _____
                     Sherry Lindsay, RPR
13                   Official Court Reporter

14

15

16

17

18

19

20

21

22

23

24

25

**MR. GRADE: [3]**   45/4 45/8 46/10
**MR. HERMANSEN: [93]**   3/15 4/20
6/16 6/19 8/16 10/1 11/2 12/5
12/20 13/3 16/25 17/3 17/9 17/14
17/20 19/14 19/17 19/23 20/3 20/8
20/18 21/5 21/7 21/13 21/19 21/25
22/8 22/12 22/19 23/12 23/17
23/22 24/4 24/8 24/14 24/20 25/10
25/19 26/5 32/15 33/7 33/11 33/14
33/16 33/18 34/20 35/19 53/16
59/10 59/17 61/6 61/10 61/13
63/11 63/19 63/25 64/7 64/11
64/13 64/15 64/23 65/4 65/17
65/22 66/3 66/6 66/10 69/21 70/2
70/18 70/23 70/25 71/3 71/5 71/10
71/16 71/19 84/25 85/8 85/12
85/14 85/23 85/25 86/8 86/17
86/22 87/1 87/13 87/16 88/2 88/6
88/13 99/21
**MS. FONTAN: [63]**   3/6 4/24 5/5
5/10 6/25 7/4 7/24 8/7 8/13 9/4
9/13 9/22 14/20 25/5 26/12 26/15
26/18 26/22 26/24 27/4 27/13 28/1
28/17 29/24 30/21 32/5 36/1 53/20
88/19 89/1 89/4 89/8 89/16 89/20
90/14 97/5 97/13 97/17 97/23 98/8
98/13 98/21 98/24 99/8 99/11
99/14 99/17 99/20 99/24 100/12
100/19 100/22 101/5 101/9 101/24
102/7 102/20 102/24 104/13 104/17
104/19 105/5 105/10
**MS. LEE: [48]**   3/13 4/2 4/4 4/12
6/2 6/7 6/11 14/12 14/18 17/23
18/22 36/5 36/11 36/24 37/3 37/6
38/19 39/16 39/19 41/3 41/9 41/16
42/12 42/22 44/9 44/21 46/14
47/14 47/17 47/20 47/22 53/4 53/9
66/17 66/23 66/25 89/10 89/22
90/1 90/8 96/4 96/20 100/1 100/3
100/9 103/7 103/19 105/23
**MS. ROCHA: [33]**   3/9 5/24 13/21
15/10 16/6 16/13 16/23 18/10
18/19 19/5 37/13 38/12 43/12 45/3
45/13 45/24 46/5 48/2 48/11 49/10
49/14 50/6 50/15 50/22 51/4 51/9
51/18 52/7 52/18 52/22 53/2 95/18
96/14
**THE COURT: [236]**
**THE COURTROOM DEPUTY: [4]**   3/2
4/11 5/16 95/15

**'**

**'em [4]**   35/11 35/11 39/10 39/10

**1**

**10 [4]**   61/13 70/25 81/19 103/7
**101 [2]**   2/8 72/3
**103 [2]**   5/21 6/14
**106 [1]**   89/16
**109 [1]**   33/14
**10:30 [2]**   95/15 95/16
**10th [1]**   17/5
**11 [11]**   24/5 24/6 24/8 64/2 64/6
64/8 64/14 70/25 74/10 88/6 88/9
**110 [1]**   77/3
**111 [12]**   7/16 98/22 99/7 99/10
99/12 100/7 100/18 103/4 103/5
103/8 106/4 106/16
**115 [1]**   34/8
**11:45 [1]**   54/19
**11th [1]**   48/16
**12 [11]**   9/8 9/15 10/25 26/18
26/20 64/17 65/14 66/8 66/11
70/25 97/11
**123-1 [6]**   59/21 59/21 59/23 61/7
64/11 64/12
**124 [2]**   71/1 71/3
**1252 [1]**   74/11
**1255 [1]**   74/11
**1265 [1]**   74/6

**1271 [1]**   74/6
**1300 [1]**   74/11
**13 [4]**   18/23 34/7 64/17 88/13
**1300 [1]**   72/22
**1370 [1]**   28/5
**142-page [1]**   54/12
**14th [1]**   16/4
**15 [6]**   96/24 97/7 97/12 97/13
97/14 97/22
**155 [2]**   32/19 34/8
**15th [3]**   17/24 18/5 75/1
**16th [3]**   17/20 18/4 18/6
**17 [1]**   64/17
**1700 [1]**   2/9
**1752 [4]**   25/6 25/8 25/9 72/24
**18 [1]**   72/24
**184 [2]**   1/4 3/2
**19-CR-324 [1]**   75/1
**1983 [1]**   34/11
**1993 [1]**   28/6
**1:30 [2]**   54/3 54/18
**1st [3]**   72/22 72/22 73/8

**2**

**200 [1]**   2/5
**20001 [1]**   1/24
**2012 [1]**   49/9
**2014 [3]**   27/7 32/21 55/1
**2017 [1]**   49/6
**2020 [7]**   18/24 19/1 19/8 72/22
73/8 73/8 74/15
**2021 [3]**   72/23 73/12 75/1
**2022 [7]**   72/7 72/8 72/18 72/19
76/21 79/10 79/11
**2023 [5]**   34/7 72/10 80/25 81/8
82/9
**2024 [4]**   19/1 19/1 19/8 33/16
**2025 [2]**   1/5 108/10
**20530 [1]**   1/16
**21-CR-500 [1]**   7/5
**21-CR-552 [1]**   7/7
**21-CR-599 [2]**   7/6 7/6
**21-CR-78 [1]**   83/18
**219 [1]**   1/13
**221 [1]**   75/11
**23 [1]**   81/21
**23-184 [2]**   1/4 3/2
**23-CR-70 [1]**   7/5
**231 [14]**   6/20 7/16 11/4 20/11
22/14 98/22 98/24 99/5 103/11
104/12 105/2 105/3 106/17 106/19
**23rd [6]**   72/8 72/19 73/6 76/2
76/21 79/11
**24th [3]**   72/10 81/8 82/8
**29822144 [1]**   75/11
**2:39 [1]**   90/10
**2d [2]**   81/19 81/21
**2nd [1]**   20/20

**3**

**3-minute [1]**   104/14
**31st [1]**   73/8
**324 [1]**   75/1
**33 [3]**   4/15 5/12 81/19
**333 [1]**   1/23
**335 [1]**   75/3
**337 [1]**   75/3
**34 [2]**   4/15 5/12
**36 [2]**   4/15 5/12
**39 [3]**   4/15 5/12 87/23
**3:25 [1]**   107/6
**3d [1]**   78/12

**4**

**4-minute [1]**   104/15
**40 [1]**   72/24
**403 [2]**   91/22 92/13
**43 [1]**   72/3
**437 [1]**   82/4
**46 [2]**   78/12 81/21
**47 [1]**   81/21

**48 [1]**   74/1
**49 [2]**   104/19 105/20
**4:20 [2]**   104/19 105/20
**4:24 [2]**   104/19 105/20

**5**

**500 [1]**   7/5
**501 [1]**   89/16
**51 percent [1]**   88/9
**5104 [3]**   25/7 26/18 72/25
**514 [1]**   89/17
**552 [1]**   7/7
**57 [1]**   74/1
**572 [1]**   27/7
**573 [1]**   33/14
**583 [1]**   74/1
**599 [2]**   7/6 7/6
**5th [9]**   1/13 72/7 72/18 72/19
73/9 76/5 76/21 79/10 108/10

**6**

**601 [1]**   1/16
**60604 [1]**   1/14
**65 [2]**   27/7 40/5
**656 [1]**   79/10
**658 [1]**   79/18
**667 [1]**   34/6
**6710 [1]**   1/24
**676 [1]**   34/6
**69 [1]**   82/4

**7**

**70 [4]**   7/5 8/17 8/21 8/22
**70-something [1]**   106/6
**712 [1]**   78/12
**713 [1]**   79/18
**72 [1]**   82/4
**77 [1]**   34/6
**78 [1]**   83/18
**7th [2]**   17/1 59/22

**8**

**817 [1]**   77/3
**82 percent [2]**   87/19 88/14
**84 percent [3]**   87/21 87/23 88/8
**859 [1]**   2/5
**86 [1]**   88/15
**86-3 [2]**   85/14 85/22
**86-7 [1]**   86/5
**86-8 [2]**   87/1 90/19
**867 [1]**   74/6
**877 [1]**   81/18
**899 [1]**   74/10

**9**

**910 [1]**   75/3
**97204 [1]**   2/9
**97401 [1]**   2/6
**99 percent [1]**   70/2
**990 [1]**   28/5
**9:43 [1]**   1/6

**A**

**a.m [2]**   1/6 54/19
**abet [3]**   22/17 33/24 33/24
**abetted [3]**   30/9 30/13 104/25
**abetting [32]**   10/18 12/2 22/14
23/5 23/18 24/6 26/10 27/5 27/9
27/14 27/25 28/7 28/10 29/7 29/9
29/10 29/15 30/14 31/5 31/14
31/23 32/1 32/16 33/21 34/2 34/13
34/24 35/2 54/22 55/8 55/20 59/1
**abettor [2]**   11/24 55/21
**ability [6]**   67/17 68/1 68/12
70/14 87/8 106/22
**able [13]**   12/9 15/12 38/16 39/12
41/22 62/19 62/25 70/9 85/9 87/2
87/8 101/2 101/21
**about [115]**
**above [1]**   108/5
**above-entitled [1]**   108/5

**A**

**absolutely [2]** 35/9 78/23
**abstract [2]** 39/3 42/19
**abuse [1]** 50/2
**accept [4]** 41/18 44/10 44/11 50/12
**accepted [1]** 44/24
**access [4]** 42/8 73/7 85/4 85/6
**accomplice [2]** 55/5 55/24
**account [2]** 72/21 73/3
**accurate [2]** 23/25 80/8
**accurately [1]** 69/22
**acknowledged [1]** 106/25
**acquitted [1]** 11/19
**across [1]** 101/13
**act [10]** 22/16 27/16 33/20 33/21 68/1 68/12 70/9 70/14 103/13 105/3
**acted [1]** 40/16
**acting [1]** 70/9
**action [14]** 1/3 27/10 29/14 30/11 40/17 40/18 56/16 56/17 57/10 57/13 57/14 57/16 57/19 58/3
**actions [6]** 58/1 71/6 74/22 78/20 80/19 91/25
**activity [7]** 73/2 73/4 73/23 73/24 73/24 73/25 81/23
**acts [3]** 22/16 22/16 57/1
**actual [2]** 73/24 86/1
**actually [32]** 9/1 21/3 22/15 27/19 27/23 31/8 32/25 38/11 39/20 39/22 42/12 44/1 46/20 47/8 51/25 54/24 56/20 57/12 63/21 65/15 68/5 69/3 70/9 78/9 82/19 89/5 92/10 96/9 99/24 102/17 103/16 103/17
**acute [2]** 71/5 71/11
**add [4]** 19/10 22/10 33/3 102/25
**added [1]** 29/9
**adding [1]** 19/4
**addition [10]** 5/19 58/20 58/21 59/6 61/18 76/8 77/23 78/6 91/21 92/12
**additional [7]** 13/7 18/17 32/6 33/3 36/25 37/4 44/4
**additionally [1]** 29/8
**address [14]** 4/14 7/1 15/7 27/6 37/8 39/19 41/1 71/23 72/20 88/17 88/24 97/3 106/16 107/1
**addressed [6]** 4/16 38/17 43/14 48/11 105/8 105/11 105/18
**addresses [1]** 41/3
**adds [2]** 28/24 28/25
**adequately [2]** 92/3 92/8
**adjourn [1]** 95/16
**advocacy [4]** 56/14 56/15 57/6 57/6
**advocate [1]** 57/24
**AELE [1]** 88/7
**affect [1]** 68/1
**affected [2]** 68/19 91/3
**affecting [1]** 54/11
**affects [2]** 67/13 68/12
**affiant [1]** 83/5
**affidavit [7]** 80/6 81/3 81/16 82/11 82/22 82/24 83/11
**affidavits [1]** 73/17
**affirmative [3]** 27/10 27/16 28/7
**after [18]** 34/16 55/5 56/21 58/23 70/23 73/12 73/16 73/20 74/14 74/16 74/20 75/23 79/1 80/24 81/22 82/15 87/4 88/20
**afternoon [2]** 16/15 17/19
**afterward [1]** 32/7
**afterwards [1]** 87/7
**again [25]** 6/13 9/13 22/13 29/6 32/18 34/15 36/7 37/2 44/17 55/16 57/16 59/23 68/3 68/10 69/1 84/8 84/13 93/15 93/17 94/4 94/17 94/20 94/24 97/19 99/23
**against [7]** 11/19 11/23 12/8

12/24 75/25 77/14 104/5
**age [1]** 43/7
**agencies [6]** 43/7 44/3 44/7 44/23
**agents [5]** 44/10 44/12 44/22 80/12 80/14
**agree [4]** 6/1 11/10 41/6 62/20
**agreed [1]** 44/10
**agreement [3]** 25/14 89/13 100/7
**Agriculture [2]** 33/9 33/19
**ahead [4]** 7/1 46/13 53/5 90/21
**AI [1]** 10/5
**aid [6]** 33/23 33/24 55/5 55/25 56/2 56/2
**aide [1]** 22/17
**aided [3]** 30/9 30/12 104/25
**aider [2]** 11/24 55/20
**aiding [32]** 10/17 12/1 22/14 23/5 23/18 24/6 26/9 27/4 27/8 27/14 27/24 28/7 28/10 29/7 29/9 29/10 29/15 30/14 31/4 31/13 31/22 32/1 32/16 33/21 34/1 34/13 34/24 35/2 54/22 55/8 55/20 59/1
**aids [1]** 55/7
**aimed [1]** 86/11
**Ainsworth [2]** 10/4 10/18
**Alberti [1]** 99/17
**alert [1]** 95/11
**Ali [3]** 81/18
**all [119]**
**allegations [4]** 39/7 39/9 39/13 39/14
**allegedly [1]** 94/19
**Allen [1]** 10/11
**alleviate [1]** 83/10
**allot [1]** 86/14
**allow [5]** 67/12 90/21 92/1 92/15 94/12
**allowed [5]** 66/1 67/16 72/19 72/23 73/6
**allowing [1]** 92/18
**alone [2]** 34/21 75/13
**along [3]** 35/2 42/16 95/20
**already [10]** 4/25 5/13 7/12 15/6 15/23 36/3 52/4 59/1 76/6 91/7
**also [33]** 3/10 6/12 11/16 15/16 27/1 28/4 28/4 29/19 34/2 35/10 37/18 45/19 55/15 57/21 58/21 60/8 61/7 65/18 65/19 71/21 71/22 74/20 75/12 76/3 76/8 76/13 78/24 79/8 80/12 82/22 86/5 92/12 98/14
**alternative [4]** 39/17 58/21 104/24 106/1
**although [8]** 10/8 11/17 25/19 34/25 50/21 83/21 90/17 92/18
**always [1]** 61/19
**am [80]** 5/11 7/1 11/17 11/20 11/25 12/11 13/5 13/11 14/4 14/7 16/25 20/9 20/14 20/22 21/4 21/9 21/15 21/16 21/16 22/8 23/1 24/2 24/9 24/15 25/16 30/19 31/8 31/8 31/11 32/19 36/13 37/21 37/23 38/7 39/19 44/1 44/19 46/1 47/6 53/21 59/21 62/24 63/4 63/7 64/19 65/9 66/23 67/12 67/15 68/15 68/17 69/9 69/18 70/2 70/4 70/13 70/15 72/1 72/2 77/25 89/5 90/18 92/16 92/18 92/19 93/6 93/17 93/18 94/4 94/5 94/5 94/12 94/24 96/6 96/8 102/13 106/12 106/14 106/24
**Amazon [5]** 33/8 33/19 33/22 55/10 55/19
**amenable [1]** 95/22
**amended [1]** 59/22
**Amendment [11]** 29/3 34/21 35/1 35/3 35/7 40/7 40/15 41/5 77/1 77/5 79/23
**AMERICA [2]** 1/3 3/3
**American [1]** 57/15
**among [1]** 76/16
**amongst [1]** 25/17
**amount [1]** 70/7

**analysis [11]** 57/5 63/21 65/1 68/1 76/8 77/17 77/18 79/6 84/4 87/23
**analyzed [4]** 27/8 63/24 64/1 64/1
**animal [2]** 33/20 33/21
**animated [2]** 77/16 77/17
**another [14]** 15/5 15/11 20/4 20/6 20/7 32/23 34/4 49/17 60/17 72/7 72/19 87/22 88/9 95/1
**answer [3]** 37/9 38/25 44/4
**answers [2]** 48/24 63/11
**anticipate [2]** 16/1 35/24
**anticipated [1]** 18/11
**antiterrorism [1]** 34/5
**any [63]** 4/8 4/19 11/20 13/19 14/5 15/1 15/1 18/6 18/14 18/17 19/3 19/6 19/19 23/7 24/1 29/21 31/1 37/11 38/10 40/25 42/20 43/17 43/25 46/1 51/13 52/5 52/5 52/11 52/25 57/3 59/2 61/2 62/19 68/1 68/11 69/14 69/15 69/16 72/15 73/18 73/21 75/18 76/19 77/25 78/8 79/8 79/12 79/13 83/23 83/23 84/2 84/19 85/10 88/14 92/3 92/7 92/10 92/13 96/18 102/23 103/14 105/8 106/17
**anybody [1]** 95/9
**anyone [6]** 15/21 19/12 51/14 52/11 73/19 102/15
**anything [27]** 4/18 5/21 8/14 10/23 19/11 23/7 26/5 29/23 36/16 43/11 44/6 46/25 52/12 53/3 64/20 68/15 68/25 70/10 72/15 76/11 84/23 88/17 90/12 90/13 91/24 95/16 102/18
**anytime [1]** 60/10
**anyway [2]** 40/9 53/21
**anywhere [1]** 94/13
**apologies [1]** 53/9
**apologize [8]** 4/4 9/5 9/13 36/24 89/22 99/21 100/3 105/10
**appeal [1]** 29/21
**appeals [5]** 57/9 57/12 57/14 57/19 58/1
**APPEARANCES [3]** 1/11 1/19 2/1
**appearing [1]** 44/22
**appears [2]** 28/10 58/8
**applicable [1]** 28/2
**application [1]** 74/2
**applied [5]** 34/4 55/12 78/14 78/14 78/22
**applies [2]** 55/17 79/6
**apply [12]** 31/24 31/25 59/4 78/16 78/23 78/24 79/3 79/12 80/6 80/10 80/10 84/20
**applying [1]** 56/10
**appreciate [7]** 13/12 14/12 14/22 39/17 51/5 51/10 66/13
**approach [1]** 3/4
**appropriate [10]** 38/6 38/14 50/24 51/16 62/12 78/20 80/22 93/20 97/1 106/5
**appropriately [1]** 68/18
**April [4]** 72/10 80/25 81/8 82/8
**April 2 [1]** 80/25
**April 24th [3]** 72/10 81/8 82/8
**are [207]**
**area [12]** 7/18 7/19 8/8 8/12 8/18 8/21 89/2 89/2 104/23 105/7 105/18 106/7
**aren't [2]** 15/1 19/20
**arguably [1]** 48/14
**argue [4]** 11/4 21/9 56/19 84/19
**argued [1]** 19/23
**argues [7]** 73/8 73/15 75/12 76/3 76/13 78/25 81/10
**arguing [1]** 76/14
**argument [9]** 11/2 36/15 40/23 40/24 76/2 76/7 77/7 84/19 103/11
**arguments [4]** 20/15 40/7 76/8 76/9
**around [3]** 34/7 74/15 106/7

**A**

arrange [2]  85/7 85/10
article [3]  86/12 86/17 86/21
articles [6]  38/23 61/17 63/6
70/5 86/16 88/3
as [120]
aside [2]  48/6 55/14
ask [20]  4/9 4/17 5/8 7/21 14/4
14/22 18/17 18/25 25/4 32/18 38/1
39/11 39/16 48/18 54/5 58/15 65/9
85/3 95/24 104/9
asked [5]  59/14 60/24 64/25 68/4
69/15 80/23
asking [16]  13/18 19/7 19/21 32/3
38/1 49/5 49/6 49/8 49/14 63/4
63/8 66/4 69/22 86/15 86/20 86/21
asks [3]  49/2 76/25 81/7
assault [5]  9/19 101/12 102/5
103/17 104/3
assaulted [7]  8/3 11/7 98/20
101/3 101/22 102/3 102/18
assaulting [3]  10/4 10/17 10/18
assaultive [2]  101/6 102/10
assaults [2]  10/9 47/25
asserts [1]  80/12
assessing [1]  81/14
assist [7]  22/17 22/22 27/1 28/2
34/5 34/10 55/17
assistance [5]  28/9 28/10 33/5
55/4 55/24
Assistant [2]  3/13 3/16
assisted [4]  49/21 54/23 55/21
73/2
associative [1]  71/6
assume [1]  15/23
assumed [1]  80/17
assuming [3]  67/13 91/4 95/19
attach [1]  55/20
attached [3]  44/12 88/14 98/24
attachment [1]  86/5
attachments [1]  88/3
attacks [1]  74/16
attempt [2]  20/19 70/12
attempting [1]  104/23
attention [11]  43/13 60/4 60/4
60/7 60/21 61/14 67/2 68/7 85/15
85/19 89/15
attorney's [3]  44/9 51/19 85/4
audience [1]  57/25
audition [1]  85/16
auditory [22]  54/9 54/13 54/16
59/16 59/20 60/8 60/16 60/20
61/16 64/22 65/15 69/10 85/20
86/3 86/23 88/13 90/12 90/22 92/2
93/5 93/10 94/17
August [2]  7/9 7/12
authority [4]  24/2 24/3 26/9
106/24
authorized [2]  73/10 82/9
authorizing [1]  74/23
automatism [1]  68/9
available [7]  4/6 16/16 41/19
43/23 44/13 56/23 90/1
Avenue [1]  1/23
average [1]  17/15
avoid [1]  42/5
aware [13]  11/20 13/11 15/16
45/16 45/24 46/1 52/3 55/18
68/15 70/15 71/13 71/13 74/21
away [2]  30/8 65/24

**B**

back [26]  6/16 7/12 8/19 9/25
13/22 23/3 27/21 34/14 47/6 49/4
51/24 54/2 54/18 54/20 56/7 58/7
60/23 65/10 67/1 79/7 90/7 90/16
96/20 96/24 102/5 107/5
background [1]  37/6
Bankruptcy [1]  1/23
barred [1]  11/22
based [6]  7/12 16/11 28/8 38/3

43/16 77/1
basic [2]  49/2 49/10
basis [11]  54/9 61/2 62/24 74/3
74/9 74/12 76/19 80/15 84/16
84/18 93/5
be [170]
bear [4]  63/23 67/17 74/20 75/21
bearing [1]  68/6
became [1]  39/20
because [47]  8/21 11/5 12/16 13/9
20/9 21/9 22/5 24/5 24/10 28/9
30/2 30/12 32/7 34/21 35/7 35/12
37/24 39/1 39/24 48/4 58/17 58/20
58/24 61/25 71/24 72/14 73/9
73/16 76/4 76/14 77/19 78/19
78/25 81/11 82/1 82/13 85/18 87/9
99/3 100/14 102/4 102/8 102/18
103/24 104/4 104/6 107/5
become [1]  82/1
becomes [1]  94/8
been [39]  3/24 3/24 4/25 5/25 6/4
8/10 17/12 25/15 38/4 42/25 43/10
43/20 44/1 44/25 45/14 46/6 46/14
56/25 63/24 63/25 63/25 64/1 65/6
65/20 66/4 67/18 68/17 69/7 69/15
82/8 82/15 83/25 96/24 96/25
100/10 105/2 105/11 106/3 106/5
before [27]  1/9 6/25 18/4 18/5
25/14 29/4 32/7 39/16 40/3 41/13
42/10 43/14 49/3 49/25 50/7 50/16
57/22 73/12 73/16 73/20 74/14
75/23 80/23 91/10 95/16 97/5
101/1
beforehand [1]  104/6
behalf [1]  3/17
behaved [1]  93/3
behavior [1]  74/5
being [20]  7/11 9/23 11/7 33/5
34/3 52/9 55/17 62/2 67/13 67/16
67/25 68/11 71/13 75/4 87/2 87/8
88/9 89/12 104/2 104/22
belief [6]  38/15 38/23 38/24
47/24 80/2 84/14
believe [29]  4/21 10/5 17/3 22/21
24/14 25/11 25/20 36/17 37/10
41/3 44/17 45/15 46/10 47/14
47/17 49/5 60/14 61/11 63/12 65/4
75/13 76/19 82/11 84/16 90/1
101/20 103/21 105/24 106/6
believed [1]  73/18
below [2]  98/1 102/9
Ben [1]  45/4
bench [1]  90/4
benefited [1]  21/3
Bennett [1]  99/17
beside [1]  70/22
best [11]  22/11 44/12 57/18 65/18
67/11 69/12 71/21 88/23 91/2 92/3
93/16
Best's [1]  69/11
better [1]  103/12
between [9]  22/25 74/4 85/16
85/17 86/3 93/11 93/19 98/2
104/19
beyond [8]  28/19 28/24 29/5 29/13
69/12 91/20 101/21 102/17
big [1]  15/18
bigger [1]  40/22
bill [9]  6/17 10/22 10/23 11/3
11/12 35/14 105/12 105/15 105/25
bills [2]  4/15 5/12
binders [1]  90/1
binding [3]  28/3 28/8 78/7
Bishop [1]  75/3
bit [4]  39/6 55/6 92/20 96/8
black [1]  56/22
blunting [1]  88/13
BNP [1]  55/16
body [7]  14/9 98/3 98/15 100/13
100/14 102/8 103/2
body-worn [7]  97/6 98/3 98/15

100/13 100/14 102/8 103/2
/15 56/3
books [1]  89/19
Borden [1]  68/7
both [12]  14/7 36/20 56/3 60/11
69/2 74/14 76/14 79/8 79/8 87/8
89/6 105/13
Boyd [1]  99/17
bragging [1]  83/4
brain [7]  60/5 60/21 85/17 85/19
86/1 86/3 86/14
Brandenburg [19]  19/10 19/14
19/18 27/2 28/15 28/21 29/11 30/3
30/15 31/13 31/24 34/16 56/8
56/10 56/11 57/4 57/4 57/17 58/6
break [7]  40/3 41/13 53/6 53/21
54/2 54/14 65/10
brief [5]  7/23 8/3 27/6 76/14
104/13
briefed [2]  27/5 32/17
briefing [1]  29/6
briefings [2]  105/14 105/14
briefly [3]  36/25 37/3 38/19
bring [5]  15/8 43/13 44/15 84/24
89/14
bringing [2]  11/23 63/22
broad [3]  63/11 63/22 63/23
broader [6]  43/4 59/18 63/13 65/6
75/8 103/24
broadly [1]  60/3
Brock [1]  7/5
brought [3]  26/25 68/6 90/15
Brown [1]  99/17
building [6]  24/12 24/19 25/2
25/7 25/9 25/21
bumping [1]  104/5
burden [9]  13/9 48/3 48/20 51/22
51/23 52/5 52/23 52/24 53/1
burdensome [3]  46/22 50/2 52/16

**C**

Caballero [1]  99/18
cabins [1]  75/4
California [2]  72/13 80/25
call [5]  18/2 72/20 74/14 75/16
99/4
called [3]  10/11 68/8 86/6
calls [4]  73/20 75/13 75/21 94/10
came [1]  12/14 12/24 65/4
camera [3]  77/24 98/3 100/15
can [101]  5/1 5/3 5/5 5/8 8/1 8/5
8/25 9/14 11/16 11/17 12/10 13/24
14/1 14/2 14/6 14/18 14/22 15/4
16/17 21/24 23/2 23/20 24/14
25/17 26/1 29/16 29/25 30/5 31/1
32/8 37/25 39/19 40/4 40/6 40/15
42/3 44/16 44/25 46/21 47/6 51/21
52/4 52/16 52/23 52/24 53/14
53/22 54/7 56/7 57/18 60/9 60/20
60/20 61/2 61/21 63/6 63/20 64/24
66/8 66/11 66/19 67/6 68/18 70/11
71/1 74/20 79/21 81/23 82/16
82/23 83/5 84/3 85/2 85/3 85/4
85/6 85/11 85/20 86/4 87/17 88/10
88/19 89/9 89/14 90/4 91/2 91/7
91/8 91/10 95/2 96/3 96/5 96/10
96/14 96/16 99/14 101/15 104/9
105/13 106/16 106/19
can refer [1]  101/15
can't [10]  13/21 35/13 60/25
62/22 91/12 94/1 94/9 94/19
101/18 104/20
Canada [1]  68/9
Canadian [3]  68/8 68/14 68/14
cannot [3]  57/23 71/13 80/6
Cantwell [1]  105/12
Canwell [1]  105/12
capabilities [1]  86/12
capacity [2]  86/10 86/11
Capitol [9]  13/23 25/7 47/5 47/11
49/21 74/16 75/19 78/3 91/14
capture [1]  19/2

captured [1]  58/25
car [1]  81/3
Cardoza [1]  79/18
carefully [1]  35/20
Carpenter [1]  77/16
carried [1]  32/23
carry [2]  13/9 33/25
Carter [1]  15/15
case [91]  3/2 4/7 6/20 6/22 7/4
7/14 7/16 10/8 10/14 13/8 13/11
16/7 17/16 18/3 19/6 22/22 27/21
28/3 28/8 28/12 32/20 33/1 33/4
33/6 33/10 33/11 33/12 33/18 34/4
34/5 34/6 34/7 34/9 34/11 34/20
36/9 36/18 38/5 38/10 38/11 38/16
38/22 39/7 39/14 43/10 46/1 46/23
49/16 49/19 50/18 51/9 51/10
51/16 55/10 55/16 59/20 60/3
67/14 68/14 77/14 77/16 77/18
78/7 78/11 78/17 78/22 78/25 79/5
84/1 87/6 91/4 91/14 91/17 92/25
93/1 93/2 94/6 94/7 94/13 94/16
94/25 95/3 95/3 95/5 95/6 95/9
96/17 105/11 105/24 106/10 106/11
cases [15]  9/3 9/5 12/13 12/14
12/16 17/12 17/18 34/12 54/25
54/25 55/9 55/13 55/17 63/7 74/18
categorically [1]  77/5
causation [3]  19/25 27/6 32/21
cause [21]  29/14 29/14 33/24
33/24 40/16 57/12 58/1 73/10
73/13 73/22 76/7 79/13 80/2 80/7
81/3 81/11 81/17 83/5 84/6 84/14
84/17
ceased [1]  81/23
cell [6]  75/19 76/22 76/25 77/9
78/2 79/7
central [2]  94/13 94/16
certain [1]  67/15
certainly [11]  16/20 23/21 38/14
43/18 48/5 48/8 52/8 52/10 65/8
80/20 96/25
certification [1]  78/4
certify [1]  108/3
chambers [1]  66/20
chance [1]  73/23
change [2]  13/23 21/11
changed [1]  25/3
changes [1]  20/8
changing [1]  27/1
channeled [1]  57/24
charge [6]  6/20 10/12 10/12 10/14
10/15 10/19
charged [5]  10/4 12/3 79/22 83/9
104/2
charges [5]  10/9 10/13 11/19
75/24 75/25
charging [1]  10/5
Charles [1]  56/21
charts [1]  86/18
check [5]  4/5 6/12 44/16 44/25
103/1
cheering [1]  62/15
Chicago [1]  1/14
chief [1]  16/7
chime [1]  16/25
choose [1]  93/11
chooses [1]  94/9
Christmas [1]  48/23
circuit [18]  10/11 22/25 22/25
28/5 33/4 33/8 33/23 34/4 34/11
55/13 55/18 74/6 74/11 75/2 77/2
78/8 78/8 82/3
Circuit's [1]  78/7
circumscribed [1]  77/20
circumstance [1]  20/6
circumstances [4]  11/24 81/15
83/10 84/5
citations [2]  85/11 85/13
cite [3]  6/21 33/13 34/6

cited [8]  6/19 34/7 49/9 64/17
66/10 66/14 69/10 73/24 85/13
cites [3]  33/6 55/16 61/7
citizens [1]  56/22
city [1]  96/12
civil [17]  6/20 20/21 27/23 28/10
33/1 33/10 33/11 34/1 54/25 55/11
55/16 55/17 55/20 100/4 103/13
103/23 104/1
Claiborne [10]  20/1 20/4 20/5
20/6 26/11 56/6 56/7 56/7 56/10
58/5
clarification [2]  14/25 25/1
clarify [3]  25/5 29/12 31/20
clarifying [1]  14/23
clear [10]  32/9 54/24 55/23 56/9
58/20 90/19 92/24 94/15 104/23
106/20
clearing [2]  105/19 106/23
clearly [2]  35/6 78/24
clerk [5]  4/9 14/16 90/6 95/1
96/16
client [2]  35/18 42/5
client's [1]  36/7
close [1]  96/4
closed [3]  15/13 77/22 78/4
closure [2]  96/1 96/18
cocounsel [2]  21/8 22/19
cognitive [2]  86/10 86/11
Cohen [1]  91/8
Collaborated [1]  73/1
collaborating [1]  73/19
collateral [2]  11/22 12/7
colleague [1]  105/23
colleagues [2]  17/14 105/8
collected [1]  84/10
COLUMBIA [2]  1/1 74/1
combinations [1]  100/10
come [8]  13/1 14/5 54/2 57/22
67/1 90/7 92/16 96/20
comes [6]  8/17 12/11 20/23 23/1
23/14 96/14
coming [3]  12/18 27/20 47/6
comma [8]  21/20 21/21 21/24 21/25
22/9 22/10 22/16 22/16
commentary [1]  83/3
comments [2]  18/18 37/17
commission [3]  27/17 32/24 73/2
commit [2]  21/21 22/2
committed [1]  21/15
committing [3]  20/21 83/1 103/13
common [5]  27/24 37/7 55/6 58/1
63/17
commotion [2]  62/21 94/22
compel [3]  50/8 50/9 50/10
complete [3]  32/23 32/25 42/24
completely [2]  41/8 41/10
complicated [1]  44/15
component [1]  17/25
components [1]  41/24
computer [2]  5/7 82/13
computers [1]  82/10
conceal [1]  74/19
conceivably [1]  31/25 31/25
concern [16]  7/13 10/1 10/16 26/2
29/25 32/2 35/11 35/18 38/19
39/24 40/22 42/11 43/19 62/6
71/22 89/11
concerned [8]  30/8 30/16 37/16
39/19 92/20 94/5 94/24 96/9
concerning [1]  73/1
concerns [7]  19/2 41/2 41/3 62/7
77/16 83/11 104/6
conclude [7]  11/11 74/12 78/13
78/24 79/8 93/13 102/17
concluded [9]  13/3 16/2 55/19
70/8 76/6 80/22 91/1 91/7 107/6
concludes [2]  81/5 84/5
concluding [1]  74/3
conclusion [4]  12/25 13/1 54/10
62/20
concurrent [1]  67/22

conditional [1]  17/24
conduct [9]  30/10 38/9 58/19 75/7
75/22 79/16 83/16 84/6 92/5 98/24
101/7 102/10 105/1 105/3 105/20
conducted [2]  65/15 72/13
confer [3]  25/13 39/16 58/15
conference [3]  1/9 3/20 99/3
confident [1]  38/7
confirm [2]  15/12 22/2
confirmed [2]  21/20 22/1
confirming [1]  53/12
conflict [2]  39/10 55/9
confronted [2]  79/4 79/5
confuse [1]  92/15
confused [2]  24/9 101/22
confusing [7]  24/21 29/25 30/16
31/5 32/8 34/16 58/11
confusingly [1]  28/24
confusion [9]  30/19 31/2 31/15
31/16 32/2 58/18 59/2 59/3 102/8
congruent [1]  7/16
conjunction [1]  77/12
connected [1]  72/21
consciousness [2]  67/21 68/22
consequences [1]  57/2
consider [7]  11/13 23/21 39/5
54/17 69/7 81/14 106/24
consideration [1]  15/22
considered [1]  81/24
considering [1]  78/21
consistent [2]  57/17 105/2
conspired [1]  73/1
constituted [2]  91/19 104/1
constitutes [1]  108/4
Constitution [1]  1/23
constitutional [2]  29/11 56/12
construed [1]  56/8
consult [1]  95/25
consultation [1]  59/8
consulting [1]  58/24
consumed [1]  82/8
contact [4]  9/1 9/11 46/20 75/22
contained [2]  81/4 82/19
contend [1]  73/13
contending [1]  102/9
content [4]  56/4 75/14 75/17 99/9
78/14 86/17 86/23 103/12 107/1
continue [5]  30/19 82/20 92/12
103/21 104/7
CONTINUED [2]  1/19 2/1
continues [1]  55/8
continuing [1]  61/21
contraband [1]  82/1
contrary [3]  80/3 84/15 106/24
contributed [1]  102/19
contribution [1]  55/6
control [1]  85/15
controlled [1]  82/23
conversation [1]  51/24
convict [3]  10/20 12/8 35/12
convicted [3]  10/8 10/17 12/17
conviction [1]  29/21
convictions [2]  12/12 12/14
convince [1]  92/16
convinced [3]  69/9 77/25 78/15
convincing [1]  13/10
coordinate [1]  4/7
coordinating [1]  49/25
coordination [1]  74/19
copies [1]  89/18
copy [4]  51/5 51/10 65/13 67/7
correct [16]  9/22 11/16 13/3 17/2
24/15 26/22 31/21 33/2 42/18
51/18 58/6 63/19 95/2 98/8 99/11
108/4
corrected [1]  70/18
correctly [1]  42/3
corroborate [2]  41/23 42/13
corroborated [3]  21/20 22/2 22/6
corroborates [6]  20/22 20/25 21/5
21/18 22/1 22/7

**C**

cortex [1] 85/16
cost [1] 82/17
could [35] 4/6 15/3 24/21 30/16
31/2 32/6 36/24 37/3 47/10 48/7
51/7 53/16 55/3 55/13 57/2 62/7
66/12 66/15 67/17 75/20 75/21
80/16 82/14 83/21 83/22 83/25
92/5 92/14 92/15 96/8 99/22 101/9
103/15 103/15 106/6
couldn't [3] 10/20 13/9 101/10
counsel [15] 3/4 3/5 15/3 31/8
31/9 31/11 31/18 37/16 40/22
43/24 45/5 45/8 48/16 59/8 95/25
count [10] 20/19 24/9 24/25 25/10
25/19 100/7 100/8 100/9 100/18
106/17
counterargument [1] 11/6
counts [1] 13/4
couple [10] 3/23 17/13 26/8 26/25
31/10 40/3 46/24 65/24 94/11 95/4
course [4] 47/4 49/3 49/11 56/24
courses [1] 61/21
court [100] 1/1 1/22 1/22 5/1 6/3
6/13 6/22 6/22 7/13 13/25 14/13
14/14 15/12 18/1 19/17 19/19
19/24 19/24 20/11 20/18 21/1 23/4
23/10 23/17 23/23 23/23 25/16
27/8 27/21 28/4 28/12 29/9 30/23
30/24 32/18 32/21 33/2 33/22
34/25 35/17 35/17 36/11 37/20
37/22 38/8 41/16 41/24 44/5 46/17
48/19 52/23 53/9 55/1 55/14 56/9
56/10 56/18 56/24 57/18 58/1 59/3
60/15 63/12 65/17 66/8 66/18
66/19 66/25 67/20 70/19 75/1
76/25 77/16 78/9 78/13 78/15
78/22 79/11 79/19 80/21 80/24
81/4 81/7 81/20 84/5 84/21 84/25
85/2 86/2 86/22 86/24 88/23 95/18
95/22 99/2 100/19 105/13 105/14
108/3 108/13
Court's [6] 23/18 43/13 48/9
66/18 70/20 100/3
courts [3] 1/23 75/7 81/14
cover [1] 41/5
covered [1] 84/11
CR [7] 7/5 7/5 7/6 7/6 7/7 75/1
83/18
crime [12] 21/15 21/21 22/3 27/9
32/22 55/3 55/5 55/7 55/25 75/5
75/10 103/24
crimes [2] 83/9 83/9
criminal [18] 1/3 3/2 15/3 27/15
28/7 33/12 34/3 34/20 54/22 54/25
55/13 73/2 73/4 73/23 73/24 74/5
75/7 81/22
CRM [1] 1/12
cross [6] 16/9 17/11 41/21 42/6
43/19 75/20
cross-examination [2] 16/9 41/21
cross-examinations [1] 17/11
cross-examined [1] 42/6
cross-examining [1] 43/19
cross-referenced [1] 75/20
culpability [1] 15/4 74/22
current [4] 19/2 20/12 23/8 32/17
currently [2] 16/3 39/1
CV [1] 61/20

**D**

D-U-Y-S-E [1] 99/18
D.C [12] 22/25 28/5 33/4 33/8
33/22 34/4 34/11 55/13 55/18 74/6
74/11 82/3
danger [1] 28/22
darn [1] 63/8
data [3] 74/23 82/19 82/20
date [4] 80/13 80/17 80/20 80/22
Dated [1] 108/10
dates [1] 73/16

Daubert [6] 54/5 60/13 62/7 63/16
David [1] 2/3
day [22] 5/15 10/9 14/6 15/16
16/15 18/4 37/11 38/2 38/3 38/3
38/25 39/3 39/22 67/25 69/14
91/23 91/25 93/3 93/4 93/22 94/21
108/10
days [8] 10/10 16/10 16/10 17/13
17/16 49/25 65/24 101/1
DC [6] 1/5 1/16 1/24 12/23 17/15
107/5
deadline [1] 13/16
deafness [2] 60/8 61/15
deal [6] 15/4 38/14 88/19 94/2
96/14 99/2
dealing [3] 20/6 93/10 103/13
Dean [1] 99/18
Dearborn [1] 1/13
dearth [2] 78/21 79/4
decide [4] 30/12 30/12 30/13 91/5
decided [2] 33/8 91/6
deciding [1] 57/5
decision [6] 59/8 59/25 72/1 77/2
78/7 78/18
decisions [1] 54/11
declined [1] 44/10
deeper [1] 68/22
defendant [16] 1/7 2/3 4/25 8/10
11/18 12/24 20/20 21/21 22/2
22/16 30/13 34/9 40/15 54/23 72/4
74/21
Defendant's [2] 86/6 89/24
defendants [5] 7/9 7/10 82/25
83/12 83/12
DEFENDER [5] 2/3 2/7 3/14 3/16
17/15
defense [41] 4/14 6/1 7/9 8/5
9/23 14/4 14/24 15/7 16/24 19/11
21/3 26/25 30/22 31/8 31/9 31/11
31/18 32/3 32/3 36/4 37/16 38/7
39/24 40/6 43/24 47/2 58/13 59/7
68/4 68/9 84/18 88/21 89/9 89/12
89/21 91/16 91/16 92/15 92/20
92/23 93/5
defer [1] 31/11
deficits [2] 87/18 88/10
defined [1] 51/15
defines [1] 57/15
defining [1] 8/20
definitely [2] 71/7 86/1
definition [1] 33/23
definitions [4] 30/5 32/6 58/10
59/24
delete [1] 83/22
deleted [1] 84/3
deletes [1] 82/18
deliberate [2] 70/10 70/14
deliberated [1] 10/10
deliberating [2] 10/12 10/13
demanding [4] 31/13 31/22 59/4
86/9
demonstrating [1] 26/19
deny [2] 72/2 84/21
Department [4] 33/9 33/18 47/11
49/20
dependent [1] 16/8
depending [1] 18/11
depends [1] 99/2
deputy [4] 4/9 90/6 95/1 96/16
derivative [1] 80/24
describe [1] 104/9
described [1] 82/22
describes [1] 69/22
describing [3] 55/11 56/21 65/6
descript [1] 103/16
description [1] 68/14
detached [4] 79/17 79/24 80/1
84/12
detachment [1] 87/24
detail [2] 39/6 39/9
determine [1] 81/15

determined [4] 27/9 27/14 78/19
79/5
detriment [1] 86/4
device [5] 82/15 82/16 82/18
82/20 82/24
devices [5] 81/9 81/12 82/12 83/8
84/7
dictating [1] 93/17
dictionary [2] 57/15 57/21
did [29] 6/21 10/2 10/12 13/16
13/22 14/22 19/10 25/1 29/13
30/10 30/10 41/18 46/17 54/13
55/5 55/25 56/1 56/2 57/6 58/7
59/15 70/19 70/23 76/20 76/22
78/13 89/22 92/13 102/18
didn't [12] 13/1 13/9 25/3 32/21
45/21 48/15 58/11 63/3 73/18 87/6
91/24 91/25
died [1] 38/2
difference [4] 22/24 47/8 47/12
47/13
differences [1] 77/10
different [23] 9/8 9/17 10/21
11/10 12/25 14/21 26/25 34/18
35/5 42/22 45/13 48/22 50/8 52/2
52/7 62/1 70/4 72/4 88/10 97/25
99/22 100/9 100/10
difficult [2] 35/4 37/9
digital [12] 75/8 81/9 81/10
81/12 82/12 82/15 82/16 82/18
82/20 83/8 83/14 84/7
diminished [5] 87/19 87/20 87/23
87/25 88/8
dire [12] 11/15 14/4 14/17 15/12
18/4 18/13 18/17 18/18 36/25 37/3
39/8 59/13
directed [8] 5/13 51/17 51/19
51/21 52/14 52/15 56/15 58/3
directing [1] 20/23
directions [1] 95/8
directly [3] 19/1 72/11 90/18
disabuse [1] 37/8
disagree [4] 22/20 29/18 32/16
55/14
disagreement [1] 15/8
disappear [1] 82/19
disassociated [1] 68/19
disclose [1] 76/17
disclosed [10] 65/25 67/18 67/19
68/5 68/21 68/24 69/13 71/23
90/20 92/3
discloses [1] 71/7
disclosure [1] 92/6
disconnect [1] 93/19
discovery [5] 9/6 9/15 43/20 50/7
97/9
discuss [5] 34/12 37/21 39/25
58/16 92/21
discussed [6] 28/18 29/7 41/25
49/3 80/16 84/10
discussing [1] 54/16
discussion [10] 7/12 7/13 25/11
28/18 50/10 59/15 68/8 68/9 87/25
103/20
discussions [1] 42/25
dismissed [3] 10/15 10/19 11/19
dismisses [1] 12/9
dismissing [1] 13/5
disorder [7] 6/20 20/22 21/20
100/5 103/13 103/23 104/1
disposed [1] 82/2
disruption [1] 67/20
dissertation [17] 54/10 59/14
59/16 59/17 60/2 60/25 61/1 61/4
61/5 61/6 63/3 64/10 65/2 65/3
65/4 65/6 65/7
dissociation [1] 87/24
dissociative [9] 67/13 67/16
67/24 68/1 68/12 71/11 91/3 92/4
93/25
district [12] 1/1 1/1 1/10 1/23
2/4 2/8 3/14 3/16 6/21 12/1 73/25

**D**

**district...** [1]  78/18
**District's** [1]  77/17
**dive** [1]  94/20
**DNA** [1]  64/5
**do** [81]  3/21 4/9 5/2 5/3 5/8 7/14 7/21 8/5 11/11 12/19 13/14 14/21 15/10 17/23 18/8 18/8 19/21 20/8 22/11 26/2 34/15 35/17 35/24 37/10 38/4 39/6 39/8 39/11 41/1 41/11 42/20 45/11 46/22 46/23 47/14 47/18 48/8 50/5 52/1 52/5 52/11 52/17 52/25 56/13 57/10 57/12 57/14 57/18 58/4 58/9 58/11 58/17 58/23 59/10 63/7 66/12 67/5 71/8 71/17 83/24 87/11 89/18 89/24 90/3 92/17 94/4 96/2 96/3 96/3 96/5 96/17 97/15 97/17 99/16 100/4 100/7 100/8 100/22 103/10 103/11 106/12
**docket** [10]  5/21 6/14 14/2 40/5 70/25 71/2 71/8 85/11 85/13 85/22
**dockets** [2]  4/15 72/3
**document** [16]  5/1 10/6 42/7 42/10 43/20 46/21 49/6 49/16 50/20 54/12 54/14 54/15 59/21 59/24 71/3 88/15
**documents** [2]  43/17 50/13
**does** [24]  6/1 23/5 23/10 23/13 25/22 31/23 32/2 35/16 38/22 41/1 55/12 59/8 67/20 72/15 73/12 74/7 78/24 82/19 85/19 90/11 94/14 97/15 97/20 102/1
**doesn't** [22]  12/3 23/11 23/25 28/8 30/11 30/25 31/3 32/9 36/8 43/16 46/23 77/6 79/9 80/9 81/1 84/19 86/24 93/22 93/23 94/15 100/25 101/15
**doing** [5]  29/4 39/5 46/1 95/22 106/13
**DOJ** [2]  1/12 1/15
**DOJ-CRM** [1]  1/12
**DOJ-USAO** [1]  1/15
**don't** [107]  4/13 5/4 6/22 9/6 12/2 12/6 12/8 12/15 13/8 14/9 14/9 14/15 14/25 15/23 17/7 18/2 19/5 19/6 21/3 21/9 22/4 25/24 26/2 28/25 29/6 29/18 29/19 30/11 30/14 30/15 35/12 36/16 37/20 40/7 40/13 40/21 41/6 41/24 42/15 43/17 43/21 43/24 44/17 44/25 45/15 45/16 46/7 46/7 46/15 46/19 46/24 47/16 48/24 49/4 49/11 51/16 52/5 52/17 52/21 53/5 53/22 54/1 54/2 55/9 55/25 56/7 57/3 57/11 59/4 60/12 62/15 65/3 66/25 67/5 67/18 67/19 68/15 68/23 68/24 69/21 75/15 78/10 84/9 85/3 85/6 85/10 88/22 90/3 90/5 91/20 92/6 92/22 93/2 94/2 94/12 98/9 99/3 99/4 99/6 99/16 100/25 101/3 101/22 102/4 103/19 106/14 107/5
**done** [14]  5/14 14/1 15/6 17/13 17/21 17/24 18/9 18/9 42/22 44/12 51/11 53/18 68/17 69/7
**double** [2]  95/6 103/1
**doubt** [6]  28/19 28/24 29/5 29/13 101/21 102/18
**doubtful** [2]  12/11 92/2
**doubts** [2]  68/25 71/24
**down** [16]  7/22 9/15 14/10 22/20 23/25 27/12 39/15 51/23 53/22 91/5 92/24 94/6 95/10 98/1 102/9 104/14
**downloaded** [2]  82/15 82/16
**downside** [1]  29/19
**dozen** [1]  95/4
**Dr** [20]  54/8 59/14 60/13 60/25 64/2 65/18 66/11 67/11 68/3 69/11 69/12 71/21 88/3 90/21 91/2 91/10 91/17 92/1 92/3 93/16

**Dr** [3]  64/21 65/2 85/2
**draft** [2]  56/4/2 84/2/2
**draft** [2]  16/3 18/3
**draw** [1]  62/19
**drawing** [1]  83/6
**drop** [2]  58/13 58/13
**drugs** [2]  82/5 82/8
**duces** [1]  41/20
**due** [3]  12/5 48/20 98/15
**dulcet** [1]  57/24
**dump** [5]  75/19 77/1 77/9 77/19 79/7
**dumps** [1]  76/22
**duplicate** [1]  43/3
**duration** [1]  15/23
**during** [6]  14/5 20/21 39/10 74/17 77/21 78/3
**dusting** [1]  15/19
**duties** [1]  103/15
**Duyse** [1]  99/18

**E**

**each** [4]  17/8 56/22 79/25 84/21
**earlier** [2]  76/12 96/21
**early** [3]  16/15 38/23 54/2
**ears** [2]  12/18 87/7
**easier** [1]  99/24
**easily** [2]  48/7 75/20
**Easterday** [1]  78/12
**easy** [2]  26/16 95/19
**ECF** [2]  32/18 34/8
**economic** [1]  56/23
**Edelin** [1]  81/20
**effect** [3]  91/25 92/5 102/23
**effective** [1]  57/23
**effort** [3]  50/25 94/3 94/14
**efforts** [8]  43/15 43/23 46/1 46/16 48/13 74/19 83/23 83/24
**eight** [1]  99/21
**either** [11]  13/17 14/15 24/1 44/2 69/9 72/11 76/21 82/8 85/20 90/6 101/19
**election** [3]  18/25 74/15 78/5
**electronic** [4]  74/23 82/16 83/19 84/3
**element** [7]  22/13 22/15 24/10 24/11 25/23 29/8 29/15
**elements** [10]  24/9 27/1 28/20 28/21 28/25 29/6 29/16 30/14 34/17 34/19
**eleventh** [1]  50/25
**Elizabeth** [1]  2/7
**else** [18]  5/21 8/14 10/23 19/11 25/25 29/23 44/6 49/2 52/11 52/12 68/15 84/23 88/17 90/13 95/16 101/3 102/1 102/15
**elsewhere** [2]  39/25 43/5
**email** [9]  14/16 14/18 50/12 66/8 66/11 66/15 66/17 66/18 66/20
**emailed** [1]  99/22
**emergency** [1]  96/18
**emotional** [1]  57/25
**encourage** [3]  15/21 22/17 57/16
**encouraging** [1]  104/25
**end** [2]  5/14 14/5
**ended** [2]  9/7 61/24
**ending** [1]  72/22
**ends** [1]  3/23
**enforcement** [14]  20/12 61/22 61/23 62/3 69/23 72/20 72/23 73/6 79/21 80/14 82/9 91/15 93/2 103/14
**engage** [2]  58/2 104/25
**engaged** [2]  47/1 83/15
**engaging** [1]  103/15
**England** [1]  65/12
**enough** [4]  32/13 75/3 94/12 102/6
**entering** [3]  24/10 24/12 24/18
**entire** [3]  62/4 80/13 86/21
**entirely** [1]  62/12 80/3 80/20 84/15 95/11
**entirety** [1]  86/16

**entitled** [3]  41/11 94/19 108/5
**environment...** [1]  83/4
**essence** [1]  11/21
**essentially** [1]  83/4
**establish** [1]  34/1
**established** [2]  33/25 81/16
**establishes** [1]  29/9
**estimate** [1]  17/4
**estimated** [1]  16/9
**estoppel** [2]  11/22 12/7
**Eugene** [2]  2/4 2/6
**eve** [2]  48/16 50/11
**even** [24]  11/18 12/2 12/15 14/8 30/15 30/15 49/24 71/13 71/13 78/1 78/10 78/13 78/15 78/18 79/12 82/14 84/3 84/8 87/7 91/23 95/21 101/3 101/23 103/22
**event** [10]  16/14 29/21 60/11 75/18 78/1 79/8 79/12 83/9 84/2 85/10
**events** [9]  38/3 39/3 46/8 48/4 48/22 67/25 83/13 85/21 91/13
**ever** [2]  46/25 105/8
**Evers** [1]  57/2
**Evers'** [1]  56/21
**every** [2]  43/3 55/6
**everyone** [6]  8/1 12/20 16/20 62/15 66/17 106/25
**everything** [6]  6/3 44/3 58/25 62/23 90/15 91/23
**evidence** [57]  9/17 10/20 12/8 12/23 13/7 16/1 16/3 17/4 36/16 36/17 36/19 36/23 40/9 40/18 40/20 47/10 57/7 72/5 72/6 72/9 72/11 72/23 73/11 73/21 73/23 73/25 74/4 74/8 74/9 74/13 74/17 74/24 75/6 75/9 75/14 76/1 76/3 76/5 79/15 79/20 80/18 80/24 81/2 81/7 81/12 81/17 81/21 81/25 82/22 83/8 83/13 83/14 83/25 84/10 84/18 93/12
**exact** [1]  39/24
**exactly** [4]  28/1 101/10 104/20 106/9
**examination** [2]  16/9 41/21
**examinations** [1]  17/11
**examined** [1]  42/6
**examining** [2]  43/19 93/6
**example** [12]  12/12 15/2 48/25 50/1 50/6 82/5 83/15 87/3 87/9 93/8 94/7 103/18
**examples** [2]  78/13 87/2
**except** [3]  10/13 13/4 56/14
**exception** [11]  78/16 79/2 79/9 79/12 79/14 79/15 80/5 80/5 80/9 80/10 84/11
**excess** [1]  91/11
**excessive** [2]  91/11 91/19
**exclude** [1]  70/19
**exclusion** [20]  54/9 54/13 54/16 59/16 59/20 60/8 60/16 60/20 61/16 64/22 65/16 69/10 79/13 86/3 86/23 90/12 90/22 92/2 93/6 94/17
**excuse** [1]  8/10
**executed** [4]  76/23 77/12 78/17 79/3
**exhaust** [1]  98/12
**exhaustive** [2]  97/20 98/11
**exhibit** [17]  70/25 71/9 71/9 85/14 85/23 86/6 87/1 87/10 87/14 87/17 88/6 89/8 89/10 89/19 90/19 98/3 98/15
**Exhibit 7** [1]  70/25
**Exhibit C** [1]  85/23
**exhibits** [12]  9/17 9/23 88/21 88/25 89/12 89/24 90/5 90/6 90/7 97/7 97/8 103/2
**exist** [3]  29/6 43/5 83/20
**existence** [2]  80/2 84/14
**expansive** [2]  96/25 104/2
**expect** [2]  16/17 17/13

## E

expectation [3] 16/11 41/21 78/1
expectations [1] 18/15
expected [1] 15/20
experience [10] 62/12 63/17 67/23
69/23 82/13 83/7 87/5 87/18 88/11
91/24
experienced [3] 62/1 62/13 93/4
experiencing [4] 91/19 92/4 92/10
93/25
expert [13] 54/9 62/8 62/9 63/16
65/20 67/19 67/20 69/4 69/6 71/23
92/3 92/19 94/20
expertise [3] 63/22 63/23 91/18
experts [2] 17/25 69/19
explain [1] 58/9
explained [2] 55/19 84/2
explaining [2] 40/20 62/4
explains [2] 65/14 94/1
explanation [1] 73/18
explanations [1] 32/7
extemporaneous [1] 57/23
extended [1] 83/20
extensive [2] 77/24 83/15
extensively [1] 32/18
extent [26] 31/14 37/15 38/5
38/15 38/20 40/10 43/5 46/6 46/25
48/20 50/17 50/24 51/11 51/13
51/20 52/10 52/15 52/24 59/2 59/6
70/8 90/22 90/23 91/15 94/17
95/20
extraordinary [2] 43/15 48/13
extremely [1] 37/18

## F

F.2d [2] 28/5 74/10
F.3d [4] 74/6 75/3 79/18 82/4
F.4th [3] 33/14 34/6 77/3
facilitate [1] 22/17
facilitating [1] 27/17
fact [15] 11/25 23/8 23/24 34/15
38/21 56/2 56/4 56/9 57/4 57/6
69/15 76/10 78/1 79/24 87/4
factors [1] 54/11
facts [2] 12/22 38/16
factually [2] 37/19 76/18
failing [1] 80/13
fails [2] 76/3 76/7
failure [1] 76/17
fair [12] 12/19 12/21 32/13 37/9
39/12 42/3 42/4 42/11 94/11 94/15
94/19 102/6
fairly [3] 46/17 56/8 94/7
faith [8] 78/16 79/2 79/9 79/12
79/14 80/5 80/9 84/11
familiar [2] 14/24 63/17
far [2] 8/18 67/15
fashion [2] 63/22 63/23
faulted [1] 75/15
FBI [28] 41/17 41/19 42/8 42/14
42/16 42/24 43/3 44/10 44/11
44/17 44/19 44/20 44/23 44/24
45/1 45/15 47/4 47/13 49/3 49/19
49/23 50/1 50/13 50/17 52/15
52/16 52/17 52/18
FBI's [4] 45/8 47/3 47/7 50/22
fear [1] 59/25
February [1] 72/22
February 1st [1] 72/22
federal [6] 2/3 2/7 3/14 3/16
17/15 60/15
feel [2] 20/25 23/25
feelings [2] 18/24 37/15
feels [2] 12/5 87/22
few [5] 14/24 15/4 42/22 74/16
96/20
field [3] 49/2 49/10 51/13
fifth [7] 10/3 22/13 29/16 77/2
77/17 78/7 78/18
fight [2] 59/18 59/25
file [16] 4/21 5/1 5/21 5/22

13/10 13/13 14/2 14/13 14/15
36/22 36/25 43/11 44/17 81/19
82/19
filed [4] 13/21 40/4 41/15 50/9
files [5] 81/12 82/13 82/14 82/16
83/22
filing [2] 45/16 52/19
film [1] 102/5
filming [1] 83/15
films [1] 83/16
final [8] 11/8 11/14 18/18 20/10
20/15 26/10 30/6 32/12
finally [2] 81/6 83/19
find [7] 5/7 23/20 40/15 58/11
59/15 69/3 96/8
finding [1] 58/9
finds [1] 22/7
fine [8] 4/9 14/16 23/9 41/8
41/10 53/15 93/20 101/18
finished [1] 95/1
finishes [1] 17/19
fireman [1] 103/14
first [37] 4/1 7/4 15/7 16/15
16/16 16/21 24/10 24/11 25/23
26/16 27/4 29/3 33/7 34/21 35/1
35/3 35/6 40/7 40/14 41/5 54/21
56/20 59/24 69/24 71/10 72/6 77/8
85/15 85/17 85/24 85/25 86/8 87/3
87/13 89/1 97/10 100/6
five [17] 4/17 4/22 7/25 8/23 9/1
9/2 10/2 16/7 17/7 17/12 38/9
39/21 90/24 93/8 103/22 104/6
106/2
fix [1] 26/16
flight [3] 15/24 59/18 59/25
flip [1] 42/12
floated [1] 23/24
Floor [1] 1/13
focus [7] 30/8 60/2 60/3 60/20
86/4 86/11 94/6
focused [4] 30/1 30/9 62/2 77/20
focusing [3] 62/3 62/22 87/9
folks [2] 37/8 45/22
follow [2] 38/16 52/22
followed [1] 56/25
following [3] 71/6 71/11 97/19
follows [1] 56/3
Fontan [10] 1/15 3/6 4/23 6/24
8/20 25/18 43/8 58/24 97/4 104/9
footage [2] 77/24 103/2
football [1] 62/14
footnote [5] 61/11 61/11 61/13
66/7 66/11
footnotes [7] 61/8 61/14 61/15
61/16 63/5 64/16 66/2
forbid [1] 56/13
force [13] 41/24 42/17 47/3 49/18
50/22 54/10 56/14 60/10 61/19
61/23 61/25 91/12 91/19
foregoing [1] 108/4
forensic [2] 82/22 84/4
forever [1] 43/4
forgets [1] 13/7
form [3] 20/12 32/17 67/17
forth [5] 34/18 49/1 58/6 58/18
59/22
forthcoming [1] 45/15
forward [1] 92/16
forwarded [1] 46/15
fought [1] 35/1
found [5] 74/10 74/13 74/18 81/17
85/1
foundation [1] 61/2
four [5] 10/10 12/12 12/16 17/16
93/8
Fourteen [2] 36/1 36/2
Fourth [3] 77/1 77/5 79/23
frame [1] 7/19
framework [1] 34/5
frankly [5] 17/18 37/25 55/25
Franks [1] 76/16
free [4] 53/13 56/12 56/13 57/24

Friday [3] 17/5 17/19 50/11
friends [2] 43/12 43/25
front [5] 9/8 9/18 43/11 97/16
102/6
fruits [1] 72/12
full [1] 86/22
functions [2] 60/21 67/21
further [9] 29/9 31/2 39/9 46/16
53/3 83/10 106/8 106/17 107/1
furtherance [2] 27/10 27/16

## G

game [3] 62/14 94/15 94/19
gather [6] 43/15 43/23 48/7 48/13
48/18 64/4
gathered [2] 52/9 64/3
gathering [3] 50/4 52/1 52/4
gave [1] 97/8
general [8] 6/8 29/3 39/3 41/19
43/1 43/6 77/4 93/2
generality [1] 68/21
generally [4] 39/8 79/10 91/13
105/16
geofence [6] 76/15 76/15 76/17
76/20 77/3 77/9 77/12 78/10
Gestapo [2] 24/23 35/9
get [30] 6/9 11/11 16/19 16/21
17/13 20/14 25/1 25/3 29/25 30/15
30/15 35/19 39/6 39/8 41/23 42/23
44/20 46/12 50/1 51/23 53/22 60/7
60/23 65/10 93/15 94/19 95/19
96/8 99/22 107/5
gets [2] 13/7 31/5
getting [8] 15/18 15/24 32/20
42/11 62/3 92/25 96/6 96/7
give [22] 8/5 13/16 13/16 14/6
19/24 20/6 33/6 33/13 36/6 36/9
37/23 40/11 65/10 67/6 72/1 85/5
85/10 85/11 85/13 89/23 90/5
92/22
given [21] 10/11 10/25 29/21
40/19 43/13 44/2 48/21 60/16
61/20 63/4 63/6 71/17 76/10 84/4
89/19 92/9 94/24 101/6 105/18
105/20 106/5
gives [5] 59/24 70/17 87/1 88/7
88/10
giving [6] 20/11 20/19 28/14 29/2
35/1 93/7
gloss [2] 19/24 23/18
go [25] 6/16 7/1 8/19 10/2 23/3
33/3 34/11 34/14 39/15 46/13
47/24 50/3 50/24 53/5 58/7 61/10
61/21 67/6 68/22 69/3 69/24 71/1
90/21 96/24 101/2
goes [6] 38/5 47/9 78/6 81/12
85/17 86/3
going [45] 4/21 7/1 14/4 14/7
14/10 15/15 15/24 18/9 19/14
20/14 21/24 24/24 29/22 31/16
35/4 35/7 35/8 35/9 35/10 35/12
37/25 52/1 52/12 52/11 53/10 53/21
61/19 62/21 63/2 69/12 72/2 85/7
88/21 91/14 92/24 93/19 94/2 94/6
94/22 94/22 95/12 95/13 100/14
101/2 101/20
gone [4] 16/11 43/14 43/22 62/16
good [20] 3/6 3/8 3/9 3/12 3/13
3/15 3/19 16/23 69/17 70/16 78/16
79/2 79/9 79/12 79/14 80/5 80/9
84/11 93/21 107/4
got [11] 12/14 13/24 27/12 36/7
36/18 50/12 63/7 64/13 67/10
101/10 101/11
govern [1] 55/8
government [78] 3/5 3/7 3/10 4/16
4/21 5/13 6/2 10/3 10/24 11/22
12/13 12/19 13/6 13/8 14/22 17/19
18/2 18/19 19/3 21/6 21/17 24/14
25/21 27/5 28/9 28/23 28/25 29/5
29/12 30/23 30/24 31/16 32/9
34/24 35/8 37/13 38/8 40/4 40/16

## G

**government...** **[39]** 41/18 42/7
43/14 43/18 44/23 48/12 49/24
51/11 51/14 51/15 53/19 58/10
61/20 65/25 66/15 72/15 73/13
75/15 75/18 76/20 76/22 77/21
77/22 77/24 81/1 84/2 89/16 90/5
90/11 95/3 96/7 96/22 101/1
101/15 101/18 101/20 103/25 106/1
106/8
**government's** **[15]** 11/6 16/6 17/3
17/4 28/13 35/15 37/12 39/7 45/14
45/17 48/14 80/4 95/5 97/20
103/11
**governs** **[1]** 47/2
**grab** **[1]** 89/8
**Grade** **[8]** 4/5 44/16 44/25 45/4
46/9 51/1 51/4 52/7
**grant** **[1]** 48/20
**granted** **[1]** 6/13
**granting** **[1]** 5/11
**great** **[2]** 6/11 94/2
**Green** **[1]** 95/3
**Griffith** **[1]** 74/6
**grossly** **[1]** 80/12
**grounds** **[6]** 24/11 24/19 25/9 78/2
78/3 91/21
**group** **[6]** 63/13 103/16 104/10
105/16 106/19 106/20
**guarantee** **[1]** 56/12
**guess** **[21]** 11/2 16/18 23/13 28/13
32/11 40/9 42/18 47/5 47/6 47/20
56/4 58/7 64/18 95/13 96/10 96/14
96/15 98/14 98/21 99/1 101/14
**guess part** **[1]** 98/21
**guessing** **[1]** 20/9
**guidance** **[3]** 40/10 41/1 53/23
**guidelines** **[1]** 47/2
**guilty** **[2]** 40/15 83/25
**gun** **[2]** 60/18 87/9

## H

**had** **[45]** 6/19 6/22 7/12 7/13 9/1
15/11 18/22 23/23 24/20 24/21
26/5 26/6 28/18 28/18 29/4 33/2
36/25 37/4 40/5 40/8 43/24 44/10
44/24 50/9 50/10 50/16 53/11
54/23 56/25 60/24 61/25 65/6
65/25 68/1 79/21 87/19 87/23
87/23 88/9 95/3 96/22 96/23 96/24
102/23 106/5
**had the** **[1]** 50/9
**Halberstam** **[2]** 55/18 55/19
**hand** **[2]** 46/6 81/25
**handle** **[1]** 96/10
**hands** **[1]** 46/21
**Hansohn** **[1]** 99/18
**happen** **[1]** 60/9
**happened** **[7]** 12/22 25/14 38/1
38/3 91/23 91/24 93/22
**happening** **[1]** 48/22
**happens** **[1]** 62/4
**happy** **[15]** 16/25 21/4 21/11 22/8
24/2 25/16 30/19 37/21 44/4 54/17
65/9 67/4 69/7 106/12 106/24
**hard** **[9]** 32/19 37/7 39/4 63/14
64/5 86/1 93/7 93/14 101/20
**Hardware** **[4]** 20/1 26/11 56/10
58/6
**has** **[74]** 6/2 6/4 6/13 7/18 10/11
10/24 12/21 15/21 18/1 19/17 21/6
21/17 22/22 23/5 23/8 25/15 30/23
30/24 32/22 37/16 38/15 40/14
41/16 43/14 43/18 44/1 44/17
44/25 46/6 46/14 46/16 47/22
49/18 51/1 51/4 51/21 52/3 52/24
59/8 60/15 60/16 62/1 63/24 63/25
63/25 64/1 64/11 64/13 64/20
64/21 64/21 66/7 66/10 67/18 68/7
68/17 69/6 69/15 72/4 74/18 81/1
82/23 84/2 86/14 86/18 88/21

**hasn't** **[3]** 43/10 43/20 65/20
**have** **[218]**
**have to** **[2]** 12/10 23/6
**haven't** **[3]** 15/6 42/9 91/6
**having** **[5]** 15/19 32/19 34/17
61/24 96/25
**he** **[85]** 4/7 10/3 10/3 10/4 21/15
24/24 29/13 30/9 30/10 30/10
30/12 32/22 32/23 33/5 35/12
40/16 41/7 41/21 42/6 42/6 42/7
42/8 42/10 42/13 42/19 42/21
42/22 44/17 47/9 47/10 47/14
47/18 47/23 47/23 51/1 51/7 54/16
56/22 58/16 59/8 59/24 60/3 60/15
60/16 61/17 61/18 61/19 61/21
61/21 61/23 61/24 61/25 62/1 64/2
64/3 64/19 64/21 64/23 73/10
73/15 76/1 76/3 76/8 76/16 80/12
81/7 91/8 91/12 91/19 93/13 93/22
93/23 93/24 94/1 94/14 94/15
98/20 98/21 98/24 104/5 104/21
104/23 104/24 104/24 105/5
**head** **[2]** 50/19 102/6
**heading** **[2]** 64/11 95/10
**Health** **[1]** 33/21
**hear** **[20]** 12/9 21/24 35/7 35/16
35/17 35/20 38/13 43/8 60/13
60/19 62/15 62/21 62/23 87/8 87/8
93/9 93/21 93/24 94/22 94/23
**heard** **[10]** 10/19 12/23 26/12
26/24 41/16 46/5 48/2 90/25 94/18
103/10
**hearing** **[16]** 4/20 24/16 25/6
28/17 50/10 54/8 60/14 64/24 65/5
69/16 70/23 76/16 85/17 86/4 87/6
90/20
**hears** **[1]** 12/7
**heart** **[1]** 32/20
**held** **[5]** 33/22 37/14 57/2 77/3
81/20
**help** **[2]** 27/20 32/25
**helpful** **[1]** 36/8
**helps** **[2]** 32/23 55/6
**her** **[13]** 67/12 67/19 67/19 69/15
69/16 69/23 69/23 69/23 71/23
74/21 74/22 83/6 92/9
**here** **[64]** 3/20 5/2 14/1 15/14
15/17 15/23 23/2 23/2 24/13 35/24
37/21 40/25 43/16 45/5 45/9 47/13
48/4 48/16 51/12 62/24 64/19
65/11 65/13 65/13 67/7 67/8 68/6
68/16 69/4 70/1 70/4 70/11 71/8
74/12 75/6 75/18 77/7 77/8 77/19
78/16 78/23 78/24 79/4 79/23
80/12 83/7 83/20 84/12 84/20 85/7
90/23 92/21 93/12 96/6 96/7 96/8
96/9 98/19 99/24 101/17 103/23
104/5 105/17 106/14
**Heritage** **[1]** 57/15
**Hermansen** **[13]** 2/3 3/17 4/18 6/15
8/14 9/25 11/16 25/18 27/20 32/14
58/15 59/15 90/17
**hide** **[2]** 74/22 76/1
**high** **[2]** 60/22 68/21
**higher** **[1]** 31/17
**highlight** **[3]** 67/7 69/5 71/1
**highlighting** **[1]** 39/14
**highly** **[1]** 102/22
**Highway** **[2]** 72/13 80/25
**him** **[16]** 4/6 4/13 10/20 35/8
42/10 43/19 51/8 58/24 61/20 62/2
75/25 80/25 83/24 94/14 95/25
104/22
**himself** **[1]** 46/25 61/23
**his** **[53]** 10/19 40/17 41/22 42/25
43/6 47/24 50/18 54/10 57/25 59/8
59/17 59/19 59/22 59/23 60/2 60/3
60/14 61/3 61/6 61/7 61/17 61/18
62/3 62/3 63/2 64/2 64/3 64/6
64/9 64/9 64/13 64/19 65/6 65/7

67/25 68/1 68/20 74/21 74/22
75/2 75/2 81/16 82/10 82/10 83/6
84/7 87/7 91/3 91/4 91/25 93/16
93/25 94/10
**hit** **[4]** 101/10 101/11 101/11
102/6
**hitting** **[1]** 66/23
**hold** **[3]** 31/16 71/4 76/25
**hole** **[1]** 92/25
**holiday** **[2]** 48/17 50/11
**holidays** **[3]** 41/15 44/3 48/21
**home** **[2]** 81/7 84/6
**Honor** **[89]** 3/9 3/13 3/15 4/2 4/11
4/20 4/24 5/5 5/24 6/16 6/25 8/7
8/16 9/4 9/13 10/2 13/21 14/12
14/21 15/10 16/7 16/14 16/15
16/23 18/10 18/19 20/3 22/12
23/22 24/8 25/5 26/6 26/12 26/22
28/1 29/4 29/24 30/21 32/5 32/15
33/7 36/24 37/13 38/19 41/16
43/12 45/3 45/4 45/13 46/14 47/14
47/22 48/2 48/5 48/24 49/18 50/6
50/8 50/15 52/18 52/19 53/2 53/4
59/10 59/17 61/8 64/7 66/7 66/25
69/21 84/25 85/14 88/19 89/22
90/14 95/15 95/18 96/20 97/5
97/13 97/24 98/13 99/15 101/5
102/7 102/24 103/19 104/13 105/10
**Honor's** **[1]** 43/19
**HONORABLE** **[1]** 1/9
**hope** **[3]** 31/25 44/14 46/16
**hopefully** **[1]** 17/5
**hoping** **[1]** 4/5
**host** **[1]** 45/20
**hotel** **[2]** 96/1 96/2
**hour** **[13]** 36/5 36/6 36/7 36/9
36/10 36/18 36/20 48/16 50/25
92/21 92/23 92/23 94/25
**hour-long** **[1]** 36/9
**how** **[36]** 16/9 16/11 17/7 21/16
29/7 31/20 33/22 35/24 43/17
43/21 43/25 44/3 48/4 52/19 60/1
60/5 60/21 65/6 65/15 67/16 67/25
68/11 68/19 82/22 85/17 86/3
86/13 87/4 88/23 91/3 93/2 94/23
99/2 99/2 103/15 105/2
**Howell's** **[1]** 75/10
**however** **[4]** 13/25 27/6 73/22 97/7
**huge** **[2]** 52/2 94/20
**human** **[1]** 85/16
**hurdle** **[1]** 90/20

## I

**I'm** **[15]** 5/16 24/24 27/13 34/8
37/2 43/10 45/7 64/6 64/12 66/9
71/2 81/10 86/15 97/24 98/5
**idea** **[3]** 37/20 69/17 70/17
**ideally** **[1]** 67/6
**identification** **[3]** 11/9 31/1 80/4
**identified** **[14]** 7/18 8/11 8/18
9/5 9/20 10/24 97/25 98/1 98/2
98/5 98/10 100/4 106/3 106/15
**identify** **[6]** 4/16 7/17 8/25 14/7
30/25 101/18
**identifying** **[1]** 7/14
**identity** **[2]** 67/22 101/11
**IL** **[1]** 1/14
**illicit** **[1]** 82/5
**imagine** **[4]** 12/11 93/7 93/14
94/20
**immaterial** **[1]** 55/4
**imminent** **[5]** 29/14 30/10 40/16
40/18 56/16
**impacts** **[1]** 48/5
**impair** **[1]** 85/20
**impartial** **[2]** 37/9 39/12
**impediment** **[1]** 104/11
**implicated** **[2]** 34/21 77/18
**implies** **[1]** 42/7
**imply** **[1]** 39/23
**important** **[2]** 103/25 104/8
**importantly** **[1]** 77/15

**I**

impression [1]  20/5
improbable [1]  102/22
improper [2]  76/14 76/15
improving [1]  86/11
inaccurate [1]  37/19
inappropriate [1]  79/14
incident [1]  61/25
incite [15]  19/19 30/6 30/6 30/10
30/10 40/17 56/16 56/20 56/20
57/6 57/7 57/8 57/10 57/14 57/15
incited [1]  19/25
incitement [4]  30/2 30/3 30/25
32/10
inciting [2]  56/15 58/3
inclination [1]  58/12
inclined [1]  37/23
include [6]  31/19 31/23 32/4 39/9
59/9 97/18
included [3]  73/16 81/9 99/5
includes [2]  56/19 63/13
including [7]  29/19 33/4 64/2
64/20 72/25 82/10 83/14
inconvenient [2]  35/14 35/15
incorrect [1]  76/19
indeed [4]  55/2 80/21 83/22
106/19
independently [1]  78/24
indicate [1]  82/23
indicated [18]  4/21 19/19 24/15
40/12 51/1 51/21 52/24 58/24
67/11 81/1 82/24 83/24 84/15
88/21 91/10 96/22 98/11 106/18
indicates [1]  83/11
indicating [1]  73/3
indicia [3]  80/1 84/13 101/19
indictment [2]  10/6 26/4
individual [1]  32/10
individuals [11]  7/25 8/4 8/23
9/1 9/2 11/1 13/17 13/19 83/1
90/24 94/18
induce [2]  33/24 33/25
infer [4]  74/9 74/13 82/7 83/7
inference [1]  39/21
inferences [1]  83/6
inflammatory [1]  37/18
information [11]  43/1 48/18 51/4
64/3 64/4 72/25 72/25 73/3 75/8
81/23 84/8
initial [2]  75/14 76/18
initially [1]  100/13
initials [3]  10/5 10/7 53/13
injuries [1]  61/25
input [1]  93/11
inquired [1]  17/14
inquiry [1]  70/20
insert [2]  14/17 56/4
inserting [2]  21/23 21/25
instance [3]  44/11 98/16 98/17
instances [1]  91/11
instead [6]  19/22 22/1 23/24
25/20 68/13 73/14
instructed [3]  34/17 34/19 40/14
instruction [18]  19/15 20/11
20/19 24/6 28/15 29/3 29/7 29/10
30/2 30/6 31/9 31/12 34/16 35/1
37/24 56/1 59/1 62/11
instructions [27]  10/6 11/8 11/13
11/15 12/1 19/10 19/13 20/10
20/10 20/15 22/14 23/2 25/25 26/3
28/14 29/2 32/12 40/11 40/12
40/23 41/4 54/21 58/9 59/13 99/3
103/20 107/2
integrated [1]  67/21
intend [4]  4/24 18/2 72/15 81/1
intended [3]  21/21 22/2 83/22
intends [1]  32/9
intent [5]  27/16 29/13 40/16
67/17 68/10
intention [3]  43/18 68/2 68/13
intentional [5]  60/7 61/15 70/10

70/14 92/5
interchangeable [1]  87/13
interference [1]  104/11
interfering [1]  106/22
intermediary [1]  75/17
interpreted [1]  28/11
interpreting [2]  27/22 27/24
interrupt [2]  36/14 95/9
interrupting [1]  4/4
interview [1]  87/5
introduce [2]  13/7 81/2
intrusive [1]  75/17
investigating [1]  83/10
investigation [6]  73/3 73/5 75/5
75/7 75/25 83/23
investigations [2]  77/13 83/11
investigator [1]  4/5
involve [1]  106/19
involvement [2]  55/3 76/1
involves [1]  103/13
involving [3]  39/11 77/15 77/19
ironclad [1]  74/7
irrelevant [2]  46/23 95/11
is [630]
is actual [1]  86/1
isn't [4]  46/3 50/3 58/2 91/14
issue [36]  10/21 10/22 11/10
13/14 15/8 24/5 27/2 32/21 38/10
40/25 48/3 49/19 50/14 50/15
51/23 54/6 63/9 65/11 67/14 68/5
69/10 73/21 77/8 79/4 83/19 84/12
90/12 91/4 91/22 92/13 94/13
94/21 95/25 99/7 105/17 105/17
issued [8]  72/7 72/8 72/18 79/17
79/24 79/25 81/8 84/12
issues [22]  3/22 3/24 4/13 15/1
18/15 18/15 19/6 26/8 26/13 26/25
35/23 45/20 48/6 49/16 50/16
50/23 51/22 51/22 69/7 95/8 95/21
107/1
it [387]
item [1]  6/12
items [4]  3/21 48/25 54/4 74/4
its [10]  13/9 19/19 20/12 23/4
32/16 32/23 56/4 74/24 80/2 84/14
itself [2]  44/20 79/19

**J**

January [22]  1/5 16/4 37/11 38/21
60/11 73/8 73/12 73/14 73/16
73/20 74/14 74/20 75/20 75/22
75/23 77/13 78/10 80/20 82/25
83/12 83/14 108/10
January 14th [1]  16/4
January 31st [1]  73/8
January 6 [17]  37/11 38/21 60/11
73/14 73/16 73/20 74/14 74/20
75/20 75/22 75/23 77/13 78/10
80/20 82/25 83/12 83/14
January 6, 2021 [1]  73/12
JARED [3]  1/6 3/3 3/17
job [1]  106/23
Johnson [1]  82/3
joined [1]  3/10
journal [2]  65/12 65/12
judge [12]  1/10 5/16 10/14 12/8
13/4 40/13 63/5 65/11 65/13 67/8
75/10 76/24
judges [2]  78/9 80/21
July [1]  75/1
July 15th [1]  75/1
jurisprudence [1]  63/16
juror [2]  38/15 62/19
jurors [11]  10/9 13/19 18/9 18/14
31/24 34/18 35/4 35/7 35/11 35/11
37/25
jury [47]  10/6 10/19 11/8 11/13
11/14 12/7 12/9 12/15 12/23 13/10
14/10 16/1 16/14 17/1 19/9 19/13
20/15 20/24 21/23 22/6 23/2 25/25
26/3 30/1 30/11 30/17 31/16 34/17
35/10 38/6 40/20 40/24 54/21 58/8

58/18 59/3 59/13 62/7 62/14 88/20
92/7 92/9 92/11 98/10 102/1 102/17
103/20 107/1
just [98]  3/22 3/23 4/6 4/17 5/7
7/8 9/7 10/22 12/22 13/2 13/22
14/1 14/2 14/2 14/2 14/16 14/23
14/25 15/4 16/16 17/9 18/17 24/5
25/3 25/5 28/4 29/3 29/11 30/1
30/7 30/16 34/15 34/19 37/19
38/19 38/20 39/2 40/3 40/14 41/14
43/9 50/14 51/2 53/9 53/12 53/17
53/20 53/24 54/7 56/5 58/15 58/21
59/7 60/23 62/25 63/4 63/8 64/4
64/9 64/16 64/20 65/7 65/10 65/17
66/23 68/13 68/21 68/23 72/3
72/14 76/10 76/18 77/8 77/18 80/7
80/11 83/14 86/19 89/5 89/23
90/14 91/1 91/12 91/14 92/20
92/23 93/14 93/18 94/5 95/1 95/6
95/10 100/16 101/13 102/4 102/14
106/9 106/14
justify [1]  80/13

**K**

keep [5]  10/12 10/12 43/4 58/17
58/22
kept [5]  42/24 43/1 83/2 83/13
83/16
key [1]  10/14
kidnapping [1]  95/6
kill [4]  35/10 35/11 39/10 39/10
killed [5]  37/11 38/10 38/11
38/24 39/22
kind [10]  41/4 41/9 42/14 42/17
43/19 43/23 44/13 47/23 48/3
104/5
kinds [1]  41/23
knew [3]  43/22 50/18 82/13
know [89]  3/25 5/2 6/22 7/21 8/2
8/5 9/3 9/10 10/16 12/2 12/6 13/6
13/19 15/1 15/9 16/4 16/8 16/17
16/23 17/7 18/2 19/1 29/6 30/6
30/22 30/24 33/1 35/16 35/20 36/8
39/2 39/11 40/8 40/13 41/4 42/15
43/16 43/18 46/7 46/7 46/15 46/24
48/5 48/14 48/18 48/22 48/23
48/24 49/3 49/4 49/4 49/5 49/11
49/23 49/25 50/8 50/11 50/19
51/14 51/15 52/9 52/10 62/1 62/9
62/14 63/1 65/11 66/25 70/10
77/23 85/3 85/8 86/19 88/20 88/23
89/10 91/1 93/5 93/6 94/1 94/25
100/25 101/15 101/17 101/23 102/4
103/19 104/5 105/16
Knowing [1]  75/22
knowingly [2]  34/9 55/21
knowledge [5]  75/24 79/21 79/22
80/19 92/9
known [1]  60/8
knows [2]  15/19 53/9
Kurt [3]  2/3 3/17 21/9

**L**

lacked [2]  73/13 80/7
lacking [2]  80/1 84/13
landing [1]  15/24
LANE [2]  1/6 3/3
language [22]  1/19 19/18 20/23
25/8 25/21 26/3 27/18 27/22 27/23
28/2 28/6 28/8 28/10 29/5 30/4
31/19 31/21 32/4 32/8 56/25 56/25
57/3
laptop [1]  82/10
large [2]  17/24 106/20
larger [1]  60/1
last [11]  4/20 7/6 18/8 23/23
28/17 46/10 53/17 53/18 54/8 63/2
65/5
lasted [1]  95/5
lasting [1]  35/25
late [2]  49/24 50/11
later [5]  11/14 12/11 20/17 39/20

**L**

later... [1]   103/20
law [43]   6/20 6/22 7/16 7/20
11/21 13/11 20/12 22/22 22/25
23/8 27/24 28/8 31/22 33/4 33/12
34/3 38/16 40/19 54/24 55/6 55/8
55/23 56/14 61/22 61/23 62/2 68/8
68/14 68/14 69/23 72/20 72/23
73/6 78/8 79/21 80/8 80/11 80/14
82/9 91/15 93/2 103/14 105/11
lawful [1]   103/15
lawless [16]   29/14 30/11 40/17
40/18 56/16 57/10 57/12 57/14
57/19 58/3
lawyer's [1]   67/7
lawyers [1]   45/25
lay [3]   62/10 62/11 62/18
lead [2]   15/25 75/14
least [13]   6/13 8/22 11/7 11/25
12/16 42/7 44/23 77/17 88/20 92/6
97/19 104/10 106/18
leave [3]   13/13 58/12 107/5
leaving [1]   106/21
Lee [18]   2/7 3/14 4/17 16/25
18/21 26/5 40/8 40/25 42/4 44/6
46/13 47/6 59/15 65/5 66/7 66/10
103/6 105/22
legal [5]   40/23 40/23 45/5 45/8
106/13
length [4]   17/25 18/11 43/14
48/11
Leon [11]   78/16 78/22 78/24 79/12
79/19 80/5 80/8 80/9 84/11 84/18
84/19
Leono [1]   99/18
less [8]   17/6 31/13 31/22 58/11
59/4 67/15 75/17 103/16
lesser [1]   31/17
let [24]   3/22 4/5 4/9 4/17 7/21
10/22 14/10 15/9 16/17 18/17 25/4
25/13 25/13 39/16 43/8 53/24 65/9
70/4 71/4 89/8 95/24 97/2 103/1
104/9
let's [7]   17/18 20/9 24/13 35/24
70/1 95/7 97/23
letter [5]   9/14 97/9 97/10 97/15
97/16
letters [2]   9/6 9/15
level [1]   68/21
levels [1]   60/22
liability [8]   12/2 27/15 27/15
28/11 34/1 34/3 54/22 55/20
liable [2]   33/22 57/2
life [2]   62/4 62/13
light [4]   39/12 59/5 95/19 105/25
like [46]   10/10 12/5 14/13 16/15
20/23 21/1 21/7 21/10 21/13 22/20
23/25 28/21 28/23 32/5 33/10
35/12 36/9 37/20 37/22 39/13 41/6
41/7 41/20 46/14 48/2 52/20 58/19
60/9 60/11 61/24 63/14 65/5 65/24
70/2 84/12 84/24 87/22 88/22
88/24 92/17 94/25 96/24 98/17
101/11 101/19 106/9
likely [13]   16/10 17/20 19/18
39/24 40/17 56/16 56/19 57/6 57/7
58/3 74/17 82/1 83/20
limine [1]   40/5
limit [6]   35/15 36/20 92/22
100/19 102/2 103/3
limited [7]   63/7 74/24 75/6 75/9
86/19 92/9 97/1
limiting [3]   94/4 100/17 103/8
LINDSAY [3]   1/22 108/3 108/12
line [6]   9/8 9/18 42/16 104/22
105/1 105/19
list [34]   3/21 4/22 5/3 5/14 6/10
6/13 13/16 13/22 14/6 14/18 14/21
14/24 17/22 54/4 89/23 90/6 96/22
96/25 97/7 97/18 97/19 98/4 98/11
98/15 98/16 99/25 100/8 101/4

**L** _(second column)_

101/12 102/16 103/7 104/4 106/3
listed [3]   7/9 97/6 98/15
lists [2]   97/21 97/25
literally [1]   48/16
little [8]   17/6 24/9 39/6 54/2
55/6 82/17 92/20 96/8
live [1]   43/6
LLC [1]   33/8
local [2]   49/21 95/22
located [1]   78/2
location [2]   72/25 81/17
long [9]   16/9 17/7 31/3 35/24
36/9 55/4 93/15 95/2 95/5
longer [3]   17/11 18/14 79/2
look [33]   5/6 8/2 12/14 20/4 20/7
23/2 23/3 23/7 24/2 25/16 26/8
26/9 26/10 26/11 30/4 32/18 34/14
35/22 53/24 58/7 62/17 63/1 63/5
65/14 69/5 70/6 70/11 86/15 88/16
90/3 90/5 90/7 106/11
looked [5]   20/5 33/23 65/2 75/4
90/16
looking [3]   13/5 13/12 40/10 54/7
70/3 70/4
lose [2]   15/15 94/5
loss [1]   70/8
lot [7]   9/11 41/16 62/21 63/1
92/25 94/21 94/25
lots [3]   65/22 65/23 93/10
loud [2]   94/21 94/23
lounge [2]   67/7 85/4
lower [1]   104/16
lunch [2]   54/2 54/14

**M**

made [5]   18/25 31/10 35/5 35/5
59/8
magistrate [7]   76/23 79/17 79/24
80/1 80/21 81/16 84/13
main [2]   2/8 60/2
mainly [1]   86/11
maintained [2]   55/6 81/22
make [18]   3/23 4/6 5/14 13/23
14/25 36/22 37/8 47/7 47/12 58/22
59/7 92/24 92/24 93/18 95/7 96/16
100/6 105/16
makes [5]   22/4 37/21 43/2 47/13
102/14
making [6]   15/22 20/14 21/25 32/9
60/1 93/22
manner [5]   68/11 70/9 70/10 70/14
92/4
manual [1]   43/3
many [5]   9/22 60/9 64/1 74/18
83/1
map [1]   89/1
material [4]   49/17 50/24 90/4
92/21
materials [16]   5/24 43/4 43/6
43/15 43/21 43/23 47/15 47/19
48/13 49/12 50/4 51/5 51/9 52/9
64/9 64/16
matter [7]   31/3 40/14 52/3 75/14
76/18 83/1 108/5
matters [2]   75/16 96/20
may [41]   3/21 6/16 11/11 13/17
13/18 14/5 14/21 15/16 15/22
18/10 22/24 26/12 26/24 27/20
29/20 32/22 34/18 38/5 46/5 46/9
60/19 62/10 62/13 68/19 72/7
72/18 72/19 73/9 76/5 76/21 79/10
79/22 91/3 91/4 93/16 93/21 95/11
95/21 97/11 100/25 107/5
May 5th [5]   72/7 72/19 76/5 76/21
79/10
maybe [21]   8/19 8/20 17/10 18/23
25/16 30/5 30/7 38/8 38/8 40/3
41/12 43/9 47/6 53/16 54/6 63/3
63/1 66/1 69/17 95/2 101/25
me [95]   3/22 4/9 4/17 7/21 8/10
10/22 11/16 12/11 13/16 14/6 15/9

**M** _(third column)_

15/9 18/6 18/17 19/21 20/23 21/7
22/7 22/24 23/5 24/2 24/15
25/4 25/13 25/15 25/22 26/9 27/21
32/2 33/6 33/13 36/8 38/1 39/6
39/8 39/16 41/25 42/10 43/2 43/8
43/11 46/23 47/6 51/22 52/20
53/24 54/15 58/13 60/25 61/1 61/3
63/2 63/5 63/6 63/8 64/8 65/5
65/9 65/10 68/4 69/3 69/5 70/4
70/17 71/4 71/9 71/15 85/5 85/11
85/11 85/13 86/15 86/20 86/21
87/11 88/17 89/8 89/19 89/23 90/7
90/17 92/16 93/7 93/14 95/2 95/24
100/25 101/20 102/1 103/1 104/9
104/10 105/23 106/11
me the [1]   85/5
mean [18]   7/22 8/19 9/9 12/20
15/13 17/6 21/2 21/24 24/18 25/23
31/7 52/16 57/15 93/16 93/22
93/23 95/1 102/13
meaning [2]   34/1 51/11
meaningful [1]   84/19
means [4]   13/8 21/14 30/7 105/5
measure [2]   70/6 70/12
Measures [1]   86/10
media [1]   83/1
Medicine [1]   65/12
meet [2]   43/16 48/15
meets [3]   29/11 30/14 43/25
members [2]   12/15 62/13
memorial [1]   15/14
memory [16]   10/10 67/13 67/14
67/21 68/20 69/12 70/7 87/8 91/2
91/3 91/4 93/16 93/21 94/1 94/8
94/15
mention [2]   45/3 45/21
mentioned [4]   13/18 49/18 72/18
97/5
merely [1]   55/3
messages [1]   73/7
meta [1]   87/22
methodology [3]   64/3 64/13 64/19
metro [1]   96/13
Metropolitan [2]   47/11 49/20
might [26]   11/18 16/19 19/2 21/8
22/20 31/18 38/25 39/11 39/2 39/25
42/13 43/6 44/21 47/12 56/19 59/3
62/18 62/19 63/15 82/5 82/7 83/24
99/24 102/17 105/23 106/8
mind [10]   8/17 40/8 68/20 69/11
73/4 74/21 77/15 83/25 93/19
103/12
minimal [1]   55/3
minute [3]   104/14 104/15 104/20
minutes [3]   36/1 36/2 104/6
misleading [1]   58/19
misled [1]   62/7
missed [1]   63/4
mistaken [1]   92/16
mobile [1]   82/10
modality [1]   85/19
modified [1]   56/8
modifies [1]   57/3
moment [7]   6/17 54/21 62/23 66/23
87/9 89/23 106/9
momentos [1]   83/17
Monday [9]   15/20 15/24 46/11
46/11 95/14 95/18 106/16 106/24
107/3
Monroe [1]   28/5
months [1]   82/14
moot [2]   72/14 81/5
more [34]   17/17 19/24 20/12 23/25
25/8 29/12 29/20 30/8 30/21 32/10
37/21 38/13 39/6 39/13 39/13 41/1
41/12 41/25 43/15 41/17 69/10
77/15 79/10 88/7 91/12 92/14 93/7
93/18 94/13 96/8 96/24 103/20
103/25 104/2
morning [10]   3/6 3/8 3/9 3/12
3/13 3/15 3/19 5/9 15/22 17/19
MOSS [2]   1/9 40/14

**M**

**most [6]** 9/14 16/10 23/4 23/10 23/17 23/18
**mostly [1]** 85/18
**motion [21]** 5/20 6/5 6/14 13/10 13/13 40/5 41/14 45/17 45/17 46/16 48/9 48/20 50/8 50/9 50/10 52/12 52/19 72/10 72/14 81/5 85/1
**motions [6]** 4/14 4/19 5/12 72/2 72/3 84/22
**motive [1]** 74/18
**move [2]** 56/19 57/16
**moved [1]** 72/4
**moving [1]** 28/13
**Mr [55]** 10/17 17/25 24/23 35/5 35/12 41/21 46/25 47/1 47/8 47/22 50/12 58/16 58/16 58/22 59/7 67/24 68/19 72/9 73/8 73/12 73/19 74/13 75/12 75/21 75/22 76/2 76/13 76/25 77/6 77/15 78/25 80/5 80/18 80/23 81/3 81/6 81/10 82/9 83/8 83/21 84/6 91/2 91/8 91/12 91/24 93/15 93/21 94/7 94/8 94/18 95/24 102/18 102/19 102/23 104/2
**Mr. [23]** 4/5 4/18 6/15 8/14 9/25 11/16 25/18 27/20 32/14 39/10 44/16 44/25 46/9 51/1 51/4 52/7 58/15 59/15 90/17 90/25 91/18 92/10 93/4
**Mr. Grade [7]** 4/5 44/16 44/25 46/9 51/1 51/4 52/7
**Mr. Hermansen [11]** 4/18 6/15 8/14 9/25 11/16 25/18 27/20 32/14 58/15 59/15 90/17
**Mr. Wise [5]** 39/10 90/25 91/18 92/10 93/4
**Ms [8]** 4/23 6/24 16/25 18/21 26/5 40/8 40/25 103/6
**Ms. [20]** 4/17 8/20 13/20 25/18 42/4 43/8 43/9 44/6 46/13 46/19 47/6 48/1 58/24 59/15 65/5 66/7 66/10 97/4 104/9 105/22
**Ms. Fontan [6]** 8/20 25/18 43/8 58/24 97/4 104/9
**Ms. Lee [10]** 4/17 42/4 44/6 46/13 47/6 59/15 65/5 66/7 66/10 105/22
**Ms. Rocha [4]** 13/20 43/9 46/19 48/1
**much [6]** 13/12 18/13 41/25 43/1 68/22 75/8
**multimedia [1]** 73/7
**multiple [3]** 10/9 101/9 101/13
**murder [1]** 95/6
**must [12]** 28/19 28/23 28/25 29/5 29/12 34/9 55/21 57/10 57/13 57/19 57/24 62/9
**my [52]** 3/21 5/6 6/10 6/12 8/24 9/7 10/10 10/16 11/2 13/2 15/25 17/14 19/23 20/5 21/8 22/11 23/4 23/9 23/12 27/25 34/23 35/11 35/13 35/18 38/19 40/22 40/23 41/3 44/14 46/16 52/8 54/4 56/2 58/12 61/4 62/12 62/17 62/25 63/7 64/18 64/19 68/7 68/25 71/24 72/13 77/15 86/19 89/14 95/1 103/12 105/8 105/23
**myself [1]** 96/7

**N**

**N.W [1]** 1/16
**name [7]** 3/5 9/21 13/23 72/20 99/4 101/19 102/4
**named [4]** 6/21 7/11 10/3 20/15
**names [15]** 5/14 7/1 8/6 10/25 13/17 13/17 13/24 14/5 14/6 14/23 53/10 53/11 53/11 53/17 53/18
**naming [2]** 11/3 104/7
**narrow [2]** 25/8 102/14
**narrowed [7]** 7/15 7/22 9/15 96/23 104/14 104/21 106/7
**narrowing [1]** 9/7

**narrowly [1]** 49/15
**narrowly [1]** 44/7 93/2
**navigate [1]** 34/23
**Nazi [2]** 24/23 35/9
**near [1]** 94/13
**necessarily [2]** 14/8 19/5
**need [29]** 4/13 5/6 8/19 12/2 12/15 14/9 14/17 15/8 25/15 30/11 30/15 41/1 43/16 53/1 53/13 53/23 62/25 74/7 86/19 89/10 90/3 94/2 96/17 98/12 99/4 100/4 100/22 104/4 106/16
**needed [4]** 15/3 80/14 96/10 105/15
**needs [8]** 3/25 4/7 5/22 6/21 11/8 14/15 41/25 74/8
**neglect [1]** 45/21
**neglected [1]** 45/3
**negligent [1]** 80/13
**neutral [5]** 38/20 79/17 79/24 79/25 84/12
**new [3]** 48/23 65/11 70/17
**news [2]** 38/23 83/1
**next [7]** 1/19 7/6 46/12 48/5 56/18 62/15 97/1
**nexus [1]** 74/4
**nice [2]** 41/22 85/8
**nicely [1]** 57/23
**Niewenhous [2]** 24/23 35/8
**nine [33]** 9/17 53/12 96/23 96/23 97/1 97/2 97/6 97/6 97/7 97/11 97/14 97/14 98/2 98/5 98/9 99/9 99/12 99/19 99/20 99/22 99/23 100/7 100/8 100/8 100/9 100/10 100/11 100/12 100/12 100/13 100/16 102/15 103/4
**Ninth [2]** 10/11 22/25
**no [32]** 1/4 4/9 5/24 6/9 6/9 35/19 43/18 44/9 49/23 51/6 51/6 51/6 51/25 52/10 53/4 70/1 71/7 73/19 78/23 79/2 80/10 80/15 82/17 90/14 93/12 93/12 95/19 100/6 100/6 100/25 102/24 105/2
**noise [1]** 62/21
**non [1]** 98/11
**non-exhaustive [1]** 98/11
**none [2]** 38/9 39/21
**nonexpert [1]** 91/9
**normally [2]** 60/12 67/21
**not [161]**
**Notably [1]** 73/12
**noted [2]** 45/17 77/8
**nothing [1]** 67/25
**notice [2]** 11/5 24/22
**notion [2]** 92/20 106/19
**notorious [1]** 15/18
**notwithstanding [1]** 58/5
**novel [1]** 79/2
**novelty [1]** 78/21
**November [8]** 72/8 72/19 72/22 73/6 73/8 76/2 76/21 79/11
**November 1st [2]** 72/22 73/8
**November 23rd [6]** 72/8 72/19 73/6 76/2 76/21 79/11
**now [19]** 4/14 7/15 13/25 25/19 27/6 27/19 29/8 30/9 30/23 30/24 31/4 31/5 47/4 54/6 58/12 63/4 69/9 103/7 103/11
**nullity [1]** 80/8
**number [9]** 3/2 3/21 8/17 38/22 59/19 61/7 67/1 72/22 106/8
**numbers [3]** 89/8 89/10 96/17
**NW [1]** 1/23

**O**

**object [1]** 12/18
**objecting [2]** 12/13 88/22
**objection [8]** 4/8 18/6 19/3 19/7 25/24 28/13 52/10 89/7
**objections [2]** 18/10 19/20
**objects [1]** 37/13

**obstruct [1]** 83/23
**obstruction [1]** 104/24
**obstructing [3]** 20/21 104/21 105/5
**obstruction [2]** 104/11 105/3
**obstructive [1]** 105/1
**obstructs [1]** 103/14
**obtain [1]** 81/24
**obtainable [1]** 48/7
**obtained [2]** 73/11 79/20
**obtaining [1]** 75/16
**obviously [8]** 8/9 15/5 16/8 17/7 17/24 29/1 55/14 78/6
**occurred [3]** 74/20 74/20 80/19
**occurring [1]** 91/13
**October [3]** 13/22 59/22 98/16
**October 7th [1]** 59/22
**odds [1]** 3/23
**off [5]** 6/12 90/4 93/1 95/8 105/6
**offense [3]** 27/11 27/16 104/7
**offense's [1]** 27/17
**offenses [2]** 83/2 83/3
**offer [3]** 40/7 90/12 92/13
**offered [1]** 65/20
**office [11]** 2/4 44/9 45/8 45/23 46/4 46/20 51/2 51/7 51/13 51/20 96/2
**officer [26]** 6/21 7/18 7/18 20/13 24/23 35/8 49/23 60/17 60/18 60/19 61/23 62/3 79/21 80/16 83/5 87/6 88/8 101/15 101/16 101/16 101/19 101/21 102/8 103/3 103/4 103/14
**officer's [4]** 10/7 78/20 83/7 102/4
**officers [78]** 7/11 7/19 7/20 7/22 8/2 8/5 8/8 8/11 8/17 8/18 8/21 8/23 8/25 9/8 9/10 9/16 9/17 9/20 11/4 20/13 20/13 20/13 20/21 30/25 37/11 38/2 38/9 38/13 38/24 39/11 39/22 42/17 47/4 49/19 53/10 53/12 60/17 61/19 61/22 69/24 73/17 79/3 79/5 79/16 82/11 87/2 87/18 97/6 97/8 97/18 97/19 97/21 97/25 98/3 98/17 98/25 98/25 99/4 100/4 101/9 101/10 102/2 102/11 103/3 103/4 103/23 104/4 104/8 104/10 105/1 105/6 105/16 105/25 106/2 106/4 106/6 106/20 106/22
**officers' [1]** 47/3
**official [6]** 1/22 80/2 84/14 106/4 108/3 108/13
**officials [1]** 49/21
**Ofisi [1]** 55/15
**often [1]** 84/3
**oh [3]** 11/16 65/5 66/23
**Ohio [1]** 56/11
**okay [68]** 5/2 5/17 6/1 6/6 6/12 9/20 11/11 15/10 16/12 17/14 17/18 18/6 18/16 19/9 20/16 21/19 24/7 26/7 26/15 26/17 26/23 32/13 33/6 33/13 33/15 33/17 34/14 34/25 35/21 36/2 36/13 37/5 39/18 40/2 41/12 45/2 45/11 48/1 53/15 53/19 59/11 61/9 61/12 64/14 65/17 66/4 66/6 66/12 66/24 70/18 70/24 71/19 71/20 86/7 87/15 88/5 88/12 90/8 96/2 97/4 98/9 99/8 99/16 100/1 100/2 103/5 104/16 104/18
**older [2]** 81/23 96/24
**once [1]** 58/8
**one [62]** 6/16 6/19 10/1 10/3 10/16 11/11 12/6 12/7 13/4 13/10 13/16 20/12 25/1 25/20 30/19 30/21 31/3 31/25 32/3 33/7 39/5 40/4 41/12 41/14 44/23 47/13 48/25 49/5 49/6 56/19 57/5 59/3 60/5 60/5 60/6 60/9 61/1 62/6 66/23 67/16 67/18 68/2 69/13 71/10 71/12 72/18 77/13 78/12

one... [14]   79/1 80/23 82/5 82/7
83/14 84/12 85/19 86/14 89/4 93/6
96/21 98/16 98/17 101/14
one's [3]   67/17 68/12 92/5
ones [3]   39/23 89/21 98/10
online [1]   41/19
only [21]   15/8 18/22 28/10 29/9
32/19 34/24 36/22 40/15 57/21
58/7 59/3 63/7 68/6 68/9 73/22
74/8 79/20 86/22 94/8 98/14
102/25
open [4]   16/21 31/21 39/13 89/5
open-source [1]   89/5
opening [13]   35/25 36/9 36/14
36/21 40/8 40/11 88/22 89/12 93/7
93/8 93/17 95/2 95/10
openings [2]   40/24 92/21
opens [1]   37/25
opinion [9]   39/2 59/19 59/20 61/3
62/18 67/3 69/23 75/10 92/3
opinions [2]   18/24 59/23
opportunity [1]   71/17
opposed [2]   29/2 42/14
opposite [1]   39/21
optimistic [1]   17/4
order [5]   19/19 51/8 71/14 100/3
105/16
order to [1]   71/14
ordered [1]   6/4
ordering [3]   4/16 91/6 100/19
OREGON [5]   2/4 2/8 3/14 3/17 81/9
original [4]   48/12 98/15 104/13
106/5
other [39]   3/21 6/19 7/16 9/3 9/5
12/12 12/14 12/16 13/4 16/11
17/18 30/7 31/4 36/17 37/17 38/17
39/23 45/20 46/1 48/6 49/17 50/16
56/6 56/23 57/9 61/18 61/22 63/7
68/20 76/16 76/17 78/9 81/25 88/1
89/4 89/5 90/4 102/22 102/25
others [2]   39/15 104/25
otherwise [5]   11/9 39/4 43/6
44/22 85/21
ought [1]   15/7
our [37]   3/20 4/5 7/13 8/9 9/16
9/17 9/17 11/25 13/24 14/18 16/7
16/10 16/17 23/1 23/2 29/6 29/25
34/8 44/12 44/16 44/18 48/20
51/14 54/1 86/10 96/25 98/3 98/15
98/16 99/3 100/12 100/22 102/10
103/2 104/13 104/24 105/13
ourselves [1]   100/20
out [16]   9/10 12/18 14/9 19/18
21/4 23/1 25/17 32/7 32/23 39/4
67/7 73/17 79/1 90/7 96/17 102/1
outcome [1]   18/24
outside [1]   96/11
over [7]   39/15 41/15 52/5 54/14
83/20 102/6 104/5
overall [1]   48/3
overbreadth [1]   76/9
overbroad [2]   73/9 73/15
overestimate [1]   36/11
overlap [1]   98/2
overwritten [1]   82/21
own [1]   62/25

P

p.m [2]   90/10 107/6
page [31]   1/19 20/9 20/9 20/11
20/18 22/12 24/5 24/5 24/8 26/18
26/20 34/7 54/12 60/7 61/10 64/2
64/6 64/8 64/14 81/19 87/11 87/13
87/16 87/21 87/21 87/25 88/1 88/6
88/8 88/13 95/7
pages [6]   54/15 61/16 64/17 65/14
81/21 86/16
panic [4]   71/5 71/8 71/10 71/11
paper [1]   68/16
parading [1]   26/19

paragraph [11]   56/18 58/7 58/8
58/20 58/21 85/18 85/20 85/21
85/24 85/25 86/8
paragraphs [1]   67/8
paralegal [1]   3/10
parse [1]   35/4
part [24]   5/12 6/13 6/23 9/9 9/16
9/16 20/19 27/17 40/6 55/7 60/5
60/5 60/6 67/2 70/19 97/14 97/23
97/24 98/21 101/6 101/13 102/7
103/2 105/3
partial [1]   55/3
partially [1]   77/17
participants [2]   83/15 87/19
participation [4]   28/7 83/3 83/4
83/13
particular [23]   4/15 8/4 10/1
10/25 19/6 38/5 39/14 43/7 44/12
44/13 47/19 49/16 49/19 49/23
63/22 74/24 77/19 78/2 82/25 83/9
86/16 90/19 92/10
particularly [3]   15/21 40/11
105/25
particulars [9]   5/12 6/17 10/22
10/23 11/3 11/12 105/12 105/15
105/25
parties [5]   23/7 25/13 51/11 56/4
84/23
party [3]   47/2 51/20 91/16
passages [1]   69/5
passes [1]   82/7
passing [1]   68/22
past [7]   22/1 22/4 22/5 41/17
42/1 44/24 105/14
path [1]   95/10
paths [1]   94/6
Patrol [2]   72/13 80/25
pause [8]   5/18 21/24 22/11 47/21
53/8 53/25 66/14 66/21
paused [1]   46/16
payment [1]   72/20
peer [3]   65/13 70/5 70/11
peer-reviewed [3]   65/13 70/5
70/11
penalized [1]   33/19
pending [1]   48/19
people [13]   31/20 36/14 38/20
38/22 38/22 38/24 39/25 60/1 64/1
87/5 88/10 93/9 104/6
people's [1]   37/14
perceive [1]   34/18
percent [7]   70/2 87/19 87/21
87/23 88/8 88/9 88/14
percentages [1]   87/18
perception [3]   37/7 67/22 85/20
perceptions [1]   88/8
perfectly [1]   93/20
perform [1]   106/23
performance [1]   54/12
perhaps [4]   11/18 23/1 32/5 68/21
perimeter [1]   15/2
period [10]   18/14 74/15 74/17
77/21 78/3 82/2 82/7 104/14
104/15 104/21
periods [1]   83/20
permissible [1]   58/2
permit [1]   56/13
perplexed [1]   11/18
person [22]   12/6 12/7 12/8 15/3
30/4 32/22 62/15 63/21 70/9 82/18
95/20 96/3 96/5 101/4 101/11
101/16 101/16 101/17 101/23 102/6
102/25 103/17
person's [1]   55/2
personal [1]   43/2
personally [4]   32/23 42/20 62/1
93/4
personnel [6]   5/21 5/22 41/17
42/25 43/2 43/7
persons [1]   73/1
perspective [3]   16/6 36/8 102/15
persuaded [3]   79/11 102/13 106/18

persuasive [1]   78/15
pertaining [2]   57/5 57/5/9
Peyton [2]   2/7 3/14
PhD [1]   62/3
phone [2]   73/14 78/2
phones [3]   75/19 82/10 83/16
photo [1]   81/4
photographs [1]   83/2
phrased [2]   28/20 37/18
phrases [1]   57/24
phrasing [2]   18/3 28/23
physiological [1]   54/11
pick [2]   16/14 93/11
picketing [1]   26/19
picking [1]   17/1
piece [1]   68/7
pinpoint [1]   34/6
place [5]   18/23 46/21 56/4 77/20
77/21
Plaintiff [2]   1/4 1/12
planning [3]   74/19 75/24 80/18
plant [2]   33/19 33/20
play [3]   35/8 35/9 35/10
pleadings [1]   19/23
pleas [1]   56/24
please [2]   3/4 26/14
plus [1]   103/4
podium [1]   3/4
point [40]   5/5 5/23 11/12 14/21
15/23 23/20 24/2 25/15 25/17 28/4
29/10 29/24 30/18 30/22 31/3 31/7
31/10 38/6 42/3 42/4 43/16 49/24
54/15 55/15 61/3 62/22 69/19
70/22 78/11 80/23 86/2 86/23
89/25 90/15 90/18 90/19 92/10
98/12 101/4 106/18
pointed [9]   32/7 55/9 55/15 60/25
61/1 63/2 64/21 90/17 92/8
poisonous [1]   72/12
police [17]   13/23 37/11 39/11
47/5 47/11 49/20 49/21 54/10
60/10 60/10 60/10 60/12 60/12
87/2 104/22 105/1 105/19
Police's [1]   47/12
policies [5]   47/7 47/8 47/12 49/1
50/2
policy [3]   47/13 49/9 50/19
political [1]   56/23
portion [5]   53/17 67/2 68/13 99/1
100/5
Portland [9]   2/9 45/5 45/9 45/22
46/4 46/20 51/2 51/7 52/3
pose [2]   31/23 37/24
posed [1]   62/23
posing [1]   62/24
position [8]   30/22 34/23 48/14
49/4 55/18 100/22 101/2 102/10
possessed [2]   75/18 82/6
possessing [1]   33/19
possible [7]   15/19 16/19 16/21
17/23 41/6 46/6 83/21
possibly [1]   13/9
posted [1]   83/2
potential [3]   15/16 30/18 38/15
potentially [5]   8/2 34/16 75/23
80/18 91/11
power [1]   56/23
preadmission [1]   89/13
precedent [4]   23/5 55/14 78/22
79/4
precisely [1]   103/24
preference [4]   58/22 66/18 96/5
96/25
prejudicial [1]   92/14
preliminarily [1]   44/1
preliminary [11]   19/9 19/12 20/10
20/14 25/25 26/3 28/14 40/12
54/21 58/8 59/13
prepare [1]   66/1
prepared [4]   16/20 67/12 72/1
94/12
preparing [1]   42/10

**P**

prescribed [1]  56/14
present [5]  3/18 75/19 77/24
84/19 106/15
presentation [1]  16/3
presented [5]  6/3 16/2 57/1 81/16
95/9
preserved [1]  20/16
President [1]  15/15
presidential [2]  18/25 78/4
press [1]  56/13
pressure [1]  54/12
Presumably [1]  9/2
presume [2]  49/11 95/20
pretrial [1]  1/9 3/20
pretty [3]  11/25 23/1 56/9
preview [1]  32/11
previous [2]  25/6 44/18
previously [9]  6/4 25/16 31/11
40/5 44/9 60/15 60/24 67/11 72/10
principal [10]  10/18 11/19 11/20
12/3 12/3 22/23 34/10 54/24 55/7
55/22
principals [9]  4/17 4/22 4/25
7/14 8/1 10/2 12/17 53/11 106/3
principle [2]  11/20 56/12
print [1]  67/7
printers [1]  85/4
prior [2]  60/14 78/18
privacy [1]  78/1
probability [1]  73/22
probable [14]  73/10 73/13 73/22
76/6 79/13 80/2 80/7 81/3 81/11
81/17 83/5 84/6 84/14 84/17
probably [7]  9/3 12/17 18/1 32/11
40/25 95/4 96/8
probative [1]  92/14
problem [10]  9/9 29/1 40/13 40/21
68/2 68/3 97/23 97/24 98/22
101/13
proceed [1]  48/9
proceeding [1]  106/1
proceedings [2]  107/6 108/5
process [4]  12/5 50/3 50/7 52/4
produce [2]  48/13 56/16
produced [4]  5/22 5/25 43/20 69/4
producing [1]  56/15
products [1]  33/20
proffered [1]  91/8
prohibited [1]  77/5
prone [1]  62/21
prong [1]  20/20
proof [2]  74/7 97/20
proper [4]  48/17 50/3 50/5 62/11
properly [2]  57/11 79/22
property [3]  77/21 77/22 77/25
proposal [1]  58/13
proposing [1]  32/11
proposition [1]  55/10
prosecution [3]  11/23 51/15 52/14
prospective [1]  13/19
protect [2]  29/20 35/16
protected [6]  28/22 35/6 41/5
57/11 57/13 57/20
Protection [2]  33/20 33/21
protestors [1]  37/11
prove [6]  21/6 21/17 28/25 29/23
101/2 101/21
provide [11]  5/13 13/24 44/15
44/22 45/6 45/9 48/8 49/4 51/3
73/18 105/13
provided [16]  4/25 6/4 8/7 8/10
9/16 49/17 51/4 51/10 52/9 83/7
98/3 98/14 100/13 102/12 103/1
103/1
provides [1]  74/2
providing [1]  101/12
provoke [1]  57/16
proximity [4]  8/23 8/25 25/22
25/23
psychological [1]  54/11

**Q**

psychologists [1]  64/4
psychology [3]  54/7/4 54/7/4
public [6]  2/3 2/7 3/14 3/16
17/15 77/22
publically [1]  44/13
pull [5]  9/14 67/4 71/4 71/8
105/11
pulled [2]  9/6 67/3
pulling [1]  27/18
purely [2]  16/16 57/24
purpose [1]  30/3
purposes [12]  13/18 14/3 18/13
32/10 40/10 46/4 78/4 82/6 100/17
104/11 105/21 106/15
pursuant [4]  72/6 76/3 76/23 81/8
push [1]  105/6
put [10]  16/17 18/23 42/5 53/11
53/16 58/10 67/3 75/2 91/15
102/16
puts [1]  86/17
putting [2]  48/5 91/23

**Q**

qualifications [1]  59/23
qualified [1]  54/8
qualify [1]  69/1
Quantico [1]  49/12
quantity [1]  55/4
quash [8]  6/7 41/14 45/17 45/18
46/16 46/18 52/13 52/19
question [44]  8/4 8/24 15/11
15/25 18/23 22/25 31/15 36/25
37/4 37/10 37/18 37/24 38/5 42/14
42/18 47/1 54/5 54/6 54/22 55/23
56/6 57/1 59/14 60/24 61/4 62/23
63/24 64/14 64/20 67/10 70/16
79/13 90/13 90/24 91/6 94/10
94/18 95/24 98/6 98/6 102/14
105/9 105/9 106/2
questioning [1]  42/16
questions [8]  11/14 13/15 14/23
37/14 38/1 38/17 38/25 44/4
quickly [4]  48/7 81/13 82/1 99/23
quieter [1]  88/9
quite [4]  54/24 55/25 80/3 84/15
quote [2]  56/12 62/8
quotes [2]  55/18 56/11

**R**

rabbit [1]  92/25
raise [8]  3/22 12/10 12/22 15/1
18/10 20/17 26/1 51/23
raised [2]  50/16 52/12
raises [2]  45/19 76/8
raising [2]  31/15 37/19
RANDOLPH [1]  1/9
range [7]  73/9 80/13 80/16 80/17
80/20 80/22 88/10
rather [10]  18/13 36/11 48/8
53/20 74/8 76/21 77/9 82/20 97/12
106/13
rather just [1]  53/20
reach [2]  78/11 96/17
react [1]  60/2
reactions [1]  71/11
reacts [1]  60/5
read [17]  5/3 7/1 53/13 54/14
57/12 57/18 57/18 62/25 63/6 67/8
71/16 86/20 86/21 87/12 97/2
99/14 100/16
readily [1]  46/21
reading [8]  21/9 21/15 21/16
21/17 53/10 57/20 64/19 96/21
reads [3]  25/3 56/21 57/9
ready [5]  48/24 51/2 89/23
real [5]  51/22 60/18 62/13
realistic [1]  16/5
realistically [1]  100/24
realize [1]  56/23
really [15]  7/13 8/24 30/8 30/11
36/9 41/24 42/15 48/17 49/14
50/14 50/18 67/6 94/13 99/23

101/23
reason [10]  24/10 26/4 35/15
38/24 42/20 47/10 52/6 52/17
73/20 78/23 80/10 93/12 93/13
94/10
reasonable [17]  28/19 28/24 29/5
29/13 47/24 74/9 74/12 78/1 78/20
79/16 80/15 81/16 83/6 101/21
102/1 102/17 102/17
reasonably [2]  80/17 82/7
reasoning [1]  78/14
reasons [8]  59/19 67/18 68/17
69/13 76/10 77/6 84/9 103/21
rebuttal [1]  18/3
recall [2]  67/24 72/4
received [5]  42/8 42/14 42/21
42/23 45/24
recent [3]  9/14 19/24 23/5 23/10
23/18 63/15 77/2
recently [3]  13/22 33/8 61/20
Recess [2]  54/19 90/10
recognition [1]  15/14
recognize [1]  80/15
recollection [5]  23/4 23/10 23/12
27/25 56/2
reconvene [1]  95/13
record [13]  3/5 5/3 7/2 7/8 29/20
53/11 53/14 53/17 69/22 96/22
97/2 99/14 108/5
records [23]  41/19 42/24 44/16
44/23 44/24 45/6 45/10 45/15
46/17 50/17 72/21 73/7 73/14
74/14 75/13 75/16 75/19 75/20
75/21 81/10 82/12 83/19 84/3
recovered [3]  82/14 82/23 84/3
red [5]  23/1 23/13 23/14 56/3
89/2
refer [5]  40/6 67/20 85/2 86/2
101/15
reference [3]  64/9 64/15 64/16
referenced [3]  18/1 69/4 75/20
references [1]  54/13
referred [2]  64/8 97/9
referring [2]  40/19 70/13
regard [1]  94/16
regarded [3]  57/10 57/13 57/19
regards [1]  42/24
regulation [1]  50/19
regulations [2]  49/1 50/1
rehabilitate [1]  94/14
reject [1]  76/9
related [7]  19/1 72/16 72/21 73/4
73/21 76/16 83/1
relating [5]  13/15 40/7 72/5
72/12 74/18
relevance [6]  18/12 43/17 43/21
43/24 48/6 91/22
relevant [21]  19/5 24/2 42/9
48/15 50/17 50/23 74/9 74/13
75/14 75/23 75/24 80/18 82/12
83/25 90/22 90/23 91/17 94/6 94/8
94/8 95/8
reliable [1]  81/24
reliance [1]  79/16
relied [3]  56/11 64/21 76/15
relies [1]  61/6
rely [2]  76/20 76/22
relying [7]  20/2 32/19 34/11
59/21 61/18 65/7 88/3
remain [1]  92/2
remaining [5]  24/11 24/12 24/18
35/22 54/5
remains [3]  4/18 16/4 82/20
remember [8]  13/21 22/11 61/1
87/2 87/6 94/1 94/9 104/20
remembering [1]  9/7
remnants [1]  82/14
remote [1]  96/10
remotely [2]  95/23 96/3
remove [1]  83/22
removed [3]  46/24 94/7 94/11
render [3]  80/2 80/8 84/14

**R**

**report [11]** 59/22 61/7 61/11 64/2 64/6 64/8 66/11 67/19 67/20 69/13 71/23
**reported [1]** 82/25
**Reporter [4]** 1/22 1/22 108/3 108/13
**reports [2]** 38/4 69/4
**represented [3]** 10/24 25/15 47/22
**request [11]** 19/11 37/1 37/4 39/20 39/24 41/17 43/5 44/14 48/19 50/2 102/2
**requested [2]** 6/7 48/25
**requesting [3]** 5/20 5/20 37/10
**require [2]** 28/9 31/1
**required [11]** 7/17 11/3 11/5 29/23 30/23 30/24 33/5 55/24 79/15 105/24 106/17
**requirement [1]** 30/9
**requires [6]** 17/20 27/15 28/6 54/23 73/22 91/5
**reread [1]** 56/7
**resale [1]** 82/6
**research [3]** 70/17 87/17 106/14
**reserved [1]** 40/5
**residence [3]** 72/10 81/9 82/10
**resolve [1]** 40/4
**resolved [5]** 3/24 3/24 3/25 30/5 32/6
**resolves [1]** 59/12
**resources [1]** 86/14
**respect [46]** 4/1 4/19 5/22 11/12 11/14 13/13 18/18 19/12 26/1 26/3 40/6 41/13 42/9 56/22 59/13 62/9 67/11 67/12 68/10 68/18 68/20 69/2 69/11 69/11 69/18 72/11 76/2 76/9 76/12 76/20 77/10 77/14 79/10 80/19 82/24 90/12 90/21 90/24 91/2 91/13 92/1 92/2 92/4 92/9 93/3 96/18
**respectfully [1]** 32/15
**respond [3]** 51/21 52/16 52/24
**responder [1]** 69/24
**responds [1]** 70/15
**response [6]** 69/17 80/4 91/15 98/6 98/6 98/7
**responsible [1]** 32/22
**responsive [1]** 6/3
**rest [2]** 90/15 99/9
**restrict [1]** 97/20
**restricted [7]** 15/2 24/11 24/12 24/18 25/9 89/2 89/2
**restroom [1]** 62/16
**result [1]** 67/23
**resume [1]** 61/20
**retire [1]** 61/24
**return [3]** 36/24 37/3 53/14
**returned [1]** 10/13
**reviewed [4]** 65/13 65/18 70/5 70/11
**reviewing [1]** 18/22
**rhetoric [1]** 57/23
**RICO [1]** 95/5
**right [82]** 3/12 3/19 4/23 5/19 6/24 8/14 9/9 9/12 9/24 9/25 12/21 13/3 13/15 14/19 18/16 19/14 19/18 22/8 22/10 22/18 23/13 24/17 25/4 26/7 27/3 28/16 32/13 34/12 35/21 35/22 36/4 36/23 37/5 38/18 40/2 41/12 43/8 44/6 46/19 48/1 48/10 49/9 49/10 53/3 53/5 54/1 54/18 54/20 57/22 58/23 59/11 59/12 60/23 62/2 65/9 67/5 69/18 71/21 71/25 84/23 86/2 86/25 88/16 88/17 89/3 89/14 90/9 90/11 90/16 90/25 93/16 96/18 99/6 99/6 99/19 100/25 101/8 101/14 101/17 105/4 105/22 106/9 107/3
**rightfully [1]** 12/18
**rights [2]** 35/14 77/1
**ringing [1]** 87/7

**riot [1]** 83/15
**rioters [1]** 82/6
**ripe [1]** 43/11
**risk [10]** 31/15 31/23 32/1 32/2 58/18 59/2 59/3 59/5 59/6 59/6
**road [3]** 39/15 51/23 91/5
**Rocha [6]** 1/12 3/9 13/20 43/9 46/19 48/1
**role [2]** 71/5 71/10
**room [2]** 1/24 96/1
**rooms [1]** 96/2
**Rosemond [3]** 27/7 32/21 55/1
**rounds [1]** 42/22
**RPR [1]** 108/12
**rubric [1]** 86/13
**rule [1]** 50/19
**ruled [2]** 6/22 50/9
**rules [3]** 48/25 50/1 50/22
**ruling [1]** 85/1
**Rumson [1]** 7/4
**run [2]** 18/14 53/22
**Rylant [13]** 54/8 60/13 60/25 64/2 64/21 65/2 68/3 85/2 88/3 90/21 90/10 91/17 92/1
**Rylant's [2]** 59/14 66/11

**S**

**safer [1]** 18/4
**safest [1]** 18/1
**said [40]** 12/14 13/2 13/5 14/3 23/5 24/20 26/8 27/25 29/2 29/16 32/22 34/9 41/7 45/5 45/9 45/11 51/25 51/25 56/24 59/4 61/2 61/3 63/5 65/2 65/5 65/22 68/4 69/12 69/25 70/5 71/20 79/21 80/23 87/19 90/25 93/1 94/19 97/11 102/3 102/23
**salient [1]** 85/21
**same [24]** 5/1 7/8 7/10 12/24 14/4 18/3 24/4 24/4 24/6 29/16 34/3 62/23 64/18 66/16 67/10 76/8 76/10 79/4 79/5 86/5 86/12 88/6 95/7 100/8
**Sarah [1]** 1/12 3/9
**satisfied [1]** 74/2
**satisfy [1]** 69/1
**saw [3]** 46/25 91/12 91/19
**say [48]** 12/1 17/18 18/2 18/5 19/8 20/24 21/17 22/21 23/10 23/13 24/18 33/25 34/15 37/2 37/23 38/6 38/7 38/8 38/9 39/21 41/6 45/19 47/18 51/24 53/18 57/12 57/18 57/18 57/22 62/8 62/17 63/9 65/11 67/8 70/11 80/9 85/19 92/18 92/19 92/22 92/23 93/9 93/17 93/18 93/20 95/7 97/15 98/17
**saying [28]** 6/20 21/8 21/8 24/23 24/24 25/21 27/19 28/22 28/23 30/4 31/3 34/25 35/8 35/13 39/9 40/13 50/12 51/6 52/7 58/2 58/20 60/17 60/18 78/6 93/18 94/5 101/25 104/23
**says [21]** 11/21 16/3 20/12 20/13 20/20 22/14 23/19 24/10 26/18 26/20 32/17 42/15 56/1 56/11 57/13 58/20 63/8 64/19 67/23 68/16 68/16
**scans [2]** 85/19 86/1
**scheduling [1]** 18/15
**scholarly [2]** 61/2 61/17
**science [6]** 63/13 63/14 63/14 63/22 64/5 86/1
**scientific [5]** 62/10 62/24 63/12 63/23 68/11
**scope [3]** 7/15 34/2 74/24
**screenshot [2]** 7/8 89/6
**scrum [2]** 9/9 49/22
**seal [1]** 53/17
**search [27]** 72/6 72/7 72/9 72/17 72/20 73/14 73/15 73/17 74/2 74/3 74/8 74/23 79/16 79/17 79/20

**S** (continued)

79/22 80/15 81/2 81/6 81/8 81/10 81/19 82/20 84/1 84/6 84/8
**searched [2]** 80/14 80/17
**searches [1]** 75/8
**second [6]** 7/5 29/15 29/16 46/5 71/4 76/4
**section [6]** 20/11 27/8 55/8 72/24 72/24 106/15
**security [1]** 15/13
**see [35]** 11/6 17/11 19/17 20/9 23/13 24/13 25/14 29/2 29/19 35/24 38/12 40/13 40/21 43/17 43/21 43/24 47/11 49/13 52/5 52/17 54/13 54/18 61/21 63/3 65/3 70/1 70/4 87/5 92/6 94/2 97/23 98/23 103/15 106/9 107/3
**seeking [1]** 75/17
**seeks [2]** 73/10 76/16
**seem [2]** 38/22 102/1
**seems [8]** 17/6 36/6 37/6 51/21 94/25 96/23 97/1 106/4
**seen [5]** 8/22 17/17 42/9 69/14 92/7
**seize [1]** 72/23
**seized [8]** 72/6 72/9 72/11 74/5 76/3 76/5 80/24 81/7
**seizure [1]** 75/6
**seizures [1]** 75/9
**select [1]** 93/11
**selected [1]** 93/13
**selection [1]** 88/20
**selective [5]** 60/4 60/4 60/6 61/14 67/2
**self [4]** 47/2 91/16 91/16 93/5
**self-defense [4]** 47/2 91/16 91/16 93/5
**send [4]** 14/13 66/18 66/19 66/23
**sense [7]** 18/25 22/5 37/21 43/2 63/17 87/24 102/14
**sensory [1]** 85/19
**sent [5]** 7/9 45/25 66/22 90/2 96/23
**sentence [6]** 56/21 57/9 57/11 57/20 57/22 63/8
**sentences [4]** 55/11 56/19 57/22 93/8
**separate [7]** 6/5 11/20 11/23 71/22 72/5 79/25 104/3
**separately [3]** 6/10 44/17 44/25
**sequence [1]** 48/4
**served [16]** 6/8 43/10 44/1 44/8 44/11 44/17 44/20 45/1 45/5 45/7 46/4 46/6 46/7 46/10 46/15 51/21
**service [7]** 41/18 44/10 44/11 44/15 44/24 46/3 50/12
**Services [2]** 33/8 55/19
**set [6]** 34/19 46/17 49/1 55/14 103/22 104/3
**sets [3]** 58/6 59/22 72/5
**setting [2]** 34/18 58/18
**settled [1]** 19/17
**Seventh [1]** 75/2
**several [1]** 77/6
**she [16]** 65/18 65/19 65/20 65/22 67/15 68/18 69/25 70/15 70/20 71/7 71/12 82/13 91/7 92/7 92/13 104/9
**SHERRY [3]** 1/22 108/3 108/12
**shifts [1]** 85/15
**shipments [1]** 33/19
**shooting [1]** 60/10
**short [4]** 48/23 51/8 64/16 82/2
**shots [1]** 87/7
**should [31]** 11/4 12/9 13/11 15/25 16/20 19/24 20/24 22/21 24/17 24/18 25/9 26/19 26/20 30/1 42/8 52/19 52/25 54/6 67/15 69/5 69/17 69/25 70/6 75/15 76/4 79/20 80/14 85/6 85/9 98/17 103/21
**shouldn't [3]** 52/17 73/15 79/3
**shouting [1]** 31/4
**show [18]** 14/9 28/19 28/23 29/5

show... **[14]** 29/12 36/16 36/17 36/19 36/23 40/18 40/21 63/8 63/8 65/15 68/4 71/15 93/12 99/25
**showed [1]** 63/10
**showing [2]** 69/5 73/24
**shown [1]** 83/12
**shows [2]** 40/16 87/17
**side [4]** 14/15 42/12 87/4 102/22
**sides [2]** 14/7 36/20
**sidestep [1]** 35/3
**signed [1]** 76/23
**significant [5]** 52/5 59/5 77/10 91/22 92/13
**significantly [1]** 69/10
**sill [1]** 62/24
**similar [4]** 17/16 68/11 78/9 89/11
**simple [3]** 41/9 46/17 96/12
**simplest [1]** 44/21
**simply [7]** 13/18 14/13 40/19 42/5 73/15 80/9 106/21
**since [2]** 40/9 40/24
**sitting [2]** 96/1 106/14
**situation [1]** 60/6
**situations [4]** 62/5 86/9 86/13 93/10
**six [1]** 52/1
**sixth [3]** 22/15 29/8 29/15
**skeptical [1]** 68/18
**slightly [2]** 99/22 100/9
**slip [1]** 97/12
**slow [1]** 27/12
**small [1]** 30/21
**smaller [1]** 40/4
**Smith [17]** 7/5 75/1 75/11 77/3 77/3 77/6 77/18 78/7 78/9 78/13 78/14 78/15 78/18 78/18 78/22 79/1 79/5
**snow [3]** 15/20 95/19 96/1
**snowstorm [2]** 15/17 15/18
**so [193]**
**soft [1]** 63/14
**sold [2]** 82/2 82/8
**some [64]** 5/5 8/22 14/23 14/23 15/3 16/8 17/25 18/11 19/2 20/8 20/14 22/15 22/16 22/19 23/14 23/24 24/2 27/6 27/18 28/6 30/5 30/7 31/23 32/8 32/17 35/5 37/14 39/23 40/11 42/15 43/19 48/14 50/19 55/7 55/24 56/2 56/3 58/9 58/18 59/15 59/24 60/14 60/16 62/10 63/21 63/21 67/6 67/24 69/6 70/12 81/25 85/1 86/18 88/3 91/5 91/24 91/25 92/18 97/1 101/10 101/19 102/8 102/19 105/11
**somehow [2]** 14/11 43/19
**someone [12]** 31/4 37/16 38/25 39/25 52/3 65/10 101/3 101/25 102/3 102/21 103/16 106/21
**something [23]** 25/15 25/25 28/21 31/10 39/2 39/13 39/23 41/6 41/7 48/7 49/2 49/15 52/3 55/5 55/25 62/8 63/20 63/24 68/8 69/25 70/3 102/23 106/6
**sometime [1]** 5/8
**sometimes [2]** 13/6 96/11
**somewhat [3]** 37/7 41/19 94/24
**sorry [16]** 5/16 24/24 27/13 34/8 37/2 45/7 64/6 64/12 66/9 71/2 81/10 86/15 89/11 97/13 97/24 98/5
**sort [18]** 17/10 37/19 39/22 40/22 42/12 43/4 45/19 45/25 46/5 48/4 48/6 49/11 50/11 62/12 62/18 70/22 101/1 102/2
**sought [3]** 50/7 50/8 81/22
**sound [5]** 87/19 87/20 87/23 87/25 88/8
**sounds [9]** 20/23 21/7 21/10 21/13 22/20 33/10 46/14 58/19 88/9

**source [1]** 89/5
**sources [1]** 106/23
**space [4]** 96/2 106/20 106/21 106/23
**specialist [1]** 3/11
**specific [10]** 7/17 29/12 70/16 70/20 74/25 75/7 75/10 91/11 104/1 105/2
**specifically [5]** 6/25 9/6 30/2 47/23 59/21
**specification [1]** 105/24
**specificity [3]** 103/22 105/9 106/17
**specify [1]** 106/5
**specter [2]** 12/23 45/20
**speech [9]** 28/22 34/21 40/17 56/13 56/21 57/11 57/13 57/20 58/2
**spend [1]** 49/25
**spent [1]** 63/1
**spoke [1]** 96/21
**spoken [1]** 45/22
**spontaneous [1]** 57/25
**staff [4]** 15/14 96/9 96/10 96/11
**staffing [1]** 38/21
**stage [2]** 97/1 103/20
**stale [3]** 81/13 82/1 84/9
**staleness [2]** 81/14 83/11
**stand [3]** 5/2 42/6 70/18
**standard [23]** 12/1 19/11 26/10 27/5 31/13 31/14 31/17 31/17 31/23 31/24 32/1 34/13 48/15 54/25 55/11 55/12 55/16 56/20 57/4 58/6 59/4 69/1 74/1
**standards [3]** 42/9 43/25 58/19
**standing [6]** 8/23 9/8 9/18 101/17 104/5 106/21
**start [7]** 3/22 27/4 38/1 51/25 68/23 68/24 99/6
**started [2]** 52/4 62/2
**starting [3]** 3/5 61/11 72/17
**starts [1]** 104/20
**state [16]** 3/4 56/13 67/13 67/16 67/24 68/1 68/16 68/19 68/19 69/11 73/4 74/21 83/25 91/3 92/5 93/25
**stated [2]** 19/20 82/11
**statement [3]** 31/21 80/8 87/10
**statements [7]** 8/9 35/5 35/6 35/10 35/25 36/15 36/21
**states [23]** 1/1 1/3 1/10 3/3 27/7 28/5 28/6 33/9 49/20 55/1 74/5 74/10 74/25 75/2 75/11 77/2 78/11 79/18 80/5 81/18 81/20 82/3 83/17
**stating [1]** 75/4
**statute [3]** 24/19 27/23 33/2
**stay [1]** 42/3
**steam [1]** 12/18
**step [11]** 20/21 21/8 21/14 21/14 21/18 22/6 22/7 23/8 75/16 75/17 90/4
**Stepping [1]** 79/7
**steps [5]** 46/24 48/5 57/5 74/22 94/11
**stick [2]** 56/5 98/9
**still [15]** 3/25 22/13 58/5 61/22 63/16 64/18 69/8 69/14 71/21 71/22 81/23 84/10 92/15 95/21 95/21
**stimulate [1]** 57/25
**stop [5]** 60/17 72/12 72/16 81/2 81/4
**stopped [1]** 80/25
**stored [2]** 82/12 82/17
**strange [1]** 18/23
**Street [4]** 1/13 1/16 2/5 2/8
**strenuously [1]** 12/13
**stress [4]** 60/6 60/11 62/4 86/13 93/10
**stressful [5]** 60/6 60/11 62/4 86/13 93/10
**stretched [1]** 74/15
**strike [3]** 36/8 46/23 100/25

**strikes [2]** 42/10 47/24
**stringent [1]** 73/6
**strong [4]** 38/15 56/1 56/25 57/23
**stronger [1]** 32/16
**strongly [10]** 20/22 20/25 21/3 21/5 21/18 21/20 22/7 32/16 36/14 37/14
**struck [2]** 103/17 103/18
**studied [7]** 63/9 63/20 63/24 63/25 64/1 64/21 70/7
**studies [8]** 64/25 65/23 67/1 69/3 70/6 70/10 90/17 92/7
**study [23]** 63/10 64/22 65/11 65/13 65/14 65/15 66/7 66/10 67/9 68/4 68/5 68/10 68/16 68/16 69/6 69/16 69/17 69/25 70/11 70/17 87/4 87/22 88/9
**stuff [1]** 88/1
**subject [2]** 103/23 104/10
**submit [1]** 88/23
**submitted [1]** 76/13
**subpoena [26]** 5/20 6/7 41/14 41/20 43/9 44/8 46/2 46/18 48/12 48/17 49/14 50/3 50/7 50/13 51/17 51/20
**subsequent [3]** 13/8 77/14 81/2
**subsequently [1]** 38/2
**substantial [24]** 20/20 21/8 21/14 21/14 21/18 22/6 22/7 22/21 23/6 23/8 23/9 23/11 23/19 27/22 28/9 28/9 33/3 33/5 55/13 57/1 57/7 73/23 74/3 82/7
**substantially [11]** 22/22 27/1 28/2 34/5 34/10 34/13 36/5 54/23 55/17 55/21 92/14
**substituting [1]** 40/23
**subsumed [6]** 29/14 29/18 29/22 29/22 37/17 104/3
**succeed [1]** 13/9
**successfully [1]** 16/14
**such [15]** 50/22 56/15 56/16 57/9 57/12 57/14 57/19 73/24 73/25 80/15 81/25 82/12 82/14 83/12 83/22
**sufficient [8]** 44/2 46/3 80/7 84/16 91/18 91/21 102/15 105/20
**sufficiently [4]** 8/21 74/24 90/19 101/22
**suggest [5]** 19/12 45/16 53/10 53/16 55/12
**suggested [3]** 20/8 29/4 32/5
**suggesting [1]** 58/10
**suggestion [3]** 38/11 51/13 52/11
**suggestions [2]** 18/18 31/20
**suicides [1]** 38/4
**Suite [2]** 2/5 2/9
**Sullivan [1]** 83/17
**summarize [2]** 72/3 91/1
**summarizing [3]** 36/15 36/22 40/9
**summary [3]** 36/17 36/19 67/20
**Sunday [1]** 15/20
**super [1]** 60/6
**Supervisory [1]** 3/16
**Supp [3]** 78/12 81/18 81/21
**supplemental [1]** 76/13
**support [13]** 23/7 33/4 42/16 56/22 59/19 73/17 77/6 79/9 83/7 85/1 86/10 92/7 92/8
**supported [6]** 57/21 76/5 76/6 80/6 81/11 83/5
**supporting [2]** 73/13 81/3
**supports [2]** 22/22 33/4
**suppose [4]** 5/11 29/19 42/2 96/10
**suppress [5]** 72/4 73/11 80/24 81/7 84/18
**suppressed [2]** 76/4 79/20
**suppression [6]** 72/2 78/19 79/9 79/15 84/21 85/1
**Supreme [13]** 19/24 23/4 23/10 23/17 23/18 27/8 27/21 28/11 32/21 55/1 55/14 77/16 79/19
**sure [30]** 3/23 5/10 5/14 7/24

**S**

sure... [26]  11/25 14/25 19/22
20/22 23/1 31/8 36/22 43/10 44/1
44/19 49/11 58/22 59/7 70/2 77/11
90/18 92/24 93/18 95/7 96/16
99/24 100/6 100/25 101/24 102/7
105/16
surprise [1]  42/5
suspect [1]  96/7
suss [1]  39/4
SW [1]  2/8
SWAT [1]  61/24
switch [1]  13/23
switching [1]  9/10
swore [1]  73/17
sworn [1]  79/1

**T**

T-O-O [1]  103/9
tablets [1]  82/11
tactics [1]  41/24
tag [1]  90/6
tailored [1]  49/15
take [15]  11/13 15/22 20/4 21/4
26/10 35/22 52/1 53/6 53/21 53/22
53/24 54/1 69/2 83/14 93/1
taken [4]  54/19 83/23 90/10
103/12
takes [3]  16/9 30/8 30/22
taking [5]  27/15 75/15 93/14 95/7
96/12
talk [4]  33/11 34/2 38/21 85/9
talked [3]  24/21 33/1 49/18
talking [5]  8/24 12/21 16/13
22/13 24/22 25/2 25/6 25/18 64/9
68/23 70/19 89/11 98/22
talks [9]  59/25 64/2 68/5 71/7
85/16 85/18 86/9 86/12 88/13
targeted [2]  49/15 83/2
task [1]  93/1
taxes [1]  86/10
Taylor [3]  1/15 3/6 3/11
team [3]  40/1 51/15 52/15
teams [1]  61/24
technique [2]  78/21 79/2
techniques [1]  42/17
technology [1]  77/11
tecum [1]  41/20
telephone [2]  72/21 96/17
tell [12]  14/7 15/17 15/25 18/8
18/14 36/7 36/13 52/23 54/4 54/6
101/10 106/13
telling [1]  21/1 62/16 93/23
105/23
ten [3]  104/3 106/3 106/15
tense [2]  22/1 22/4
terms [6]  7/11 48/4 58/10 89/12
94/14 99/4
terrace [8]  25/11 99/1 102/11
102/22 104/16 104/17 104/22
105/19
terribly [1]  93/14
test [4]  29/11 29/17 56/8 57/17
testified [3]  60/15 64/23 71/12
testifies [4]  41/22 42/6 42/10
62/9
testify [16]  51/12 54/9 67/12
67/16 68/18 90/21 91/2 91/7 91/8
91/10 91/12 91/18 92/1 94/9 94/14
105/15
testifying [3]  62/8 98/18 98/19
testimony [24]  38/13 60/3 60/13
60/15 60/16 62/11 62/11 62/18
62/19 63/12 69/6 69/11 91/8 91/9
92/7 92/9 92/13 92/19 93/9 93/16
93/21 93/24 94/11 94/20
texts [1]  73/7
than [25]  10/21 17/11 18/5 31/13
31/22 36/17 45/13 48/8 52/8 58/11
59/18 63/17 65/6 68/20 68/23 70/4
76/11 92/14 93/7 97/12 99/22

100/10 103/16 104/2 106/13
thank [11]  40/3 73/15 73/17
16/23 18/20 26/7 26/15 53/2 53/4
59/11 100/1
Thanks [1]  40/2
that [923]
their [21]  3/4 8/6 8/9 18/15 27/6
36/20 40/23 46/21 53/16 53/18
75/13 83/3 83/4 83/13 83/16 83/16
87/5 102/5 103/2 103/15 106/23
them [31]  5/3 8/8 9/22 14/10
14/25 21/1 32/25 34/19 43/24
44/22 46/1 46/22 48/15 51/3 51/10
51/24 52/7 52/22 52/23 56/24 63/6
66/1 69/2 71/1 88/23 90/6 97/2
99/4 99/14 102/5 104/25
themself [1]  62/19
themselves [3]  47/5 75/9 83/24
then [57]  5/11 5/19 10/14 11/5
11/22 15/7 15/19 18/7 20/18 24/4
24/8 26/22 30/14 33/1 33/3 34/6
34/17 34/18 36/20 39/11 40/20
41/12 42/6 42/25 45/25 48/23
53/18 55/15 56/6 57/9 59/25 60/1
60/3 60/6 61/14 62/3 64/15 64/17
65/2 67/23 72/7 72/8 72/23 77/17
81/6 85/25 86/5 87/16 87/21 87/24
97/10 97/21 97/22 98/2 98/2 98/10
107/3
theories [1]  106/1
theory [3]  91/16 93/5 104/24
there [160]
therefore [1]  62/17
these [44]  7/22 11/14 17/12 18/11
20/10 28/19 30/7 30/25 30/25 34/7
39/11 39/12 39/21 41/23 42/15
42/17 43/15 43/17 43/21 43/22
47/2 47/4 47/19 48/6 48/13 50/4
50/17 50/24 52/8 61/21 62/4 71/1
71/9 74/18 83/3 83/16 88/2 88/2
89/18 90/17 93/13 98/7 98/14
100/15
they [111]
thing [11]  6/19 14/4 18/8 30/21
39/5 41/12 44/15 58/23 68/6 86/13
101/14
things [19]  12/4 40/4 48/6 50/23
59/12 60/9 60/13 61/24 63/13
71/12 75/4 76/16 86/4 87/2 87/4
92/25 93/23 94/9 96/10
think [208]
thinks [1]  92/20
third [6]  7/5 47/1 55/2 59/20
78/13 91/16
this [175]
Thomas [7]  7/6 10/2 10/2 10/8
10/18 12/22 74/10
those [57]  4/19 8/4 8/5 9/2 9/4
9/20 10/25 11/24 13/19 14/6 20/15
26/8 26/12 28/9 33/6 33/24 34/12
34/14 35/7 35/22 37/20 39/9 41/9
47/8 47/15 47/18 51/5 51/9 53/13
53/13 56/24 61/16 61/17 63/6
68/17 69/7 71/1 72/2 75/20 76/9
77/11 78/3 78/12 85/6 88/7 88/14
88/16 89/7 89/14 95/22 97/2 98/10
99/12 99/23 103/3 106/15 106/22
though [9]  4/14 25/1 34/15 36/13
39/15 70/16 91/1 99/7 101/6
thought [7]  17/15 18/22 21/2 31/2
44/21 64/23 65/1
threatening [1]  86/9
three [10]  16/10 55/11 55/11 72/4
72/5 78/17 79/1 88/20 95/5 101/1
through [13]  4/6 43/14 43/22
48/12 50/24 54/14 63/2 64/17
65/14 69/3 71/1 71/9 84/3
throughout [1]  10/9
Thursday [3]  15/14 15/15 17/18
tied [1]  83/10
time [52]  7/15 7/15 7/19 7/23 8/8
15/5 17/20 18/14 23/23 32/19 38/6

39/20 43/22 44/2 47/25 48/9 49/24
49/24 56/13 62/5 62/23 63/1 63/2
63/7 66/6 67/6 69/3 73/9 74/14
74/15 74/17 74/25 76/16 77/22
77/25 78/3 81/15 82/2 83/21 86/19
86/24 88/14 92/2 92/11 92/22 94/2
94/4 95/14 97/2 98/12 104/21
106/7
timed [1]  36/2
timely [1]  26/1
times [4]  31/11 55/11 82/7 100/10
timing [8]  16/24 43/13 44/3 46/7
48/3 48/21 50/14 50/15
title [3]  24/9 24/10 25/3
today [12]  5/1 5/3 5/5 5/15 14/2
14/18 34/25 46/12 84/24 88/18
88/19 95/17
together [1]  67/3
told [4]  46/11 51/1 51/7 54/7
tongue [1]  97/12
too [6]  30/7 55/4 63/7 98/17
103/8 103/8
took [4]  20/20 22/6 27/10 74/22
top [6]  22/12 24/5 87/3 98/1
98/18 99/1
topic [3]  14/20 65/21 93/9
topics [1]  42/15
tort [1]  34/3
totality [2]  81/15 84/4
touch [1]  45/14
Touhy [1]  45/20
toward [2]  20/21 69/24
tower [6]  75/18 76/22 77/1 77/9
77/19 79/7
toyed [1]  58/9
traffic [4]  72/12 72/16 81/2 81/4
trained [10]  41/23 42/17 42/19
42/20 47/8 47/9 47/10 47/15 47/19
47/23
training [12]  41/22 42/13 43/1
43/3 43/4 43/6 43/20 49/2 49/10
61/22 83/6 86/10
trains [1]  61/18
transcript [2]  1/9 108/4
trauma [2]  71/6 71/11
traumatic [1]  67/23
travel [2]  15/21 95/21
traveling [1]  96/11
treatise [1]  55/2
tree [1]  72/12
trial [25]  10/3 10/4 11/20 12/21
13/18 14/5 15/16 37/9 49/25 50/23
51/12 65/25 66/1 91/15 91/23
93/20 95/1 95/4 97/7 97/21 98/19
100/17 101/1 101/20 104/13
trials [1]  16/11
tricky [1]  34/22
tried [2]  12/16 12/19
true [3]  56/18 64/5 108/4
truth [1]  93/24
try [3]  35/2 46/11 83/23
trying [8]  34/22 38/21 42/5 44/14
76/1 105/6 105/11 106/20
Tuesday [2]  16/18 16/21
turn [2]  52/4 83/8
turning [3]  54/20 81/6 87/16
turns [2]  14/9 60/4
Twitter [5]  27/21 28/12 32/20
33/1 33/23
Twitter's [1]  33/23
two [23]  8/8 13/15 16/10 16/10
28/21 56/19 58/19 61/1 63/11
67/18 68/3 68/17 69/14 69/14
72/17 76/17 80/21 86/16 89/4 89/5
97/25 101/1 106/1
type [8]  31/12 40/25 70/12 77/4
81/12 81/22 83/19 92/8
types [4]  47/15 47/18 77/11 77/11
Typically [1]  17/10

**U**

U.S [2]  1/23 27/7

**U**

**U.S.C [3]**   7/2/24 72/24 74/1
**umbrella [1]**   60/1
**unable [1]**   67/24
**unanimity [4]**   7/14 103/21 105/17 105/21
**unconstitutional [1]**   79/23
**uncover [3]**   73/21 74/4 74/8
**under [28]**   11/24 20/19 23/8 35/6 54/12 55/8 57/4 60/2 60/5 60/19 60/21 61/14 61/15 62/4 73/2 73/4 75/5 75/7 75/25 79/9 79/14 79/14 79/23 84/18 86/13 87/10 88/11 93/10
**underlies [1]**   62/7
**underscored [1]**   55/2
**understand [19]**   6/2 11/17 29/24 30/18 31/7 41/18 42/2 42/23 47/7 53/1 63/15 86/24 90/23 98/11 98/13 100/24 101/5 102/24 103/5
**understanding [4]**   13/2 45/14 52/8 72/14
**Understood [3]**   53/2 102/20 103/7
**undertaking [1]**   52/2
**undue [2]**   52/25 53/1
**unduly [2]**   46/22 52/16
**unfairness [1]**   12/23
**unhappy [1]**   11/18
**uniformed [1]**   49/23
**unify [1]**   56/22
**UNITED [21]**   1/1 1/3 1/10 3/3 27/7 28/4 33/9 49/20 55/1 54/5 74/10 74/25 75/7 75/10 77/2 78/11 79/18 81/18 81/20 82/3 83/17
**unity [1]**   58/1
**universe [1]**   102/2
**unlawful [1]**   57/3
**unless [2]**   26/5 56/3
**unreality [1]**   87/24
**unreasonable [4]**   75/12 80/3 80/21 84/15
**unresolved [1]**   4/19
**unsupported [1]**   73/10
**until [3]**   74/16 82/20 96/3
**unwarranted [1]**   78/19
**up [27]**   5/6 9/6 9/7 9/7 9/14 11/13 14/5 14/10 15/18 15/25 17/19 20/24 26/25 52/22 60/23 61/24 65/4 71/4 71/8 74/15 83/8 84/24 90/15 93/23 98/1 104/22 105/11
**updated [1]**   61/20
**upheld [2]**   75/8 78/10
**upon [2]**   64/21 76/22
**upper [6]**   25/11 99/1 102/11 104/17 104/22 105/19
**urge [1]**   57/19
**urged [1]**   56/22
**us [13]**   14/13 16/15 17/21 39/4 44/9 45/25 47/22 51/19 52/1 64/21 85/9 95/22 96/23
**USAO [1]**   1/15
**use [15]**   41/23 42/17 44/21 47/3 49/18 50/22 54/10 56/14 59/5 60/10 61/19 61/22 61/25 72/15 88/22
**used [10]**   9/23 10/7 17/10 27/22 34/1 56/25 77/13 81/24 82/23 89/12
**user's [1]**   73/3
**uses [1]**   55/10
**using [6]**   4/24 18/6 28/21 63/12 89/6 100/14
**usually [3]**   17/11 17/11 79/15
**uttering [1]**   37/20

**V**

**vague [2]**   25/22 26/4
**vaguer [1]**   103/24
**valid [1]**   79/8
**validity [1]**   62/10

**Van [1]**   99/18
**Veizaj [2]**   103/1 103/6
**Veizaj [2]**   103/3 103/4
**venue [1]**   48/17
**veracity [1]**   94/10
**verdict [2]**   10/13 20/24
**verses [1]**   55/1
**version [1]**   40/12
**versus [20]**   3/3 28/5 33/8 42/19 55/15 56/11 74/1 74/6 74/10 74/25 75/3 75/11 77/3 78/12 79/18 81/18 82/10 82/3 83/17 94/21
**victim [6]**   11/9 97/8 97/18 98/25 99/4 103/16
**victims [8]**   9/19 30/25 98/7 98/10 101/13 102/9 103/8 106/4
**video [4]**   8/1 8/22 38/12 94/22
**videos [4]**   11/6 12/24 83/2 89/5
**view [8]**   35/2 35/13 36/14 36/23 37/12 37/16 54/16 56/1
**violated [2]**   33/20 77/1
**violation [5]**   12/6 34/10 55/22 56/14 106/19
**violations [2]**   72/24 73/21
**violence [1]**   57/1
**visual [5]**   85/16 85/17 85/18 85/20 86/4
**voicemails [1]**   73/7
**voir [12]**   13/15 14/4 14/17 15/11 18/4 18/13 18/17 18/18 36/25 37/3 39/8 59/13
**volition [3]**   68/2 68/13 68/23
**volitional [1]**   92/5
**vs [1]**   1/5

**W**

**wait [3]**   5/4 96/3 106/9
**waiting [1]**   4/22
**waived [1]**   19/20
**walk [1]**   71/9
**walking [1]**   96/12
**want [47]**   3/22 3/23 4/14 13/13 14/16 14/22 16/4 18/8 21/3 23/7 24/1 25/17 29/1 31/9 31/12 31/18 36/16 42/4 43/3 45/16 45/21 47/20 51/23 54/5 54/14 58/21 59/7 59/9 65/10 67/6 67/8 69/2 71/8 87/11 88/17 90/7 92/23 92/24 93/16 95/9 96/3 97/3 100/6 102/16 103/10 106/11
**wanted [7]**   4/4 37/1 37/4 39/6 39/8 43/12 86/1
**wants [7]**   19/12 34/24 58/13 58/17 66/25 86/22 95/25
**warrant [42]**   72/6 72/8 72/9 72/19 73/6 73/9 73/11 73/18 74/2 74/3 74/23 75/4 76/3 76/4 76/4 76/5 76/6 76/12 76/15 76/17 76/23 77/4 77/4 77/8 77/9 77/10 77/12 77/19 77/20 78/17 78/25 79/3 79/7 79/17 79/23 80/6 81/8 81/11 81/24 82/9 84/9 84/11
**warrants [13]**   72/5 72/17 76/14 76/15 76/18 76/20 76/21 77/4 77/11 77/14 78/10 79/11 79/25
**was [193]**
**Washington [5]**   1/5 1/16 1/24 15/17 51/13
**wasn't [3]**   69/13 98/18 98/21
**waste [1]**   48/9
**watering [2]**   22/20 23/25
**way [41]**   13/13 21/15 22/15 22/16 22/19 22/21 23/9 23/14 23/24 25/3 27/18 28/18 28/20 29/3 31/6 32/17 35/2 37/6 37/18 38/14 40/8 49/4 50/3 50/5 56/2 56/3 57/4 58/9 58/11 63/1 63/21 64/4 64/17 66/1 69/16 72/15 82/5 91/25 96/8

**we [256]**
**we'll [3]**   11/13 11/13 96/4
**weaker [1]**   76/11
**week [5]**   46/12 48/23 48/23 48/24 50/11
**weekend [1]**   107/4
**weeks [3]**   52/1 74/16 95/5
**welcome [5]**   13/10 13/14 20/17 26/2 36/19
**well [35]**   3/20 3/22 8/19 10/21 11/2 14/13 14/18 22/4 27/20 29/16 29/20 30/20 30/23 33/25 36/20 38/9 42/22 45/11 45/21 46/13 46/19 50/6 51/1 62/8 65/5 70/15 71/24 72/2 80/9 89/4 89/15 90/4 95/24 98/1 100/24
**went [5]**   10/3 48/12 56/6 56/24 90/16
**were [75]**   4/21 8/2 8/12 8/16 8/17 8/22 8/23 8/25 9/1 9/8 9/10 9/18 9/19 10/5 10/11 12/12 12/17 15/4 21/20 23/23 25/2 25/6 26/25 29/20 31/9 31/18 38/2 38/10 38/10 38/11 38/23 38/24 39/22 39/23 44/14 45/16 45/16 47/5 48/6 48/19 49/19 49/22 49/22 51/2 52/18 56/4 64/25 69/3 75/19 75/25 76/11 76/14 76/22 76/23 78/3 78/15 78/15 79/1 79/4 79/13 79/25 80/12 83/9 87/7 88/14 91/13 97/6 98/25 98/25 102/3 102/8 102/9 102/11 104/10 104/23
**weren't [4]**   47/4 65/7 99/5 103/17
**Wesby [1]**   74/1
**west [7]**   25/11 99/1 102/11 104/16 104/17 104/22 105/19
**Westlaw [1]**   75/11
**what [113]**
**whatever [5]**   18/11 38/23 53/23 62/17 65/12
**whatnot [1]**   18/13
**when [46]**   12/21 14/1 16/1 16/2 20/5 24/23 24/24 27/8 27/9 27/25 28/17 29/12 30/11 32/17 34/1 35/17 42/8 46/7 47/18 50/12 57/9 57/12 57/14 57/18 58/18 60/5 60/18 62/20 69/15 74/2 75/8 79/16 80/6 80/10 80/15 81/14 81/21 81/24 82/6 82/18 93/9 98/15 98/22 101/3 101/12 104/21
**where [34]**   3/23 7/25 11/22 12/6 12/23 17/12 20/22 23/14 25/8 27/18 34/20 41/13 42/5 52/3 52/12 53/17 54/15 56/15 60/24 61/4 62/14 62/17 63/9 63/21 64/21 69/18 69/24 69/25 81/3 90/23 98/12 102/19 103/12 103/17
**whether [34]**   4/18 13/19 16/4 18/12 18/17 20/25 25/4 26/4 31/12 38/2 40/6 42/18 46/24 47/1 49/5 53/12 54/22 56/1 57/2 57/5 58/16 67/15 68/25 69/15 71/23 74/21 81/15 90/24 91/5 91/18 92/3 94/18 96/9 106/16
**which [64]**   5/21 7/4 8/2 11/4 14/22 19/18 19/25 20/22 21/12 21/20 24/19 25/2 25/7 25/19 27/7 27/9 27/9 27/14 28/5 37/25 38/6 41/13 41/14 42/12 42/14 43/2 43/10 48/14 49/3 50/17 51/9 51/10 55/16 56/19 56/21 57/22 59/20 59/22 60/2 63/13 67/2 68/7 70/8 71/2 74/20 75/24 79/7 81/9 83/18 89/21 90/7 91/14 92/4 93/25 94/15 95/1 95/3 97/8 98/15 99/5 104/1 104/20 105/5 106/2
**while [6]**   14/20 16/13 18/16 67/10 84/25 106/14
**Whitehurst [1]**   68/7
**who [45]**   3/17 7/22 7/25 8/5 8/23

**W**

**who... [40]**   9/7 9/3 11/7 11/9
12/2 13/17 15/19 15/21 23/13 31/3
38/2 38/9 44/22 45/5 45/7 60/12
60/17 65/2 73/1 73/17 75/22 77/24
79/3 82/23 98/18 101/10 101/11
101/15 101/16 101/17 101/18
101/23 102/2 102/4 102/25 103/16
104/10 104/10 106/3 106/20
**whole [6]**   30/3 45/19 45/20 55/7
86/12 88/10
**whom [1]**   51/20
**whose [2]**   13/17 14/7
**why [32]**   11/17 25/2 28/2 31/18
34/22 46/3 46/19 47/7 47/11 47/12
52/12 52/17 52/21 53/5 53/21 54/1
54/2 67/5 73/18 77/6 80/13 84/19
85/10 90/3 90/7 90/12 92/4 92/9
99/5 99/6 99/16 106/14
**wide [1]**   80/16
**widely [1]**   82/25
**Wilbert [1]**   3/11
**will [90]**   5/11 5/14 6/9 6/12
13/12 14/6 15/10 15/12 15/13
15/13 15/17 16/1 16/2 16/21 17/5
19/8 20/4 20/6 22/10 22/10 23/13
23/21 24/1 26/7 26/10 26/10 27/4
27/6 28/4 31/24 32/11 34/14 35/19
35/22 36/6 36/13 36/14 36/16
36/17 36/19 36/23 38/7 38/12
38/13 39/22 39/25 40/18 40/20
40/21 41/6 54/14 54/18 59/10 60/17
60/18 66/17 67/5 69/2 70/12 70/17
71/8 71/22 74/3 74/8 78/11 81/22
82/1 84/21 88/16 89/10 90/5 90/7
90/14 90/21 92/1 92/15 92/18
92/22 93/1 93/9 93/12 93/24 96/9
97/2 98/18 99/12 103/3 106/13
106/25 107/3
**Willamette [1]**   2/5
**willing [1]**   31/11
**Wilson [1]**   1/12
**window [2]**   7/23 8/4
**WISE [45]**   1/6 3/3 3/17 10/17
17/25 24/23 35/5 35/12 39/10
41/21 46/25 47/1 47/8 47/22 50/18
58/16 58/16 59/7 67/24 73/8 73/12
73/19 75/12 75/22 76/13 76/25
77/15 78/25 80/5 80/23 81/10
83/21 90/25 91/12 91/18 91/24
92/10 93/4 94/8 94/18 95/24
102/18 102/19 102/23 104/2
**Wise's [17]**   58/22 68/19 72/9
74/13 75/21 76/2 77/6 80/18 81/3
81/6 82/9 83/8 84/6 91/2 93/15
93/21 94/7
**wish [1]**   41/18
**within [4]**   8/3 15/2 60/1 82/2
**without [4]**   52/5 52/25 75/13 78/6
**witness [10]**   13/22 13/23 14/24
15/2 16/16 16/20 16/22 17/8 93/6
98/16
**witnesses [18]**   4/7 8/9 13/17
13/24 14/7 14/8 14/20 16/7 16/17
16/18 17/7 17/12 17/17 17/22
18/12 51/12 91/6 95/4
**wonder [1]**   18/25
**word [7]**   20/25 21/2 21/11 33/2
55/10 57/15 59/5
**words [4]**   30/7 33/24 37/20 93/13
**work [1]**   25/17
**worked [2]**   15/18 42/8
**working [2]**   85/7 86/9
**works [1]**   65/16
**workshop [1]**   88/7
**worms [1]**   37/25
**worn [7]**   97/6 98/3 98/15 100/13
100/14 102/8 103/2
**worried [1]**   96/6
**worries [1]**   25/22
**worry [3]**   14/9 39/14 39/20

**would [112]**   ...
70/21 95/9
**Wren [1]**   7/6
**written [2]**   28/15 29/8
**wrong [6]**   11/17 21/9 24/15 24/25
84/17 106/7
**wrongdoing [1]**   74/4
**wrote [2]**   55/1 79/19

**Y**

**yeah [18]**   12/20 19/21 21/7 21/19
21/25 23/16 24/7 24/17 24/20
25/12 30/13 31/7 42/2 65/22 69/25
85/12 85/23 97/13
**year [1]**   33/16
**Year's [1]**   48/23
**years [4]**   78/17 79/1 82/14 82/17
**yelled [1]**   39/10
**yes [31]**   4/3 4/11 6/18 8/13 8/16
9/4 9/22 19/16 20/3 23/22 26/14
26/22 33/7 37/10 38/25 41/23
46/10 53/7 61/3 64/7 64/13 65/2
66/17 69/20 85/14 88/2 89/20
96/19 98/8 98/8 100/21
**yet [6]**   55/2 66/22 69/9 84/13
89/19 91/6
**yield [1]**   80/18
**you [302]**
**you'll [1]**   12/10
**your [112]**
**yourself [3]**   62/13 100/17 101/23
**yourselves [3]**   25/17 54/7 54/15

**Z**

**Zoom [1]**   4/6