In the United States District Court
for the District of Columbia

| | |
|---|---|
| United States of America, | Case No. 1:23-cr-00184-RDM |
| Plaintiff, | Motion for a Mistrial or in the Alternative a Curative Instruction and Defense Surrebuttal Closing Argument Given Prosecutorial Errors in Closing Argument and Trial |
| v. | |
| Jared Lane Wise, | |
| Defendant. | |

The Defendant, Jared Lane Wise, moves the Court for a mistrial given prosecutorial misconduct or error in closing argument, or alternatively for curative instructions and/or defense surrebuttal closing statements limited to key portions of the jury instructions.

## I. Introduction

The defense does not have a transcript of closing arguments. Based on information and belief, counsel avers that the prosecution made certain arguments during closing that, when viewed in light of the manner the evidence came in at trial, require a mistrial, curative instructions, and/or defense surrebuttal closing statements limited to key portions of the jury instructions.[1]

Prosecutors may strike "hard blows," but they may not strike "foul ones." *United States v. Moore*, 651 F.3d 30, 53 (D.C. Cir. 2011). Here, "foul blow[s]" threaten to deprive Mr. Wise of his right to a fair trial — "the most fundamental of all freedoms." *Estes v. State of Tex.*, 381 U.S. 532, 540 (1965).

---

[1] The defense apologizes if the transcripts of the proceedings contradict defense counsel's memory of what was said.

Page 1 – Motion for a Mistrial or in the Alternative a Curative Instruction and Defense
     Surrebuttal Closing Argument Given Prosecutorial Errors in Closing Argument and
     Trial

In closing, Ms. Rocha for the prosecution vouched for the government's own case by arguing "we know" Mr. Wise is guilty, with hand over heart. In rebuttal, the government denigrated defense counsel both in telling the jury to disregard all of counsel's arguments about the law, and in describing the defense as "cherry picking" evidence. Employing emotion pleas, the government further repeated, emphasized, and expanded upon its improper calls for the jury to deem the riot a riot and deem anyone present a "rioter" to protect history. The government's rebuttal is a moment when the government "probably ha[s] the greatest influence on the jury," *United States v. DeLoach*, 504 F.2d 185, 192 (D.C. Cir. 1974), and Mr. Wise had no opportunity to respond. As the D.C. Circuit, in *DeLoach* concluded, "some remarks cause prejudice which is not eradicable by subsequent judicial instructions." *Id.* at 193 n.20.

## II.     Legal Standard Governing Prosecutorial Misconduct or Error

"[S]erious prosecutorial misconduct may so pollute a criminal prosecution as to require dismissal of the indictment or a new trial." *United States v. Sutton*, No. CR 21-0598 (PLF), 2024 WL 278070, at *21 (D.D.C. Jan. 25, 2024) (citing *United States v. McCord*, 509 F.2d 334, 349 (D.C. Cir. 1974) and *United States v. Ring*, 768 F. Supp. 2d 302, 310-12 (D.D.C. 2011)). When evaluating a claim of prosecutorial misconduct or error, in the Sixth Circuit courts asks first if the conduct was improper at all and, if it was, whether it was "flagrant." *United States v. McAllister*, 693 F.3d 572, 585 (6th Cir. 2012). In that regard, the court asks "(1) whether the remarks tended to mislead the jury or to prejudice the accused; (2) whether they were isolated or extensive; (3) whether they were deliberately or accidentally placed before the jury; and (4) the strength of the evidence against the accused." *United States v. Hargrove*, 416 F.3d 486, 492 (6th Cir. 2005) (quoting *United States v. Carroll*, 26 F.3d 1380, 1385 (6th Cir. 1994)).

Page 2 – Motion for a Mistrial or in the Alternative a Curative Instruction and Defense Surrebuttal Closing Argument Given Prosecutorial Errors in Closing Argument and Trial

A court may grant a new trial based on a prosecutor's misstatements during closing arguments when those statements cause a defendant "substantial prejudice." *United States v. Small*, 74 F.3d 1276, 1280 (D.C. Cir. 1996); *see United States v. Johnson*, 231 F.3d 43, 47 (D.C. Cir. 2000) ("In assessing claims of prosecutorial misstatements, the court is required to determine whether the disputed remarks constituted error and whether they substantially prejudiced the defendant's trial."). For a new trial based on closing argument statements, the court considers the severity of the misconduct, the measures adopted to cure the misconduct, and the certainty of conviction absent the improper remarks. *United States v. Monaghan*, 741 F.2d 1434, 1443 (D.C. Cir. 1984); *United States v. Becton*, 601 F.3d 588, 598 (D.C. Cir. 2010) (three factors govern whether improper remarks by a prosecutor sufficiently prejudice a defendant, warranting a new trial: (1) the closeness of the case; (2) the centrality of the issue affected by the error; and (3) the steps taken to mitigate the error's effects). The government bears the burden of showing that improper argument was not substantially prejudicial (i.e., harmless). *Johnson*, 231 F.3d at 47.

Stepping back, it is important to put the prosecutor's role in context. In *Berger v. United States*, "[t]he Supreme Court … described the federal prosecutor as occupying a position of public trust:

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods

Page 3 – Motion for a Mistrial or in the Alternative a Curative Instruction and Defense
  Surrebuttal Closing Argument Given Prosecutorial Errors in Closing Argument and
  Trial

> calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

*United States v. Moore*, 651 F.3d 30, 51 (D.C. Cir. 2011), *aff'd sub nom. Smith v. United States*, 568 U.S. 106 (2013) (quoting *Berger v. United States,* 295 U.S. 78, 88 (1935)); *accord Taylor v. United States,* 413 F.2d 1095 (D.C.Cir.1969). Under "this rigorous standard," in presenting "closing arguments, a prosecutor has an obligation 'to avoid making statements of fact to the jury not supported by proper evidence introduced during trial,' even when the misstatements are made in good faith." *Moore*, 651 F.3d at 51 (citing *Gaither v. United States,* 413 F.2d 1061, 1079 (D.C. Cir. 1969). In addition, "[a] prosecutor may not make comments designed to inflame the passions or prejudices of the jury." *Id.* (citing *United States v. Johnson,* 231 F.3d 43, 47 (D.C. Cir. 2000)).

"[I]n closing argument counsel may not refer to, or rely upon, evidence unless the trial court has admitted it." *Moore*, 651 F.3d at 53 (citing *United States v. Maddox,* 156 F.3d 1280, 1282 (D.C. Cir. 1998)); *United States v. Davis*, 863 F.3d 894, 901 (D.C. Cir. 2017) (the prosecutor may not refer in closing argument to evidence not admitted at trial).

In *Davis*, a fraud conviction was reversed where the evidence presented a close call and the prosecutor repeatedly said "how do we know.…" followed by an incorrect statement of the facts. *Id.* at 902 (reviewing for plain error because defendant failed to object at trial; finding plain error; reversing conviction where conviction was "by no means a certainty"). Standard jury instructions, such as that "statements and arguments of counsel are not evidence," … and that it is the jury's "memory of the evidence … that should control during ... deliberations," are not "a cure-all for such errors." *Id.* at 903 (citation omitted). Where evidence against a defendant is "not such that his conviction was by any means a certainty," a prosecutor's improper vouching during closing

Page 4 – Motion for a Mistrial or in the Alternative a Curative Instruction and Defense Surrebuttal Closing Argument Given Prosecutorial Errors in Closing Argument and Trial

argument may "require reversal." *Id.* (citing *United States v. Richardson*, 161 F.3d 728, 737 (D.C. Cir. 1998)).

"Because the line between permissible and impermissible arguments will not always be clear, the inquiry is necessarily contextual." *Moore*, 651 F.3d at 53.

### III. Closing Argument Errors

Here, various arguments by the prosecutors crossed the line, warranting a mistrial or at least curative instructions and curative measures such as granting defense surrebuttal focused on the key jury instructions. See highlighted jury instruction exhibits attached hereto.

####   A.   Vouching with "We Know" Statements

During her closing argument, Ms. Rocha said, at least twice, "We know …" This is highly problematic when coming from a calm, credible, trusted, and respected trial attorney prosecutor from main justice. We-know vouching implicitly tells the jury to be comfortable convicting because the prosecutor knows the whole truth. Here, the objected-to "*We* know" was especially egregious because Mr. Roach put her right hand to her chest (as if taking a pledge of allegiance) while saying "*We* know." The prosecution is supposed to say: "the evidence shows" not "*We* know," which implies knowing information the jurors don't have access to. *See DeLoach*, 504 F.2d at 192 (concluding that prosecutor's view of the case, as demonstrated by prosecutor's behavior during closing and rebuttal, is "at least a highly relevant measure now of the likelihood of prejudice").

By "expressing [her] personal opinion concerning the guilt of the accused" Ms. Rocha's comments "pose two dangers: [1] such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against [Mr. Wise] and can

Page 5 – Motion for a Mistrial or in the Alternative a Curative Instruction and Defense
    Surrebuttal Closing Argument Given Prosecutorial Errors in Closing Argument and
    Trial

thus jeopardize [his] right to be tried solely on the basis of the evidence presented to the jury; and [2] the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence." *United States v. Young*, 470 U.S. 1, 18-19 (1985) (citing *Berger*, 295 U.S., at 88-89). The Court in *Young* referred to ABA standards regarding argument: the current ABA Criminal Justice Section Prosecution Function Standard 3-6.8(b) (Closing Argument to the Trier of Fact) states, "The prosecutor should not argue in terms of counsel's personal opinion, and should not imply special or secret knowledge of the truth or of witness credibility."

Succinctly stated, *Berger*'s rigorous standard means that: "The prosecutor's job isn't just to win, but to win fairly, staying well within the rules." *United States v. Maloney*, 755 F.3d 1044, 1046 (9th Cir. 2014).

Ample caselaw supports the argument that "*We* know" vouching suggests that information (we the government know) was not presented to the jury. See *United States v. Younger*, 398 F.3d 1179, 1190 (9th Cir. 2005) (citing *United States v. Leon-Reyes*, 177 F.3d 816, 822 (9th Cir. 1999) and *United States v. Necoechea*, 986 F.2d 1273, 1276 (9th Cir. 1993)).

The Ninth Circuit stated clearly that prosecutorial we-know statements are banned if not part of a phrase like: "we know from the evidence admitted at trial and reasonable inferences drawn therefrom":

> We do not condone the prosecutors' use of "we know" statements in closing argument, because the use of "we know" readily blurs the line between improper vouching and legitimate summary. The question for the jury is not what a prosecutor believes to be true or what "we know," rather, the jury must decide what may be inferred

Page 6 – Motion for a Mistrial or in the Alternative a Curative Instruction and Defense Surrebuttal Closing Argument Given Prosecutorial Errors in Closing Argument and Trial

>from the evidence. We emphasize that prosecutors should not use "we know" statements in closing argument.

*United States v. Younger*, 398 F.3d 1179, 1191 (9th Cir. 2005); *see also United States v. Brown*, 540 F. App'x 31, 32-33 (2d Cir. 2013) (quoting *Younger*); *Bean v. State*, 15 N.E.3d 12, 22 (Ind. Ct. App. 2014) (reversing in part because of prosecutor's we-know-what-happened arguments in a sex case); Doug Norwood, *Prosecutorial Misconduct in Closing Argument*, § 8.1 Commenting on a defendant's guilt or strength of case (2014) ("It is improper for the prosecutor to give an opinion as to the guilty of the defendant or the strength of the case.").

### B. Denigrating Defense Counsel Prejudices the Defendant

Ms. Fontan's attack on defense counsel's credibility in front of a jury — by calling on the jury to disregard everything Mr. Hermansen said about the law — also falls outside the bounds of acceptable advocacy. The prosecutor "speaks on behalf of a government interested in doing justice" and is duty-bound to conduct the trial in a fair and even-handed manner. *United States v. Rodrigues*, 159 F.3d 439, 450-51 (9th Cir. 1998). A prosecutor commits error or misconduct when she "says the defendant's counsel is responsible for lying and deceiving." *Rodrigues*, 159 F.3d at 451; *see also Young*, 470 U.S. at 9-10 (holding that a prosecutor has "the duty to abstain" from personal attacks on defense counsel); *United States v. Sanchez*, 176 F.3d 1214, 1224 (9th Cir. 1999) (holding that prosecutor committed misconduct by "denigrating the defense as a sham"); *United States v. Alcantara-Castillo*, 788 F.3d 1186, 1191 (9th Cir. 2015).

A prosecutor's attack on the integrity of defense counsel undermines the defendant's right to a fair trial. *Bruno v. Rushen*, 721 F.2d 1193, 1194-95 (9th Cir. 1983). In *Bruno*, the court explained that a prosecutor's accusations of unethical behavior against defense counsel "severely

Page 7 – Motion for a Mistrial or in the Alternative a Curative Instruction and Defense
 Surrebuttal Closing Argument Given Prosecutorial Errors in Closing Argument and
 Trial

damage an accused's opportunity to present his case before the jury." *Id.* Such accusations "strike at the very fundamental due process protections … [that] ensure an inherent fairness in our adversarial system of criminal justice[.]" *Id.* "Of course, a prosecutor should not directly or implicitly impugn the integrity or institutional role of defense counsel." *United States v. Jamieson*, 427 F.3d 394, 414 (6th Cir. 2005).

Ms. Fontan presented the government's passionate rebuttal closing argument, which was the last thing the jury heard before a three-day weekend, that culminated in President Trump's inauguration on the Martin Luther King Holiday, which followed Trump's Sunday promise to make everyone (or 99.9% of the attendees) at the Capitol One Stadium Rally very happy about his decision to pardon "the J6 Hostages."

With an emphatic, passionate tone of revulsion, Ms. Fontan told the jury to "disregarding everything Mr. Hermansen said about the law."[2] (If the court reporter or staff have an audio recording the tone should be audible.) Yet, defense counsel's legal arguments were consistent with the law as the Court indicated it will instruct the jury. While the prosecution was free to argue, with specificity, why one or more of counsel's arguments were wrong, it is misconduct to tell the jury to disregard everything defense counsel said about how the law applies to the facts of this case especially here where defense counsel's arguments relied on the Court's draft instructions.

---

[2] Given the lack of a transcript, quote marks indicate what defense counsel believes was said based on memory.

Page 8 – Motion for a Mistrial or in the Alternative a Curative Instruction and Defense Surrebuttal Closing Argument Given Prosecutorial Errors in Closing Argument and Trial

### C. Denigrating Defense Counsel and Misleading the Jury

Ms. Fontan also committed prosecutorial misconduct or error by accusing the defense of "cherry picking" evidence. That argument is particularly problematic in this case. The defense was prepared to present Ms. Rutledge's proposed summary testimony regarding her review of Body Worn Camera (BWC) footage and maintains that it should have been admissible evidence for the jury, that the government could have cross-examined or impeached if they felt it did not reflect a complete account of the available video. Yet, once the government's objection to her testimony summarizing the more-than-65 body worn cameras was sustained, the defense had to quickly pivot and present a selection of the BWC evidence that is relevant to the scrum on the Upper West Terrace. The government both objected to a comprehensive account of the videos, which Ms. Rutledge would otherwise have made, and made clear that they would object as "cumulative" if too many of the videos were shown. The prosecution forced the defense to "cherry-pick."

The government's cherry-picking argument further misled the jury because the defense wanted to present testimony consistent with Defense Exhibits 218 and 219. Ms. Rutledge was also prepared to testify to the number of Stinger Ball Grenades deployed between 1:24 PM and 2:14 PM, while Mr. Wise was approaching the Lower West Plaza and present there. *See* Defense Trial Exhibit 218. But because of sustained government objections, that testimony was truncated. In addition, during Dr. Rylant's testimony, videos of officers throwing the grenades was excluded — even though Mr. Wise was present to experience and see the impacts of those grenades. The Court excluded those videos because the defense could not prove that Mr. Wise "saw" officers *throw* the grenades. The defense was not trying to cherry pick evidence. The defense was trying to show the

Page 9 – Motion for a Mistrial or in the Alternative a Curative Instruction and Defense
Surrebuttal Closing Argument Given Prosecutorial Errors in Closing Argument and
Trial

jury short videos that exemplify the extent and the impacts of Stinger Ball Grenades that Mr. Wise experienced:

**Stinger Grenade Deployment on the West Front of the Capitol Building Between 1:24 PM and 2:14 PM**

| Time Range | No. of Grenades Deployed |
|---|---|
| 1:24 – 1:32 PM *(8 min)* | 6 |
| 1:33 – 1:38 PM *(5 min)* | 16 |
| 1:47 – 1:50 PM *(3 min)* | 5 |
| 1:55 – 2:02 PM *(7 min)* | 4 |
| 2:04 – 2:14 PM *(10 min)* | 9 |

More important, Ms. Rutledge was prevented from summarizing her findings as contained on Defense Trial Exhibit 219. That testimony — if not prevented by the government's sustained objection — would have powerfully demonstrated the fact that other than the two *cherry-picked* videos the government relied on (Leano BWC and Thornton BWC), all 65 BWC videos Ms. Rutledge reviewed concerning the Upper West Terrace lacked the critical words "kill 'em" at 4:22:38. Mr. Rutledge would have further testified that of the 65 BWCs, 40 were part of or near the scrum. As Defense Exhibit 219 shows, only Leano's BWC and Thornton's BWC capture "Kill 'em" at 4:22:38, because (in comprehensive corroboration of Joshua Cohen's testimony) they are on the outside edge of the planter. Yet, Thomas's words "Peace! Freedom!" are captured on Leano's BWC and Veizaj's BWC, while the words "Kill 'em" are not. *See* Ex. 219. The jury was not informed of this detailed analysis and was therefore left with a false impression of the evidence. The prosecution's sustained objections caused that.

Page 10 – Motion for a Mistrial or in the Alternative a Curative Instruction and Defense
     Surrebuttal Closing Argument Given Prosecutorial Errors in Closing Argument and
     Trial

Adding insult to injury, the government doubled down by arguing to the jury in rebuttal closing argument that the defense cherry-picked evidence. The risk of burden shifting is also high;[3] the government had an opportunity to present a rebuttal case and discussed on the record their intention to put on a longer portion of the BWC footage played by the defense. They ultimately chose not to. Any inference that the length of the clips or quantity of clips played by the defense was "cherry-picking" mischaracterizes the evidence, misleads the jury, and shifts the burden of proof.

### D. Passions and Prejudice Regarding the "Riot" and Not Letting the Defense "Rewrite History" with a Not Guilty Verdict.

In addition to falsely accusing defense counsel of cherry-picking evidence, Ms. Fontan further denigrated defense counsel by accusing the defense of seeking to "confuse" the jury with the goal of trying to "rewrite history." Although the defense moved in limine to prevent the government from calling protestors rioters since "rioter" is an inflammatory legal conclusion, ECF 66 at 8-9, the Court did not prevent the government from using that inflammatory word. Doubling down on the prejudice of that word, the government's passionate condemnation of defense counsel trying to "rewrite history" by calling the "rioters" "protestors" can only serve to

---

[3] A prosecutor "must refrain from making burden-shifting arguments which suggest that the defendant has an obligation to produce any evidence or to prove his innocence." *United States v. Simon*, 964 F.2d 1082, 1086 (11th Cir. 1992); *see also Jackson v. State*, 575 So. 2d 181, 188 (Fla. 1991) ("[T]he state cannot comment on a defendant's failure to produce evidence to refute an element of the crime, because doing so could erroneously lead the jury to believe that the defendant carried the burden of introducing evidence."). During cross-examination of the defendant, or during arguments to the jury, the prosecutor "may not make comments that would shift the burden of proof to the defendant." *United States v. Bernal-Benitez*, 594 F.3d 1303, 1315 (11th Cir.2010). Burden-shifting comments are those that "suggest that the defendant has an obligation to produce any evidence or to prove innocence." *United States v. Simon*, 964 F.2d 1082, 1086 (11th Cir.1992).

Page 11 – Motion for a Mistrial or in the Alternative a Curative Instruction and Defense Surrebuttal Closing Argument Given Prosecutorial Errors in Closing Argument and Trial

inflame the jury and denigrate defense counsel. Moreover, making a distinction between rioters and protestors (in general and in reference to Mr. Wise's actions) surely serves to encourage the jury to return a guilty verdict so that history is not rewritten. Basically, the prosecutor's argument signals to the jury: "A not guilty verdict rewrites history." If you return a not guilty verdict, you are calling everyone who was in a restricted area "a protestor" rather than acknowledging that a riot took place. Don't let the defense rewrite history. Find Mr. Wise guilty.

This argument also invokes sympathy for law enforcement who were injured and members of Congress who were forced to hide; it invoked patriotism, and tribal allegiance to protecting the Capitol and all that it stands for rather than encouraging the jurors to decide Mr. Wise's fate based on the facts and evidence presented at trial.

Prosecutors may not make comments calculated to arouse the passions or prejudices of the jury. *Viereck v. United States,* 318 U.S. 236, 247-48 (1943). But that is exactly what happened here.

The law in the D.C. and the Ninth Circuits is clear:

> A prosecutor may not urge jurors to convict a criminal defendant in order to protect community values, preserve civil order, or deter future lawbreaking. The evil lurking in such prosecutorial appeals is that the defendant will be convicted for reasons wholly irrelevant to his own guilt or innocence. Jurors may be persuaded by such appeals to believe that, by convicting a defendant, they will assist in the solution of some pressing social problem. The amelioration of society's woes is far too heavy a burden for the individual criminal defendant to bear.

*United States v. Koon,* 34 F.3d 1416, 1443 (9th Cir.1994) (quoting *United States v. Monaghan,* 741 F.2d 1434, 1441 (D.C.Cir.1984)), *rev'd on other grounds by* 518 U.S. 81 (1996).

Page 12 – Motion for a Mistrial or in the Alternative a Curative Instruction and Defense Surrebuttal Closing Argument Given Prosecutorial Errors in Closing Argument and Trial

## IV. Conclusion

Based on the foregoing, the defense requests that the Court (1) grant a mistrial and schedule a new trial date, or barring that remedy; (2) provide curative instructions targeted at ameliorating the potential prejudice resulting from perceived prosecutorial closing argument error; and (3) allow defense counsel to read key passages from the jury instructions to the jury to erase the taint of the prosecutorial comment that the jury should disregard everything Mr. Hermansen said about the law. *See* selective, highlighted jury instructions attached hereto.

Respectfully submitted on January 20, 2025.

| | |
|---|---|
| *s/ Peyton Lee* | *s/ Kurt Hermansen* |
| Peyton Lee, OSB No. 164224 | Kurt David Hermansen, CA Bar No. 166349 |
| Assistant Federal Public Defender | Supervisory Assistant Federal Public Defender |
| 101 SW Main Street, Suite 1700 | 859 Willamette St. Suite 200 |
| Portland, OR 97204 | Eugene, OR 97401 |
| Tel: (503) 326-2123 | Tel: (619) 436-8117 |
| Email: Peyton_Lee@fd.org | Email: kurt_hermansen@fd.org |

**Attorneys for Defendant Jared Lane Wise**